Robert J. Cassity
Nevada Bar No. 9779
Erica C. Medley
Nevada Bar No. 13959
**HOLLAND & HART LLP**
9555 Hillwood Drive, 2nd Floor
Las Vegas, NV 89134
Phone: 702.669.4600
Fax: 702.669.4650
bcassity@hollandhart.com
ecmedley@hollandhart.com

David A. Perez
(admitted *Pro Hac Vice*)
**PERKINS COIE LLP**
1201 Third Avenue, Suite 4900
Seattle, WA  98101-3099
Phone: 206.359.6767
Fax: 206.359.7767
dperez@perkinscoie.com

Matthew J. Mertens
(admitted *Pro Hac Vice*)
**PERKINS COIE LLP**
1120 N.W. Couch Street 10th Floor
Portland, OR 97209-4128
Phone: 503.727.2199
Fax 503.346.2199
mmertens@perkinscoie.com

*Attorneys for Defendants*
*Jeff Moss and DEF CON Communications, Inc.*

**UNITED STATES DISTRICT COURT**

**DISTRICT OF NEVADA**

| | |
|---|---|
| CHRISTOPHER J. HADNAGY, an individual; and SOCIAL-ENGINEER, LLC, a Pennsylvania limited liability company,<br><br>Plaintiffs,<br><br>v.<br><br>JEFF MOSS, an individual; DEF CON COMMUNICATIONS, INC., a Washington corporation; and DOES 1-10; and ROE ENTITIES 1-10, inclusive,<br><br>Defendants. | Case No.: 2:23-cv-01345-CDS-BNW<br><br>**DEFENDANTS' MOTION TO DISMISS**<br><br>**ORAL ARGUMENT REQUESTED** |

HOLLAND & HART LLP
9555 HILLWOOD DRIVE, 2ND FLOOR
LAS VEGAS, NV 89134

Defendants, JEFF MOSS, an individual ("Mr. Moss") and DEF CON Communications, Inc., a Washington corporation ("Def Con") (collectively referred to herein as the "Defendants"), by and through their counsel of record, Holland & Hart, LLP and Perkins Coie LLP, and pursuant to Rules 12(b)(2) and 12(b)(6) of the Federal Rules of Civil Procedure, hereby move the Court to dismiss the Complaint of Plaintiffs Christopher Hadnagy and Social-Engineer LLC pursuant to Federal Rules of Civil Procedure 12(b)(2) (lack of personal jurisdiction) and 12(b)(6) (failure to state a claim).

This Motion is supported by the following Memorandum of Points and Authorities, the papers and pleadings on file in this action, and any oral argument the Court may allow.

DATED this 2nd day of October 2023.

**HOLLAND & HART LLP**

*/s/ Robert J. Cassity*
Robert J. Cassity
Erica C. Medley
9555 Hillwood Drive, 2nd Floor
Las Vegas, NV 89134

David A. Perez
**PERKINS COIE LLP**
1201 Third Avenue, Suite 4900
Seattle, WA  98101-3099

Matthew J. Mertens
**PERKINS COIE LLP**
1120 N.W. Couch Street 10th Floor
Portland, OR 97209-4128

*Attorneys for Defendants*
*Jeff Moss and DEF CON Communications,*
*Inc.*

# **TABLE OF CONTENTS**

**Page**

MEMORANDUM OF POINTS AND AUTHORITIES ............................................ 1

I.      INTRODUCTION ............................................................................................ 1

II.     BACKGROUND AND PROCEDURAL HISTORY ........................................ 2

        A.      Factual background .......................................................................... 2

        B.      Procedural history ............................................................................ 4

III.    LEGAL STANDARD ...................................................................................... 5

IV.     THE COURT LACKS PERSONAL JURISDICTION .................................... 5

        A.      The Court lacks general or specific personal jurisdiction. .................. 5

V.      MR. HADNAGY'S CLAIMS FAIL AS A MATTER OF LAW ...................... 8

        A.      The alter ego theory against Mr. Moss should be dismissed. .............. 8

        B.      The defamation claim fails as a matter of law. ................................... 9

                1.      Legal standard .................................................................... 10

                2.      Mr. Hadnagy's defamation claim fails because any alleged
                        harms flow from the fact of Mr. Hadnagy's ban, which is
                        not actionable. .................................................................... 10

                3.      The Black Hat-specific allegations are not plausible. ............ 12

                4.      Much of the alleged "defamatory" content is not actually
                        defamatory. ......................................................................... 13

                5.      Much of the alleged "defamatory" content is comprised of
                        Defendants' non-actionable opinions. ................................... 13

        C.      The business disparagement claim should be dismissed. .................... 14

        D.      The tortious interference with contractual relations claim should
                be dismissed. ................................................................................. 15

        E.      The tortious interference with prospective business relations
                claim should be dismissed. .............................................................. 18

        F.      The equitable claims and injunctive relief "claim" should be
                dismissed. ...................................................................................... 20

                1.      The unjust enrichment claim should be dismissed. ................. 21

                2.      The quantum meruit claim should be dismissed ..................... 22

HOLLAND & HART LLP
9555 HILLWOOD DRIVE, 2ND FLOOR
LAS VEGAS, NV 89134

3.   The injunctive relief "claim" should be dismissed. .................. 23

VI.   CONCLUSION ............................................... 23

HOLLAND & HART LLP
9555 HILLWOOD DRIVE, 2ND FLOOR
LAS VEGAS, NV 89134

# TABLE OF AUTHORITIES

**Page(s)**

**CASES**

*Ashcroft v. Iqbal,*
  556 U.S. 662 (2009) .......................................................................... 5, 16

*Bell Atl. Corp. v. Twombly,*
  550 U.S. 544 (2007) ........................................................................ 12, 16

*Blanck v. Hager,*
  360 F. Supp. 2d 1137 (D. Nev. 2005) .................................................. 17

*Blantz v. California Dep't of Corr. & Rehab., Div. of Corr. Health Care
  Servs.,*
  727 F.3d 917 (9th Cir. 2013) ............................................................... 12

*Boy Scouts of Am. v. Dale,*
  530 U.S. 640 (2000) ............................................................................ 11

*Branch v. Tunnell,*
  14 F.3d 449 (9th Cir. 1994), *overruled on other grounds by Galbraith
  v. County of Santa Clara,* 307 F.3d 1119 (9th Cir. 2002) ...................... 2

*Branda v. Sanford,*
  97 Nev. 643, 637 P.2d 1223 (1981) ..................................................... 10

*Burri L. PA v. Skurla,*
  35 F.4th 1207 (9th Cir. 2022) ............................................................... 8

*Calder v. Jones,*
  465 U.S. 783 (1984) ........................................................................... 6, 7

*Casun Inv., A.G. v. Ponder,*
  No. 2:16-cv-2925-JCM-GWF, 2020 WL 59812 (D. Nev. Jan. 6, 2020) ... 8

*Certified Fire Prot. Inc. v. Precision Constr.,*
  128 Nev. 371, 283 P.3d 250 (2012) ..................................................... 22

*Churchill v. Barach,*
  863 F. Supp. 1266 (D. Nev. 1994) ....................................................... 14

*Clark County School Dist. v. Virtual Educ. Software, Inc.,*
  125 Nev. 374, 213 P.3d 496 (2009) ..................................................... 14

HOLLAND & HART LLP
9555 HILLWOOD DRIVE, 2ND FLOOR
LAS VEGAS, NV 89134

*Coffee v. Stolidakis*,
    No. 2:21-cv-02003-ART-EJY, 2022 WL 2533535 (D. Nev. July 6, 2022) ........................................................................................... 18

*Corzine v. Laxalt*,
    No. 3-17-cv-00052-MMD-WGC, 2017 WL 662982 (D. Nev. Feb. 17, 2017) ........................................................................................... 11

*Crown Beverages, Inc. v. Sierra Nevada Brewing Co.*,
    No. 3:16-cv-00695-MMD-VPC, 2017 WL 1508486 (D. Nev. Apr. 26, 2017) ........................................................................................... 17

*Cybersell, Inc. v. Cybersell, Inc.*,
    130 F.3d 414 (9th Cir. 1997) ................................................................... 7

*EVIG, LLC v. Mister Brightside, LLC*,
    No. 2:23-CV-186 JCM (BNW), 2023 WL 5717291 (D. Nev. Sept. 5, 2023) ........................................................................................... 18

*Fin. Pac. Ins. Co. v. Cruz Excavating, Inc.*,
    No. 3:10-CV-707-RCJ-VPC, 2011 WL 3022543 (D. Nev. Jul. 21, 2011) ................................................................................... 15, 16, 20

*Flowers v. Carville*,
    112 F. Supp. 2d 1202 (D. Nev. 2000) .............................................. 10, 11

*Freestream Aircraft (Bermuda) Ltd. v. Aero Law Grp.*,
    905 F.3d 597 (9th Cir. 2018) .............................................................. 6, 7

*Goodyear Dunlop Tires Operations, S.A. v. Brown*,
    564 U.S. 915 (2011) ............................................................................... 5

*Hadnagy v. Moss*,
    No. CV 22-3060, 2023 WL 114689 (E.D. Pa. Jan. 5, 2023) ................ 1, 4

*Henderson v. Hughes*,
    No. 2:16-cv-01837-JAD-CWH, 2017 WL 1900981 (D. Nev. May 9, 2017) ............................................................................................. 9

*Iliescu, Tr. of John Iliescu, Jr. & Sonnia Iliescu 1992 Fam. Tr. v. Reg'l Transp. Comm'n of Washoe Cnty.*,
    522 P.3d 453 (2022) ............................................................................ 23

*Interactive Fitness, Inc. v. Basu*,
    No. 2:09-cv-01145-KJD, 2011 WL 1870597 (D. Nev. May 13, 2011) ....... 9

*J.J. Indus., LLC v. Bennett*,
    119 Nev. 269, 71 P.3d 1264 (2003) ........................................... 15, 16, 17

HOLLAND & HART LLP
9555 HILLWOOD DRIVE, 2ND FLOOR
LAS VEGAS, NV 89134

*Kern v. Moulton*,
  No. 3:11-cv-296-RCJ-PAL, 2012 WL 1682026 (D. Nev. May 11, 2012) ............... 15

*Korte Constr. Co. v. State on Rel. of Bd. of Regents of Nev. Sys. of Higher Educ.*,
  137 Nev. 378, 492 P.3d 540 (2021) ...................................................... 21

*Leavitt v. Leisure Sports, Inc.*,
  103 Nev. 81, 734 P.2d 1221 (1987) ...................................................... 19

*LFC Mktg. Group, Inc. v. Loomis*,
  116 Nev. 896, 8 P.3d 841 (2000) ........................................................... 8

*LKimmy, Inc. v. Bank of Am., N.A.*,
  No. 2:19-cv-1833 JCM (BNW), 2020 WL 13533714 (D. Nev. June 12, 2020) ............................................................................................. 15

*Lubin v. Kunin*,
  117 Nev. 107, 17 P.3d 422 (2001) ...................................................... 10

*Manhattan Cmty. Access Corp. v. Halleck*,
  587 U.S. ___, 139 S. Ct. 1921 (2019) ................................................. 11

*Matthys v. Barrick Gold of N. Am.*,
  No. 3:20-cv-00034-LRH-CLB, 2020 WL 7186745 (D. Nev. Dec. 4, 2020) ............................................................................................. 18

*Mavrix Photo, Inc. v. Brand Techs., Inc.*,
  647 F.3d 1218 (9th Cir. 2011) .............................................................. 5

*Miller v. City of Los Angeles*,
  No. CV 13-5148-GW(CWX), 2014 WL 12610195 (C.D. Cal. Aug. 7, 2014) ............................................................................................. 12

*Nat'l Right To Life Pol. Action Comm. v. Friends of Bryan*,
  741 F. Supp. 807 (D. Nev. 1990) ....................................................... 17

*Pebble Beach Co. v. Caddy*,
  453 F.3d 1151 (9th Cir. 2006) ......................................................... 5, 7

*Pegasus v. Reno Newspapers, Inc.*,
  118 Nev. 706, 57 P.3d 82 (2002) ................................................... 10, 13

*Ranza v. Nike, Inc.*,
  793 F.3d 1059 (9th Cir. 2015) .............................................................. 5

HOLLAND & HART LLP
9555 HILLWOOD DRIVE, 2ND FLOOR
LAS VEGAS, NV 89134

*Rimini St., v. Oracle Int'l Corp.*,
　No. 2:14-cv-1699-LRH-CWH, 2017 WL 5158658 (D. Nev. Nov. 7,
　2017) .................................................................................................. 18, 20

*Sentry Ins. v. Estrella Ins. Serv., Inc.*,
　No. 2:13-CV-169 JCM (GWF), 2013 WL 2949610 (D. Nev. June 13,
　2013) .......................................................................................................... 15

*Sessa v. Ancestry.com Operations Inc.*,
　561 F. Supp. 3d 1008 (D. Nev. 2021) ........................................................ 6

*Sierra Dev. Co. v. Chartwell Advisory Grp., Ltd.*,
　325 F. Supp. 3d 1102 (D. Nev. 2018) ...................................................... 22

*State v. Eighth Jud. Dist. Ct. ex rel. Cnty. of Clark*,
　118 Nev. 140, 42 P.3d 233 (2002) ........................................................... 14

*Tarantino v. Gawker Media, LLC*,
　No. 14–CV–603–JFW(FFMx), 2014 WL 2434647 (C.D. Cal. Apr. 22,
　2014) .......................................................................................................... 12

*United States v. Alvarez*,
　617 F.3d 1198 (9th Cir. 2010), *aff'd*, 567 U.S. 709 (2012) ...................... 12

*Wealthy, Inc. v. Cornelia*,
　No. 2:21-CV-1173 JCM (EJY), 2023 WL 4803776 (D. Nev. July 27,
　2023) .................................................................................................. 6, 7, 8

*Williams v. Yamaha Motor Co.*,
　851 F.3d 1015 (9th Cir. 2017) .................................................................... 5

*Wynn v. Smith*,
　117 Nev. 6, 16 P.3d 424 (2001) ............................................................... 10

**STATUTES**

28 U.S.C. § 1332(a) ........................................................................................ 4

28 U.S.C. § 1441(a) ........................................................................................ 4

28 U.S.C. § 1441(b) ........................................................................................ 4

**RULES**

Rule 8(a) ......................................................................................................... 9

Rule 9(b) ......................................................................................................... 9

Rule 12 .......................................................................................................... 12

HOLLAND & HART LLP
9555 HILLWOOD DRIVE, 2ND FLOOR
LAS VEGAS, NV 89134

Rule 12(b)(2) ...................................................................................................5, 8

Rule 12(b)(6) ...................................................................................................2, 5

**OTHER AUTHORITIES**

Schwarzer, Tashima, et al., Fed. Prac. and Proc. Before Trial (2012) §
     8:128.22 ..................................................................................................13

HOLLAND & HART LLP
9555 HILLWOOD DRIVE, 2ND FLOOR
LAS VEGAS, NV 89134

## MEMORANDUM OF POINTS AND AUTHORITIES

## I.   INTRODUCTION

Plaintiffs Christopher Hadnagy and Social-Engineer LLC (collectively, "Mr. Hadnagy") have once again filed a meritless lawsuit against Mr. Moss and Def Con concerning the same allegations at issue in a lawsuit that the Eastern District of Pennsylvania already dismissed. *Hadnagy v. Moss*, No. CV 22-3060, 2023 WL 114689 (E.D. Pa. Jan. 5, 2023). In the Pennsylvania litigation, the district court correctly concluded that there was no personal jurisdiction in Pennsylvania over a Washington company and a Washington resident. *Id.* at *1. Instead of filing a lawsuit *in Washington*, Mr. Hadnagy chose to ignore the district court's order and file a lawsuit here in Nevada. But jurisdiction is no more appropriate in Nevada than it was in Pennsylvania. And the Complaint continues to allege conduct that is neither unlawful nor actionable.

Each year, Defendants Jeff Moss and Def Con host a conference on information and computer security. The event is known as Def Con, and draws tens of thousands of attendees annually. Mr. Hadnagy was one of them—until February 9, 2022, when Def Con issued a statement banning Mr. Hadnagy from future Def Con events. Def Con had received multiple reports about Mr. Hadnagy violating Def Con's code of conduct. After reviewing the allegations, Def Con exercised its First Amendment right not to associate with Mr. Hadnagy and declined to invite him to the conference. Def Con posted a two-sentence update on its blog stating as much and added a one-paragraph update in January 2023 after the Eastern District of Pennsylvania dismissed Mr. Hadnagy's case.

Mr. Hadnagy has levied from these two statements a dizzying array of intentional tort claims, including defamation, tortious interference with contracts both current and prospective, and business disparagement. Mr. Hadnagy also asserts equitable claims for unjust enrichment and quantum meruit, which are ostensibly based on his contributions to the Def Con conference. He filed these meritless claims

HOLLAND & HART LLP
9555 HILLWOOD DRIVE, 2ND FLOOR
LAS VEGAS, NV 89134

**HOLLAND & HART LLP**
**9555 HILLWOOD DRIVE, 2ND FLOOR**
**LAS VEGAS, NV 89134**

in Nevada because the conference takes place here. As this Motion makes clear, this is an abjectly inadequate basis to support personal jurisdiction over Defendants. And even if there is jurisdiction, Mr. Hadnagy's claims are inadequately pleaded, substantively flawed, and should be dismissed with prejudice under Rule 12(b)(6).[1]

## II.    BACKGROUND AND PROCEDURAL HISTORY

### A.    Factual background

Defendant Jeff Moss is the founder of Def Con, which conducts an annual hacker conference in Las Vegas, Nevada (the "Event"). Compl. ¶¶ 2, 3. The Event is one of the world's largest hacker conventions, and it typically hosts professionals to speak about IT-related or hacking-related subjects. *Id.* ¶ 37. Attendees include law enforcement agencies and representatives from large corporations. *Id.* ¶ 38.

Def Con implemented a conference code of conduct ("Code of Conduct") in 2015. *Id.* ¶ 60. The Code of Conduct prohibits "harassment," which includes "deliberate intimidation and targeting individuals in a manner that makes them feel uncomfortable, unwelcome, or afraid."[2] *Id.* The Code of Conduct applies to "everyone," and Def Con explicitly reserves the "right to respond to harassment in the manner we deem appropriate, including but not limited to expulsion[.]" *Id.*

---

[1] Because this is Mr. Hadnagy's second attempt to hale Defendants into an improper and inconvenient jurisdiction, Defendants also intend to file a separate motion to transfer this case to the Western District of Washington. The Court may find it more efficient to rule on the transfer motion instead of or before ruling on this motion to dismiss. Defendants asked Mr. Hadnagy to stipulate to combining these two motions—for dismissal and alternatively for transfer—for efficiency's sake, but Mr. Hadnagy refused.

[2] A correct copy of the Code of Conduct is attached as Exhibit 1. Mr. Hadnagy relies on the Code of Conduct and the Transparency Report (discussed below) in the Complaint and, as such, the Court may properly consider them on a motion to dismiss. *See Branch v. Tunnell*, 14 F.3d 449, 453 (9th Cir. 1994) (noting that a court may consider a document whose contents are alleged in a complaint, so long as no party disputes its authenticity), *overruled on other grounds by Galbraith v. County of Santa Clara*, 307 F.3d 1119 (9th Cir. 2002).

Starting in 2017, Def Con began to publicly share a summary of incidents that happened at the Event for a given year (the "Transparency Report").[3] Mr. Moss's express hope "[was] that by doing this DEF CON will encourage other conventions to duplicate this reporting and share their data so collectively we can shed some light on the challenge we face in creating more safe and inclusive events." *Id.* (typo fixed).

The Event hosts a multitude of "villages," which are breakout sessions that invite smaller groups of attendees to participate in cybersecurity challenges and demonstrations related to different topics. Compl. ¶ 40. In the past, when he was allowed to attend Def Con, Mr. Hadnagy hosted a village focused on social engineering (the "SEVillage"). *Id.* ¶¶ 45–46.

In January 2022, Def Con informed Mr. Hadnagy that he could not attend or participate in future Events based on certain reported violations of the Code of Conduct. *Id.* ¶¶ 58–59. On February 9, 2022, Def Con published an updated Transparency Report announcing Mr. Hadnagy's ban from future Events (the "Ban Announcement"), which states:

> We received multiple [Code of Conduct] reports about a DEF CON Village leader, Chris Hadnagy of the SE Village. After conversations with the reporting parties and Chris, we are confident the severity of the transgressions merits a ban from DEF CON.

*Id.* ¶ 58.[4]

According to Mr. Hadnagy, Def Con's decision to exercise its First Amendment right not to associate with him caused unnamed third parties to "assume" negative things about him. *Id.* ¶¶ 66, 106, 108. A writer for TechTarget.com reported that Mr. Hadnagy was banned for "misconduct at the annual Las Vegas gathering"—an assertion not present in the Ban Announcement. *Compare id.* ¶¶ 69–72, *with id.* ¶ 58. Mr. Hadnagy alleges that *unnamed* and *unidentified* "actual and potential clients"

---

[3] A correct copy of the Transparency Report is attached as Exhibit 2.

[4] A correct copy of the Updated Transparency Report is attached as Exhibit 3.

HOLLAND & HART LLP
9555 HILLWOOD DRIVE, 2ND FLOOR
LAS VEGAS, NV 89134

began to terminate their relationships with Mr. Hadnagy, citing the Ban Announcement. *Id.* ¶ 73. Notably, Mr. Hadnagy does not identify these potential customers, nor does he even identify the contracts at issue—much less explain *how Def Con knew about them*.

Mr. Hadnagy also alleges—on information and belief, and without elaboration—that he was disinvited from another conference (Black Hat) based on Defendants' comments. *Id.* ¶ 79.

And finally, Defendants posted an update on their website (the "Transparency Report Update") in January 2023, following the Eastern District of Pennsylvania's dismissal of Mr. Hadnagy's lawsuit. Mr. Hadnagy alleges that *update* constitutes yet more defamation. *Id.* ¶ 80.

On August 9, 2023, one day before the 2023 Event in Las Vegas, Mr. Hadnagy filed this lawsuit in Nevada.

### B.   Procedural history

On August 1, 2022, Mr. Hadnagy initially filed his lawsuit in the Eastern District of Pennsylvania. *See Hadnagy v. Moss*, No. 2:22-cv-03060-WB, ECF No. 1. On January 5, 2023, Judge Wendy Beetlestone dismissed Mr. Hadnagy's lawsuit for lack of personal jurisdiction. *See, e.g., Hadnagy,* 2023 WL 114689, at *7 (stating that the mere fact that the Ban Announcement was "indisputably accessible" in the forum state did not mean Defendants committed "specific tortious activity expressly aimed at" the forum state and finding lack of personal jurisdiction).  On August 9, 2023, Mr. Hadnagy filed the instant lawsuit in Nevada state court, which is functionally identical to the one Judge Beetlestone dismissed in January 2023. On August 29, 2023, Defendants timely removed the lawsuit to this Court under the diversity and removal statutes. *See* 28 U.S.C. § 1332(a); 28 U.S.C. § 1441(a)–(b); ECF No. 1. On September 5, 2023, the Court approved the parties' stipulation extending the filing deadline for the instant motion. ECF No. 9.

HOLLAND & HART LLP
9555 HILLWOOD DRIVE, 2ND FLOOR
LAS VEGAS, NV 89134

## III.   LEGAL STANDARD

Under Rule 12(b)(2), "[w]hen a defendant moves to dismiss for lack of personal jurisdiction, the plaintiff bears the burden of demonstrating that the court has jurisdiction over the defendant." *Pebble Beach Co. v. Caddy*, 453 F.3d 1151, 1154 (9th Cir. 2006). Plaintiff cannot "rest on the bare allegations of its complaint," *Mavrix Photo, Inc. v. Brand Techs., Inc.*, 647 F.3d 1218, 1223 (9th Cir. 2011), but must "make a prima facie showing of jurisdictional facts to withstand the motion to dismiss," *Ranza v. Nike, Inc.*, 793 F.3d 1059, 1068 (9th Cir. 2015) (cleaned up).

Under Rule 12(b)(6), a court conducts a two-step inquiry to test the legal sufficiency of the complaint. First, well-pleaded facts are accepted as true, while mere legal conclusions may be disregarded. *Ashcroft v. Iqbal*, 556 U.S. 662, 678–79 (2009). Once the well-pleaded factual allegations have been isolated, the court must determine whether they are sufficient to show a "plausible claim for relief." *Id.* at 679. A claim "has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* at 678.

## IV.   THE COURT LACKS PERSONAL JURISDICTION

### A.   The Court lacks general or specific personal jurisdiction.

No party—neither Mr. Hadnagy nor Defendants—is based in Nevada, and the Court should dismiss these claims because there is no personal jurisdiction in Nevada. Personal jurisdiction can be either general or specific. General jurisdiction permits the court to exercise jurisdiction over all claims against a defendant because the defendant is essentially at home in the forum. *Goodyear Dunlop Tires Operations, S.A. v. Brown*, 564 U.S. 915, 919 (2011). Specific jurisdiction allows the court to exercise jurisdiction only over a defendant's forum-related activities. *Williams v. Yamaha Motor Co.*, 851 F.3d 1015, 1023 (9th Cir. 2017). Mr. Hadnagy (quite correctly) does not assert that this Court has *general* jurisdiction over Defendants.

HOLLAND & HART LLP
9555 HILLWOOD DRIVE, 2ND FLOOR
LAS VEGAS, NV 89134

*See* Compl. ¶¶ 10–11. So the inquiry turns on whether the Court has *specific* jurisdiction.

A court "will exercise specific jurisdiction over a nonresident defendant only when three requirements are satisfied: (1) the defendant either purposefully directs its activities or purposefully avails itself of the benefits afforded by the forum's laws; (2) the claim arises out of or relates to the defendant's forum-related activities; and (3) the exercise of jurisdiction comports with fair play and substantial justice, i.e., it is reasonable." *Id.* (cleaned up). The Ninth Circuit treats purposeful avails and purposeful direction as separate methods of analysis. Purposeful availment is for suits sounding in contract, whereas purposeful direction is for suits sounding in tort. *Wealthy, Inc. v. Cornelia*, No. 2:21-CV-1173 JCM (EJY), 2023 WL 4803776, at *3 (D. Nev. July 27, 2023). Intentional torts, like defamation, are subject to the purposeful direction analysis. *Freestream Aircraft (Bermuda) Ltd. v. Aero Law Grp.*, 905 F.3d 597, 605 (9th Cir. 2018). Courts evaluate purposeful direction under the three-part effects test articulated in *Calder v. Jones*, 465 U.S. 783 (1984), which requires that the defendant allegedly have (1) committed an intentional act, (2) expressly aimed at the forum state, (3) causing harm that the defendant knows is likely to be suffered in the forum state. *Sessa v. Ancestry.com Operations Inc.*, 561 F. Supp. 3d 1008, 1024 (D. Nev. 2021). By this standard, the Court lacks personal jurisdiction because Defendants did not "expressly aim" their alleged tortious statements at Nevada.

Defendants' posting of the Ban Announcement and Transparency Report Update on a website accessible to *everyone everywhere*—including but not limited to those who live in Nevada—does not pass muster under the effects test, as the recent case of *Wealthy, Inc. v. Cornelia* makes clear. In *Wealthy*, the plaintiff (not a resident of Nevada) sued the defendant (not a resident of Nevada) for recording an allegedly defamatory YouTube video with a third person (a resident of Nevada). 2023 WL 4803776, at *3–5. The court rejected personal jurisdiction over the defendant because the video was posted online with the intention of being broadcast *globally*, and the

- 6 -

defendant did not specifically intend the statements to harm the plaintiff in Nevada. *Id.* at *3. The court found that if the plaintiff were a Nevada resident, the harm would have been felt in the state, but he was not. *Id.* at *3–4. The court declined to "exercise jurisdiction over an action where the requisite nexus was the fact that several defamatory statements had a proverbial layover in Nevada as they awaited global publishing on the internet." *Id.* at *5.

There is not personal jurisdiction here for the same reasons as in *Wealthy*: non-resident plaintiffs have sued non-resident defendants for statements published online with nothing more than an incidental connection to Nevada. There is no allegation that Defendants committed any of their allegedly tortious conduct within the state of Nevada. *Cf. Freestream Aircraft (Bermuda) Ltd.*, 905 F.3d at 600 ("A defendant who travels to Nevada and commits an intentional tort there can be sued in that state."). There is no allegation—other than extremely vague allegations in Paragraphs 132–134 that do not pass muster under federal pleading standards—that Defendants had any awareness of any specific Nevada-based contract that Mr. Hadnagy may have had. Defendants cannot "expressly aim" their conduct at contracts that they do not know exist, nor can Defendants know that any resultant harm is likely to be suffered in Nevada. *See Wealthy*, 2023 WL 4803776, at *5 ("Without evidence that Nevada served as the epicenter of harm in this case . . . the *Calder* effects test is not satisfied, and this court lacks jurisdiction.").

Blog posts on the Def Con blog about Mr. Hadnagy's conference ban do not target Nevada. Mr. Hadnagy is trying to bootstrap a straightforward case of alleged Internet-based defamation with the ancillary point of where the conference takes place, but the *latter* has nothing to do with where jurisdiction is proper for the *former*. There is nothing in the Ban Announcement or Transparency Report Update that specifically targets Nevada residents or encourages Nevada residents to read these postings. *See Pebble Beach Co.*, 453 F.3d at 1156 (finding fact that website reaches forum insufficient for jurisdiction); *Cybersell, Inc. v. Cybersell, Inc.*, 130 F.3d 414, 419

HOLLAND & HART LLP
9555 HILLWOOD DRIVE, 2ND FLOOR
LAS VEGAS, NV 89134

(9th Cir. 1997) (finding no jurisdiction where there was no evidence that defendant targeted forum residents by website). The blog posts make no comment on Mr. Hadnagy's alleged Nevada-based contracts or even any actions that Mr. Hadnagy may have taken in Nevada. *Cf. Burri L. PA v. Skurla*, 35 F.4th 1207, 1209 (9th Cir. 2022) (holding that defamation and tortious interference specifically directed at *individuals in the forum state* about *a contract within the forum state* gives rise to jurisdiction).

In short, nothing about Defendants' blog posts is "expressly aimed" at Nevada, and Nevada does not have a unique state-based interest in a case of online defamation between nonresident plaintiffs and nonresident defendants with nothing more than a passing connection to Nevada. *See Wealthy*, 2023 WL 4803776, at *3–5. The Court should thus dismiss this suit for lack of personal jurisdiction under Rule 12(b)(2).

## V.   MR. HADNAGY'S CLAIMS FAIL AS A MATTER OF LAW

### A.   The alter ego theory against Mr. Moss should be dismissed.

Mr. Hadnagy pleads in an entirely conclusory fashion that Mr. Moss is the alter ego of Def Con and is thus "liable for the obligations, debts, and liability of Defendant DEF CON arising under this Complaint." Compl. ¶¶ 19–29. Although this does not even appear to be a separate cause of action, even if it were this is inadequate to state claims against Mr. Moss individually.

To pierce the corporate veil, Mr. Hadnagy must show the following: (1) that the corporation is influenced and governed by the person asserted to be the alter ego; (2) that there is such a unity of interest that one is inseparable from the other; and (3) that the facts are such that adherence to the corporate fiction of a separate entity would, under the circumstances, sanction fraud or promote injustice. *LFC Mktg. Group, Inc. v. Loomis*, 116 Nev. 896, 904, 8 P.3d 841 (2000). The corporate cloak is not lightly thrown aside. *Casun Inv., A.G. v. Ponder*, No. 2:16-cv-2925-JCM-GWF, 2020 WL 59812, at *4 (D. Nev. Jan. 6, 2020). Because fraud is a necessary element of the alter ego doctrine, a party pleading alter ego must satisfy the heightened pleading

HOLLAND & HART LLP
9555 HILLWOOD DRIVE, 2ND FLOOR
LAS VEGAS, NV 89134

standard of Rule 9(b). *Interactive Fitness, Inc. v. Basu*, No. 2:09-cv-01145-KJD, 2011 WL 1870597, at *6 (D. Nev. May 13, 2011).

Mr. Hadnagy's alter ego allegations are fatally defective under even Rule 8(a)'s notice standard, much less Rule 9(b)'s heightened pleading standard. Mr. Hadnagy has done nothing more than plead rote elements of a veil-piercing claim and associated factors on information and belief. *See, e.g.*, Compl. ¶ 24(a)–(e). This is insufficient to state a prima facie case of alter ego liability. *See Henderson v. Hughes*, No. 2:16-cv-01837-JAD-CWH, 2017 WL 1900981, at *4 (D. Nev. May 9, 2017) (dismissing alter ego claim where plaintiff properly pleaded elements of claim but did not allege sufficient facts to state a plausible claim). The alter ego allegations against Mr. Moss should be dismissed for failure to state a claim.

**B.    The defamation claim fails as a matter of law.**

Mr. Hadnagy's defamation claim should be dismissed on two independent causation-related grounds: (1) Mr. Hadnagy's alleged harms flow from the fact of his ban from Def Con, which is not actionable under the First Amendment; and (2) Mr. Hadnagy fails to distinguish between the alleged harm that *Defendants*' statements caused as opposed to the other negative public statements that other third parties made, such as calling Mr. Hadnagy the "Harvey Weinstein" of the infosec community. Compl. ¶ 108. Those other statements were made *by others*—Mr. Hadnagy cannot lump together all the causation in an effort to target Def Con.

Additionally, Mr. Hadnagy's Black Hat-specific allegations in Paragraphs 78 and 79 are not plausibly pleaded and should be disregarded. Alternatively, if the Court declines to dismiss the defamation claim, the claim should be limited to a subset of Defendants' alleged statements to Black Hat representatives described in Paragraph 78, as the majority of Defendants' alleged "defamation" is non-defamatory in character and constitutes protected opinion.

HOLLAND & HART LLP
9555 HILLWOOD DRIVE, 2ND FLOOR
LAS VEGAS, NV 89134

### 1. Legal standard

To establish a prima facie case of defamation, a plaintiff must allege: (1) a false and defamatory statement by the defendant concerning the plaintiff; (2) an unprivileged publication to a third person; (3) fault, amounting to at least negligence; and (4) actual or presumed damages resulting from the publication. *Wynn v. Smith*, 117 Nev. 6, 10, 16 P.3d 424 (2001). A statement is defamatory when it would tend to lower the subject in the estimation of the community, excite derogatory opinions about the subject, and hold the subject up to contempt. *Lubin v. Kunin*, 117 Nev. 107, 111, 17 P.3d 422 (2001). A statement may only be defamatory if it contains a factual assertion that can be proven false. *See Flowers v. Carville*, 112 F. Supp. 2d 1202, 1210 (D. Nev. 2000).

Whether a statement is capable of a defamatory construction is a question of law. *Branda v. Sanford*, 97 Nev. 643, 646, 637 P.2d 1223 (1981). In reviewing an allegedly defamatory statement, the words must be viewed in their entirety and in context to determine whether they are susceptible of a defamatory meaning. *Lubin*, 117 Nev. at 111–12. To determine if a statement is one of fact or opinion, "the court must ask whether a reasonable person would be likely to understand the remark as an expression of the source's opinion or as a statement of existing fact." *Pegasus v. Reno Newspapers, Inc.*, 118 Nev. 706, 715, 57 P.3d 82 (2002).

### 2. Mr. Hadnagy's defamation claim fails because any alleged harms flow from the fact of Mr. Hadnagy's ban, which is not actionable.

Mr. Hadnagy's defamation claim rests on the following syllogism: (1) Defendants released a statement that Mr. Hadnagy had been banned from the Event (Compl. ¶ 58); (2) Defendants had predicated prior bans on sexual misconduct (*id.* ¶ 67); (3) the tech community therefore assumed that Mr. Hadnagy's ban was predicated on sexual misconduct (*id.* ¶¶ 66–67); and (4) Mr. Hadnagy's' actual and potential clients began to terminate their relationships with Mr. Hadnagy, citing Defendants' statement about the ban (*id.* ¶ 73). But under Mr. Hadnagy's syllogism,

it is not the *substance* of Defendants' statement that resulted in Mr. Hadnagy's harm, but the fact that Defendants made any statement *at all* about Mr. Hadnagy's ban. **That is not defamation.**

Imagine instead if on February 9, 2022, Defendants had simply released a statement that "Chris Hadnagy has been permanently banned from Def Con." This is of course not defamatory, as it is a pure factual statement that cannot be proven false. *See Flowers,* 112 F. Supp. 2d at 1210. Yet under Mr. Hadnagy's theory, since Defendants only previously issued lifetime Def Con bans for sexual misconduct, the *same harms* described in premises (2)–(4) above would have befallen Mr. Hadnagy. It is thus the fact that Mr. Hadnagy was banned from Def Con that caused his alleged harm, not the allegedly "defamatory" nature of the Ban Announcement. And so long as Defendants are not transgressing a constitutionally protected class such as race, which they are not here, Defendants have an ironclad First Amendment right to associate *or not associate* with whomever they want at their *private* conference. *See Boy Scouts of Am. v. Dale*, 530 U.S. 640, 648 (2000) (holding First Amendment "plainly presupposes a freedom not to associate" for private organizations and that "forced inclusion of unwanted person" infringes on that right absent compelling state interests)*; Corzine v. Laxalt*, No. 3-17-cv-00052-MMD-WGC, 2017 WL 662982, at *3 (D. Nev. Feb. 17, 2017) ("Freedom of association is a consequence of the First Amendment's textual guarantees.") (cleaned up); *see also Manhattan Cmty. Access Corp. v. Halleck*, 587 U.S. ___, 139 S. Ct. 1921, 1930 (2019) (A private actor providing a forum for speech "is not a state actor" and "may thus exercise editorial discretion over the speech and speakers in the forum."). Mr. Hadnagy's defamation claim flounders because the ban itself is the source of his harms, and the fact of the ban is not actionable.

The defamation claim has a second causation-related problem, too: Mr. Hadnagy fails to distinguish between any alleged harm that *Defendants* caused as opposed to, for example, "the various false rumors [that] spread rampantly across

HOLLAND & HART LLP
9555 HILLWOOD DRIVE, 2ND FLOOR
LAS VEGAS, NV 89134

public forums and social media pages alleging that Plaintiff Hadnagy had committed the worst of sexual crimes[,]" or the statement that Mr. Hadnagy was the "Harvey Weinstein" of the infosec community. Compl. ¶¶ 68, 108. If *third parties* defamed Mr. Hadnagy, then his recourse is against *those individuals*, not Defendants. The Complaint also fails to distinguish between other similar statements made by others in the tech community, like the TechTarget article that (incorrectly) stated Mr. Hadnagy was banned for misconduct at the Def Con conference itself. *Id.* ¶¶ 69–72. There are no facts pleaded, nor could Mr. Hadnagy plead such facts, to show that Defendants' statements *in fact* caused the damages Mr. Hadnagy asserts. Mr. Hadnagy instead resorts to mere legal conclusions, which are insufficient and which his own pleading undermines. *See, e.g., United States v. Alvarez*, 617 F.3d 1198, 1207 (9th Cir. 2010), *aff'd*, 567 U.S. 709 (2012) (stating that the alleged defamer's false statement must be the proximate cause of the irreparable injury to the plaintiff's reputation).

### 3. The Black Hat-specific allegations are not plausible.

In a strained effort to preserve some portion of an otherwise dubious defamation claim, Mr. Hadnagy alleges—on *information and belief* only—that Mr. Hadnagy was disinvited from another conference, Black Hat, because of statements made by Mr. Moss.  Compl. ¶¶ 78–79. These allegations cannot save the defamation claim.

There is not a single allegation from which Defendants, or the Court, can surmise why Mr. Hadnagy believes Mr. Moss made these alleged statements (much less when or how). "Information and belief" pleading is "not talismanic, and a plaintiff cannot avoid Rule 12 simply by slapping the 'information and belief' label onto speculative or conclusory allegations." *Miller v. City of Los Angeles*, No. CV 13-5148-GW(CWX), 2014 WL 12610195, at *5 (C.D. Cal. Aug. 7, 2014) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 557 (2007)); *Blantz v. California Dep't of Corr. & Rehab., Div. of Corr. Health Care Servs.*, 727 F.3d 917, 926–27 (9th Cir. 2013); *Tarantino v.*

HOLLAND & HART LLP
9555 HILLWOOD DRIVE, 2ND FLOOR
LAS VEGAS, NV 89134

*Gawker Media, LLC,* No. 14–CV–603–JFW(FFMx), 2014 WL 2434647, at *5 n.4 (C.D. Cal. Apr. 22, 2014) (collecting cases); Schwarzer, Tashima, et al., Fed. Prac. and Proc. Before Trial (2012) § 8:128.22, at 8–32–33 ("[C]onclusory allegations based on nothing more than 'information and belief' will not suffice"). Mr. Hadnagy's conclusory Black Hat-related allegations should be dismissed.

### 4. Much of the alleged "defamatory" content is not actually defamatory.

The defamation claim should be dismissed to the extent it is predicated upon the erroneous assumption that the Ban Announcement or Transparency Report Update ascribe sexual misconduct to Mr. Hadnagy. Neither statement references sexual conduct or even refers to gender identifiers. The Ban Announcement states Def Con banned Mr. Hadnagy for Code of Conduct violations, and the Code of Conduct prohibits "harassment" generally—which is defined as deliberately intimidating or targeting individuals in a manner that makes them feel uncomfortable, unwelcome, or afraid. Ex. 1 (Code of Conduct). "Harassment" carries no sexual denotation under the Code of Conduct. Mr. Hadnagy admits as much in alleging that third parties had to "assume" the conduct was sexual in nature or abhorrent. *See*, *e.g.*, Compl. ¶¶ 66, 106, 108.

### 5. Much of the alleged "defamatory" content is comprised of Defendants' non-actionable opinions.

The Ban Announcement, the Transparency Report Update, and multiple parts of Defendants' alleged statements to Black Hat representatives in Paragraph 78 are non-actionable opinion. Statements of opinion cannot be defamatory because "there is no such thing as a false idea. However pernicious an opinion may seem, we depend for its correction not on the conscience of judges and juries but on the competition of other ideas." *Pegasus*, 118 Nev. at 714. The Ban Announcement and Transparency Report Update comprise Def Con's opinion about its own investigation of Mr. Hadnagy's behavior. The Ban Announcement notes that conversations occurred with the reporting parties *and* Mr. Hadnagy, and Def Con was *confident* in its opinion, not

*certain.* Courts regularly protect more offensive insinuations as protected opinion. *See, e.g., Churchill v. Barach,* 863 F. Supp. 1266, 1273 (D. Nev. 1994) (statement that airline employee was "rigid, uninformed, incompetent and unhelpful" and "will help put [the airline] out of business" was non-actionable opinion); *State v. Eighth Jud. Dist. Ct. ex rel. Cnty. of Clark,* 118 Nev. 140, 150, 42 P.3d 233 (2002) (law enforcement agent's suggestion that fellow agent's investigation was "crappy," "half-assed," and warranted termination of the fellow agent's employment was non-actionable opinion).

As for the alleged statements to Black Hat representatives in Paragraph 78, subparagraphs c ("Defendants determined that the Acts occurred based upon their purported investigation and evidence presented,"), f (publication of the Ban Announcement), and g (publication of the Transparency Report Update) are protected opinion as described above. Thus, even if Mr. Hadnagy's defamation claim survives dismissal on causation grounds and, as to the Black Hat allegations, plausibility grounds—which it should not—the claim should be limited to what Defendants allegedly told Black Hat in Paragraph 78 a, b, d, and e, and any resultant harm to Mr. Hadnagy's economic relationship with Black Hat.[5]

## C.   The business disparagement claim should be dismissed.

Mr. Hadnagy fails to plead a claim for business disparagement because none of Defendants' alleged statements concern or even mention Mr. Hadnagy's or Social-Engineer's products or services. Under Nevada law, a claim for business disparagement requires the plaintiff to establish the following elements: "(1) a false and disparaging statement; (2) the unprivileged publication by the defendant; (3) malice; and (4) special damages." *Clark County School Dist. v. Virtual Educ. Software, Inc.*, 125 Nev. 374, 386, 213 P.3d 496 (2009). While similar to defamation, the claims are not identical, in that claims for business disparagement must involve

---

[5] Mr. Hadnagy has failed to plead plausible facts that Defendants made the statements alleged in these subparagraphs to anyone other than Black Hat representatives.

HOLLAND & HART LLP
9555 HILLWOOD DRIVE, 2ND FLOOR
LAS VEGAS, NV 89134

statements "directed towards the quality of the individual's product or services." *Sentry Ins. v. Estrella Ins. Serv., Inc.*, No. 2:13-CV-169 JCM (GWF), 2013 WL 2949610, at *2 (D. Nev. June 13, 2013).

Mr. Hadnagy has entirely failed to allege that Defendants impugned the quality of his products or services. *See* Compl. ¶¶ 122–29. None of Defendants' alleged statements have anything to do with the quality of either Mr. Hadnagy's or Social-Engineer's services to their various clients. Mr. Hadnagy's business disparagement claim must be dismissed. *See Sentry Ins.,* 2013 WL 2949610, at *3 (refusing to consider an alleged business disparagement claim because defendants did not make statements that attacked plaintiffs' products or services); *see also LKimmy, Inc. v. Bank of Am., N.A.*, No. 2:19-cv-1833 JCM (BNW), 2020 WL 13533714, at *4 (D. Nev. June 12, 2020) (dismissing business disparagement claim on motion to dismiss where plaintiff's allegations are "conclusory and a threadbare recitation of the elements"); *Kern v. Moulton*, No. 3:11-cv-296-RCJ-PAL, 2012 WL 1682026, at *4 (D. Nev. May 11, 2012) (dismissing business disparagement claim where plaintiff "does no more than recite the elements of the causes of action and is completely devoid of factual allegations").

### D.   The tortious interference with contractual relations claim should be dismissed.

Under Nevada law, to plead a claim for intentional interference with contractual relations, Mr. Hadnagy must allege: "(1) a valid and existing contract; (2) the defendant's knowledge of the contract; (3) intentional acts intended or designed to disrupt the contractual relationship; (4) actual disruption of the contract; and (5) resulting damage." *J.J. Indus., LLC v. Bennett*, 119 Nev. 269, 274, 71 P.3d 1264 (2003). Mr. Hadnagy has failed to plausibly allege the first, second, and third elements of the claim.

**First**, the plaintiff must identify the specific contract allegedly interfered with to survive a motion to dismiss, and Mr. Hadnagy has failed to do so. *See, e.g., Fin.*

HOLLAND & HART LLP
9555 HILLWOOD DRIVE, 2ND FLOOR
LAS VEGAS, NV 89134

- 15 -

HOLLAND & HART LLP
9555 HILLWOOD DRIVE, 2ND FLOOR
LAS VEGAS, NV 89134

*Pac. Ins. Co. v. Cruz Excavating, Inc.*, No. 3:10-CV-707-RCJ-VPC, 2011 WL 3022543, at *4 (D. Nev. Jul. 21, 2011) (dismissing claim where party "[did] not state what contract they are referring to, who the third party is, or how [defendant] disrupted the contractual relationship").  While Mr. Hadnagy alleges that he has "several long-term agreements for the provision of Cybersecurity and IT services for various large national corporations and law enforcement agencies," he fails to identify the specific contracts or the third parties on the other end of these contracts. Compl. ¶ 131. His vague suggestion that Defendants interfered with "any business arrangements" they had with unidentified "Cybersecurity conventions" is far too indefinite to support a tortious interference claim. *Id.* ¶ 136. Mr. Hadnagy's' generalized and conclusory allegations regarding the existence of the alleged contracts are inadequate under *Iqbal* and *Twombly. See Fin. Pac. Ins. Co.*, 2011 WL 3022543, at *4 (stating that a formulaic recitation of the elements of intentional interference with contract "will not do" to survive a motion to dismiss).

***Second***, Mr. Hadnagy has failed to plead facts that show Defendants "knew of the existing contract, or at the very least, establish facts from which the existence of the contract can reasonably be inferred.*" J.J. Indus., LLC*, 119 Nev. at 269. Mr. Hadnagy alleges that Defendants knew of these alleged contracts "because a considerable portion of Plaintiffs' business agreements were secured through leads generated by way of their operation of the SEVillage." Compl. ¶¶ 132–33. This is a non sequitur. It does not follow that Defendants knew of *specific contracts* merely because Defendants allegedly knew the *general* fact that Mr. Hadnagy generated business from the Event. Mr. Hadnagy's allegation that Mr. Moss "has historically single-handedly recruited and maintained relationships with contributors and attendees at the Event and was aware of Plaintiffs' clientele who attended the Event" fares no better. *Id.* ¶ 134. A *general* awareness of Mr. Hadnagy's clients does not create a plausible inference that Defendants were aware of *specific contracts* with those clients.

HOLLAND & HART LLP
9555 HILLWOOD DRIVE, 2ND FLOOR
LAS VEGAS, NV 89134

***Third***, Mr. Hadnagy has failed to plead facts to show Defendants intentionally disrupted the "several long-term agreements for the provision of Cybersecurity and IT services" that Mr. Hadnagy ostensibly had in place. *Id.* ¶ 132; *J.J. Indus., LLC*, 119 Nev. at 269. The plaintiff must demonstrate that the defendant *intended* to induce the other party to breach the contract with the plaintiff. *Blanck v. Hager*, 360 F. Supp. 2d 1137, 1154 (D. Nev. 2005). Inquiry into the alleged tortfeasor's motive is necessary. *Nat'l Right To Life Pol. Action Comm. v. Friends of Bryan*, 741 F. Supp. 807, 814 (D. Nev. 1990). Here, Mr. Hadnagy alleges that Defendants have disrupted these purported agreements for cybersecurity and IT services to "prevent [Plaintiffs] from fostering the SEVillage community, which would have directly competed with the Event." Compl. ¶ 138. But this is nonsensical. Whether Mr. Hadnagy was "fostering the SEVillage community" and thereby competing with the Event has nothing to do with whether Mr. Hadnagy could perform his contracts with these third parties. Mr. Hadnagy has failed to allege any connection between Defendants' alleged hostility to the SEVillage as a competitor and Mr. Hadnagy's entirely separate "long-term agreements for the provision of Cybersecurity and IT services." The motive Mr. Hadnagy ascribes to Defendants to interfere with these contracts is simply not plausible.

In short, Mr. Hadnagy fails to plead facts that show any of Defendants' actions had the intended consequence of disrupting unidentified third-party contracts, as opposed to Def Con's own—perfectly permissible—decision to discontinue its association with Mr. Hadnagy. *See, e.g.*, *Crown Beverages, Inc. v. Sierra Nevada Brewing Co.*, No. 3:16-cv-00695-MMD-VPC, 2017 WL 1508486, at *4–5 (D. Nev. Apr. 26, 2017) (dismissing claim where plaintiff "has not pled any facts that would permit the Court to reasonably infer that [defendant] intended to disrupt third-party contracts, rather than simply ending its own").

Mr. Hadnagy's claim for intentional interference with contractual relations is not plausible on its face and therefore must be dismissed.

- 17 -

### E.   The tortious interference with prospective business relations claim should be dismissed.

To maintain this tortious interference with business relations claim, Mr. Hadnagy must establish: "(1) a prospective contractual relationship between the plaintiff and a third party; (2) the defendant's knowledge of this prospective relationship; (3) the intent to harm the plaintiff by preventing this relationship; (4) the absence of privilege or justification by the defendant; and (5) actual harm to the plaintiff as a result." *Coffee v. Stolidakis*, No. 2:21-cv-02003-ART-EJY, 2022 WL 2533535, at \*7 (D. Nev. July 6, 2022). Mr. Hadnagy has failed to plausibly allege *any* of these five elements.

*First,* Mr. Hadnagy alleges that he "had been in negotiations with multiple corporations and government organizations for prospective provision of cybersecurity and related services in conjunction with business activities and operations," without identifying a specific prospective customer. Compl. ¶ 145. But "[t]his court, and other courts in this district, have regularly held that generalized pleading about hypothetical consumers is insufficient to survive a motion to dismiss." *EVIG, LLC v. Mister Brightside, LLC*, No. 2:23-CV-186 JCM (BNW), 2023 WL 5717291, at \*4 (D. Nev. Sept. 5, 2023) (granting motion to dismiss where plaintiff failed to "identify a single customer with whom it had a prospective contract"); *see also Rimini St., v. Oracle Int'l Corp.*, No. 2:14-cv-1699-LRH-CWH, 2017 WL 5158658, at \*9 (D. Nev. Nov. 7, 2017) (same); *Coffee*, 2022 WL 2533535, at \*7 (same); *Matthys v. Barrick Gold of N. Am.*, No. 3:20-cv-00034-LRH-CLB, 2020 WL 7186745, at \*4 (D. Nev. Dec. 4, 2020) (same). "[I]t is essential that the plaintiff plead facts showing that defendant interfered with plaintiff's relationship with a *particular* individual. Allegations that a defendant interfered with the plaintiff's relationship with an *unidentified* customer are not sufficient." *Rimini St.*, 2017 WL 5158658, at \*9 (emphasis added). Here, the Complaint fails to specifically identify a single third party that Mr. Hadnagy supposedly had a "prospective" contractual relationship with.

HOLLAND & HART LLP
9555 HILLWOOD DRIVE, 2ND FLOOR
LAS VEGAS, NV 89134

- 18 -

**Second**, Defendants cannot know of any prospective relationships with undisclosed and unidentified "multiple corporations and government organizations," and Mr. Hadnagy does not allege otherwise. Mr. Hadnagy merely alleges that "Defendants had knowledge of the prospective clientele base . . . because a considerable portion of Plaintiffs' clients were secured through leads generated by way of their operation of the SEVillage." Compl. ¶ 146. But Mr. Hadnagy once again improperly equates allegations of Defendants' *general* knowledge that Mr. Hadnagy developed some business through the Event with Defendants' knowledge of *specific prospective relationships*. The former does not suffice to establish the latter. Mr. Hadnagy's allegation is also implausible—Defendants do not know each and every attendee's business dealings at the conference or outside the conference.

**Third**, Mr. Hadnagy fails to plead facts that show Defendants published these statements—that Mr. Hadnagy had violated Def Con's Code of Conduct and would be banned from the conference—with the intent to interfere with Mr. Hadnagy's (purported) ongoing contractual negotiations. Mr. Hadnagy's mere recitation of the elements, *see* Compl. ¶¶ 148–49, does not do the trick. Mr. Hadnagy fails to allege facts to support a plausible inference that statements published on Def Con's **own** website in regard to its **own** Code of Conduct and conference attendance had the intended purpose of reaching a specific audience, in particular, the "corporations and government organizations" Mr. Hadnagy supposedly was negotiating with for services.

**Fourth**, Defendants' supposed "tortious interference" in banning Mr. Hadnagy is justified because Defendants were protecting their own business interests. Nevada law has recognized that "[p]rivilege can exist when the defendant acts to protect his own interests." *Leavitt v. Leisure Sports, Inc.*, 103 Nev. 81, 88, 734 P.2d 1221 (1987). Defendants were justified in the ban because they had received reports from multiple third parties informing them of Mr. Hadnagy's harassing behavior, and such behavior violated the conference's Code of Conduct. Compl. ¶ 58. To protect its own interests—

HOLLAND & HART LLP
9555 HILLWOOD DRIVE, 2ND FLOOR
LAS VEGAS, NV 89134

including its First Amendment interest to freely associate with *only* the persons that Defendants want involved with the Def Con conference—Def Con banned Mr. Hadnagy from the conference. *Id.* ¶¶ 58, 63 n.2. Exercising one's First Amendment rights not to associate cannot be the basis for a claim.

**Fifth**, "to allege actual harm, a plaintiff must allege that he 'would have been awarded the contract but for the defendant's interference.'" *Rimini*, 2017 WL 5158658, at *8. Courts have held that a "plaintiff's expectation of a future sale [is] at most a hope for an economic relationship[,] and a desire for future benefit" does not suffice. *Id.* Nowhere in the Complaint does Mr. Hadnagy allege plausible facts that he would have been awarded these contracts, or that these prospective "business arrangements" would have actually panned out, but for Defendants' actions. *See, e.g.*, Compl. ¶ 150.[6] As currently pleaded, Mr. Hadnagy's allegations indicate nothing more than Mr. Hadnagy's unfulfilled desire for a future economic relationship with unidentified third parties. This is inadequate to state a claim for intentional interference with prospective economic relations.

### F.   The equitable claims and injunctive relief "claim" should be dismissed.

Mr. Hadnagy's equitable claims are meritless. Mr. Hadnagy's own allegations conclusively demonstrate that he did not "unjustly enrich" Defendants through creating the SEVillage and had no reasonable expectation of payment related to the SEVillage; his quantum meruit claim is wholly irrelevant because this case does not involve an implied-in-fact contract; and he has improperly pleaded injunctive relief as a standalone claim, which it is not.

---

[6] Mr. Hadnagy's allegation that Defendants "have in fact actually prevented the consummation of several prospective agreements" through their allegedly defamatory statements is the kind of conclusory boilerplate, unsupported by plausible factual allegations, that Nevada courts reject as inadequate under federal pleading standards. *See Fin. Pac. Ins. Co.*, 2011 WL 3022543, at *4.

HOLLAND & HART LLP
9555 HILLWOOD DRIVE, 2ND FLOOR
LAS VEGAS, NV 89134

### 1. The unjust enrichment claim should be dismissed.

To assert an unjust enrichment claim, Mr. Hadnagy must establish that he conferred a benefit on Defendants, Defendants appreciated such benefit, and there was acceptance and retention of the benefit by the Defendants such that it would be inequitable for them to retain the benefit without payment of the value thereof. *Korte Constr. Co. v. State on Rel. of Bd. of Regents of Nev. Sys. of Higher Educ.*, 137 Nev. 378, 381, 492 P.3d 540 (2021). For an enrichment to be inequitable to retain, the person conferring the benefit must have a reasonable expectation of payment *and* the circumstances are such that equity and good conscience require payment for the conferred benefit. *Id.* (emphasis added). Mr. Hadnagy fails both prongs.

Defendants *never* induced Mr. Hadnagy to provide the alleged benefits—the creation of the SEVillage (and associated capture-the-flag event) and "investing substantial resources" into the Event—or promised any kind of payment to Defendants for doing so. Mr. Hadnagy does not even allege otherwise. *See* Compl. ¶¶ 159–66.

And after Defendants rebuffed Mr. Hadnagy's payment requests in or around 2012, *Mr. Hadnagy continued to provide the SEVillage at the Event for years. Compare* Compl. ¶¶ 163 and 50 (Defendants rejected Mr. Hadnagy's requests for payment but changed Event rules in 2012 to allow Mr. Hadnagy to start accepting third-party sponsorship compensation), *with* Compl. ¶¶ 45, 46, and 58 (Mr. Hadnagy hosted the SEVillage in person or virtually from 2010 to 2022). Mr. Hadnagy cannot now suggest with a straight face that he reasonably expected Event-related compensation from Defendants.

As if that weren't enough, Mr. Hadnagy admits *he* received significant benefit from his involvement in the Event, including "a lot of attention, exposure, and income from Sponsorships during the operation of the SEVillage" (Compl. ¶ 50); the generation of "a considerable portion of Plaintiffs' business agreements . . . through their operation of the SEVillage" (*id.* ¶ 133); hosting a standalone social engineering

HOLLAND & HART LLP
9555 HILLWOOD DRIVE, 2ND FLOOR
LAS VEGAS, NV 89134

convention in 2020 due to "the overwhelmingly positive feedback over the years at SEVillage" (*id.* ¶ 52); and even procuring a personal meeting with the director of the National Security Agency (*id.* ¶ 47). These professional and personal benefits explain why Mr. Hadnagy voluntarily continued to host the SEVillage for years with no reasonable expectation of payment from Defendants for doing so. Under these circumstances, equity and good conscience do not require Defendants to make ex post facto payments to Mr. Hadnagy that Defendants never even *hinted* at making, let alone promised to make. Mr. Hadnagy has no plausible claim for unjust enrichment, and the claim should be dismissed.

> **2.    The quantum meruit claim should be dismissed.**

Mr. Hadnagy's claim for quantum meruit should likewise be dismissed. The concept of quantum meruit arises in two contexts: contract and restitution. In the former, quantum meruit applies in an action based upon a contract implied-in-fact, which is found when the parties intended to contract and promises were exchanged, the general obligations for which must be sufficiently clear. *Certified Fire Prot. Inc. v. Precision Constr.*, 128 Nev. 371, 381, 283 P.3d 250 (2012). In that circumstance, quantum meruit may be employed as a gap-filler to supply absent terms. *Sierra Dev. Co. v. Chartwell Advisory Grp., Ltd.*, 325 F. Supp. 3d 1102, 1107 (D. Nev. 2018). Quantum meruit's other role is in providing restitution for unjust enrichment. *Id.* In this circumstance, quantum meruit imposes liability for the market value of services as a *remedy* for unjust enrichment. *Id.* (citing *Certified Fire Prot. Inc.,* 128 Nev. at 380–81) (emphasis added). The plaintiff must establish each element of unjust enrichment to demonstrate entitlement to the remedy of quantum meruit. *Id.* at 1107 n.4.

As the above makes clear, Mr. Hadnagy's quantum meruit claim is misplaced. Mr. Hadnagy has not pleaded an implied-in-fact contract—nor could he, as the parties had no intention to contract, exchanged no promises, and did not create any "sufficiently clear" obligations pursuant to these nonexistent promises to contract—

HOLLAND & HART LLP
9555 HILLWOOD DRIVE, 2ND FLOOR
LAS VEGAS, NV 89134

and so quantum meruit has no salience as a gap-filler to supply absent terms. And because Mr. Hadnagy's unjust enrichment claim fails (as outlined above), quantum meruit's application as a *remedy* for unjust enrichment fails, too.

### 3. The injunctive relief "claim" should be dismissed.

Injunctive relief is a remedy, not a separate cause of action. *Iliescu, Tr. of John Iliescu, Jr. & Sonnia Iliescu 1992 Fam. Tr. v. Reg'l Transp. Comm'n of Washoe Cnty.*, 522 P.3d 453, 457 (2022) (upholding dismissal of injunctive relief as an independent cause of action and collecting cases). The injunctive relief "claim" pleaded as the seventh cause of action should be dismissed.

## VI. CONCLUSION

For the foregoing reasons, Defendants respectfully request that the Court dismiss this case for lack of personal jurisdiction. If the Court finds personal jurisdiction, Defendants respectfully request that the Court dismiss the claims against Defendants with prejudice.

DATED this 2nd day of October 2023.

**HOLLAND & HART LLP**

*/s/ Robert J. Cassity*
Robert J. Cassity
Erica C. Medley
9555 Hillwood Drive, 2nd Floor
Las Vegas, NV 89134

David A. Perez
**PERKINS COIE LLP**
1201 Third Avenue, Suite 4900
Seattle, WA 98101-3099

Matthew J. Mertens
**PERKINS COIE LLP**
1120 N.W. Couch Street 10th Floor
Portland, OR 97209-4128

*Attorneys for Defendants*
*Jeff Moss and DEF CON Communications, Inc.*

**HOLLAND & HART LLP**
9555 HILLWOOD DRIVE, 2ND FLOOR
LAS VEGAS, NV 89134

## <u>INDEX OF EXHIBITS</u>

| Exhibit | Description | Page Numbers |
|---------|-------------|--------------|
| 1. | Code of Conduct | 001-009 |
| 2. | Transparency Report | 010-016 |
| 3. | Updated Transparency Report | 017-018 |

HOLLAND & HART LLP
9555 HILLWOOD DRIVE, 2ND FLOOR
LAS VEGAS, NV 89134

HOLLAND & HART LLP
9555 HILLWOOD DRIVE, 2ND FLOOR
LAS VEGAS, NV 89134

## CERTIFICATE OF SERVICE

I hereby certify that on the 2nd day of October, 2023, a true and correct copy of the foregoing **DEFENDANTS' MOTION TO DISMISS** was served by the following method(s):

☒   Electronic:   by submitting electronically for filing and/or service with the United States District Court, District of Nevada's e-filing system and served on counsel electronically in accordance with the E-service list to the following email addresses:

Kristofer Z. Riklis, Esq.
**RIKLIS LAW, PLLC**
871 Coronado Center Dr., Suite 200
Henderson, NV 89052
Email: Kristofer@riklislaw.com

*Attorneys for Plaintiffs*
*Christopher J. Hadnagy*
*and Social-Engineer, LLC*

*/s/ Kristina R. Cole*
An Employee of Holland & Hart LLP

30630143_v1

- 25 -