Robert J. Cassity
Nevada Bar No. 9779
Erica C. Medley
Nevada Bar No. 13959
**HOLLAND & HART LLP**
9555 Hillwood Drive, 2nd Floor
Las Vegas, NV 89134
Phone: 702.669.4600
Fax: 702.669.4650
bcassity@hollandhart.com
ecmedley@hollandhart.com

David A. Perez
(admitted *Pro Hac Vice*)
**PERKINS COIE LLP**
1201 Third Avenue, Suite 4900
Seattle, WA 98101-3099
Phone: 206.359.6767
Fax: 206.359.7767
dperez@perkinscoie.com

Matthew J. Mertens
(admitted *Pro Hac Vice*)
**PERKINS COIE LLP**
1120 N.W. Couch Street 10th Floor
Portland, OR 97209-4128
Phone: 503.727.2199
Fax 503.346.2199
mmertens@perkinscoie.com

*Attorneys for Defendants*
*Jeff Moss and DEF CON Communications, Inc.*

# UNITED STATES DISTRICT COURT

# DISTRICT OF NEVADA

| | |
|---|---|
| CHRISTOPHER J. HADNAGY, an individual; and SOCIAL-ENGINEER, LLC, a Pennsylvania limited liability company,<br><br>Plaintiffs,<br><br>v.<br><br>JEFF MOSS, an individual; DEF CON COMMUNICATIONS, INC., a Washington corporation; and DOES 1-10; and ROE ENTITIES 1-10, inclusive,<br><br>Defendants. | Case No.: 2:23-cv-01345-CDS-BNW<br><br>**DEFENDANTS' REPLY IN SUPPORT OF MOTION TO DISMISS** |

## **TABLE OF CONTENTS**

Page

I. INTRODUCTION ................................................................................................. 1

II. DISCUSSION ........................................................................................................ 2

    A. Mr. Hadnagy cannot avoid dismissal by relying on unpleaded allegations. ................................................................................................... 2

    B. Mr. Hadnagy misapplies the "purposeful direction" test for personal jurisdiction. ................................................................................. 2

    C. The alter ego claims against Mr. Moss should be dismissed. ................ 5

    D. The defamation claim should be dismissed. ........................................... 6

        1. The Ban Announcement is not defamatory. .............................. 7

        2. The Transparency Report Update is not defamatory. ............... 7

        3. Mr. Hadnagy's Black-Hat-specific allegations in Paragraphs 78–79 and 112–113 should be dismissed. .............. 8

    E. The business disparagement claim should be dismissed. ...................... 9

    F. The tortious interference with contractual relations claim should be dismissed. ............................................................................................... 9

    G. The intentional interference with prospective contractual relations claim should be dismissed. .................................................... 10

    H. The equitable claims and injunctive relief "claim" should be dismissed. ................................................................................................ 11

III. CONCLUSION ................................................................................................... 12

# TABLE OF AUTHORITIES

Page(s)

**CASES**

*A. Darino & Sons, Inc. v. Dist. Council of Painters No. 33,*
    869 F.2d 514 (9th Cir. 1989) ................................................................................. 5

*Ashcroft v. Iqbal,*
    556 U.S. 662 (2009) ................................................................................................ 8

*Castleman v. Crowley,*
    No. 3:21-cv-0052 ..................................................................................................... 5

*Davis v. Cole,*
    999 F.Supp. 809 (E.D.Va.1998) ............................................................................. 2

*Freestream Aircraft (Bermuda) Ltd. v. Aero Law Grp.,*
    905 F.3d 597 (9th Cir. 2018) ............................................................................. 3, 4

*Hadnagy v. Moss,*
    2023 WL 114689 (E.D. Pa. Jan. 5, 2023) ............................................................. 2

*Henderson v. Hughes,*
    2017 WL 1900981 (D. Nev. May 9, 2017) ........................................................... 6

*Iliescu, Tr. of John Iliescu, Jr. & Sonnia Iliescu 1992 Fam. Tr. v. Reg'l Transp.
    Comm'n of Washoe Cnty.,*
    522 P.3d 453 (2022) .............................................................................................. 12

*Interactive Fitness, Inc. v. Basu,*
    2011 WL 1870597 (D. Nev. May 13, 2011) ..................................................... 5, 6

*J.J. Indus., LLC v. Bennett,*
    119 Nev. 269; 71 P.3d 1264 (2003) ...................................................................... 9

*Korte Constr. Co. v. State on Rel. of Bd. of Regents of Nev. Sys. of Higher Educ.,*
    137 Nev. 378; 492 P.3d 540 (2021) .................................................................... 11

*Leavitt v. Leisure Sports, Inc.,*
    103 Nev. 81; 734 P.2d 1221 (1987) .................................................................... 11

*Mavrix Photo, Inc. v. Brand Techs., Inc.,*
    647 F.3d 1218 (9th Cir. 2011) ............................................................................... 3

HOLLAND & HART LLP
9555 HILLWOOD DRIVE, 2ND FLOOR
LAS VEGAS, NV 89134

*Miller v. City of Los Angeles*,
   2014 WL 12610195 (C.D. Cal. Aug. 7, 2014) ........................................................................8

*Motogolf.com, LLC v. Top Shelf Golf, LLC*,
   528 F. Supp. 3d 1168 (D. Nev. 2021) .......................................................................... 6, 10

*Rimini St., v. Oracle Int'l Corp.*,
   2017 WL 5158658 (D. Nev. Nov. 7, 2017) ........................................................................11

*Schneider v. California Dep't of Corrections*,
   151 F.3d 1194 (9th Cir. 1998) ............................................................................................2

*Scholastic, Inc. v. Stouffer*,
   124 F. Supp. 2d 836 (S.D.N.Y. 2000) ................................................................................2

*Schwarzenegger v. Fred Martin Motor Co.*,
   374 F.3d 797 (9th Cir. 2004) ..............................................................................................3

*Sentry Ins. v. Estrella Ins. Serv., Inc.*,
   2013 WL 2949610 (D. Nev. June 13, 2013) .......................................................................9

*United States v. Alvarez*,
   617 F.3d 1198 (9th Cir. 2010) ............................................................................................6

*Walden v. Fiore*,
   571 U.S. 277 (2014) ............................................................................................................5

*Wealthy, Inc. v. Cornelia*,
   2023 WL 4803776 (D. Nev. July 27, 2023) ........................................................................4

**FEDERAL RULES**

Federal Rule of Civil Prcoedure Rule 8 .........................................................................................6

Federal Rules of Civil Procedure Rule 9 .................................................................................. 5, 6

Federal Rules of Civil Procedure Rule 12 ............................................................................... 1, 9

**I.      INTRODUCTION**

Mr. Hadnagy's Opposition to Defendants' Motion to Dismiss ("Opposition") fails to demonstrate that personal jurisdiction is appropriate or that his claims should survive dismissal under Federal Rule of Civil Procedure 12(b)(6). Mr. Hadnagy misapprehends all three elements of the "purposeful direction" personal jurisdiction test applicable to intentional tort claims like his. Further, he points to a mélange of unpleaded, new assertions about Def Con's business operations and suggests that these unpleaded assertions subject Def Con to personal jurisdiction here. That's not how a jurisdictional challenge under Rule 12 works.

Mr. Hadnagy's claims lack factual plausibility, too. His alter ego contentions against Mr. Moss entirely lack factual support, and if upheld, would gut the protections of the corporate form. His defamation claim fails to grapple with the fact that by his own pleading, *any* announcement of Mr. Hadnagy's ban would have caused his alleged harm—which means that it's the fact of the ban that's the problem, and that's not actionable. Mr. Hadnagy fails to allege the existence of any specific contracts that Def Con interfered with, and he fails to allege plausible facts that Def Con knew of these specific contracts or intended to interfere with these specific contracts through announcing Mr. Hadnagy's ban from the Event. His equitable claims are meritless because he voluntarily hosted the SE Village for *years* at the Event after Def Con rejected his payment request, and because by his own admission he accrued significant personal benefit by doing so. And his injunctive relief "claim" has no basis in fact or Nevada law.

The Court should dismiss for lack of personal jurisdiction, or barring that, with prejudice under Rule 12(b)(6). Def Con has also filed a motion to transfer venue to the Western District of Washington—the Court may decide to rule on that motion rather than this one, and allow the Washington court to decide the Rule 12 arguments.

- 1 -

## II. DISCUSSION

### A. Mr. Hadnagy cannot avoid dismissal by relying on unpleaded allegations.

The Opposition is rife with unpleaded factual allegations to attempt to establish jurisdiction in Nevada, which is improper. For example, Mr. Hadnagy raises unpleaded facts about how Def Con charges Event attendees; Event-related revenue; and conclusory assertions about how the Def Con website operates. *See* ECF 14 at 9–11, 18–20. But a party may not defeat a motion to dismiss by relying on new facts contained in an opposition. *See Schneider v. California Dep't of Corrections,* 151 F.3d 1194, 1197 n. 1 (9th Cir. 1998) (court may not look to additional facts alleged in opposition to motion to dismiss when deciding motion to dismiss); *Mucha v. Volkswagen Aktiengesellschaft*, 540 F. Supp. 3d 269, 278 (E.D.N.Y. 2021) (rejecting new facts and allegations regarding personal jurisdiction because they were outside the pleadings); *see also Scholastic, Inc. v. Stouffer,* 124 F. Supp. 2d 836, 851 n. 16 (S.D.N.Y. 2000) and *Davis v. Cole,* 999 F. Supp. 809, 813 (E.D .Va. 1998).

Mr. Hadnagy already knows this, as the Hon. Wendy Beetlestone refused to consider the additional facts Mr. Hadnagy tried to assert in the Pennsylvania lawsuit. *See Hadnagy v. Moss*, No. CV 22-3060, 2023 WL 114689, at *2 (E.D. Pa. Jan. 5, 2023) (rejecting Mr. Hadnagy's attempt to add new facts to support jurisdiction because "these facts were not averred in the Complaint, [so] they have no import here"). The same is true in this case. The Court should decline to consider Mr. Hadnagy's unpleaded facts in evaluating the sufficiency of his allegations.[1]

### B. Mr. Hadnagy misapplies the "purposeful direction" test for personal jurisdiction.

The parties agree that the Ninth Circuit's "purposeful direction" test for personal jurisdiction requires the plaintiff to demonstrate that the defendant (1)

---

[1] Moreover, even though Mr. Hadnagy has the burden of establishing *facts* to demonstrate jurisdiction, he failed to submit a declaration substantiating his alleged harm in Nevada or the existence of any alleged contracts here.

- 2 -

committed an intentional act, (2) expressly aimed at the forum state, (3) causing harm that the defendant knows is likely to be suffered in the forum state. *Freestream Aircraft (Bermuda) Ltd. v. Aero Law Grp.*, 905 F.3d 597, 605 (9th Cir. 2018). But Mr. Hadnagy's analysis of all three elements misses the mark.

**<u>Intentional act</u>:** Mr. Hadnagy argues that the "intentional act" requirement is a minimum contacts analysis, where *any* availment of the forum state satisfies the requirement. That's plainly wrong. The "intentional act" must be the one that gives rise *to the tort claims at issue. See Schwarzenegger v. Fred Martin Motor Co.*, 374 F.3d 797, 806 (9th Cir. 2004) (describing the kinds of potentially tortious "intentional acts" that satisfy the requirement). Setting aside that they're unpleaded and thus should be disregarded, Mr. Hadnagy's discussions of Def Con's business operations in Nevada and the nature of the Def Con website are irrelevant to the "intentional act" analysis because none of those operations gave rise to the torts alleged here.

**<u>Express aiming</u>:** Mr. Hadnagy's suggestion that Def Con "expressly aimed" its conduct at Nevada, *see* ECF 14 at 18–20, fails for three reasons. **First,** Mr. Hadnagy once again relies on facts not alleged in the Complaint, such as facts about the nature and degree of interactivity of Def Con's website and the ostensible geographic scope of Def Con's economic ambitions. *See id.* at 19–20.

**Second,** Mr. Hadnagy relies heavily on *Mavrix Photo, Inc. v. Brand Techs., Inc.*, 647 F.3d 1218, 1221 (9th Cir. 2011), but that case is readily distinguishable. *Mavrix* involves the alleged copyright infringement of photographs by a celebrity gossip website. 647 F.3d at 1221–22. The defendant made money by selling advertising space to third-party advertisers, and many of the advertisements targeted California residents. *Id.* at 1230. The court concluded this was part of the defendant's "continuous and deliberate exploitation" of the California market for its website, and the website's business model was core to the defendant's profitability, which supported jurisdiction in California. *Id.*

- 3 -

1 But unlike the website in *Mavrix* targeting Californians, the Def Con website 2 does **not** "continuously and deliberately" exploit Nevadans for commercial gain. Def 3 Con does not sell advertising space on its website. ECF 15-1 at ¶ 6. Def Con's website 4 does not target Nevada residents with advertisements. *Id.* Def Con does not track any 5 visitors, including Nevada residents, to its website via IP address or otherwise. *Id.* 6 ¶ 9. Unlike in *Mavrix, t*he Def Con website is not "expressly aimed" at Nevadans with 7 the goal of cultivating a Nevada-specific viewer base. It's just a website.

8 **Third,** Mr. Hadnagy fails to distinguish *Wealthy, Inc. v. Cornelia*, which holds 9 that statements posted online with the intention of being globally accessible do not 10 create personal jurisdiction in Nevada. No. 2:21-cv-1173-JCM-EJY, 2023 WL 11 4803776, at *3–4 (D. Nev. July 27, 2023). Mr. Hadnagy perplexingly relies on the 12 *Wealthy* court's discussion of the defendant's lack of physical presence in Nevada; he 13 juxtaposes this against Def Con's alleged "systematic" presence in Nevada in arguing 14 there is jurisdiction here. *See* ECF 14 at 20. But the *Wealthy* court was analyzing 15 whether the defendant committed the allegedly tortious conduct while *physically* 16 *within the state*. *See* 2023 WL 4803776, at *3–4. Of course, a defendant that commits 17 an alleged tort while physically within a state is subject to jurisdiction within that 18 state. *See Freestream Aircraft (Bermuda) Ltd.*, 905 F.3d at 600 ("A defendant who 19 travels to Nevada and commits an intentional tort there can be sued in that state."). 20 Def Con acknowledged as much in its Motion. *See* ECF 13 at 16. But there is no 21 allegation that Mr. Moss posted the Ban Announcement or the Transparency Report 22 Update while physically within the State of Nevada, so the *Wealthy* court's discussion 23 of the defendant's lack of physical presence only *confirms* there is no personal 24 jurisdiction here.

25 **Harm likely to be suffered in the forum state**: Mr. Hadnagy asserts that 26 Def Con "knew that the harm would be caused in Nevada because this is the only 27 place where the Event is held." ECF 14 at 20. This is fatally flawed for two reasons. 28 **First**, Mr. Hadnagy once again conflates where the Event *physically occurs* with

- 4 -

where Def Con allegedly knew he would *likely experience harm* from Def Con's allegedly defamatory statements.² But the latter does not follow from the former. And as Def Con explained at length in its Motion (ECF 13 at 25–28), Mr. Hadnagy has both failed to identify any Nevada-specific contracts with which Def Con tortiously interfered and failed to plead plausible facts that Def Con was aware of any such contracts. **Second,** Mr. Hadnagy's position is simply a foreseeability standard that the Ninth Circuit has rejected for nearly a decade. *See Castleman v. Crowley*, No. 3:21-cv-00523-MMD-VPC, 2022 WL 980535, at *3 (D. Nev. Mar. 31, 2022) ("Since *Walden* [*v. Fiore*, 571 U.S. 277, 134 S. Ct. 1115 (2014)], the Ninth Circuit has rejected that a foreseeable injury that would occur in the forum state, without more, is sufficient to establish specific jurisdiction."). For a State to exercise jurisdiction consistent with due process, the defendant's suit-related conduct must create a substantial connection with the forum state. *Walden*, 571 U.S. at 284. Def Con's allegedly defamatory statements on its globally accessible website—which were not targeted at Nevada residents, did not involve a Nevada resident, did not encourage Nevada residents to read these postings, did not mention the state of Nevada, and were not posted within the state of Nevada—simply do not create a substantial relationship with Nevada such that personal jurisdiction is appropriate here. *See* ECF 13 at 15–17.

**C.   The alter ego claims against Mr. Moss should be dismissed.**

Mr. Hadnagy cites out-of-district cases in arguing that the heightened pleading standard of Rule 9(b) does not apply to alter ego claims. ECF 14 at 30–31. The District of Nevada and the Ninth Circuit hold otherwise. "[F]raud is a necessary element of the alter ego doctrine." *Interactive Fitness, Inc. v. Basu*, No. 2:09-CV-01145-KJD, 2011 WL 1870597, at *6 (D. Nev. May 13, 2011) (citing *A. Darino & Sons, Inc. v. Dist.*

---

² In so arguing, Mr. Hadnagy reveals the thread running throughout this case—the true harm from his perspective is his ban from future Events. This is, of course, not actionable. *See* ECF 13 at 20.

- 5 -

*Council of Painters No. 33,* 869 F.2d 514, 519 (9th Cir. 1989)). "Thus, a party pleading alter ego must satisfy the heightened pleading standard of Fed.R.Civ.P. 9(b)." *Id.* And even Mr. Hadnagy's suggestion that the facts of fraud are within Def Con's "exclusive control" still require Mr. Hadnagy to state the *factual basis* for his belief of wrongdoing. *See Motogolf.com, LLC v. Top Shelf Golf, LLC,* 528 F. Supp. 3d 1168, 1174 (D. Nev. 2021). He has utterly failed to do so under either Rule 9(b)'s heightened standard or the notice pleading standard of Rule 8(a). Mr. Hadnagy's rote recitation of the elements of alter ego does not suffice. *See Henderson v. Hughes,* No. 2:16-cv-01837-JAD-CWH, 2017 WL 1900981, at *4 (D. Nev. May 9, 2017).

"The doctrine of piercing the corporate veil, is the rare exception, applied in the case of fraud or certain other exceptional circumstances." *Basu,* 2011 WL 1870597, at *4 (citations omitted). There are no such circumstances here. The alter ego claims against Mr. Moss should be dismissed and with prejudice.

### D. The defamation claim should be dismissed.

Mr. Hadnagy entirely fails to engage with Def Con's arguments on causation, hand-waving them away as "meanderings." ECF 14 at 25. They are anything but. A threshold question in a defamation case is whether the allegedly false speech at issue "is the *proximate cause* of an irreparable harm to another's reputation." *United States v. Alvarez,* 617 F.3d 1198, 1207 (9th Cir. 2010) (emphasis added). According to Mr. Hadnagy's own allegations, *any* announcement of Mr. Hadnagy's permanent ban from the Event—no matter the substance—would have caused third parties to speculate and assume that Mr. Hadnagy was a sexual predator since only sexual predators had been previously named in lifetime bans. *See* ECF 1 at ¶¶ 66–67. And as Def Con explained in its Motion (ECF 13 at 19–20), if the same harm would have resulted to Mr. Hadnagy from an unequivocally factual statement like, "Chris Hadnagy has been permanently banned from Def Con," then the **alleged "defamatory" statements in this case didn't cause Mr. Hadnagy's harm**.

Mr. Hadnagy's failure to address the lack of causation for his defamation claim is reason enough to dismiss it. Moreover, Mr. Hadnagy's arguments on the merits fail, as addressed below.

### 1. The Ban Announcement is not defamatory.

In an implicit concession that the Ban Announcement *itself* is not defamatory, Plaintiff tries to bootstrap his argument by pointing to other context in the Transparency Report, like Def Con's processes for investigating Code of Conduct violations or under what circumstances Def Con will permanently ban someone from attending the Event. ECF 14 at 23–24. But these additional statements in the Transparency Report were made **months** after the Ban Announcement. *Compare* ECF 13-1 at 6 (February 9, 2022, initial Ban Announcement), *with* ECF 13-1 at 4–6 (July 28, 2022, overview of Def Con's policies and approach to Code of Conduct violations). Yet Plaintiff himself alleges that the Ban Announcement, and "immediate firestorm" that ensued, is the reason he lost business. *See* ECF 1 at ¶¶ 66–73. This means the additional context that Mr. Hadnagy claims is crucial for understanding the full import of Def Con's "defamation" **wasn't actually considered by anyone** before they decided to cut ties with Mr. Hadnagy. *See* ECF 14 at 23 (bolding and emphasizing language from the Transparency Report that "readily clarifies the significance of lifetime bans" but was not published until July 2022). Mr. Hadnagy's reliance on statements made months after his alleged harm underscores the lack of defamatory character to the Ban Announcement (and confirms no causation).

### 2. The Transparency Report Update is not defamatory.

Contrary to Mr. Hadnagy's assertions, there is nothing in the Transparency Report Update that can reasonably be construed as "ratif[ying] the public's interpretation of the Ban being one resulting from sexual misconduct." *Id.* at 24; *see also* ECF 13 at 22 (explaining that the Transparency Report Update does not reference sexual conduct or refer to gender identifiers, and "harassment" under the Code of Conduct carries no sexual denotation). As for the Transparency Report

- 7 -

1 Update's statement related to Black Hat's ban of Mr. Hadnagy, Mr. Hadnagy's own
2 Complaint alleges that Black Hat banned Mr. Hadnagy, so Def Con is perplexed as
3 to how this could be a false statement of fact. ECF 1 at ¶ 76. And in any case, Mr.
4 Hadnagy himself concedes that it was the fact of the public ban that injured him, not
5 the substance of the Ban Announcement or the Transparency Report Update. *See*
6 ECF 14 at 25 ("The only culpable parties here are Defendants, and they are such
7 because no one else, not even Black Hat, *issued any alleged 'public ban.'*") (emphasis
8 added)).

### 3. Mr. Hadnagy's Black-Hat-specific allegations in Paragraphs 78–79 and 112–113 should be dismissed.

Mr. Hadnagy's muddled response in support of his Black-Hat-related allegations unintentionally emphasizes their inadequacy. ECF 14 at 26. The Complaint is bereft of any plausible factual content that would "allow the Court to draw the reasonable inference that the defendant" engaged in the conduct complained of—here, that Mr. Moss made a series of new defamatory statements to Black Hat's representatives. *See Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). There is nothing more than Mr. Hadnagy's assertion that he has been "informed" these statements were made. ECF 1 at ¶ 78; ECF 14 at 26. There is nothing from which the Court can surmise to whom, when, how, or where Mr. Moss made these alleged statements. There is nothing from which the Court can determine who told *Mr. Hadnagy* that Mr. Moss made these alleged statements. Mr. Hadnagy's allegations are functionally identical to the "information and belief" pleading that the court rejected in *Miller v. City of Los Angeles*:

> [The plaintiff] is informed, believes, and alleges that instead of undertaking the unpleasant task of taking disciplinary action against senior African-American female attorneys in his office [who accused the plaintiff of discrimination], [the defendant] chose to lobby the Mayor's Office to have [the plaintiff] terminated from his employment[.]

*Miller v. City of Los Angeles*, No. CV 13-5148-GW-CWX, 2014 WL 12610195, at *5 (C.D. Cal. Aug. 7, 2014).

- 8 -

The *Miller* court held that this was too conclusory to withstand a motion to dismiss because "a plaintiff cannot avoid Rule 12 simply by slapping the 'information and belief' label onto speculative or conclusory allegations." *Id.* The outcome is the same here. The Black-Hat-specific allegations are not plausibly pleaded and should be dismissed from Mr. Hadnagy's defamation claim.

### E. The business disparagement claim should be dismissed.

Mr. Hadnagy does not even attempt to explain how Def Con's public statements impugned the quality of Mr. Hadnagy's goods or services to his clients, as a claim for business disparagement under Nevada law requires. ECF 14 at 26–27; *see Sentry Ins. v. Estrella Ins. Serv., Inc.*, No. 2:13-CV-169 JCM (GWF), 2013 WL 2949610, at *2 (D. Nev. June 13, 2013) (business disparagement claim must involve statements "directed toward the quality of the individual's products or services"). Mr. Hadnagy instead simply parrots the allegations he advances in support of his defamation claim. This is inadequate, and the claim should be dismissed.

### F. The tortious interference with contractual relations claim should be dismissed.

The Opposition identifies three categories of contracts that Def Con allegedly interfered with: (1) Mr. Hadnagy's ostensible contract with Black Hat for training services (ECF 1 at ¶¶ 74–75, 136–37); (2) Mr. Hadnagy's sponsorships at the Event (*id.* at ¶¶ 50, 132-133); and (3) Mr. Hadnagy's ancillary business contracts that make up his core business (*id.*). ECF 14 at 27. Mr. Hadnagy's tortious interference claim as to these three categories of contracts fails for multiple reasons.

**Black Hat "contract":** First, a valid and existing contract is required for a tortious interference claim. *J.J. Indus., LLC v. Bennett*, 119 Nev. 269, 274, 71 P.3d 1264 (2003). Mr. Hadnagy fails to allege that he had a valid and existing contract with Black Hat for training services as of February 9, 2022, when Defendants made the allegedly defamatory Ban Announcement. Mr. Hadnagy only alleges that he entered into such agreements with Black Hat annually, not that one of these

- 9 -

agreements was actually in place and that Black Hat thereafter terminated it. ECF 1 at ¶ 137. Second—and setting aside his conclusory allegations in Paragraphs 147 to 149 in support of an *entirely different* claim for relief—Mr. Hadnagy fails to plead plausible facts that Mr. Moss knew of any such contract with Black Hat. Mr. Moss's alleged "directorship" at Black Hat is not enough, as Mr. Hadnagy has failed to allege what such a "directorship" means (e.g., whether it's a title with substantive responsibilities or a mere honorific) or why a "directorship" would provide a concomitant knowledge of Black Hat's contracts with conference presenters.

**Sponsorships and ancillary business contracts:** Mr. Hadnagy's proposition is that because Mr. Moss is the founder of Def Con, and Def Con is the epicenter of the information security industry, Mr. Moss personally knows of the existence of *each and every one* of Mr. Hadnagy's contracts—with not just his Event sponsors, but all of Mr. Hadnagy's ancillary business partners besides. ECF 14 at 28. That assertion stretches plausibility well past the breaking point. And even if the Court were to accept this proposition, Mr. Hadnagy still hasn't identified any of the specific contracts allegedly interfered with, which is an independent reason to dismiss his claims.[3] *See* ECF 13 at 24–25.

### G. The intentional interference with prospective contractual relations claim should be dismissed.

The Court should dismiss this claim for the simple reason that Mr. Hadnagy fails to identify a single specific prospective customer that Def Con interfered with, and the law obligates him to do so.[4] *See* ECF 13 at 27:10–28 (collecting cases). Mr. Hadnagy's contrary reliance on *Motogolf.com, LLC v. Top Shelf Golf, LLC* is

---

[3] And as to both the Black Hat "contract" and the sponsorships/ancillary business contracts, Mr. Hadnagy's explanation for Def Con's intent in interfering with these contracts continues to baffle. Def Con points the Court to Def Con's intent-related arguments at ECF 13 at 26:1–18 rather than reprising them here.

[4] Except for Black Hat. But Mr. Hadnagy's identification of his prospective contractual relationship with Black Hat fails because Mr. Moss did not know about it, as explained in Section F above, and for the additional reasons discussed in Section G.

- 10 -

misplaced. 528 F. Supp. 3d 1168, 1178 (D. Nev. 2021). The *Motogolf.com* court predicted that the Supreme Court of Nevada would allow a plaintiff to allege a "certain class of prospective customers without identifying them specifically" when the defendant's alleged wrongdoing had prevented those customers from *learning of the plaintiff's existence. See id.* The *Motogolf.com* case does not support the idea that Mr. Hadnagy may refuse to identify the *specific, known counterparties* with whom Mr. Hadnagy was allegedly negotiating. *See, e.g.*, ECF 1 at ¶ 145.

Separately, Mr. Hadnagy again fails to explain how he pleads plausible facts that (1) Def Con knew of any of these alleged prospective relations, and (2) that Def Con published the statement that Mr. Hadnagy had violated Def Con's Code of Conduct and would be banned from the conference with the requisite intent to interfere with these prospective relations.[5] *See* ECF 13 at 28:1–21 (setting forth Def Con's unrebutted arguments on these points). This claim should be dismissed.

### H. The equitable claims and injunctive relief "claim" should be dismissed.

Mr. Hadnagy's assertion that his unjust enrichment claim seeks payment for allegedly growing the Event, instead of rendering services at the Event, is a distinction without a difference. ECF 14 at 30. For an enrichment to be inequitable to retain, the person conferring the benefit must have a reasonable expectation of payment *and* the circumstances are such that equity and good conscience require payment for the conferred benefit. *Korte Constr. Co. v. State on Rel. of Bd. of Regents of Nev. Sys. of Higher Educ.*, 137 Nev. 378, 381, 492 P.3d 540 (2021). As Def Con explained at length in the Motion, Mr. Hadnagy continued to host the SE Village for

---

[5] Def Con also disagrees with Mr. Hadnagy's attempted refutation of *Leavitt v. Leisure Sports, Inc.*, 103 Nev. 81, 88, 734 P.2d 1221 (1987) (providing a privilege for Def Con to ban Mr. Hadnagy to protect its own business interests) and *Rimini St., v. Oracle Int'l Corp.*, No. 2:14-cv-1699-LRH-CWH, 2017 WL 5158658, at \*9 (D. Nev. Nov. 7, 2017) (Mr. Hadnagy's "hope for an economic relationship" in the future does not support an interference with prospective relations claim). Def Con will save its discussion of these cases for oral argument (if any) because of space limitations and because there are ample separate grounds to dismiss this claim.

- 11 -

years after Def Con rejected his request for payment, and he derived extensive personal benefit by doing so. ECF 13 at 30:1–31:9. He has no colorable equitable claim. And because he does not, the quantum meruit claim should be dismissed, too. *See id.* at 31:11–32:3.

Finally, as for the injunctive relief "claim," Mr. Hadnagy (correctly) does not dispute the clear case law that injunctive relief is a remedy, not a separate cause of action. *Iliescu, Tr. of John Iliescu, Jr. & Sonnia Iliescu 1992 Fam. Tr. v. Reg'l Transp. Comm'n of Washoe Cnty.*, 522 P.3d 453, 457 (2022). The injunctive relief "claim" should be dismissed.

## III. CONCLUSION

For the foregoing reasons, Defendants respectfully request that the Court dismiss this case for lack of personal jurisdiction. If the Court finds personal jurisdiction, Defendants respectfully request that the Court dismiss the claims against Defendants with prejudice. In the alternative, Defendants request that the Court transfer this matter to the Western District of Washington for future proceedings.

DATED this 23rd day of October 2023.

**HOLLAND & HART LLP**

*/s/ Robert J. Cassity*
Robert J. Cassity
Erica C. Medley
9555 Hillwood Drive, 2nd Floor
Las Vegas, NV 89134

David A. Perez
**PERKINS COIE LLP**
1201 Third Avenue, Suite 4900
Seattle, WA  98101-3099

Matthew J. Mertens
**PERKINS COIE LLP**
1120 N.W. Couch Street 10th Floor
Portland, OR 97209-4128

*Attorneys for Defendants*
*Jeff Moss and DEF CON Communications, Inc.*

- 12 -

# CERTIFICATE OF SERVICE

I hereby certify that on the 23rd day of October, 2023, a true and correct copy of the foregoing **DEFENDANTS' REPLY IN SUPPORT OF MOTION TO DISMISS** was served by the following method(s):

☒     Electronic: by submitting electronically for filing and/or service with the United States District Court, District of Nevada's e-filing system and served on counsel electronically in accordance with the E-service list to the following email addresses:

Kristofer Z. Riklis, Esq.
**RIKLIS LAW, PLLC**
871 Coronado Center Dr., Suite 200
Henderson, NV 89052
Email: Kristofer@riklislaw.com

*Attorneys for Plaintiffs*
*Christopher J. Hadnagy*
*and Social-Engineer, LLC*

                                                      */s/ Kristina R. Cole*
                                                   An Employee of Holland & Hart LLP

30756217_v1