THE HONORABLE BRIAN A. TSUCHIDA

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

CHRISTOPHER J. HADNAGY, an individual; and SOCIAL-ENGINEER, LLC, a Pennsylvania limited liability company,

        Plaintiffs,

   v.

JEFF MOSS, an individual; DEF CON COMMUNICATIONS, INC., a Washington corporation; and DOES 1-10; and ROE ENTITIES 1-10, inclusive,

        Defendants.

No. 2:23-cv-01932-BAT

**DEFENDANTS' MOTION TO DISMISS**

**Noted For Consideration: February 23, 2024.**

DEFENDANTS' MOTION TO DISMISS – 1 (No. 2:23-cv-01932-BAT)

**Perkins Coie LLP**
1201 Third Avenue, Suite 4900
Seattle, WA  98101-3099
Phone:  206.359.8000
Fax:  206.359.9000

1

## **TABLE OF CONTENTS**

2

I.   INTRODUCTION ................................................................................. 10

3

II.  BACKGROUND AND PROCEDURAL HISTORY ............................. 11

4

   A.  Factual background ...................................................................... 11

5

   B.  Procedural history........................................................................ 13

6

III. LEGAL STANDARD .......................................................................... 14

7

   A.  Rule 12(b)(6) ................................................................................ 14

8

   B.  Washington law applies because Nevada lacks general or specific
      personal jurisdiction. ................................................................... 14

9

IV. MR. HADNAGY'S CLAIMS FAIL AS A MATTER OF LAW ............... 18

10

   A.  The alter ego theory against Mr. Moss should be dismissed. ..................... 18

11

   B.  The defamation claim fails as a matter of law............................................ 20

12

      1.  Legal standard............................................................................ 20

13

      2.  Mr. Hadnagy's defamation claim fails because any alleged harms
         flow from the fact of Mr. Hadnagy's ban, which is not actionable. ...... 21

14

      3.  The Black Hat-specific allegations are not plausible............................ 23

15

      4.  The statements are not defamatory. ...................................................... 24

16

      5.  Much of the alleged "defamatory" content is comprised of
         Defendants' non-actionable opinions.................................................... 25

17

   C.  The business disparagement claim should be dismissed. ........................... 26

18

   D.  The tortious interference with contractual relations claim should be
      dismissed. ................................................................................................. 27

19

   E.  The tortious interference with prospective business relations claim
      should be dismissed. ................................................................................. 30

20

   F.  The equitable claims and injunctive relief should be dismissed................. 33

21

      1.  The unjust enrichment claim should be dismissed................................ 33

22

      2.  The quantum meruit claim should be dismissed. ................................. 35

23

      3.  The injunctive relief "claim" should be dismissed. ............................... 36

24

25

26

**Perkins Coie LLP**
1201 Third Avenue, Suite 4900
Seattle, WA  98101-3099
Phone:  206.359.8000
Fax:  206.359.9000

1

V.    CONCLUSION ................................................................................................. 36

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

**Perkins Coie LLP**
1201 Third Avenue, Suite 4900
Seattle, WA  98101-3099
Phone:  206.359.8000
Fax:  206.359.9000

1

## TABLE OF AUTHORITIES

2

**Page(s)**

3

**CASES**

4

*Aegean Mar. Petroleum S.A. v. KAVO Platanos M/V*,
   646 F. Supp. 3d 1347 (W.D. Wash. 2022) ............................................................35

*Ashcroft v. Iqbal*,
   556 U.S. 662 (2009)..............................................................................................14

*Austin v. Ettl*,
   171 Wash. App. 82 (2012)....................................................................................34

*Bell Atl. Corp. v. Twombly*,
   550 U.S. 544 (2007)..............................................................................................24

*Blanck v. Hager*,
   360 F. Supp. 2d 1137 (D. Nev. 2005)...................................................................29

*Blantz v. California Dep't of Corr. & Rehab., Div. of Corr. Health Care Servs.*,
   727 F.3d 917 (9th Cir. 2013).................................................................................24

*Block v. Washington State Bar Ass'n*,
   2016 WL 1464467 (W.D. Wash. Apr. 13, 2016) ..................................................16

*Bombardier Inc. v. Mitsubishi Aircraft Corp.*,
   383 F. Supp. 3d 1169 (W.D. Wash. 2019) ...........................................................30

*Boy Scouts of Am. v. Dale*,
   530 U.S. 640 (2000)..............................................................................................22

*Branch v. Tunnell*,
   14 F.3d 449 (9th Cir. 1994)..................................................................................11

*Branda v. Sanford*,
   97 Nev. 643; 637 P.2d 1223 (1981) ......................................................................21

*Burri L. PA v. Skurla*,
   35 F.4th 1207 (9th Cir. 2022) ..............................................................................18

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

DEFENDANTS' MOTION TO DISMISS – 4 (No. 2:23-
cv-01932-BAT)

**Perkins Coie LLP**
1201 Third Avenue, Suite 4900
Seattle, WA  98101-3099
Phone:  206.359.8000
Fax:  206.359.9000

*Calder v. Jones,*
    465 U.S. 783 (1984)....................................................................................16

*Casun Inv., A.G. v. Ponder,*
    2020 WL 59812 (D. Nev. Jan. 6, 2020) ....................................................19

*Certified Fire Prot. Inc. v. Precision Constr.,*
    128 Nev. 371; 283 P.3d 250 (2012)...........................................................35

*Churchill v. Barach,*
    863 F. Supp. 1266 (D. Nev. 1994)..............................................................25

*Clark Cnty. Sch. Dist. v. Virtual Educ. Software, Inc.,*
    125 Nev. 374; 213 P.3d 496 (2009)...........................................................26

*Coffee v. Stolidakis,*
    2022 WL 2533535 (D. Nev. July 6, 2022) ................................................30

*Columbia Asset Recovery Grp., LLC v. Kelly,*
    177 Wash. App. 475 (2013)........................................................................19

*Corzine v. Laxalt,*
    2017 WL 662982 (D. Nev. Feb. 17, 2017)................................................22

*CRJ Kim, Inc. v. JKI Invs., Inc.,*
    198 Wash. App. 1014 (2017) ............................................................. 29, 32

*Crown Beverages, Inc. v. Sierra Nevada Brewing Co.,,*
    2017 WL 1508486 (D. Nev. Apr. 26, 2017) .............................................30

*Cybersell, Inc. v. Cybersell, Inc.,*
    130 F.3d 414 (9th Cir. 1997)......................................................................18

*Duc Tan v. Le,*
    177 Wash. 2d 649 (2013) ...........................................................................20

*EVIG, LLC v. Mister Brightside, LLC,*
    2023 WL 5717291 (D. Nev. Sept. 5, 2023) ..............................................31

*Ferrie v. Woodford Rsch., LLC,*
    2020 WL 3971343 (W.D. Wash. July 14, 2020) .......................................19

DEFENDANTS' MOTION TO DISMISS – 5 (No. 2:23-cv-01932-BAT)

**Perkins Coie LLP**
1201 Third Avenue, Suite 4900
Seattle, WA  98101-3099
Phone:  206.359.8000
Fax:  206.359.9000

*Fin. Pac. Ins. Co. v. Cruz Excavating, Inc.*,
  2011 WL 3022543 (D. Nev. July 21, 2011) ...............................................27, 28, 33

*Flowers v. Carville*,
  112 F. Supp. 2d 1202 (D. Nev. 2000)................................................................ 21, 22

*Freestream Aircraft (Bermuda) Ltd. v. Aero Law Grp.*,
  905 F.3d 597 (9th Cir. 2018) ........................................................................... 16, 17

*Galbraith v. County of Santa Clara*,
  307 F.3d 1119 (9th Cir. 2002)................................................................................11

*Goodyear Dunlop Tires Operations, S.A. v. Brown*,
  564 U.S. 915 (2011)................................................................................................15

*Grayson v. Nordic Const. Co.*,
  92 Wash. 2d 548 (1979) .........................................................................................19

*Hadnagy v. Moss*,
  2023 WL 114689 (E.D. Pa. Jan. 5, 2023) ........................................................ 10, 13

*Hairston v. Pac.-10 Conf.*,
  893 F. Supp. 1485 (W.D. Wash. 1994) ..................................................................30

*Henderson v. Hughes*,
  2017 WL 1900981 (D. Nev. May 9, 2017) ............................................................19

*Iliescu, Tr. of John Iliescu, Jr. & Sonnia Iliescu 1992 Fam. Tr. v. Reg'l Transp.*
  *Comm'n of Washoe Cnty.*,
  522 P.3d 453 (2022) ...............................................................................................36

*Interactive Fitness, Inc. v. Basu*,
  2011 WL 1870597 (D. Nev. May 13, 2011) ..........................................................19

*Intertex, Inc. v. Dri-Eaz Prod., Inc.*,
  2013 WL 2635028 (W.D. Wash. June 11, 2013) ...................................................14

*J.J. Indus., LLC v. Bennett*,
  119 Nev. 269; 71 P.3d 1264 (2003).......................................................................27

*Jaeger v. Howmedica Osteonics Corp.*,
  2016 WL 520985 (N.D. Cal. Feb. 10, 2016)..........................................................15

**Perkins Coie LLP**
1201 Third Avenue, Suite 4900
Seattle, WA  98101-3099
Phone:  206.359.8000
Fax:  206.359.9000

*Kern v. Moulton,*
    2012 WL 1682026 (D. Nev. May 11, 2012) ........................................................27

*Kivlin v. City of Bellevue,*
    2021 WL 5140260 (W.D. Wash. Nov. 4, 2021)....................................................21

*Korte Constr. Co. v. State on Rel. of Bd. Of Regents of Nev. Sys. Of Higher Educ.,*
    137 Nev. 378; 492 P.3d 540 (2021) .....................................................................33

*Leavitt v. Leisure Sports, Inc.,*
    103 Nev. 81; 734 P.2d 1221 (1987) ......................................................................32

*LFC Mktg. Group, Inc. v. Loomis,*
    116 Nev. 896; 8 P.3d 841 (2000)..........................................................................19

*Life Designs Ranch, Inc. v. Sommer,*
    191 Wash. App. 320 (2015)...................................................................................21

*Lkimmy, Inc. v. Bank of Am., N.A.,*
    2020 WL 13533714 (D. Nev. June 12, 2020).......................................................27

*Lubin v. Kunin,*
    117 Nev. 107; 17 P.3d 422 (2001) ........................................................................21

*Manhattan Cmty. Access Corp. v. Halleck,*
    139 S. Ct. 1921 (2019).........................................................................................23

*McKee v. Gen. Motors Co.,*
    601 F. Supp. 3d 901 (W.D. Wash. 2022) .............................................................36

*Miller v. City of Los Angeles,*
    2014 WL 12610195 (C.D. Cal. Aug. 7, 2014) .....................................................24

*MP Med. Inc. v. Wegman,*
    151 Wash. App. 409 (2009)...................................................................................27

*Nat'l Right To Life Pol. Action Comm. V. Friends of Bryan,*
    741 F. Supp. 807 (D. Nev. 1990)..........................................................................29

*Nelson v. Int'l Paint Co.,*
    716 F.2d 640 (9th Cir. 1983).................................................................................15

DEFENDANTS' MOTION TO DISMISS – 7 (No. 2:23-cv-01932-BAT)

**Perkins Coie LLP**
1201 Third Avenue, Suite 4900
Seattle, WA  98101-3099
Phone:  206.359.8000
Fax:  206.359.9000

*Pebble Beach Co. v. Caddy,*
    453 F.3d 1151 (9th Cir. 2006)......................................................................17, 18

*Pegasus v. Reno Newspapers, Inc.,*
    118 Nev. 706; 57 P.3d 82 (2002)................................................................21, 25

*Rhine v. United States,*
    2021 WL 6617461 (W.D. Wash. Sept. 2, 2021)...........................................21, 22

*Rimini St., Inc. v. Oracle Int'l Corp.,*
    2017 WL 5158658 (D. Nev. Nov. 7, 2017)...................................................32, 33

*Robel v. Roundup Corp.,*
    148 Wash. 2d 35 (2002) ..............................................................................21, 25

*Schmalenberg v. Tacoma News, Inc.,*
    87 Wash. App. 579 (1997)..................................................................................21

*Schwarzenegger v. Fred Martin Motor Co.,*
    374 F.3d 797 (9th Cir. 2004)..............................................................................16

*Sentry Ins. v. Estrella Ins. Serv. Inc.,*
    2013 WL 2949610 (D. Nev. June 13, 2013)................................................26, 27

*Sessa v. Ancestry.com Operations Inc.,*
    561 F. Supp. 3d 1008 (D. Nev. 2021)................................................................16

*Sierra Dev. Co. v. Chartwell Advisory Grp., Ltd.,*
    325 F. Supp. 3d 1102 (D. Nev. 2018)................................................................35

*State v. Eighth Jud. Dist. Ct. ex rel. Cnty. of Clark,*
    118 Nev. 140; 42 P.3d 233 (2002)....................................................................25

*Stuc-O-Flex Int'l, Inc. v. Low & Bonar, Inc.,*
    2019 WL 4688803 (W.D. Wash. Sept. 26, 2019)...........................................28, 31

*Tarantino v. Gawker Media, LLC,*
    2014 WL 2434647 (C.D. Cal. Apr. 22, 2014)....................................................24

*United States v. Alvarez,*
    617 F.3d 1198 (9th Cir. 2010)............................................................................23

DEFENDANTS' MOTION TO DISMISS – 8 (No. 2:23-cv-01932-BAT)

*Van Dusen v. Barrack,*
    376 U.S. 612 (1964) ............................................................14

*Wealthy, Inc. v. Cornelia,*
    2023 WL 4803776 (D. Nev. July 27, 2023) ............................. 16, 17, 18

*Williams v. Yamaha Motor Co.,*
    851 F.3d 1015 (9th Cir. 2017)............................................ 15, 16

*Woods View II, LLC v. Kitsap Cnty.,*
    188 Wash. App. 1 (2015) ....................................................28

*Wynn v. Smith,*
    117 Nev. 6; 16 P.3d 424 (2001) ............................................20

**STATUTES**

28 U.S.C. § 1404................................................................ 10, 14

**Perkins Coie LLP**
1201 Third Avenue, Suite 4900
Seattle, WA  98101-3099
Phone:  206.359.8000
Fax:  206.359.9000

1

## I.      INTRODUCTION

2    Plaintiffs Christopher Hadnagy and Social-Engineer LLC (collectively, "Mr.

3    Hadnagy") have once again filed a meritless lawsuit against Mr. Moss and Def Con

4    concerning the same allegations at issue in a lawsuit that the Eastern District of

5    Pennsylvania already dismissed. *Hadnagy v. Moss*, No. CV 22-3060, 2023 WL

6    114689 (E.D. Pa. Jan. 5, 2023). In the Pennsylvania litigation, the district court

7    correctly concluded that there was no personal jurisdiction in Pennsylvania over a

8    Washington company and a Washington resident. *Id.* at *1. Instead of filing a

9    lawsuit in Washington, Mr. Hadnagy chose to file suit in Nevada. But personal

10    jurisdiction was no more appropriate in Nevada than it was in Pennsylvania, so the

11    District of Nevada transferred the action to this Court.[1]

12    Now that the case has been transferred to the proper venue, Defendants Jeff

13    Moss and Def Con are renewing their Motion to Dismiss.

14    Turning to the substance of the parties' dispute, Defendants Jeff Moss and

15    Def Con host a conference on information and computer security each year. The

16    event is known as Def Con, and draws tens of thousands of attendees annually. Mr.

17    Hadnagy was one of them—until February 9, 2022, when Def Con issued a

18    statement banning Mr. Hadnagy from future Def Con events. Def Con had received

19    multiple reports about Mr. Hadnagy violating Def Con's code of conduct. After

20    reviewing the allegations, Def Con exercised its First Amendment right not to

21    associate with Mr. Hadnagy and declined to invite him to the conference. Def Con

22    posted a two-sentence update on its blog stating as much and added a one-

23    paragraph update in January 2023 after the Eastern District of Pennsylvania

24    dismissed Mr. Hadnagy's case.

25

26    _____

[1] The Nevada court declined to address Defendants' personal jurisdiction arguments because transfer was appropriate under 28 U.S.C. § 1404(a). *See Hadnagy v. Moss*, 2:23-cv-01345, ECF 21 at 1.

DEFENDANTS' MOTION TO DISMISS – 10 (No. 2:23-cv-01932-BAT)

**Perkins Coie LLP**
1201 Third Avenue, Suite 4900
Seattle, WA  98101-3099
Phone:  206.359.8000
Fax:  206.359.9000

1      Mr. Hadnagy has levied from these two statements a dizzying array of
2  intentional tort claims, including defamation, tortious interference with contracts
3  both current and prospective, and business disparagement. Mr. Hadnagy also
4  asserts equitable claims for unjust enrichment and quantum meruit, which are
5  ostensibly based on his contributions to the Def Con conference. He filed these
6  meritless claims in Nevada because the conference takes place in Nevada. As this
7  Motion makes clear, this is an abjectly inadequate basis to support personal
8  jurisdiction over Defendants. Because Nevada lacked personal jurisdiction over the
9  Defendants, this Court should apply Washington law to Mr. Hadnagy's claims. But
10 regardless of whether Washington or Nevada law controls, Mr. Hadnagy's claims
11 are inadequately pleaded, substantively flawed, and should be dismissed with
12 prejudice under Rule 12(b)(6).

13 **II.     BACKGROUND AND PROCEDURAL HISTORY**

14     **A.     Factual background**

15     Defendant Jeff Moss is the founder of Def Con, which conducts an annual
16 hacker conference in Las Vegas, Nevada (the "Event"). Compl. ¶¶ 2, 3. The Event is
17 one of the world's largest hacker conventions, and it typically hosts professionals to
18 speak about IT-related or hacking-related subjects. *Id.* ¶ 37. Attendees include law
19 enforcement agencies and representatives from large corporations. *Id.* ¶ 38.

20     Def Con implemented a conference code of conduct ("Code of Conduct") in
21 2015. *Id.* ¶ 60. The Code of Conduct prohibits "harassment," which includes
22 "deliberate intimidation and targeting individuals in a manner that makes them
23 feel uncomfortable, unwelcome, or afraid."[2] *Id.* The Code of Conduct applies to

---

24
25 [2] A correct copy of the Code of Conduct is attached as Exhibit 1. Mr. Hadnagy relies
   on the Code of Conduct and the Transparency Report (discussed below) in the
   Complaint and, as such, the Court may properly consider them on a motion to
26 dismiss. *See Branch v. Tunnell*, 14 F.3d 449, 453 (9th Cir. 1994) (noting that a court
   may consider a document whose contents are alleged in a complaint, so long as no

DEFENDANTS' MOTION TO DISMISS – 11 (No. 2:23-cv-01932-BAT)

Perkins Coie LLP
1201 Third Avenue, Suite 4900
Seattle, WA  98101-3099
Phone:  206.359.8000
Fax:  206.359.9000

1    "everyone," and Def Con explicitly reserves the "right to respond to harassment in

2    the manner we deem appropriate, including but not limited to expulsion." *Id.*

3      Starting in 2017, Def Con began to publicly share a summary of incidents

4    that happened at the Event for a given year (the "Transparency Report").[3] Mr.

5    Moss's express hope "[was] that by doing this DEF CON will encourage other

6    conventions to duplicate this reporting and share their data so collectively we can

7    shed some light on the challenge we face in creating more safe and inclusive

8    events." *Id.* (typo fixed).

9      The Event hosts a multitude of "villages," which are breakout sessions that

10   invite smaller groups of attendees to participate in cybersecurity challenges and

11   demonstrations related to different topics. *Id.* ¶ 40. In the past, when he was

12   allowed to attend Def Con, Mr. Hadnagy hosted a village focused on social

13   engineering (the "SEVillage"). *Id.* ¶¶ 45–46.

14     In January 2022, Def Con informed Mr. Hadnagy that he could not attend or

15   participate in future Events based on certain reported violations of the Code of

16   Conduct. *Id.* ¶¶ 58–59. On February 9, 2022, Def Con published an updated

17   Transparency Report announcing Mr. Hadnagy's ban from future Events (the "Ban

18   Announcement"), which states:

19       We received multiple [Code of Conduct] reports about a
             DEF CON Village leader, Chris Hadnagy of the SE
20       Village. After conversations with the reporting parties
             and Chris, we are confident the severity of the
21       transgressions merits a ban from DEF CON.

22   *Id.* ¶ 58.

23     According to Mr. Hadnagy, Def Con's decision to exercise its First

24   Amendment right not to associate with him caused unnamed third parties to

25   _____

26   party disputes its authenticity), *overruled on other grounds by Galbraith v. County of Santa Clara*, 307 F.3d 1119 (9th Cir. 2002).
     [3] A correct copy of the Transparency Report is attached as Exhibit 2.

DEFENDANTS' MOTION TO DISMISS – 12 (No. 2:23-cv-01932-BAT)

Perkins Coie LLP
1201 Third Avenue, Suite 4900
Seattle, WA  98101-3099
Phone:  206.359.8000
Fax:  206.359.9000

1    "assume" negative things about him. *Id.* ¶¶ 66, 106, 108. A writer for

2    TechTarget.com reported that Mr. Hadnagy was banned for "misconduct at the

3    annual Las Vegas gathering"—an assertion not present in the Ban Announcement.

4    *Compare id.* ¶¶ 69–72, *with id.* ¶ 58. Mr. Hadnagy alleges that *unnamed* and

5    *unidentified* "actual and potential clients" began to terminate their relationships

6    with Mr. Hadnagy, citing the Ban Announcement. *Id.* ¶ 73. Notably, Mr. Hadnagy

7    does not identify these potential customers, nor does he even identify the contracts

8    at issue—much less explain *how Def Con knew about them.*

9         Mr. Hadnagy also alleges—on information and belief, and without

10   elaboration—that he was disinvited from another conference (Black Hat) based on

11   Defendants' comments. *Id.* ¶ 79.

12        And finally, Defendants posted an update on their website (the

13   "Transparency Report Update") in January 2023, following the Eastern District of

14   Pennsylvania's dismissal of Mr. Hadnagy's lawsuit. Mr. Hadnagy alleges that

15   update constitutes yet more defamation. *Id.* ¶ 80.

16        On August 9, 2023, one day before the 2023 Event in Las Vegas, Mr.

17   Hadnagy filed this lawsuit in Nevada.

18        **B.    Procedural history**

19        On August 1, 2022, Mr. Hadnagy initially filed his lawsuit in the Eastern

20   District of Pennsylvania. *See Hadnagy v. Moss*, No. 2:22-cv-03060-WB, ECF No. 1.

21   On January 5, 2023, Judge Wendy Beetlestone dismissed Mr. Hadnagy's lawsuit for

22   lack of personal jurisdiction. *See, e.g., Hadnagy,* 2023 WL 114689, at *7 (stating

23   that the mere fact that the Ban Announcement was "indisputably accessible" in the

24   forum state did not mean Defendants committed "specific tortious activity expressly

25   aimed at" the forum state and finding lack of personal jurisdiction).  On August 9,

26   2023, Mr. Hadnagy filed the instant lawsuit in Nevada state court, which is

DEFENDANTS' MOTION TO DISMISS – 13 (No. 2:23-cv-01932-BAT)

**Perkins Coie LLP**
1201 Third Avenue, Suite 4900
Seattle, WA  98101-3099
Phone:  206.359.8000
Fax:  206.359.9000

1    functionally identical to the one Judge Beetlestone dismissed in January 2023. On

2    August 29, 2023, Defendants timely removed the lawsuit to the District of Nevada

3    under the diversity and removal statutes. *See Hadnagy v. Moss*, 2:23-cv-01345, ECF

4    1. Defendants then filed a motion to dismiss, or in the alternative, a motion to

5    transfer to the Western District of Washington. ECF 13, 15. On December 13, 2023,

6    the Court granted Defendants' motion to transfer to the Western District of

7    Washington, but did not reach the merits of the dismissal arguments. ECF 21.

8    Defendants now renew their motion to dismiss.

9    **III.   LEGAL STANDARD**

10            **A.    Rule 12(b)(6)**

11           Under Rule 12(b)(6), a court conducts a two-step inquiry to test the legal

12   sufficiency of the complaint. First, well-pleaded facts are accepted as true, while

13   mere legal conclusions may be disregarded. *Ashcroft v. Iqbal*, 556 U.S. 662, 678–79

14   (2009). Once the well-pleaded factual allegations have been isolated, the court must

15   determine whether they are sufficient to show a "plausible claim for relief." *Id.* at

16   679. A claim "has facial plausibility when the plaintiff pleads factual content that

17   allows the court to draw the reasonable inference that the defendant is liable for the

18   misconduct alleged." *Id.* at 678.

19           **B.    Washington law applies because Nevada lacks general or
20                  specific personal jurisdiction.**

21           Following a transfer under 28 U.S.C. § 1404(a), the Court would ordinarily

22   apply the law of the transferor court, *i.e.*, Nevada law. *See Van Dusen v. Barrack*,

23   376 U.S. 612, 639 (1964). However, because there was no personal jurisdiction in

24   Nevada, the Court should apply Washington law to Mr. Hadnagy's claims. *Intertex,*

25   *Inc. v. Dri-Eaz Prod., Inc.*, No. C13-165-RSM, 2013 WL 2635028, at *2 (W.D. Wash.

26   June 11, 2013) (applying Washington law because transferor court did not have

DEFENDANTS' MOTION TO DISMISS – 14 (No. 2:23-
cv-01932-BAT)

jurisdiction over defendants); *Nelson v. Int'l Paint Co.*, 716 F.2d 640, 643–44 (9th Cir. 1983) (holding in "cases transferred under § 1404(a) or 1406(a) to cure a lack of personal jurisdiction in the district where the case was first brought . . . courts should look to the law of the transferee state . . . to prevent forum shopping, and to deny plaintiffs choice-of-law advantages to which they would not have been entitled in the proper forum"); *Jaeger v. Howmedica Osteonics Corp.*, No. 15-CV-00164-HSG, 2016 WL 520985, at *7 (N.D. Cal. Feb. 10, 2016) (stating "where the transferor court lacked personal jurisdiction, the transferee court must apply its own law regardless whether the transfer purports to rest on Section 1406(a) or Section 1404(a)," and declining to follow the general rule of applying the law of the transferor state because "Illinois never had personal jurisdiction over Defendant" and applying the law of the transferee state, California) (cleaned up).  As Defendants explain below, Nevada never had personal jurisdiction over Defendants, so Washington law should apply.

**General Jurisdiction.** No party—neither Mr. Hadnagy nor Defendants—is based in Nevada. General jurisdiction permits the court to exercise jurisdiction over all claims against a defendant because the defendant is essentially at home in the forum. *Goodyear Dunlop Tires Operations, S.A. v. Brown*, 564 U.S. 915, 919 (2011). Mr. Hadnagy (quite correctly) never asserted that Nevada has *general* jurisdiction over Defendants. *See* Compl. ¶¶ 10–11. So, the inquiry turns on whether Nevada has *specific* jurisdiction.

**Specific Jurisdiction.** Specific jurisdiction allows the court to exercise jurisdiction over a defendant's forum-related activities. *Williams v. Yamaha Motor Co.*, 851 F.3d 1015, 1023 (9th Cir. 2017).  Specific jurisdiction over a **non**resident defendant exists "only when three requirements are satisfied: (1) the defendant either purposefully directs its activities or purposefully avails itself of the benefits

**Perkins Coie LLP**
1201 Third Avenue, Suite 4900
Seattle, WA  98101-3099
Phone:  206.359.8000
Fax:  206.359.9000

1    afforded by the forum's laws; (2) the claim arises out of or relates to the defendant's

2    forum-related activities; and (3) the exercise of jurisdiction comports with fair play

3    and substantial justice, i.e., it is reasonable." *Id.* (cleaned up). The Ninth Circuit

4    treats purposeful availment and purposeful direction as separate methods of

5    analysis. Purposeful availment is for suits sounding in contract, whereas purposeful

6    direction is for suits sounding in tort. *Wealthy, Inc. v. Cornelia*, No. 2:21-CV-1173

7    JCM (EJY), 2023 WL 4803776, at *3 (D. Nev. July 27, 2023); *Schwarzenegger v.*

8    *Fred Martin Motor Co.*, 374 F.3d 797, 802 (9th Cir. 2004). Intentional torts, like

9    defamation, are subject to the purposeful direction analysis. *Freestream Aircraft*

10   *(Bermuda) Ltd. v. Aero Law Grp.*, 905 F.3d 597, 605 (9th Cir. 2018). Courts evaluate

11   purposeful direction under the three-part effects test articulated in *Calder v. Jones*,

12   465 U.S. 783 (1984), which requires that the defendant allegedly have (1) committed

13   an intentional act, (2) expressly aimed at the forum state, (3) causing harm that the

14   defendant knows is likely to be suffered in the forum state. *Sessa v. Ancestry.com*

15   *Operations Inc.*, 561 F. Supp. 3d 1008, 1024 (D. Nev. 2021); *Block v. Washington*

16   *State Bar Ass'n*, No. C15-2018RSM, 2016 WL 1464467, at *3 (W.D. Wash. Apr. 13,

17   2016). Personal jurisdiction was thus lacking in Nevada because Defendants did not

18   "expressly aim" their alleged tortious statements at Nevada.

19       Defendants' posting of the Ban Announcement and Transparency Report

20   Update on a website accessible to *everyone everywhere*—including but not limited to

21   those who live in Nevada—does not pass muster under the effects test, as the recent

22   case of *Wealthy, Inc. v. Cornelia* makes clear. In *Wealthy*, the plaintiff (not a

23   resident of Nevada) sued the defendant (not a resident of Nevada) for recording an

24   allegedly defamatory YouTube video with a third person (a resident of Nevada).

25   2023 WL 4803776, at *3–5. The court rejected personal jurisdiction over the

26   defendant because the video was posted online with the intention of being broadcast

DEFENDANTS' MOTION TO DISMISS – 16 (No. 2:23-
cv-01932-BAT)

*globally*, and the defendant did not specifically intend the statements to harm the plaintiff in Nevada. *Id.* at *3. The court found that if the plaintiff were a Nevada resident, the harm would have been felt in the state, but he was not. *Id.* at *3–4. The court declined to "exercise jurisdiction over an action where the requisite nexus was the fact that several defamatory statements had a proverbial layover in Nevada as they awaited global publishing on the internet." *Id.* at *5.

There was not personal jurisdiction in Nevada for the same reasons as in *Wealthy*: non-resident plaintiffs sued non-resident defendants for statements published online with nothing more than an incidental connection to Nevada. There was no allegation that Defendants committed any of their allegedly tortious conduct within the state of Nevada. *Cf. Freestream Aircraft (Bermuda) Ltd.*, 905 F.3d at 600 ("A defendant who travels to Nevada and commits an intentional tort there can be sued in that state."). There was no allegation—other than extremely vague allegations in Paragraphs 132–134 that do not pass muster under federal pleading standards—that Defendants had any awareness of any specific Nevada-based contract that Mr. Hadnagy may have had. Defendants cannot "expressly aim" their conduct at contracts that they do not know exist, nor can Defendants know that any resultant harm is likely to be suffered in Nevada. *See Wealthy*, 2023 WL 4803776, at *5 ("Without evidence that Nevada served as the epicenter of harm in this case . . . the *Calder* effects test is not satisfied, and this court lacks jurisdiction."); *Pebble Beach Co. v. Caddy*, 453 F.3d 1151, 1156 (9th Cir. 2006) (holding defendant's knowledge that plaintiff's business was located in California as insufficient to meet the "express aiming requirement").

Blog posts on the Def Con website about Mr. Hadnagy's conference ban do not target Nevada. In the Nevada lawsuit, Mr. Hadnagy was trying to bootstrap a straightforward case of alleged Internet-based defamation with the ancillary point

**Perkins Coie LLP**
1201 Third Avenue, Suite 4900
Seattle, WA  98101-3099
Phone:  206.359.8000
Fax:  206.359.9000

of where the conference takes place, but the *latter* has nothing to do with where jurisdiction is proper for the *former*. There is nothing in the Ban Announcement or Transparency Report Update that specifically targets Nevada residents or encourages Nevada residents to read these postings. *See Pebble Beach Co.*, 453 F.3d at 1156 (finding fact that website reaches forum insufficient for jurisdiction); *Cybersell, Inc. v. Cybersell, Inc.*, 130 F.3d 414, 419 (9th Cir. 1997) (finding no jurisdiction where there was no evidence that defendant targeted forum residents by website). The blog posts make no comment on Mr. Hadnagy's alleged Nevada-based contracts or even any actions that Mr. Hadnagy may have taken in Nevada. *Cf. Burri L. PA v. Skurla*, 35 F.4th 1207, 1209 (9th Cir. 2022) (holding that defamation and tortious interference specifically directed at *individuals in the forum state* about *a contract within the forum state* gives rise to jurisdiction).

In short, nothing about Defendants' blog posts is "expressly aimed" at Nevada, and Nevada did not have a unique state-based interest in a case of online defamation between nonresident plaintiffs and nonresident defendants with nothing more than a passing connection to Nevada. *See Wealthy*, 2023 WL 4803776, at *3–5. The Court should thus apply Washington law.  Nonetheless, the legal standards for these common law claims are virtually identical in both states, and Mr. Hadnagy's claims fail irrespective of whether the Court applies Washington or Nevada law.

## IV.    MR. HADNAGY'S CLAIMS FAIL AS A MATTER OF LAW

### A.    The alter ego theory against Mr. Moss should be dismissed.

Mr. Hadnagy pleads in an entirely conclusory fashion that Mr. Moss is the alter ego of Def Con and is thus "liable for the obligations, debts, and liability of Defendant DEF CON arising under this Complaint." Compl. ¶¶ 19–29. Although

DEFENDANTS' MOTION TO DISMISS – 18 (No. 2:23-cv-01932-BAT)

**Perkins Coie LLP**
1201 Third Avenue, Suite 4900
Seattle, WA  98101-3099
Phone:  206.359.8000
Fax:  206.359.9000

1   this does not even appear to be a separate cause of action, even if it were this is

2   inadequate to state claims against Mr. Moss individually.

3          To pierce the corporate veil, under both Nevada and Washington law, Mr.

4   Hadnagy must show that: (1) the corporation is influenced and governed by the

5   person asserted to be the alter ego; (2) there is such a unity of interest that one is

6   inseparable from the other; and (3) the facts are such that adherence to the

7   corporate fiction of a separate entity would, under the circumstances, sanction fraud

8   or promote injustice. *LFC Mktg. Group, Inc. v. Loomis*, 116 Nev. 896, 904, 8 P.3d

9   841 (2000); *Columbia Asset Recovery Grp., LLC v. Kelly*, 177 Wash. App. 475, 486

10  (2013). The corporate cloak is not lightly thrown aside. *Casun Inv., A.G. v. Ponder*,

11  No. 2:16-cv-2925-JCM-GWF, 2020 WL 59812, at *4 (D. Nev. Jan. 6, 2020); *Grayson

12  v. Nordic Const. Co.*, 92 Wash. 2d 548, 553 (1979) (holding that, absent fraud or

13  manifest injustice, "the corporation's separate entity should be respected"). Because

14  fraud is a necessary element of the alter ego doctrine, a party pleading alter ego

15  must satisfy the heightened pleading standard of Rule 9(b). *Interactive Fitness, Inc.

16  v. Basu*, No. 2:09-cv-01145-KJD, 2011 WL 1870597, at *6 (D. Nev. May 13, 2011);

17  *see Ferrie v. Woodford Rsch., LLC*, No. 3:19-CV-05798-RBL, 2020 WL 3971343, at *8

18  (W.D. Wash. July 14, 2020).

19          Mr. Hadnagy's alter ego allegations are fatally defective under even Rule

20  8(a)'s notice standard, much less Rule 9(b)'s heightened pleading standard. Mr.

21  Hadnagy has done nothing more than plead rote elements of a veil-piercing claim

22  and associated factors on information and belief. *See, e.g.*, Compl. ¶ 24(a)–(e). This

23  is insufficient to state a prima facie case of alter ego liability. *See Henderson v.

24  Hughes*, No. 2:16-cv-01837-JAD-CWH, 2017 WL 1900981, at *4 (D. Nev. May 9,

25  2017) (dismissing alter ego claim where plaintiff properly pleaded elements of claim

26  but did not allege sufficient facts to state a plausible claim); *Ferrie*, 2020 WL

DEFENDANTS' MOTION TO DISMISS – 19 (No. 2:23-cv-01932-BAT)

**Perkins Coie LLP**
1201 Third Avenue, Suite 4900
Seattle, WA  98101-3099
Phone:  206.359.8000
Fax:  206.359.9000

1    3971343, at *8 (dismissing alter ego claim where the allegations are "conclusory"

2    and "not [an] independent cause[] of action"). The alter ego allegations against Mr.

3    Moss should be dismissed for failure to state a claim.

4    **B.    The defamation claim fails as a matter of law.**

5            Mr. Hadnagy's defamation claim should be dismissed on two independent

6    causation-related grounds: (1) Mr. Hadnagy's alleged harms flow from the fact of his

7    ban from Def Con, which is not actionable under the First Amendment; and (2) Mr.

8    Hadnagy fails to distinguish between the alleged harm that *Defendants*' statements

9    caused as opposed to the other negative public statements that other third parties

10   made, such as calling Mr. Hadnagy the "Harvey Weinstein" of the infosec

11   community. Compl. ¶ 108. Those other statements were made *by others*—Mr.

12   Hadnagy cannot lump together all the causation in an effort to target Def Con.

13           Additionally, Mr. Hadnagy's Black Hat-specific allegations in Paragraphs 78

14   and 79 are not plausibly pleaded and should be disregarded. Alternatively, if the

15   Court declines to dismiss the defamation claim, the claim should be limited to a

16   subset of Defendants' alleged statements to Black Hat representatives described in

17   Paragraph 78, as the majority of Defendants' alleged "defamation" is non-

18   defamatory in character and constitutes protected opinion.

19           **1.    Legal standard**

20           To establish a prima facie case of defamation under Nevada and Washington

21   law, a plaintiff must allege: (1) a false and defamatory statement by the defendant

22   concerning the plaintiff; (2) an unprivileged publication to a third person; (3) fault,

23   amounting to at least negligence; and (4) actual or presumed damages resulting

24   from the publication. *Wynn v. Smith*, 117 Nev. 6, 10, 16 P.3d 424 (2001); *Duc Tan v.*

25   *Le*, 177 Wash. 2d 649, 662 (2013) (same elements). A statement is defamatory when

26   it would tend to lower the subject in the estimation of the community, excite

**Perkins Coie LLP**
1201 Third Avenue, Suite 4900
Seattle, WA  98101-3099
Phone:  206.359.8000
Fax:  206.359.9000

1    derogatory opinions about the subject, and hold the subject up to contempt. *Lubin v.*

2    *Kunin*, 117 Nev. 107, 111, 17 P.3d 422 (2001); *Life Designs Ranch, Inc. v. Sommer*,

3    191 Wash. App. 320, 328 (2015) (statement defamatory if "exposes a living person to

4    hatred, contempt, ridicule or obloquy, to deprive him of the benefit of public

5    confidence or social intercourse"). A statement may only be defamatory if it contains

6    a factual assertion that can be proven false. *See Flowers v. Carville*, 112 F. Supp. 2d

7    1202, 1210 (D. Nev. 2000); *Schmalenberg v. Tacoma News, Inc.*, 87 Wash. App. 579,

8    590 (1997) (same).

9         Whether a statement is capable of a defamatory construction is a question of

10   law. *Branda v. Sanford*, 97 Nev. 643, 646, 637 P.2d 1223 (1981); *Robel v. Roundup*

11   *Corp.*, 148 Wash. 2d 35, 55 (2002). In reviewing an allegedly defamatory statement,

12   the words must be viewed in their entirety and in context to determine whether

13   they are susceptible of a defamatory meaning. *Lubin*, 117 Nev. at 111–12. To

14   determine if a statement is one of fact or opinion, "the court must ask whether a

15   reasonable person would be likely to understand the remark as an expression of the

16   source's opinion or as a statement of existing fact." *Pegasus v. Reno Newspapers,*

17   *Inc.*, 118 Nev. 706, 715, 57 P.3d 82 (2002); *Kivlin v. City of Bellevue*, No. C20-0790

18   RSM, 2021 WL 5140260, at *4 (W.D. Wash. Nov. 4, 2021); *Rhine v. United States,*

19   No. 221CV00876RAJBAT, 2021 WL 6617461, at *4 (W.D. Wash. Sept. 2, 2021),

20   *report and recommendation adopted*, 2022 WL 179325 (W.D. Wash. Jan. 20, 2022),

21   *aff'd sub nom. Rhine v. Perez*, No. 22-35245, 2023 WL 5607515 (9th Cir. Aug. 30,

22   2023).

23              **2.    Mr. Hadnagy's defamation claim fails because any alleged
                        harms flow from the fact of Mr. Hadnagy's ban, which is
24                      not actionable.**

25        Mr. Hadnagy's defamation claim rests on the following syllogism: (1)

26   Defendants released a statement that Mr. Hadnagy had been banned from the

DEFENDANTS' MOTION TO DISMISS – 21 (No. 2:23-
cv-01932-BAT)

1   Event (Compl. ¶ 58); (2) Defendants had predicated prior bans on sexual misconduct

2   (*id.* ¶ 67); (3) the tech community therefore assumed that Mr. Hadnagy's ban was

3   predicated on sexual misconduct (*id.* ¶¶ 66–67); and (4) Mr. Hadnagy's' actual and

4   potential clients began to terminate their relationships with Mr. Hadnagy, citing

5   Defendants' statement about the ban (*id.* ¶ 73). But under Mr. Hadnagy's syllogism,

6   it is not the *substance* of Defendants' statement that resulted in Mr. Hadnagy's

7   harm, but the fact that Defendants made any statement *at all* about Mr. Hadnagy's

8   ban. **That is not defamation.**

9        Imagine instead if on February 9, 2022, Defendants had simply released a

10  statement that "Chris Hadnagy has been permanently banned from Def Con." This

11  is of course not defamatory, as it is a pure factual statement that cannot be proven

12  false. *See Flowers,* 112 F. Supp. 2d at 1210; *Rhine,* 2021 WL 6617461, at *4. Yet

13  under Mr. Hadnagy's theory, since Defendants only previously issued lifetime Def

14  Con bans for sexual misconduct, the *same harms* described in premises (2)–(4)

15  above would have befallen Mr. Hadnagy. It is thus the fact that Mr. Hadnagy was

16  banned from Def Con that caused his alleged harm, not the allegedly "defamatory"

17  nature of the Ban Announcement.

18       But so long as Defendants are not transgressing a constitutionally protected

19  class such as race, which they are not here, Defendants have an ironclad First

20  Amendment right to associate *or not associate* with whomever they want at their

21  *private* conference. *See Boy Scouts of Am. v. Dale*, 530 U.S. 640, 648 (2000) (holding

22  First Amendment "plainly presupposes a freedom not to associate" for private

23  organizations and that "forced inclusion of unwanted person" infringes on that right

24  absent compelling state interests)*; Corzine v. Laxalt*, No. 3-17-cv-00052-MMD-WGC,

25  2017 WL 662982, at *3 (D. Nev. Feb. 17, 2017) ("Freedom of association is a

26  consequence of the First Amendment's textual guarantees.") (cleaned up); *see also*

**Perkins Coie LLP**
1201 Third Avenue, Suite 4900
Seattle, WA  98101-3099
Phone:  206.359.8000
Fax:  206.359.9000

1  *Manhattan Cmty. Access Corp. v. Halleck*, 587 U.S. ___, 139 S. Ct. 1921, 1930 (2019)

2  (A private actor providing a forum for speech "is not a state actor" and "may thus

3  exercise editorial discretion over the speech and speakers in the forum."). Mr.

4  Hadnagy's defamation claim flounders because the ban itself is the source of his

5  harms, and the fact of the ban is not actionable.

6       The defamation claim has a second causation-related problem, too: Mr.

7  Hadnagy fails to distinguish between any alleged harm that *Defendants* caused as

8  opposed to, for example, "the various false rumors [that] spread rampantly across

9  public forums and social media pages alleging that Plaintiff Hadnagy had

10  committed the worst of sexual crimes[,]" or the statement that Mr. Hadnagy was

11  the "Harvey Weinstein" of the infosec community. Compl. ¶¶ 68, 108. If *third*

12  *parties* defamed Mr. Hadnagy, then his recourse is against *those individuals*, not

13  Defendants. The Complaint also fails to distinguish between other similar

14  statements made by others in the tech community, like the TechTarget article that

15  (incorrectly) stated Mr. Hadnagy was banned for misconduct at the Def Con

16  conference itself. *Id.* ¶¶ 69–72. There are no facts pleaded, nor could Mr. Hadnagy

17  plead such facts, to show that Defendants' statements *in fact* caused the damages

18  Mr. Hadnagy asserts. Mr. Hadnagy instead resorts to mere legal conclusions, which

19  are insufficient and which his own pleading undermines. *See, e.g., United States v.*

20  *Alvarez*, 617 F.3d 1198, 1207 (9th Cir. 2010), *aff'd*, 567 U.S. 709 (2012) (stating that

21  the alleged defamer's false statement must be the proximate cause of the

22  irreparable injury to the plaintiff's reputation).

23       **3.**    **The Black Hat-specific allegations are not plausible.**

24       In a strained effort to preserve some portion of an otherwise dubious

25  defamation claim, Mr. Hadnagy alleges—on *information and belief* only—that Mr.

26  Hadnagy was disinvited from another conference, Black Hat, because of statements

DEFENDANTS' MOTION TO DISMISS – 23 (No. 2:23-cv-01932-BAT)

**Perkins Coie LLP**
1201 Third Avenue, Suite 4900
Seattle, WA  98101-3099
Phone:  206.359.8000
Fax:  206.359.9000

1   made by Mr. Moss. Compl. ¶¶ 78–79. These allegations cannot save the defamation

2   claim.

3        There is not a single allegation from which Defendants, or the Court, can

4   surmise why Mr. Hadnagy believes Mr. Moss made these alleged statements (much

5   less when or how). "Information and belief" pleading is "not talismanic, and a

6   plaintiff cannot avoid Rule 12 simply by slapping the 'information and belief' label

7   onto speculative or conclusory allegations." *Miller v. City of Los Angeles*, No. CV 13-

8   5148-GW(CWX), 2014 WL 12610195, at *5 (C.D. Cal. Aug. 7, 2014) (citing *Bell Atl.*

9   *Corp. v. Twombly*, 550 U.S. 544, 557 (2007); *Blantz v. California Dep't of Corr. &*

10  *Rehab., Div. of Corr. Health Care Servs.,* 727 F.3d 917, 926–27 (9th Cir. 2013));

11  *Tarantino v. Gawker Media, LLC,* No. 14–CV–603–JFW(FFMx), 2014 WL 2434647,

12  at *5 n.4 (C.D. Cal. Apr. 22, 2014) (collecting cases). Mr. Hadnagy's conclusory

13  Black Hat-related allegations should be dismissed.

14                    **4.    The statements are not defamatory.**

15       The defamation claim should be dismissed to the extent it is predicated upon

16  the erroneous assumption that the Ban Announcement or Transparency Report

17  Update ascribe sexual misconduct to Mr. Hadnagy. Neither statement references

18  sexual conduct or even refers to gender identifiers. The Ban Announcement states

19  Def Con banned Mr. Hadnagy for Code of Conduct violations, and the Code of

20  Conduct prohibits "harassment" generally—which is defined as deliberately

21  intimidating or targeting individuals in a manner that makes them feel

22  uncomfortable, unwelcome, or afraid. Ex. 1 (Code of Conduct). "Harassment" carries

23  no sexual denotation under the Code of Conduct. Mr. Hadnagy admits as much in

24  alleging that third parties had to "assume" the conduct was sexual in nature or

25  abhorrent. *See*, *e.g.*, Compl. ¶¶ 66, 106, 108.

26

**Perkins Coie LLP**
1201 Third Avenue, Suite 4900
Seattle, WA  98101-3099
Phone:  206.359.8000
Fax:  206.359.9000

1

2

### 5.   Much of the alleged "defamatory" content is comprised of Defendants' non-actionable opinions.

3    The Ban Announcement, the Transparency Report Update, and multiple

4   parts of Defendants' alleged statements to Black Hat representatives in Paragraph

5   78 are non-actionable opinion. Statements of opinion cannot be defamatory because

6   "there is no such thing as a false idea. However pernicious an opinion may seem, we

7   depend for its correction not on the conscience of judges and juries but on the

8   competition of other ideas." *Pegasus*, 118 Nev. at 714; *Robel*, 148 Wash. 2d at 56

9   (holding expressions of opinion are "not actionable" because "[u]nder the First

10   Amendment there is no such thing as a false idea").

11    The Ban Announcement and Transparency Report Update comprise Def

12   Con's opinion about its own investigation of Mr. Hadnagy's behavior. The Ban

13   Announcement notes that conversations occurred with the reporting parties *and*

14   Mr. Hadnagy, and Def Con was *confident* in its opinion, not *certain*. Courts

15   regularly protect more offensive insinuations as protected opinion. *See, e.g.,*

16   *Churchill v. Barach,* 863 F. Supp. 1266, 1273 (D. Nev. 1994) (statement that airline

17   employee was "rigid, uninformed, incompetent and unhelpful" and "will help put

18   [the airline] out of business" was non-actionable opinion); *State v. Eighth Jud. Dist.*

19   *Ct. ex rel. Cnty. of Clark*, 118 Nev. 140, 150, 42 P.3d 233 (2002) (law enforcement

20   agent's suggestion that fellow agent's investigation was "crappy," "half-assed," and

21   warranted termination of the fellow agent's employment was non-actionable

22   opinion); *Robel*, 148 Wash. 2d at 56 (statements that plaintiff was a "snitch,"

23   "squealer," and "liar" were non-actionable opinion).

24    As for the alleged statements to Black Hat representatives in Paragraph 78,

25   subparagraphs c ("Defendants determined that the Acts occurred based upon their

26   purported investigation and evidence presented,"), f (publication of the Ban

DEFENDANTS' MOTION TO DISMISS – 25 (No. 2:23-cv-01932-BAT)

1   Announcement), and g (publication of the Transparency Report Update) are

2   protected opinion as described above. Thus, even if Mr. Hadnagy's defamation claim

3   survives dismissal on causation grounds and, as to the Black Hat allegations,

4   plausibility grounds—which it should not—the claim should be limited to what

5   Defendants allegedly told Black Hat in Paragraph 78 a, b, d, and e, and any

6   resultant harm to Mr. Hadnagy's economic relationship with Black Hat.[4]

7       **C.**    **The business disparagement claim should be dismissed.**

8       Mr. Hadnagy fails to plead a claim for business disparagement because none

9   of Defendants' alleged statements concern or even mention Mr. Hadnagy's or Social-

10  Engineer's products or services. Washington does not recognize a separate "business

11  disparagement" or "commercial disparagement" claim separate from a defamation

12  claim—so under Washington law, this claim fails for the same reasons the

13  defamation claim fails.

14      Even applying Nevada law, the claim still fails. Under Nevada law a claim

15  for business disparagement requires the plaintiff to establish the following

16  elements: "(1) a false and disparaging statement; (2) the unprivileged publication by

17  the defendant; (3) malice; and (4) special damages." *Clark Cnty. Sch. Dist. v. Virtual*

18  *Educ. Software, Inc.*, 125 Nev. 374, 386, 213 P.3d 496 (2009). While similar to

19  defamation, the claims are not identical, in that claims for business disparagement

20  must involve statements "directed towards the quality of the individual's product or

21  services." *Sentry Ins. V. Estrella Ins. Serv., Inc.*, No. 2:13-CV-169 JCM (GWF), 2013

22  WL 2949610, at *2 (D. Nev. June 13, 2013).[5]

23

24

25  [4] Mr. Hadnagy has failed to plead plausible facts that Defendants made the
    statements alleged in these subparagraphs to anyone other than Black Hat

26  representatives.

DEFENDANTS' MOTION TO DISMISS – 26 (No. 2:23-
cv-01932-BAT)

**Perkins Coie LLP**
1201 Third Avenue, Suite 4900
Seattle, WA  98101-3099
Phone:  206.359.8000
Fax:  206.359.9000

1    Mr. Hadnagy has entirely failed to allege that Defendants impugned the

2    quality of his products or services. *See* Compl. ¶¶ 122–29. None of Defendants'

3    alleged statements have anything to do with the quality of either Mr. Hadnagy's or

4    Social-Engineer's services to their various clients.  Mr. Hadnagy's business

5    disparagement claim must be dismissed. *See Sentry Ins.,* 2013 WL 2949610, at *3

6    (refusing to consider an alleged business disparagement claim because defendants

7    did not make statements that attacked plaintiffs' products or services); *see also*

8    *Lkimmy, Inc. v. Bank of Am., N.A.*, No. 2:19-cv-1833 JCM (BNW), 2020 WL

9    13533714, at *4 (D. Nev. June 12, 2020) (dismissing business disparagement claim

10   on motion to dismiss where plaintiff's allegations are "conclusory and a threadbare

11   recitation of the elements"); *Kern v. Moulton*, No. 3:11-cv-296-RCJ-PAL, 2012 WL

12   1682026, at *4 (D. Nev. May 11, 2012) (dismissing business disparagement claim

13   where plaintiff "does no more than recite the elements of the causes of action and is

14   completely devoid of factual allegations").

### D.    The tortious interference with contractual relations claim should be dismissed.

15

16   Under Nevada and Washington law, to plead a claim for intentional

17   interference with contractual relations, Mr. Hadnagy must allege: "(1) a valid and

18   existing contract; (2) the defendant's knowledge of the contract; (3) intentional acts

19   intended or designed to disrupt the contractual relationship; (4) actual disruption of

20   the contract; and (5) resulting damage." *J.J. Indus., LLC v. Bennett*, 119 Nev. 269,

21   274, 71 P.3d 1264 (2003); *MP Med. Inc. v. Wegman*, 151 Wash. App. 409, 425 (2009)

22   (same elements). Mr. Hadnagy has failed to plausibly allege the first, second, and

23   third elements of the claim.

24   ***First***, the plaintiff must identify the specific contract allegedly interfered

25   with to survive a motion to dismiss, and Mr. Hadnagy has failed to do so. *See, e.g.,*

26   *Fin. Pac. Ins. Co. v. Cruz Excavating, Inc.*, No. 3:10-CV-707-RCJ-VPC, 2011 WL

DEFENDANTS' MOTION TO DISMISS – 27 (No. 2:23-cv-01932-BAT)

1    3022543, at *4 (D. Nev. Jul. 21, 2011) (dismissing claim where party "[did] not state

2    what contract they are referring to, who the third party is, or how [defendant]

3    disrupted the contractual relationship"); *Stuc-O-Flex Int'l, Inc. v. Low & Bonar, Inc.*,

4    No. 2:18-CV-01386-RAJ, 2019 WL 4688803, at *6 (W.D. Wash. Sept. 26, 2019)

5    (dismissing claim where plaintiff "does not identify specific customers or contracts

6    that Defendants purportedly interfered with"). While Mr. Hadnagy alleges that he

7    has "several long-term agreements for the provision of Cybersecurity and IT

8    services for various large national corporations and law enforcement agencies," he

9    fails to identify the specific contracts or the third parties on the other end of these

10   contracts. Compl. ¶ 131. His vague suggestion that Defendants interfered with "any

11   business arrangements" they had with unidentified "Cybersecurity conventions" is

12   too indefinite to support a tortious interference claim. *Id.* ¶ 136. Mr. Hadnagy's

13   generalized and conclusory allegations regarding the existence of the alleged

14   contracts are inadequate under *Iqbal* and *Twombly*. *See Fin. Pac. Ins. Co.*, 2011 WL

15   3022543, at *4 (stating that a formulaic recitation of the elements of intentional

16   interference with contract "will not do" to survive a motion to dismiss); *Stuc-O-Flex*

17   *Int'l, Inc.*, 2019 WL 4688803, at *6 ("Unspecified references to 'customers' are not

18   enough.").

19       **Second**, Mr. Hadnagy has failed to plead facts that show Defendants "knew

20   of the existing contract, or at the very least, establish facts from which the existence

21   of the contract can reasonably be inferred.*" J.J. Indus., LLC*, 119 Nev. at 269;

22   *Woods View II, LLC v. Kitsap Cnty.*, 188 Wash. App. 1, 30 (2015) ("The knowledge

23   element is satisfied when the defendant knows of facts giving rise to the existence of

24   the relationship.") (citation omitted). Mr. Hadnagy alleges that Defendants knew of

25   these alleged contracts "because a considerable portion of Plaintiffs' business

26   agreements were secured through leads generated by way of their operation of the

DEFENDANTS' MOTION TO DISMISS – 28 (No. 2:23-
cv-01932-BAT)

1   SEVillage." Compl. ¶¶ 132–33. This is a non sequitur. It does not follow that

2   Defendants knew of *specific contracts* merely because Defendants allegedly knew

3   the *general* fact that Mr. Hadnagy generated business from the Event. Mr.

4   Hadnagy's allegation that Mr. Moss "has historically single-handedly recruited and

5   maintained relationships with contributors and attendees at the Event and was

6   aware of Plaintiffs' clientele who attended the Event" fares no better. *Id.* ¶ 134. A

7   *general* awareness of Mr. Hadnagy's clients does not create a plausible inference

8   that Defendants were aware of *specific contracts* with those clients.

9       ***Third***, Mr. Hadnagy has failed to plead facts to show Defendants

10  intentionally disrupted the "several long-term agreements for the provision of

11  Cybersecurity and IT services" that Mr. Hadnagy ostensibly had in place. *Id.* ¶ 132;

12  *J.J. Indus., LLC*, 119 Nev. at 269. The plaintiff must demonstrate that the

13  defendant *intended* to induce the other party to breach the contract with the

14  plaintiff. *Blanck v. Hager*, 360 F. Supp. 2d 1137, 1154 (D. Nev. 2005). Inquiry into

15  the alleged tortfeasor's motive is necessary. *Nat'l Right To Life Pol. Action Comm.*

16  *V. Friends of Bryan*, 741 F. Supp. 807, 814 (D. Nev. 1990); *CRJ Kim, Inc. v. JKI*

17  *Invs., Inc.*, 198 Wash. App. 1014 (2017) ("Under the second element, the motive for

18  the defendant's interference with a contract focuses on factors such as ill will, greed,

19  retaliation, or hostility."). Here, Mr. Hadnagy alleges that Defendants have

20  disrupted these purported agreements for cybersecurity and IT services to "prevent

21  [Plaintiffs] from fostering the SEVillage community, which would have directly

22  competed with the Event." Compl. ¶ 138. But this is nonsensical. Whether Mr.

23  Hadnagy was "fostering the SEVillage community" and thereby competing with the

24  Event has nothing to do with whether Mr. Hadnagy could perform his contracts

25  with these third parties. Mr. Hadnagy has failed to allege any connection between

26  Defendants' alleged hostility to the SEVillage as a competitor and Mr. Hadnagy's

**Perkins Coie LLP**
1201 Third Avenue, Suite 4900
Seattle, WA  98101-3099
Phone:  206.359.8000
Fax:  206.359.9000

entirely separate "long-term agreements for the provision of Cybersecurity and IT services." The motive Mr. Hadnagy ascribes to Defendants to interfere with these contracts is simply not plausible.

In short, Mr. Hadnagy fails to plead facts that show any of Defendants' actions had the intended consequence of disrupting unidentified third-party contracts, as opposed to Def Con's own—perfectly permissible—decision to discontinue its association with Mr. Hadnagy. *See, e.g.*, *Crown Beverages, Inc. v. Sierra Nevada Brewing Co.*, No. 3:16-cv-00695-MMD-VPC, 2017 WL 1508486, at *4–5 (D. Nev. Apr. 26, 2017) (dismissing claim where plaintiff "has not pled any facts that would permit the Court to reasonably infer that [defendant] intended to disrupt third-party contracts, rather than simply ending its own"); *Hairston v. Pac.-10 Conf.*, 893 F. Supp. 1485, 1494 (W.D. Wash. 1994), *aff'd*, 101 F.3d 1315 (9th Cir. 1996) ("In order to qualify as tortious, the alleged interference must be intentional, not merely an incidental, indirect result of another act.").

Mr. Hadnagy's claim for intentional interference with contractual relations is not plausible on its face and therefore must be dismissed.

### E.   The tortious interference with prospective business relations claim should be dismissed.

To maintain this tortious interference with business relations claim, Mr. Hadnagy must establish: "(1) a prospective contractual relationship between the plaintiff and a third party; (2) the defendant's knowledge of this prospective relationship; (3) the intent to harm the plaintiff by preventing this relationship; (4) the absence of privilege or justification by the defendant; and (5) actual harm to the plaintiff as a result." *Coffee v. Stolidakis*, No. 2:21-cv-02003-ART-EJY, 2022 WL 2533535, at *7 (D. Nev. July 6, 2022); *Bombardier Inc. v. Mitsubishi Aircraft Corp.*, 383 F. Supp. 3d 1169, 1188 (W.D. Wash. 2019) (same elements). Mr. Hadnagy has failed to plausibly allege *any* of these five elements.

**Perkins Coie LLP**
1201 Third Avenue, Suite 4900
Seattle, WA  98101-3099
Phone:  206.359.8000
Fax:  206.359.9000

1    ***First***, Mr. Hadnagy alleges that he "had been in negotiations with multiple

2    corporations and government organizations for prospective provision of

3    cybersecurity and related services in conjunction with business activities and

4    operations," without identifying a specific prospective customer. Compl. ¶ 145. But

5    "[t]his court, and other courts in this district, have regularly held that generalized

6    pleading about hypothetical consumers is insufficient to survive a motion to

7    dismiss." *EVIG, LLC v. Mister Brightside, LLC*, No. 2:23-CV-186 JCM (BNW), 2023

8    WL 5717291, at *4 (D. Nev. Sept. 5, 2023) (granting motion to dismiss where

9    plaintiff failed to "identify a single customer with whom it had a prospective

10   contract"); *see also Stuc-O-Flex Int'l, Inc*, 2019 WL 4688803 ("To make a claim for

11   tortious interference with a business expectancy, Plaintiff must identify a 'specific

12   relationship' and 'identifiable third parties.'"). Here, the Complaint fails to

13   specifically identify a single third party that Mr. Hadnagy supposedly had a

14   "prospective" contractual relationship with.

15   ***Second***, Defendants cannot know of any prospective relationships with

16   undisclosed and unidentified "multiple corporations and government organizations,"

17   and Mr. Hadnagy does not allege otherwise. Mr. Hadnagy merely alleges that

18   "Defendants had knowledge of the prospective clientele base . . . because a

19   considerable portion of Plaintiffs' clients were secured through leads generated by

20   way of their operation of the SEVillage." Compl. ¶ 146. But Mr. Hadnagy once again

21   improperly equates allegations of Defendants' *general* knowledge that Mr. Hadnagy

22   developed some business through the Event with Defendants' knowledge of *specific*

23   *prospective relationships*. The former does not suffice to establish the latter. Mr.

24   Hadnagy's allegation is also implausible—Defendants do not know each and every

25   attendee's business dealings at the conference or outside the conference.

26

DEFENDANTS' MOTION TO DISMISS – 31 (No. 2:23-cv-01932-BAT)

**Perkins Coie LLP**
1201 Third Avenue, Suite 4900
Seattle, WA  98101-3099
Phone:  206.359.8000
Fax:  206.359.9000

1    ***Third***, Mr. Hadnagy fails to plead facts that show Defendants published

2    these statements—that Mr. Hadnagy had violated Def Con's Code of Conduct and

3    would be banned from the conference—with the intent to interfere with Mr.

4    Hadnagy's (purported) ongoing contractual negotiations. Mr. Hadnagy's mere

5    recitation of the elements, *see* Compl. ¶¶ 148–49, does not do the trick. Mr.

6    Hadnagy fails to allege facts to support a plausible inference that statements

7    published on Def Con's ***own*** website in regard to its ***own*** Code of Conduct and

8    conference attendance had the intended purpose of reaching a specific audience, in

9    particular, the "corporations and government organizations" Mr. Hadnagy

10   supposedly was negotiating with for services.

11   ***Fourth***, Defendants' supposed "tortious interference" in banning Mr.

12   Hadnagy is justified because Defendants were protecting their own business

13   interests. Nevada and Washington law recognize that "[p]rivilege can exist when

14   the defendant acts to protect his own interests*." Leavitt v. Leisure Sports, Inc.*, 103

15   Nev. 81, 88, 734 P.2d 1221 (1987); *CRJ Kim, Inc.*, 198 Wash. App. 1014 ("Exercising

16   one's legal interest in good faith is not improper interference."). Defendants were

17   justified in the ban because they had received reports from multiple third parties

18   informing them of Mr. Hadnagy's harassing behavior, and such behavior violated

19   the conference's Code of Conduct. Compl. ¶ 58. To protect its own interests—

20   including its First Amendment interest to freely associate with *only* the persons

21   that Defendants want involved with the Def Con conference—Def Con banned Mr.

22   Hadnagy from the conference. *Id.* ¶¶ 58, 63 n.2. Exercising one's First Amendment

23   rights not to associate cannot be the basis for a claim.

24   ***Fifth***, "to allege actual harm, a plaintiff must allege that he 'would have been

25   awarded the contract but for the defendant's interference.'" *Rimini St., Inc. v.*

26   *Oracle Int'l Corp.*, No. 2:14-CV-1699-LRH-CWH, 2017 WL 5158658, at *8 (D. Nev.

DEFENDANTS' MOTION TO DISMISS – 32 (No. 2:23-cv-01932-BAT)

Nov. 7, 2017). Courts have held that a "plaintiff's expectation of a future sale [is] at most a hope for an economic relationship and a desire for future benefit" does not suffice. *Id.* Nowhere in the Complaint does Mr. Hadnagy allege plausible facts that he would have been awarded these contracts, or that these prospective "business arrangements" would have actually panned out, but for Defendants' actions. *See, e.g.*, Compl. ¶ 150.[6] As currently pleaded, Mr. Hadnagy's allegations indicate nothing more than Mr. Hadnagy's unfulfilled desire for a future economic relationship with unidentified third parties. This is inadequate to state a claim for intentional interference with prospective economic relations.

**F.    The equitable claims and injunctive relief should be dismissed.**

Mr. Hadnagy's equitable claims are meritless. Mr. Hadnagy's own allegations conclusively demonstrate that he did not "unjustly enrich" Defendants through creating the SEVillage and had no reasonable expectation of payment related to the SEVillage; his quantum meruit claim is wholly irrelevant because this case does not involve an implied-in-fact contract; and he has improperly pleaded injunctive relief as a standalone claim, which it is not.

**1.    The unjust enrichment claim should be dismissed.**

To assert an unjust enrichment claim under Nevada and Washington law, Mr. Hadnagy must establish that (1) he conferred a benefit on Defendants, (2) Defendants appreciated such benefit, and (3) there was acceptance and retention of the benefit by the Defendants such that it would be inequitable for them to retain the benefit without payment of the value thereof. *Korte Constr. Co. v. State on Rel. of Bd. of Regents of Nev. Sys. of Higher Educ.*, 137 Nev. 378, 381, 492 P.3d 540

---

[6] Mr. Hadnagy's allegation that Defendants "have in fact actually prevented the consummation of several prospective agreements" through their allegedly defamatory statements is the kind of conclusory boilerplate, unsupported by plausible factual allegations, that federal courts reject as inadequate under federal pleading standards. *See Fin. Pac. Ins. Co.*, 2011 WL 3022543, at *4.

Perkins Coie LLP
1201 Third Avenue, Suite 4900
Seattle, WA  98101-3099
Phone:  206.359.8000
Fax:  206.359.9000

1  (2021); *Austin v. Ettl*, 171 Wash. App. 82, 92 (2012) (same elements). For an

2  enrichment to be inequitable to retain, the person conferring the benefit must have

3  a reasonable expectation of payment *and* the circumstances are such that equity

4  and good conscience require payment for the conferred benefit. *Korte Constr. Co.*,

5  137 Nev. at 381. Mr. Hadnagy fails both prongs.

6  Defendants *never* induced Mr. Hadnagy to provide the alleged benefits—the

7  creation of the SEVillage (and associated capture-the-flag event) and "investing

8  substantial resources" into the Event—or promised any kind of payment to

9  Defendants for doing so. Mr. Hadnagy does not even allege otherwise. *See* Compl.

10  ¶¶ 159–66.

11  And after Defendants rebuffed Mr. Hadnagy's payment requests in or around

12  2012, *Mr. Hadnagy continued to provide the SEVillage at the Event for years. Compare*

13  Compl. ¶¶ 50, 163 (Defendants rejected Mr. Hadnagy's requests for payment but

14  changed Event rules in 2012 to allow Mr. Hadnagy to start accepting third-party

15  sponsorship compensation), *with id.* ¶¶ 45, 46, 58 (Mr. Hadnagy hosted the SEVillage

16  in person or virtually from 2010 to 2022). Mr. Hadnagy cannot now suggest with a

17  straight face that he reasonably expected Event-related compensation from

18  Defendants.

19  As if that weren't enough, Mr. Hadnagy admits *he* received significant benefit

20  from his involvement in the Event, including "a lot of attention, exposure, and income

21  from Sponsorships during the operation of the SEVillage" (*id.* ¶ 50); the generation of

22  "a considerable portion of Plaintiffs' business agreements . . . through their operation

23  of the SEVillage" (*id.* ¶ 133); hosting a standalone social engineering convention in

24  2020 due to "the overwhelmingly positive feedback over the years at SEVillage" (*id.* ¶

25  52); and even procuring a personal meeting with the director of the National Security

26  Agency (*id.* ¶ 47). These professional and personal benefits explain why Mr. Hadnagy

DEFENDANTS' MOTION TO DISMISS – 34 (No. 2:23-cv-01932-BAT)

**Perkins Coie LLP**
1201 Third Avenue, Suite 4900
Seattle, WA  98101-3099
Phone:  206.359.8000
Fax:  206.359.9000

1    voluntarily continued to host the SEVillage for years with no reasonable expectation
2    of payment from Defendants for doing so. Under these circumstances, equity and good
3    conscience do not require Defendants to make ex post facto payments to Mr. Hadnagy
4    that Defendants never even *hinted* at making, let alone promised to make. Mr.
5    Hadnagy has no plausible claim for unjust enrichment, and the claim should be
6    dismissed.

7                    **2.       The quantum meruit claim should be dismissed.**

8            Mr. Hadnagy's claim for quantum meruit should likewise be dismissed. The
9    concept of quantum meruit arises in two contexts: contract and restitution. In the
10   former, quantum meruit applies in an action based upon a contract implied-in-fact,
11   which is found when the parties intended to contract and promises were exchanged,
12   the general obligations for which must be sufficiently clear. *Certified Fire Prot. Inc.*
13   *v. Precision Constr.*, 128 Nev. 371, 381, 283 P.3d 250 (2012); *Aegean Mar. Petroleum*
14   *S.A. v. KAVO Platanos M/V*, 646 F. Supp. 3d 1347, 1358 (W.D. Wash. 2022). In that
15   circumstance, quantum meruit may be employed as a gap-filler to supply absent
16   terms. *Sierra Dev. Co. v. Chartwell Advisory Grp., Ltd.*, 325 F. Supp. 3d 1102, 1107
17   (D. Nev. 2018). Quantum meruit's other role is in providing restitution for unjust
18   enrichment. *Id.* In this circumstance, quantum meruit imposes liability for the
19   market value of services as a *remedy* for unjust enrichment. *Id.* (citing *Certified Fire*
20   *Prot. Inc.,* 128 Nev. at 380–81). The plaintiff must establish each element of unjust
21   enrichment to demonstrate entitlement to the remedy of quantum meruit. *Id.* at
22   1107 n.4.

23           As the above makes clear, Mr. Hadnagy's quantum meruit claim is
24   misplaced. Mr. Hadnagy has not pleaded an implied-in-fact contract—nor could he,
25   as the parties had no intention to contract, exchanged no promises, and did not
26   create any "sufficiently clear" obligations pursuant to these nonexistent promises to

DEFENDANTS' MOTION TO DISMISS – 35 (No. 2:23-
cv-01932-BAT)

**Perkins Coie LLP**
1201 Third Avenue, Suite 4900
Seattle, WA  98101-3099
Phone:  206.359.8000
Fax:  206.359.9000

1   contract—and so quantum meruit has no salience as a gap-filler to supply absent

2   terms. And because Mr. Hadnagy's unjust enrichment claim fails (as outlined

3   above), quantum meruit's application as a *remedy* for unjust enrichment fails, too.

4           **3.**      **The injunctive relief "claim" should be dismissed.**

5       Injunctive relief is a remedy, not a separate cause of action. *Iliescu, Tr. of*

6   *John Iliescu, Jr. & Sonnia Iliescu 1992 Fam. Tr. v. Reg'l Transp. Comm'n of Washoe*

7   *Cnty.*, 522 P.3d 453, 457 (2022) (upholding dismissal of injunctive relief as an

8   independent cause of action and collecting cases); *McKee v. Gen. Motors Co.*, 601 F.

9   Supp. 3d 901, 910 (W.D. Wash. 2022), *aff'd*, 2023 WL 7318690 (9th Cir. Nov. 7,

10  2023). The injunctive relief "claim" pleaded as the seventh cause of action should be

11  dismissed.

12  **V.**    **CONCLUSION**

13      For the foregoing reasons, Defendants respectfully request that the Court

14  dismiss the claims against Defendants with prejudice.

15      I certify that this motion contains 8,161 words, in compliance with the Local

16  Civil Rules.

17

18      DATED this 18th day of January 2024.

19

20                *s/David A. Perez*
              David A. Perez, WSBA No. 43959

21                **Perkins Coie LLP**
              1201 Third Avenue, Suite 4900
              Seattle, WA  98101-3099

22                Telephone:  206.359.8000
              Email: DPerez@perkinscoie.com

23                Matthew J. Mertens (Admitted Pro Hac Vice)

24                **Perkins Coie LLP**
              1120 N.W. Couch Street 10th Floor

25                Portland, OR 97209-4128
              Telephone:   503.727.2000

26                Email: MMertens@perkinscoie.com

**Perkins Coie LLP**
1201 Third Avenue, Suite 4900
Seattle, WA  98101-3099
Phone:  206.359.8000
Fax:  206.359.9000

1

Lauren A. Trambley (Admitted Pro Hac Vice)
**Perkins Coie LLP**
505 Howard Street, Suite 1000
San Francisco, CA 94105-3204
Telephone:  415.344.7000
Email: LTrambley@perkinscoie.com

*Attorneys for Defendants*
*Jeff Moss and DEF CON Communications,*
*Inc.*

DEFENDANTS' MOTION TO DISMISS – 37 (No. 2:23-cv-01932-BAT)