THE HONORABLE BRIAN A. TSUCHIDA

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| CHRISTOPHER J. HADNAGY, an individual; and SOCIAL-ENGINEER, LLC, a Pennsylvania limited liability company,<br><br>Plaintiffs,<br><br>v.<br><br>JEFF MOSS, an individual; DEF CON COMMUNICATIONS, INC., a Washington corporation; and DOES 1-10; and ROE ENTITIES 1-10, inclusive,<br><br>Defendants. | No. 2:23-cv-01932-BAT<br><br>**DEFENDANTS' REPLY IN SUPPORT OF MOTION TO DISMISS**<br><br>**Noted For Consideration: February 23, 2024.** |

DEFENDANTS' REPLY IN SUPPORT OF MOTION
TO DISMISS – 1 (No. 2:23-cv-01932-BAT)

**Perkins Coie LLP**
1201 Third Avenue, Suite 4900
Seattle, WA  98101-3099
Phone:  206.359.8000
Fax:  206.359.9000

**TABLE OF CONTENTS**

I. INTRODUCTION ............................................................................................. 6

II. DISCUSSION .................................................................................................. 6

    A. Mr. Hadnagy cannot avoid dismissal by relying on unpleaded allegations. ............................................................................................. 6

    B. Washington law applies to Mr. Hadnagy's claims..................................... 7

        1. The District of Nevada declined to rule on personal jurisdiction. ............................................................................... 7

        2. Mr. Hadnagy misapplies the "purposeful direction" test for personal jurisdiction................................................................... 8

    C. The alter ego claims against Mr. Moss should be dismissed. .................. 11

    D. The defamation claim should be dismissed. ............................................ 12

        1. The Ban Announcement is not defamatory.................................. 13

        2. The Transparency Report Update is not defamatory. .................. 13

        3. Mr. Hadnagy's Black-Hat-specific allegations in Paragraphs 78–79 and 112–113 should be dismissed...................................... 14

    E. The business disparagement claim should be dismissed. ........................ 15

    F. The tortious interference with contractual relations claim should be dismissed. .......................................................................................... 15

    G. The intentional interference with prospective contractual relations claim should be dismissed. ...................................................................... 17

    H. The equitable claims and injunctive relief "claim" should be dismissed. 17

III. CONCLUSION ............................................................................................... 18

DEFENDANTS' REPLY IN SUPPORT OF MOTION
TO DISMISS – 2 (No. 2:23-cv-01932-BAT)

**Perkins Coie LLP**
1201 Third Avenue, Suite 4900
Seattle, WA 98101-3099
Phone: 206.359.8000
Fax: 206.359.9000

## TABLE OF AUTHORITIES

Page(s)

**CASES**

*A. Darino & Sons, Inc. v. Dist. Council of Painters No. 33,*
    869 F.2d 514 (9th Cir. 1989) ................................................................................... 11

*Ashcroft v. Iqbal,*
    556 U.S. 662 (2009) .................................................................................................. 14

*Castleman v. Crowley,*
    2022 WL 980535 (D. Nev. Mar. 31, 2022) ............................................................... 11

*Ferrie v. Woodford Rsch., LLC,*
    2020 WL 3971343 (W.D. Wash. July 14, 2020) ...................................................... 12

*Freestream Aircraft (Bermuda) Ltd. v. Aero Law Grp.,*
    905 F.3d 597 (9th Cir. 2018) ................................................................................ 9, 10

*Grae-El v. City of Seattle,*
    2022 WL 721489 (W.D. Wash. Mar. 10, 2022) ......................................................... 7

*Hadnagy v. Moss,*
    2023 WL 114689 (E.D. Pa. Jan. 5, 2023) ................................................................... 7

*Henderson v. Hughes,*
    2017 WL 1900981 (D. Nev. May 9, 2017) ............................................................... 12

*Interactive Fitness, Inc. v. Basu,*
    2011 WL 1870597 (D. Nev. May 13, 2011) ....................................................... 11, 12

*Intertex, Inc. v. Dri-Eaz Prod., Inc.,*
    2013 WL 2635028 (W.D. Wash. June 11, 2013) ........................................................ 8

*J.J. Indus., LLC v. Bennett,*
    119 Nev. 269; 71 P.3d 1264 (2003) .......................................................................... 16

*Jaeger v. Howmedica Osteonics Corp.,*
    2016 WL 520985 (N.D. Cal. Feb. 10, 2016) ............................................................... 8

DEFENDANTS' REPLY IN SUPPORT OF MOTION
TO DISMISS – 3 (No. 2:23-cv-01932-BAT)

**Perkins Coie LLP**
1201 Third Avenue, Suite 4900
Seattle, WA  98101-3099
Phone: 206.359.8000
Fax: 206.359.9000

*Korte Constr. Co. v. State on Rel. of Bd. of Regents of Nev. Sys. of Higher Educ.*,
   137 Nev. 378; 492 P.3d 540 (2021).................................................................................18

*Mavrix Photo, Inc. v. Brand Techs., Inc.*,
   647 F.3d 1218 (9th Cir. 2011).................................................................................. 9, 10

*Miller v. City of Los Angeles*,
   2014 WL 12610195 (C.D. Cal. Aug. 7, 2014) .....................................................................15

*Motogolf.com, LLC v. Top Shelf Golf, LLC*,
   528 F. Supp. 3d 1168 (D. Nev. 2021).............................................................. 12, 17

*MP Med. Inc. v. Wegman*,
   151 Wash. App. 409 (2009)...................................................................................16

*Nelson v. Int'l Paint Co.*,
   716 F.2d 640 (9th Cir. 1983)................................................................................. 8

*Picciano v. Clark Cnty.*,
   2022 WL 36893 (W.D. Wash. Jan. 4, 2022) ........................................................... 7

*Schneider v. California Dep't of Corrections*,
   151 F.3d 1194 (9th Cir. 1998).............................................................................. 7

*Schwarzenegger v. Fred Martin Motor Co.*,
   374 F.3d 797 (9th Cir. 2004)................................................................................ 9

*Sentry Ins. v. Estrella Ins. Serv., Inc.*,
   2013 WL 2949610 (D. Nev. June 13, 2013).........................................................15

*United States v. Alvarez*,
   617 F.3d 1198 (9th Cir. 2010).............................................................................12

*Van Dusen v. Barrack*,
   376 U.S. 612 (1964) ............................................................................................. 7

*Walden v. Fiore*,
   571 U.S. 277 (2014)............................................................................................11

*Wealthy, Inc. v. Cornelia*,
   2023 WL 4803776 (D. Nev. July 27, 2023) .........................................................10

DEFENDANTS' REPLY IN SUPPORT OF MOTION
TO DISMISS – 4 (No. 2:23-cv-01932-BAT)

**Perkins Coie LLP**
1201 Third Avenue, Suite 4900
Seattle, WA  98101-3099
Phone:  206.359.8000
Fax:  206.359.9000

**STATUTES**

28 U.S.C. § 1404 .................................................................................................... 7

**FEDERAL RULES**

Federal Rules of Civil Procedure Rule 12 ................................................................ 6

DEFENDANTS' REPLY IN SUPPORT OF MOTION
TO DISMISS – 5 (No. 2:23-cv-01932-BAT)

**Perkins Coie LLP**
1201 Third Avenue, Suite 4900
Seattle, WA  98101-3099
Phone:  206.359.8000
Fax:  206.359.9000

## I.  INTRODUCTION

Mr. Hadnagy's Opposition to Defendants' Motion to Dismiss ("Opposition") fails to demonstrate that that his claims should survive dismissal under Federal Rule of Civil Procedure 12(b)(6). Mr. Hadnagy mistakenly suggests Nevada law should continue to govern his claims after transfer. But under either Washington or Nevada law, Mr. Hadnagy misapprehends all three elements of the "purposeful direction" personal jurisdiction test applicable to intentional tort claims like his.

Mr. Hadnagy's claims lack factual plausibility, too. His alter ego contentions against Mr. Moss lack factual support, and if upheld, would gut the protections of the corporate form. His defamation claim ignores that by his own pleading, *any* announcement of Mr. Hadnagy's ban would have caused his alleged harm—which means that it's the fact of the ban that's the problem, and that's not actionable. Mr. Hadnagy fails to allege the existence of any specific contracts that Def Con interfered with. Mr. Hadnagy fails to allege plausible facts that Def Con knew of these specific contracts or intended to interfere with these specific contracts through announcing Mr. Hadnagy's ban from the Event. His equitable claims are meritless because he voluntarily hosted the SE Village for *years* at the Event after Def Con rejected his payment request, and he accrued significant personal benefit by doing so. And his injunctive relief claim lacks any factual or legal basis.

The Court should dismiss Mr. Hadnagy's claims with prejudice under Rule 12(b)(6).

## II.  DISCUSSION

### A.  Mr. Hadnagy cannot avoid dismissal by relying on unpleaded allegations.

The Opposition is rife with unpleaded factual allegations to attempt to establish jurisdiction in Nevada, which is improper. For example, Mr. Hadnagy raises

DEFENDANTS' REPLY IN SUPPORT OF MOTION
TO DISMISS – 6 (No. 2:23-cv-01932-BAT)

Perkins Coie LLP
1201 Third Avenue, Suite 4900
Seattle, WA  98101-3099
Phone: 206.359.8000
Fax: 206.359.9000

unpleaded facts about how Def Con charges Event attendees; Event-related revenue; and conclusory assertions about how the Def Con website operates. *See* ECF 39 at 11–14, 17–18. But a party may not defeat a motion to dismiss by relying on new facts contained in an opposition. *See Schneider v. California Dep't of Corrections*, 151 F.3d 1194, 1197 n. 1 (9th Cir. 1998) (holding a court may not look to additional facts alleged in opposition to motion to dismiss when deciding motion to dismiss); *Grae-El v. City of Seattle*, No. C21-1678JLR, 2022 WL 721489, at *5 (W.D. Wash. Mar. 10, 2022) (same) *Picciano v. Clark Cnty.*, No. 3:20-CV-06106-DGE, 2022 WL 36893, at *2 (W.D. Wash. Jan. 4, 2022) (same).

Mr. Hadnagy already knows this, as the Hon. Wendy Beetlestone refused to consider the additional facts Mr. Hadnagy tried to assert in the Pennsylvania lawsuit. *See Hadnagy v. Moss*, No. CV 22-3060, 2023 WL 114689, at *2 (E.D. Pa. Jan. 5, 2023) (rejecting Mr. Hadnagy's attempt to add new facts to support jurisdiction because "these facts were not averred in the Complaint, [so] they have no import here"). This Court should also decline to consider Mr. Hadnagy's unpleaded facts in evaluating the sufficiency of his allegations.[1]

### B. Washington law applies to Mr. Hadnagy's claims.

#### 1. The District of Nevada declined to rule on personal jurisdiction.

Mr. Hadnagy relies on *Van Dusen v. Barrack*, 376 U.S. 612 (1964) for its general rule of applying the state law of the transferor court after a 28 U.S.C. § 1404(a) transfer, ignoring the exception to *Van Dusen*'s rule: Where the transferor court **lacked personal jurisdiction** over the defendant, the transferee court must apply its own law regardless of whether the transfer is based on Section 1404(a) or

---

[1] Moreover, even though Mr. Hadnagy has the burden of establishing *facts* to demonstrate jurisdiction, he failed to submit a declaration substantiating his alleged harm in Nevada or the existence of any alleged contracts here.

DEFENDANTS' REPLY IN SUPPORT OF MOTION
TO DISMISS – 7 (No. 2:23-cv-01932-BAT)

**Perkins Coie LLP**
1201 Third Avenue, Suite 4900
Seattle, WA  98101-3099
Phone:  206.359.8000
Fax:  206.359.9000

1  Section 1406(a). *See Nelson v. Int'l Paint Co.*, 716 F.2d 640, 643–44 (9th Cir. 1983);
2  *Intertex, Inc. v. Dri-Eaz Prod., Inc.*, No. C13-165-RSM, 2013 WL 2635028, at *2
3  (W.D. Wash. June 11, 2013); *Jaeger v. Howmedica Osteonics Corp.*, No. 15-CV-
4  00164-HSG, 2016 WL 520985, at *7 (N.D. Cal. Feb. 10, 2016).

The District Court of Nevada expressly declined to rule on Defendants' personal jurisdiction argument. ECF 21 at 1 n.1. The Court thus must "consider in the first instance whether personal jurisdiction existed" in Nevada and thus which state's law applies. *See Jaeger*, 2016 WL 520985, at *7.

*Jaeger v. Howmedica Osteonics Corp*. supports Defendants' choice-of-law analysis. In *Jaeger*, the case was transferred to the Northern District of California under Section 1404(a). *Id.* at *6. In deciding choice of law, the court noted that "[w]hile a transferor court need not have personal jurisdiction to transfer an action under § 1404(a), lack of personal jurisdiction precludes application of *Van Dusen* in the transferee court." *Id.* at *8 (citations omitted). The court held that *Van Dusen* was inapplicable because it "does not purport to review the ***basis*** for the transferor court's transfer order under § 1404(a)." *Id.* In other words, the court may decide that the transferor court lacked personal jurisdiction and "conclude that *Van Dusen* does not apply" without "reviewing" the transferor court's order. *Id*. The same goes here.

As Defendants explain in their Motion (ECF 37 at 14–18) and further below, Nevada lacks personal jurisdiction and the general rule of *Van Dusen* does not apply, so Washington law applies to Mr. Hadnagy's claims.

    **2.    Mr. Hadnagy misapplies the "purposeful direction" test for personal jurisdiction.**

The parties agree that the Ninth Circuit's "purposeful direction" test for personal jurisdiction requires the plaintiff to demonstrate that the defendant (1)

DEFENDANTS' REPLY IN SUPPORT OF MOTION
TO DISMISS – 8 (No. 2:23-cv-01932-BAT)

Perkins Coie LLP
1201 Third Avenue, Suite 4900
Seattle, WA 98101-3099
Phone: 206.359.8000
Fax: 206.359.9000

| | |
|---|---|
| 1 | committed an intentional act, (2) expressly aimed at the forum state, (3) causing harm that the defendant knows is likely to be suffered in the forum state. *Freestream Aircraft (Bermuda) Ltd. v. Aero Law Grp.*, 905 F.3d 597, 605 (9th Cir. 2018). But Mr. Hadnagy's analysis of all three elements misses the mark. |

committed an intentional act, (2) expressly aimed at the forum state, (3) causing harm that the defendant knows is likely to be suffered in the forum state. *Freestream Aircraft (Bermuda) Ltd. v. Aero Law Grp.*, 905 F.3d 597, 605 (9th Cir. 2018). But Mr. Hadnagy's analysis of all three elements misses the mark.

**Intentional act:** Mr. Hadnagy argues that the "intentional act" requirement is a minimum contacts analysis, where *any* availment of the forum state satisfies the requirement. That's incorrect. The "intentional act" must be the one that gives rise *to the tort claims at issue*. *See Schwarzenegger v. Fred Martin Motor Co.*, 374 F.3d 797, 806 (9th Cir. 2004) (describing the kinds of potentially tortious "intentional acts" that satisfy the requirement). Setting aside that they're unpleaded and thus should be disregarded, Mr. Hadnagy's discussions of Def Con's business operations in Nevada and the nature of the Def Con website are irrelevant to the "intentional act" analysis because none of those operations gave rise to the torts alleged here.

**Express aiming:** Mr. Hadnagy's suggestion that Def Con "expressly aimed" its conduct at Nevada, *see* ECF 39 at 11–14, fails for three reasons. **First,** Mr. Hadnagy once again relies on facts not alleged in the Complaint, such as facts about the nature and degree of interactivity of Def Con's website and the ostensible geographic scope of Def Con's economic ambitions. *See id.* at 12–13.

**Second,** Mr. Hadnagy relies on *Mavrix Photo, Inc. v. Brand Techs., Inc.*, 647 F.3d 1218 (9th Cir. 2011), but that case is distinguishable. *Mavrix* involves the alleged copyright infringement of photographs by a celebrity gossip website. 647 F.3d at 1221–22. The defendant made money by selling advertising space to third-party advertisers, and many of the advertisements targeted California residents. *Id.* at 1230. The court concluded this was part of the defendant's "continuous and deliberate exploitation" of the California market for its website, and the website's business

DEFENDANTS' REPLY IN SUPPORT OF MOTION
TO DISMISS – 9 (No. 2:23-cv-01932-BAT)

Perkins Coie LLP
1201 Third Avenue, Suite 4900
Seattle, WA 98101-3099
Phone: 206.359.8000
Fax: 206.359.9000

model was core to the defendant's profitability, which supported jurisdiction in California. *Id.*

But unlike the website in *Mavrix* targeting Californians, the Def Con website does **not** "continuously and deliberately" exploit Nevadans for commercial gain. Def Con does not sell advertising space on its website. ECF 15-1 at ¶ 6. Def Con's website does not target Nevada residents with advertisements. *Id.* Def Con does not track any visitors, including Nevada residents, to its website via IP address or otherwise. *Id.* at ¶ 9. Unlike in *Mavrix, t*he Def Con website is not "expressly aimed" at Nevadans with the goal of cultivating a Nevada-specific viewer base. It's just a website.

**Third,** Mr. Hadnagy fails to distinguish *Wealthy, Inc. v. Cornelia*, 2023 WL 4803776 (D. Nev. July 27, 2023) which holds that statements posted online with the intention of being globally accessible do not create personal jurisdiction in Nevada. ECF 39 at 12–13. Mr. Hadnagy relies on the *Wealthy* court's discussion of the defendant's lack of physical presence in Nevada; he juxtaposes this against Def Con's alleged "systematic" presence in Nevada in arguing there is jurisdiction there. *See id.* at 13. But the *Wealthy* court was analyzing whether the defendant committed the allegedly tortious conduct while *physically within the state*. *See* 2023 WL 4803776, at *3–4. Of course, a defendant that commits an alleged tort while physically within a state is subject to jurisdiction within that state. *See Freestream Aircraft (Bermuda) Ltd.*, 905 F.3d at 600. Def Con acknowledged as much in its Motion. *See* ECF 37 at 16–17. But there is no allegation that Mr. Moss posted the Ban Announcement or the Transparency Report Update while physically within the State of Nevada, so the *Wealthy* court's discussion of the defendant's lack of physical presence only *confirms* there is no personal jurisdiction in Nevada.

**Harm likely to be suffered in the forum state**: Mr. Hadnagy asserts that Def Con knew the harm would be caused in Nevada because it "is the only place where

DEFENDANTS' REPLY IN SUPPORT OF MOTION
TO DISMISS – 10 (No. 2:23-cv-01932-BAT)

Perkins Coie LLP
1201 Third Avenue, Suite 4900
Seattle, WA  98101-3099
Phone:  206.359.8000
Fax:  206.359.9000

1 the Event is held." ECF 39 at 13. This is flawed for two reasons. **First**, Mr. Hadnagy
2 once again conflates where the Event *physically occurs* with where Def Con allegedly
3 knew he would *likely experience harm* from Def Con's allegedly defamatory
4 statements. But the latter does not follow from the former. And as Def Con explained
5 at length in its Motion (ECF 37 at 27–28), Mr. Hadnagy has both failed to identify
6 any Nevada-specific contracts with which Def Con tortiously interfered and failed to
7 plead plausible facts that Def Con was aware of any such contracts. **Second,** Mr.
8 Hadnagy's position is a foreseeability standard that the Ninth Circuit has rejected
9 for nearly a decade. *See Castleman v. Crowley*, No. 3:21-cv-00523-MMD-VPC, 2022
10 WL 980535, at *3 (D. Nev. Mar. 31, 2022) ("Since *Walden* [*v. Fiore*, 571 U.S. 277
11 (2014)], the Ninth Circuit has rejected that a foreseeable injury that would occur in
12 the forum state, without more, is sufficient to establish specific jurisdiction.") For a
13 State to exercise jurisdiction consistent with due process, the defendant's suit-related
14 conduct must create a substantial connection with the forum state. *Walden*, 571 U.S.
15 at 284. Def Con's allegedly defamatory statements on its globally accessible website—
16 which were not targeted at Nevada residents, did not involve a Nevada resident, did
17 not encourage Nevada residents to read these postings, did not mention the state of
18 Nevada, and were not posted within the state of Nevada—do not create personal
19 jurisdiction in Nevada. ECF 37 at 17–18.

20     **C.**     **The alter ego claims against Mr. Moss should be dismissed.**

21     Mr. Hadnagy cites out-of-district cases in arguing that the heightened pleading
22 standard of Rule 9(b) does not apply to alter ego claims. ECF 39 at 22:5–6. The
23 Western District of Washington, the District of Nevada, and the Ninth Circuit hold
24 otherwise. "[F]raud is a necessary element of the alter ego doctrine." *Interactive*
25 *Fitness, Inc. v. Basu*, No. 2:09-CV-01145-KJD, 2011 WL 1870597, at *6 (D. Nev. May
26 13, 2011) (citing *A. Darino & Sons, Inc. v. Dist. Council of Painters No. 33*, 869 F.2d

DEFENDANTS' REPLY IN SUPPORT OF MOTION
TO DISMISS – 11 (No. 2:23-cv-01932-BAT)

**Perkins Coie LLP**
1201 Third Avenue, Suite 4900
Seattle, WA 98101-3099
Phone: 206.359.8000
Fax: 206.359.9000

514, 519 (9th Cir. 1989)); *see also Ferrie v. Woodford Rsch., LLC*, No. 3:19-CV-05798-RBL, 2020 WL 3971343, at *6 n.4, *8 (W.D. Wash. July 14, 2020). And even Mr. Hadnagy's suggestion that the facts of fraud are within Def Con's "exclusive control" still require Mr. Hadnagy to state the *factual basis* for his belief of wrongdoing. *See Motogolf.com, LLC v. Top Shelf Golf, LLC*, 528 F. Supp. 3d 1168, 1174 (D. Nev. 2021). He has failed to do so under either Rule 9(b)'s heightened standard or the notice pleading standard of Rule 8(a). Mr. Hadnagy's rote recitation of the elements of alter ego does not suffice. *See Henderson v. Hughes*, No. 2:16-cv-01837-JAD-CWH, 2017 WL 1900981, at *4 (D. Nev. May 9, 2017).

"The doctrine of piercing the corporate veil, is the rare exception, applied in the case of fraud or certain other exceptional circumstances." *Basu,* 2011 WL 1870597, at *4 (citations omitted). There are no such circumstances here.

### D. The defamation claim should be dismissed.

Mr. Hadnagy fails to engage with Def Con's arguments on causation, waving them away as "meanderings." ECF 39 at 17:17. They are anything but. A threshold question in a defamation case is whether the allegedly false speech at issue "is the *proximate cause* of an irreparable harm to another's reputation." *United States v. Alvarez*, 617 F.3d 1198, 1207 (9th Cir. 2010) (emphasis added). According to Mr. Hadnagy's own allegations, *any* announcement of Mr. Hadnagy's permanent ban from the Event—no matter the substance—would have caused third parties to speculate and assume that Mr. Hadnagy was a sexual predator since only sexual predators had been previously named in lifetime bans. *See* Compl. ¶¶ 66–67. And as Def Con explained in its Motion (ECF 37 at 22), if the same harm would have resulted to Mr. Hadnagy from an unequivocally factual statement like, "Chris Hadnagy has been permanently banned from Def Con," then the **alleged "defamatory" statements in this case didn't cause Mr. Hadnagy's harm**.

DEFENDANTS' REPLY IN SUPPORT OF MOTION
TO DISMISS – 12 (No. 2:23-cv-01932-BAT)

Perkins Coie LLP
1201 Third Avenue, Suite 4900
Seattle, WA 98101-3099
Phone: 206.359.8000
Fax: 206.359.9000

1  Mr. Hadnagy's failure to address the lack of causation for his defamation claim
2  is reason enough to dismiss it. Moreover, Mr. Hadnagy's arguments on the merits
3  fail, as addressed below.

### 1. The Ban Announcement is not defamatory.

In an implicit concession that the Ban Announcement *itself* is not defamatory, Plaintiff tries to bootstrap his argument by pointing to other context in the Transparency Report, like Def Con's processes for investigating Code of Conduct violations or under what circumstances Def Con will permanently ban someone from attending the Event. ECF 39 at 15–16. But these additional statements in the Transparency Report were made **months** after the Ban Announcement. *Compare* ECF 37-3 at 4 (February 9, 2022, initial Ban Announcement), *with* ECF 37-3 at 2–4 (July 28, 2022, overview of Def Con's policies and approach to Code of Conduct violations). Yet Plaintiff alleges the Ban Announcement, and "immediate firestorm" that ensued, is the reason he lost business. *See* Compl. ¶¶ 66–73. This means the additional context that Mr. Hadnagy claims is crucial for understanding the full import of Def Con's "defamation" **wasn't actually considered by anyone** before they decided to cut ties with Mr. Hadnagy. *See* ECF 39 at 15 (bolding and emphasizing language from the Transparency Report that "clarifies the defamatory significance of [the ban]" but was not published until July 2022). Mr. Hadnagy's reliance on statements made months after his alleged harm underscores the lack of defamatory character to the Ban Announcement (and confirms no causation).

### 2. The Transparency Report Update is not defamatory.

Contrary to Mr. Hadnagy's assertions, there is nothing in the Transparency Report Update that can reasonably be construed as "ratif[ying] the public's interpretation that the Ban resulted from sexual misconduct." ECF 39 at 16–17; *see also* ECF 37 at 24:15–25 (explaining that the Transparency Report Update does not

DEFENDANTS' REPLY IN SUPPORT OF MOTION
TO DISMISS – 13 (No. 2:23-cv-01932-BAT)

Perkins Coie LLP
1201 Third Avenue, Suite 4900
Seattle, WA 98101-3099
Phone: 206.359.8000
Fax: 206.359.9000

reference sexual conduct or refer to gender identifiers, and "harassment" under the Code of Conduct carries no sexual denotation). As for the Transparency Report Update's statement related to Black Hat's ban of Mr. Hadnagy, the Complaint alleges that Black Hat banned Mr. Hadnagy, so Def Con is perplexed as to how this could be a false statement of fact. Compl. ¶ 76. And in any case, Mr. Hadnagy concedes that it was the fact of the public ban that injured him, not the substance of the Ban Announcement or the Transparency Report Update. *See* ECF 39 at 17 ("The only culpable parties here are Defendants, and they are such because no one else, not even Black Hat, *issued any alleged 'public ban.'*") (emphasis added)).

### 3. Mr. Hadnagy's Black-Hat-specific allegations in Paragraphs 78–79 and 112–113 should be dismissed.

Mr. Hadnagy's response in support of his Black-Hat-related allegations unintentionally emphasizes their inadequacy. ECF 39 at 17–18; *see* ECF 37 at 25–26. The Complaint lacks plausible factual content that would "allow the Court to draw the reasonable inference that the defendant" engaged in the conduct complained of— here, that Mr. Moss made a series of new defamatory statements to Black Hat's representatives. *See Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). There is nothing more than Mr. Hadnagy's assertion that he has been "informed" these statements were made. Compl. ¶ 78; ECF 39 at 17–18. There is nothing from which the Court can surmise to whom, when, how, or where Mr. Moss made these alleged statements. There is nothing from which the Court can determine who told *Mr. Hadnagy* that Mr. Moss made these alleged statements. Mr. Hadnagy's allegations are functionally identical to the "information and belief" pleading that the court rejected in *Miller v. City of Los Angeles*:

> [The plaintiff] is informed, believes, and alleges that instead of undertaking the unpleasant task of taking disciplinary action against senior African-American female attorneys in his office [who accused the

DEFENDANTS' REPLY IN SUPPORT OF MOTION
TO DISMISS – 14 (No. 2:23-cv-01932-BAT)

Perkins Coie LLP
1201 Third Avenue, Suite 4900
Seattle, WA 98101-3099
Phone: 206.359.8000
Fax: 206.359.9000

plaintiff of discrimination], [the defendant] chose to lobby the Mayor's Office to have [the plaintiff] terminated from his employment[.]

*Miller v. City of Los Angeles*, No. CV 13-5148-GW-CWX, 2014 WL 12610195, at *5 (C.D. Cal. Aug. 7, 2014).

The *Miller* court held that this was too conclusory to withstand a motion to dismiss because "a plaintiff cannot avoid Rule 12 simply by slapping the 'information and belief' label onto speculative or conclusory allegations." *Id.* The outcome is the same here. The Black-Hat-specific allegations are not plausibly pleaded and should be dismissed from Mr. Hadnagy's defamation claim.

### E. The business disparagement claim should be dismissed.

Mr. Hadnagy does not explain how Def Con's public statements impugned the quality of Mr. Hadnagy's goods or services to his clients, as a claim for business disparagement under Nevada law requires. *See* ECF 39 at 18; *see also Sentry Ins. v. Estrella Ins. Serv., Inc.*, No. 2:13-CV-169 JCM (GWF), 2013 WL 2949610, at *2 (D. Nev. June 13, 2013) (business disparagement claim must involve statements "directed toward the quality of the individual's products or services"). Mr. Hadnagy instead simply parrots the allegations he advances in support of his defamation claim. This is inadequate, and the claim should be dismissed.

### F. The tortious interference with contractual relations claim should be dismissed.

The Opposition identifies three categories of contracts that Def Con allegedly interfered with: (1) Mr. Hadnagy's ostensible contract with Black Hat for training services (Compl. ¶¶ 74–75, 136–37); (2) Mr. Hadnagy's sponsorships at the Event (*id.* at ¶¶ 50, 132–33); and (3) Mr. Hadnagy's ancillary business contracts that make up his core business (*id.*). ECF 39 at 19:8–11. Mr. Hadnagy's tortious interference claim as to these three categories of contracts fails for multiple reasons.

DEFENDANTS' REPLY IN SUPPORT OF MOTION
TO DISMISS – 15 (No. 2:23-cv-01932-BAT)

Perkins Coie LLP
1201 Third Avenue, Suite 4900
Seattle, WA  98101-3099
Phone:  206.359.8000
Fax:  206.359.9000

**Black Hat "contract":** First, a valid and existing contract is required for a tortious interference claim. *J.J. Indus., LLC v. Bennett*, 119 Nev. 269, 274, 71 P.3d 1264 (2003); *MP Med. Inc. v. Wegman*, 151 Wash. App. 409, 425 (2009). Mr. Hadnagy fails to allege that he had a valid and existing contract with Black Hat for training services as of February 9, 2022, when Defendants made the allegedly defamatory Ban Announcement. Mr. Hadnagy only alleges that he entered into such agreements with Black Hat annually, not that one of these agreements was actually in place and that Black Hat thereafter terminated it. Compl. ¶ 137. Second—and setting aside his conclusory allegations in Paragraphs 147 to 149 in support of an *entirely different* claim for relief—Mr. Hadnagy fails to plead plausible facts that Mr. Moss knew of any such contract with Black Hat. Mr. Moss's alleged "directorship" at Black Hat is not enough, as Mr. Hadnagy has failed to allege what such a "directorship" means (e.g., whether it's a title with substantive responsibilities or a mere honorific) or why a "directorship" would provide a concomitant knowledge of Black Hat's contracts with conference presenters.

**Sponsorships and ancillary business contracts:** Mr. Hadnagy's proposition is that because Mr. Moss is the founder of Def Con, and Def Con is the epicenter of the information security industry, Mr. Moss personally knows of the existence of *each and every one* of Mr. Hadnagy's contracts—with not just his Event sponsors, but all of Mr. Hadnagy's ancillary business partners besides. ECF 39 at 19–20. This is not plausible. Moreover, Mr. Hadnagy still hasn't identified any of the specific contracts allegedly interfered with, which is an independent reason to dismiss his claims.[2] *See* ECF 39 at 27–28.

---

[2] And as to both the Black Hat "contract" and the sponsorships/ancillary business contracts, Mr. Hadnagy's explanation for Def Con's intent in interfering with these contracts doesn't make sense. Def Con points the Court to Def Con's intent-related arguments at ECF 37 at 29:9–30:14 rather than reprising them here.

DEFENDANTS' REPLY IN SUPPORT OF MOTION
TO DISMISS – 16 (No. 2:23-cv-01932-BAT)

Perkins Coie LLP
1201 Third Avenue, Suite 4900
Seattle, WA  98101-3099
Phone:  206.359.8000
Fax:  206.359.9000

### G. The intentional interference with prospective contractual relations claim should be dismissed.

The Court should dismiss this claim for the simple reason that Mr. Hadnagy fails to identify a single *specific* prospective customer that Def Con interfered with, and the law obligates him to do so.[3] *See* ECF 37 at 31:1–14. Mr. Hadnagy's reliance on *Motogolf.com, LLC v. Top Shelf Golf, LLC*, 528 F. Supp. 3d 1168 (D. Nev. 2021) is misplaced. *See* ECF 39 at 20. The *Motogolf.com* court predicted that the Supreme Court of Nevada would allow a plaintiff to allege a "certain class of prospective customers without identifying them specifically" when the defendant's alleged wrongdoing had prevented those customers from *learning of the plaintiff's existence*. *See id.* The *Motogolf.com* case does not support the idea that Mr. Hadnagy may refuse to identify the *specific, known counterparties* with whom Mr. Hadnagy was allegedly negotiating. *See, e.g.*, Compl. ¶ 145. Mr. Hadnagy's Opposition also falls short by asserting—without citing to *any* allegations in the Complaint—that he "identified groups of potential customers." ECF 39 at 21:1–3. That is insufficient.

Separately, Mr. Hadnagy again fails to plead plausible facts that (1) Def Con knew of any of these alleged prospective relations, and (2) that Def Con published the statement that Mr. Hadnagy violated Def Con's Code of Conduct and would be banned with the requisite intent to interfere with these prospective relations. *See* ECF 37 at 31–33 (setting forth Def Con's unrebutted arguments on these points). This claim should be dismissed.

### H. The equitable claims and injunctive relief "claim" should be dismissed.

Mr. Hadnagy's assertion that his unjust enrichment claim seeks payment for allegedly growing the Event, instead of rendering services at the Event, is a

---

[3] Except for Black Hat. But Mr. Hadnagy's identification of his prospective contractual relationship with Black Hat fails because Mr. Moss did not know about it, as explained in Section F above, and for the additional reasons discussed in Section G.

DEFENDANTS' REPLY IN SUPPORT OF MOTION
TO DISMISS – 17 (No. 2:23-cv-01932-BAT)

Perkins Coie LLP
1201 Third Avenue, Suite 4900
Seattle, WA 98101-3099
Phone: 206.359.8000
Fax: 206.359.9000

distinction without a difference. ECF 39 at 21:22–23. For an enrichment to be inequitable to retain, the person conferring the benefit must have a reasonable expectation of payment *and* the circumstances are such that equity and good conscience require payment for the conferred benefit. *Korte Constr. Co. v. State on Rel. of Bd. of Regents of Nev. Sys. of Higher Educ.*, 137 Nev. 378, 381, 492 P.3d 540 (2021). Mr. Hadnagy continued to host the SE Village for years after Def Con rejected his request for payment in 2012, so Mr. Hadnagy could have no "reasonable" expectation of payment. ECF 37 at 34. What's more, Mr. Hadnagy concedes that he derived extensive personal benefit by doing so. ECF 39 at 34–35; Compl. ¶¶ 47, 50, 52, 133. He has no colorable equitable claim. And because he does not, the quantum meruit claim should be dismissed, too. *See* ECF 39 at 35.

Finally, as for the injunctive relief claim, Mr. Hadnagy (correctly) does not dispute the clear case law that injunctive relief is a remedy, not a separate cause of action. *See* ECF 37 at 36:5–11. The injunctive relief claim should be dismissed.

### III. CONCLUSION

For the foregoing reasons, Defendants respectfully request that the Court dismiss the claims against Defendants with prejudice.

I certify that this motion contains 4,046 words, in compliance with the Local Civil Rules.

DATED this 22nd day of February 2024.

*David A. Perez*
David A. Perez, WSBA No. 43959
**PERKINS COIE LLP**
1201 Third Avenue, Suite 4900
Seattle, WA 98101-3099
Telephone: 206.359.8000
Email: DPerez@perkinscoie.com

DEFENDANTS' REPLY IN SUPPORT OF MOTION
TO DISMISS – 18 (No. 2:23-cv-01932-BAT)

Perkins Coie LLP
1201 Third Avenue, Suite 4900
Seattle, WA 98101-3099
Phone: 206.359.8000
Fax: 206.359.9000

Matthew J. Mertens (Admitted Pro Hac Vice)
**PERKINS COIE LLP**
1120 N.W. Couch Street 10th Floor
Portland, OR 97209-4128
Telephone: 503.727.2000
Email: MMertens@perkinscoie.com

Lauren A. Trambley (Admitted Pro Hac Vice)
**PERKINS COIE LLP**
505 Howard Street, Suite 1000
San Francisco, CA 94105-3204
Telephone: 415.344.7000
Email: LTrambley@perkinscoie.com

*Attorneys for Defendants
Jeff Moss and DEF CON Communications,
Inc.*

DEFENDANTS' REPLY IN SUPPORT OF MOTION
TO DISMISS – 19 (No. 2:23-cv-01932-BAT)

**Perkins Coie LLP**
1201 Third Avenue, Suite 4900
Seattle, WA 98101-3099
Phone: 206.359.8000
Fax: 206.359.9000