UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| CHRISTOPHER J. HADNAGY, an individual; and SOCIAL-ENGINEER, LLC, a Pennsylvania limited liability company,<br><br>　　　　　　　　Plaintiffs,<br><br>　　v.<br><br>JEFF MOSS, an individual; DEF CON COMMUNICATIONS, INC., a Washington corporation; and DOES 1-10; and ROE ENTITIES 1-10, inclusive,<br><br>　　　　　　　　Defendants. | CASE NO. 2:23-c-v-01932-BAT<br><br>**ORDER DENYING PLAINTIFFS' MOTION TO AMEND** |

Plaintiffs Christopher J. Hadnagy and Social-Engineer, LLC request leave to file an amended complaint to add claims of defamation by implication and invasion of privacy by false light. Dkt. 49; Dkt. 49-2 (Proposed Amended Complaint). Plaintiffs also seek to join Jeff Moss, a previously dismissed defendant. Defendant Def Con opposes the motion. Dkt. 50. Plaintiffs submitted a reply. Dkt. 51. For the reasons stated herein, the motion to amend is denied.

BACKGROUND

On August 1, 2022, Plaintiffs filed this lawsuit in the Eastern District of Pennsylvania. *See Hadnagy v. Moss*, No. 2:22-cv-03060-WB, Dkt. 1. On January 5, 2023, Judge Wendy Beetlestone dismissed the lawsuit for lack of personal jurisdiction. *Hadnagy v. Moss*, No. CV 22-3060, 2023 WL 114689, at *7 (E.D. Pa. Jan. 5, 2023). On August 9, 2023, Plaintiffs filed this lawsuit in Nevada state court, which was functionally identical to the one Judge Beetlestone

dismissed in January 2023. On August 29, 2023, Defendants timely removed the lawsuit to the District of Nevada under the diversity and removal statutes. Dkt. 1. Defendants then filed a motion to dismiss, or in the alternative, a motion to transfer to the Western District of Washington. Dkt. 13, 15. On December 13, 2023, the District of Nevada granted Defendants' motion to transfer to the Western District of Washington but did not reach the merits of the dismissal arguments. Dkt. 21. On January 18, 2024, Defendants filed their renewed motion to dismiss. Dkt. 37. The parties fully briefed the motion to dismiss on February 22, 2024, and the matter was submitted to the Court. Dkt. 40.

On March 28, 2024, the Court granted in part and denied in part Defendants' motion to dismiss. Dkt. 44 (the "March 28, 2024 Order"). The Court dismissed Plaintiffs' alter ego, business disparagement, unjust enrichment, quantum meruit and injunction claims *without* leave to amend. *Id*. at 23. The Court also dismissed Plaintiffs' claims of defamation (based on "Injurious Falsehoods" by Defendant Moss); tortious interference with contractual relations; and prospective business relations claims *with* leave to amend **on or before April 22, 2024**." *Id*.

In granting the partial dismissal, the Court stated "the allegations of additional injurious falsehoods are without plausible factual content. To proceed on a claim of defamation, Plaintiffs must plausibly plead the alleged 'false and defamatory' statements, *i.e.* to whom, when and where these statements were made." Dkt. 44 at 16. Plaintiffs were granted leave to "to plead additional factual allegations to support this claim," *see id.*, but chose not to do so.

Thus, following the March 28, 2024 Order and Plaintiffs' failure to file an amended complaint consistent with that Order, the only surviving claim is Plaintiffs' defamation claim against Def Con based on the Transparency Report and the Update. *Id*. Def Con filed its Answer to that claim on May 6, 2024. Dkt. 46.

ORDER DENYING PLAINTIFFS' MOTION
TO AMEND - 2

The Court's Scheduling Order allowed for the amendment of pleadings by June 28, 2024. Dkt. 45. However, to the extent Plaintiffs seek to amend their pleadings to include claims based on the previously dismissed claims of "Injurious Falsehoods" by Jeff Moss, and any claims for tortious interference with contractual relations and prospective business relations, the Court's Order of March 28, 2024 controls. Plaintiffs missed the Court's deadline to cure the defects in their complaint regarding those claims; they provide no explanation for missing the deadline; and, did not seek leave to extend the deadline. In addition, Plaintiffs were granted leave to provide a factual basis for the dismissed claims – they were not granted leave to file different claims based on the same conclusory allegations previously found to be legally insufficient.

Three months after the March 28, 2024 Order, Plaintiffs now seek leave to file an amended complaint "to provide clarity and specifically include a cause of action for "Invasion of Privacy by False Light." Dkt. 49. Plaintiffs assert the proposed additional cause of action is "based on the same facts as Plaintiffs' defamation claim and is brought against the same Defendants." *Id.* at 1.

## LEGAL STANDARD

Although leave to amend should be liberally granted, "leave to amend is not to be granted automatically." *Jackson v. Bank of Hawaii*, 902 F.2d 1385, 1387 (9th Cir. 1990). It is within the Court's discretion to grant or deny leave to amend. *Acri v. Int'l Ass'n of Machinists*, 781 F.2d 1393, 1398 (9th Cir. 1986). Courts consider five factors: "(1) bad faith, (2) undue delay, (3) prejudice to the opposing party, (4) futility of amendment; and (5) whether plaintiff has previously amended his complaint." *Allen v. City of Beverly Hills*, 911 F.2d 367, 373 (9th Cir. 1990). Not all factors merit equal weight, and it prejudice to the opposing party that carries the greatest weight. *Eminence Cap., LLC v. Aspeon, Inc.*, 316 F.3d 1048, 1052 (9th Cir. 2003).

DISCUSSION

A.     Previously Dismissed Claims

Before considering whether the five-factor analysis supports granting Plaintiffs leave to file the Proposed Amended Complaint, the Court must determine if the proposed amendment seeks to include factual allegations, claims, and/or parties that this Court previously dismissed.

Jeff Moss, as an agent of Def Con, posted the Transparency Report and Update to Def Con's website. The Court previously found Defendants had failed to plead factual allegations sufficient to pierce the corporate veil and hold Mr. Moss personally liable. *See* Dkt. 44 at 12 ("Plaintiffs fail to allege sufficient facts to state a prima facie case of alter ego liability under either Rule 8(a)'s notice standard or Rule 9(b)'s heightened pleading standard applicable to this claim"). As this Court previously noted, "[t]he corporate cloak is not lightly thrown aside." *Id.* (citing *Grayson v. Nordic Const. Co.*, 92 Wash. 2d 548, 553 (1979) (absent fraud or manifest injustice, "the corporation's separate entity should be respected")). Despite this holding, Plaintiffs have again included Mr. Moss as an individual defendant but have failed to plead factual allegations sufficient to pierce the corporate veil.

The Court also dismissed Plaintiffs' defamation claim based on Defendant Moss's alleged "Injurious Falsehoods" and allegations relating to Black Hat because Plaintiffs failed to allege the "whom, when, and where these statements were made." *Id.* at 15. Although the Court granted Plaintiffs leave to amend this claim by April 22, 2024, Plaintiffs failed to do so. Nonetheless, Plaintiffs' Proposed Amended Complaint contains several references to the "Injurious Falsehoods" and the Black Hat Convention. *See, e.g.*, Dkt. 49-2 ¶¶ 66–67, 69–70, 77. In other paragraphs of the Proposed Amended Complaint, Plaintiffs simply swap the conclusory words "Injurious Falsehoods" with "Transparency Report and Update." *Id.* ¶¶ 83, 100–01. But

these allegations were dismissed as insufficiently pled and repackaging them as tied to the Transparency Report and Update does not cure the legal deficiencies of Plaintiffs' pleading.

The Court also dismissed Plaintiffs' claims for contractual interference with leave to amend by April 22, 2024. Dkt. 44 at 17–20. Here again, Plaintiffs failed to amend this claim by the Court's deadline. Despite the dismissal, Plaintiffs' Proposed Amended Complaint contains several allegations that Def Con "wrongfully interfered" with Plaintiffs' contractual relations and that clients, and prospective clients, terminated contracts because of the defamation. *See*, *e.g.*, Dkt. 49-2 ¶¶ 53, 61–63, 69–70, 74, 77, 79, 93, 116–17.

Plaintiffs were given ample opportunity to amend their complaint and cure the pleading deficiencies noted in the Court's March 28, 2024 Order. They chose not to do so, and these factual allegations and legal theories are no longer part of the case.

B.  Five Factor Analysis

As separate grounds for denying leave to amend, all five factors considered on a motion for leave to amend weigh against granting Plaintiffs' Proposed Amended Complaint.

1.  Undue Delay

"Undue delay is a valid reason for denying leave to amend." *Contact Lumber Co. v. P.T. Moges Shipping Co.*, 918 F.2d 1446, 1454 (9th Cir. 1990) (*affirming* district court's denial of leave to amend). "[T]he Court evaluates the time that has passed between the original pleading and the proposed amendment." *Abalos v. Bronchick*, No. C07-844RSL, 2008 WL 1929893, at *2 (W.D. Wash. Apr. 28, 2008).

Plaintiffs timely filed their motion to amend by the deadline set in the Court's Scheduling Order. Dkt. 49. However, in assessing timeliness and undue delay, courts look not merely to whether a motion was filed within the time allotted in a scheduling order. Rather, courts must

also inquire "whether the moving party knew or should have known the facts and theories raised by the amendment in the original pleading." *Jackson*, 902 F.2d at 1388. An eight-month delay between the time of obtaining a relevant fact and seeking leave to amend is unreasonable. *See Texaco, Inc. v. Ponsoldt*, 939 F.2d 794, 799 (9th Cir.1991) (citing *Jackson*, 902 F.2d at 1388); *Abalos v. Bronchick*, 2008 WL 1929893, at *2 (W.D. Wash. Apr. 28, 2008) (denying leave to amend after nine-month delay).

Plaintiff filed this action on August 9, 2023, but did not move to amend to add the additional causes of action purportedly based on the same set of facts already set forth in the original complaint until nearly one year later, on June 28, 2024. Dkt. 49. This delay is unreasonable. In *Abalos*, the plaintiff did not move to amend until nine months after filing the original pleading although the plaintiff had expressed an intent to file an amended complaint in an earlier email to the defendant. *Abalos*, 2008 WL 1929893, at *2. Finding plaintiff had unduly delayed bringing these additional claims, despite clearly intending to do so earlier, the court denied leave to amend. *Id*. Similarly, Plaintiff Hadnagy "expressed [his] intent to file an amended complaint to add a claim for false light" in the parties' Joint Status Report filed on March 1, 2024. Dkt. 41 at 1. Yet, Plaintiffs still waited another four months to seek leave to amend.

Of greater significance to this analysis is the fact Plaintiffs knew of these factual allegations and theories when they filed their original complaint almost two years ago, on August 9, 2023. *Jackson*, 902 F.2d at 1388 ("Relevant to evaluating the delay issue is whether the moving party knew or should have known the facts and theories raised by the amendment in the original pleading."); *see also Wise v. Washington State Dep't of Corr.*, No. C05 5810 FDB/KLS, 2006 WL 3694442, at *1 (W.D. Wash. Dec. 13, 2006) ("Leave to amend has also been denied

ORDER DENYING PLAINTIFFS' MOTION
TO AMEND - 6

when the moving party knew or should have known the facts upon which the amendment is based when drafting the original pleading, but did not include them in the original pleading."). The facts forming the basis of Plaintiffs' proposed claims of defamation by implication and false light are the very same facts forming the basis of Plaintiffs' original defamation claim. *Compare* Dkt. 49-2 at ¶¶ 85–109, with *id*. ¶¶ 110–22. Thus, Plaintiffs should have brought these proposed additional claims when they filed their original complaint; particularly, as Plaintiffs included a false light claim on identical facts in the initial Pennsylvania lawsuit nearly two years ago.

Finally, a party's failure to explain the reason for its delay also militates against amendment. *See Guild Mortg. Co. LLC v. CrossCountry Mortg. LLC*, No. C21-1376-JCC-MLP, 2022 WL 1078574, at *2 (W.D. Wash. Apr. 11, 2022) (citing *Lockheed Martin Corp. v. Network Sols., Inc.*, 194 F.3d 980, 986 (9th Cir. 1999)).

Plaintiffs provide no explanation for their delay in seeking the proposed amendment. Plaintiffs knew of these claims at the outset of this action; had expressed an intent to file an amended complaint several months ago but did not do so; included a false light claim on identical facts in the initial Pennsylvania lawsuit nearly two years ago; and failed to take advantage of several opportunities over the past two years.

The Court finds Plaintiffs' undue delay weighs against granting leave to amend.

2.      Previous Amendments

"A district court may deny a plaintiff leave to amend if . . . the plaintiff had several opportunities to amend its complaint and repeatedly failed to cure deficiencies." *Telesaurus VPC, LLC v. Power*, 623 F.3d 998, 1003 (9th Cir. 2010). After granting in part and denying in part the Motion to Dismiss, the Court provided Plaintiffs an opportunity to amend the complaint to cure deficiencies on or before April 22, 2024. *See* Dkt. 44. Plaintiffs failed to file an amended

complaint within the deadline, did not seek an extension of the deadline, and provide no reason for not doing so. *Id*.

The Court finds Plaintiffs' failure to file an amended complaint when previously granted leave to do so weighs against granting leave to amend.

### 3. Prejudice

"Expense, delay, and wear and tear on individuals and companies count toward prejudice." *Kaplan v. Rose*, 49 F.3d 1363, 1370 (9th Cir. 1994), *overruled on other grounds by City of Dearborn Heights Act 345 Police & Fire Ret. Sys. v. Align Tech., Inc.*, 856 F.3d 605 (9th Cir. 2017). The parties have been involved in this litigation for two years, during which time Defendants have vigorously defended this lawsuit and the prior lawsuit brought by Plaintiffs, which was dismissed. *See Hadnagy*, 2023 WL 114689, at *1. Defendants have incurred significant expenses relating to three motions to dismiss and a motion to transfer. *See* Dkt. 13, 15, 37; *see also Hadnagy*, 2023 WL 114689, at *1. On the other hand, Plaintiffs have had several years and lawsuits within which to bring these proposed claims.

Although Plaintiffs claim the proposed amendment will not add to the parties' litigation burden, defamation by implication and false light advance new legal theories that require proof of different facts. *See Jackson*, 902 F.2d at 1387–88 (holding that an amendment prejudices the other party when it would require additional discovery because it "advance[s] different legal theories and require[s] proof of different facts"); *see also id*. ("Putting the defendants through the time and expense of continued litigation on a new theory, with the possibility of additional discovery, would be manifestly unfair and unduly prejudicial.").

While the proposed claims are akin to defamation, Washington courts have recognized they are distinct causes of action requiring different elements and which allow for recovery of

ORDER DENYING PLAINTIFFS' MOTION
TO AMEND - 8

different damages. *Seaquist v. Caldier*, 8 Wash. App. 2d 556, 564 (2019). For instance, a claim of defamation by implication requires proof of all the elements of defamation plus "with respect to the element of falsity that the communication left a false impression that would be contradicted by the inclusion of omitted facts." *Mohr v. Grant*, 153 Wash. 2d 812, 827 (2005). And, "[f]alse light differs from defamation in that it focuses on compensation for mental suffering, rather than reputation. A false light claim arises when 'someone publicizes a matter that places another in a false light if (a) the false light would be highly offensive to a reasonable person and (b) the actor knew of or recklessly disregarded the falsity of the publication and the false light in which the other would be placed.'" *Corey v. Pierce Cnty.*, 154 Wash. App. 752, 762 (2010) (citation omitted).

Thus, the Proposed Amended Complaint seeks to add claims comprised of different elements, requiring proof of different facts, relying on different legal theories (harm to reputation versus mental suffering) and allowing for recovery of different damages. Defendants report the parties are already engaged in discovery focused on the surviving claim of defamation and the deposition of Def Con is scheduled for July 31, 2024. If Plaintiff intends to question Def Con on these claims or seek a second deposition if these claims are added, Def Con will be prejudiced.

The Court finds prejudice to Defendants with the addition of the proposed claims weighs against granting leave to amend.

4.  Futility of Proposed Amendment

"Leave to amend should not be granted when amendment would be futile, and futility alone is enough to refuse amendment." *BP W. Coast Prod. LLC v. SKR Inc.*, 989 F. Supp. 2d 1109, 1116 (W.D. Wash. 2013) (citing *United States v. SmithKline Beecham Clinical Labs.*, 245 F.3d 1048, 1052 (9th Cir. 2001)).

ORDER DENYING PLAINTIFFS' MOTION
TO AMEND - 9

1       "Defamation by implication occurs when "defendant juxtaposes a series of facts so as to imply a defamatory connection between them or creates a defamatory implication by omitting facts." *Corey*, 154 Wash. App. at 761-62 (quoting *Mohr*, 153 Wash. 2d at 823). "However, a statement does not imply false facts merely because someone might draw a negative conclusion from it. 'Merely omitting facts favorable to the plaintiff or facts that the plaintiff thinks should have been included does not make a publication false.'" *Jha v. Khan*, 24 Wash. App. 2d 377, 394 (2022), *review denied*, 530 P.3d 182 (Wash. 2023) (quoting *Mohr*, 153 Wash. 2d at 827).

      Moreover, courts must give words their "natural and obvious meaning and may not extend language by innuendo or by the conclusions of the pleader." *Yeakey v. Hearst Commc'ns, Inc.*, 156 Wash. App. 787, 792 (2010) (reversing court's denial of motion to dismiss on defamation by implication claim and remanding for dismissal). "And the 'defamatory character of the language must be apparent from the words themselves.'" *Id*.

      The Transparency Report and Update stated individuals had reported Code of Conduct violations about Plaintiff Hadnagy to Def Con, and Def Con believed those reports merited a ban from Def Con. Dkt. 49-2 ¶ 46, 68. Plaintiffs allege the Transparency Report and Update are defamatory by implication because third parties on social media "interpreted them to mean that there were despicable facts underlying the ban and Plaintiff Hadnagy was a sexual predator of the worst order" and made "assumptions that Plaintiff Hadnagy was a sexual predator." Dkt. 49-2 ¶¶ 54, 96. But the fact third parties drew a negative conclusion (*i.e.*, that Hadnagy is a sexual predator) from Def Con's ban cannot establish a defamation by implication claim as a matter of law. Nor can Plaintiffs' belief that Def Con should have included additional facts (*i.e.*, clarified that the Code of Conduct violations were not sexual in nature) establish a defamation by implication claim. *Id*. ¶¶ 52, 54; *see also Mohr*, 153 Wash. 2d at 827.

The alleged "defamatory" statement states:

> We received multiple CoC violation reports about a DEF CON Village leader, Chris Hadnagy of the SE Village. After conversations with the reporting parties and Chris, we are confident the severity of the transgressions merits a ban from DEF CON.

Dkt. 49-2 at 14 (Proposed Amended Complaint). The Update states:

> During our investigation we spoke directly with Mr. Hadnagy about claims of his violations of our Code of Conduct. He confirmed his behavior and agreed to stop. Unfortunately, the behavior did not stop […] Our investigation also revealed that DEF CON is not the only security onference to receive complaints about Mr. Hadnagy's behavior. For example, Black Hat received complaints, conducted their own investigation, and removed Mr. Hadnagy from their Review Board.

*Id.* at 18.

Nothing in the Transparency Report or Update references or implies sexual misconduct. Therefore, "assumptions" by third parties or Plaintiffs' own "conclusions as the pleader" about the Transparency Report and Update are insufficient to plead a defamation by implication or false light claim. Plaintiffs argue these statements led to speculation in the anti-hacking community that Plaintiff Hadnagy "was a repeat perpetrator of egregious violations that were potentially criminal," and "despite the foreseeable and not unreasonable reaction and interpretation of those in the infosec industry that plaintiff was being accused of sexual misconduct as was the case when other individuals had been named in previous transparency reports." *Id.* at 10-11. In support of this proposed defamation by implication claim, Plaintiffs attach Twitter traffic following the posting of the Transparency Report and Update.

Essentially, the Twitter traffic indicates no one knows why Plaintiffs were banned. One person said as a "theoretical question," if people in the past were banned for sexual misconduct, wouldn't you think [Plaintiff Hadnagy] was banned for the same reason? But this was a theoretical question, and the Twitter traffic does not indicate anyone believed Plaintiff Hagnagy

ORDER DENYING PLAINTIFFS' MOTION
TO AMEND - 11

was banned for sexual misconduct. Rather, the individuals who posted stated: 1) we don't know why [Plaintiff] was banned; 2) the transparency report is worthless because it doesn't tell you why [Plaintiff] was banned; 3) [Plaintiff] might know why he was banned shouldn't he tell us: 4) [Plaintiff] responded that he would inform people later; 5) I think it involved an employee of [Plaintiff] who complained about [Plaintiff]; 6) Is a workplace problem a basis for a ban? 7) when I was at Defcon there was a fight and maybe [Plaintiff's] ban is related; 8) [Plaintiff] said he was banned because defendant wants somebody else running that particular village; 9) this is all about our community which has lots of people that don't like rules and won't follow rules; 10) I "heard he called people the N-word and was banned." *See*, Dkt. 50-1, Supplemental Conrad Decl., Ex. B.

Plaintiff appears to believe that, because the Court denied dismissal of the defamation claim, the two statements released by Defendants are defamatory and "highly offensive" and thus he should be allowed to go forward with a false light claim. However, to plead a prima facie claim for false light, Plaintiffs must demonstrate Def Con "publicized a statement placing [him/them] in a false light, so long as '(a) the false light would be highly offensive to a reasonable person and (b) the actor knew of or recklessly disregarded the falsity of the publication and the false light in which the other would be placed.'" *Jha*, 24 Wash. App. 2d at 391. While Plaintiffs claim the Transparency Report and Update was "highly offensive in nature," mimicking the elements in a conclusory manner without factual support, because it implied that he was "guilty of predatory conduct," nowhere in the Transparency Report and Update is there an implication of sexual misconduct. Dkt. 49-2 ¶¶ 46, 68, 114. Again, regardless of third parties' "assumptions" about Plaintiff Hadnagy, the Transparency Report and Update are not "highly offensive to a reasonable person." *Id*. ¶¶ 52, 54; *Jha*, 24 Wash. App. 2d at 391.

ORDER DENYING PLAINTIFFS' MOTION
TO AMEND - 12

The futility of the addition of the proposed claims weighs against granting the motion to amend.

5. <u>Bad Faith</u>

"In the context of a motion for leave to amend, 'bad faith' means acting with intent to deceive, harass, mislead, delay, or disrupt." *Wizards of the Coast LLC v. Cryptozoic Ent. LLC*, 309 F.R.D. 645, 651 (W.D. Wash. 2015). Plaintiffs' addition of factual allegations, claims, and parties that were dismissed by this Court is troublesome. Particularly, as the Court provided Plaintiffs with an opportunity to file an amended complaint consistent with its Order of March 28, 2024, and Plaintiffs chose not to do so.

As previously noted, Mr. Moss is no longer a party to this action in his individual capacity because this Court dismissed the alter ego claim, holding that Plaintiffs "fail[ed] to allege sufficient facts to establish a prima facie case of alter ego liability." *Id*. at 12:8–9. Despite this, Defendants seek to add Mr. Moss back in as a defendant based on the same legally insufficient facts.

The Court also dismissed the "Injurious Falsehoods" defamation claim alleged against Mr. Moss relating to the Black Hat Convention because Plaintiffs failed to allege the "whom, when, and where these statements were made." *Id*. at 16:11–16. And while the Court granted Plaintiffs leave to amend "to plead additional factual allegations to support this claim" by April 22, 2024, Plaintiffs did not. *Id*. at 16:17–18. Therefore, this claim is no longer part of this case. Yet, in their Proposed Amended Complaint, Plaintiffs again include the same previously dismissed and legally insufficient allegations by simply changing "Injurious Falsehoods" to "Transparency Report and Update" or by continuing to refer to "Injurious Falsehoods" and Black Hat. *See*, *e.g.*, Dkt. 49-2 ¶¶ 66–67, 69–70, 77, 83, 100–01.

The Court also dismissed Plaintiffs' contractual interference claim with leave to amend by April 22, 2024. Dkt. 44 at 17–20. Plaintiffs did not file an amended complaint to cure the deficiencies and therefore, this claim is no longer part of this case. Yet, Plaintiffs' Proposed Amended Complaint includes allegations that Def Con "wrongfully interfere[d] with Plaintiffs' contractual relations" and that "[s]everal of Plaintiffs' longstanding clients . . . terminated their contract(s)." *See*, *e.g.*, Dkt. 49-2 ¶¶ 53, 61–63, 69–70, 74, 77, 79, 93, 116–17.

Based on the foregoing, the Court concludes Plaintiffs' Proposed Amended Complaint has been brought in bad faith as it has further delayed this action unnecessarily. This factor weighs against granting the motion to amend.

Accordingly, the Court **DENIES** Plaintiffs' Motion to Amend (Dkt. 49). The Clerk is directed to send a copy of this Order to all parties.

DATED this 24th day of July, 2024.

BRIAN A. TSUCHIDA
United States Magistrate Judge