THE HONORABLE BRIAN A. TSUCHIDA

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

CHRISTOPHER J. HADNAGY, an
individual; and SOCIAL-ENGINEER,
LLC, a Pennsylvania limited liability
company,

                   Plaintiffs,

    v.

JEFF MOSS, an individual; DEF CON
COMMUNICATIONS, INC., a Washington
corporation; and DOES 1-10; and ROE
ENTITIES 1-10, inclusive,

               Defendants.

No. 2:23-cv-01932-BAT

**LCR 37 SUBMISSION
REGARDING DEFENDANT
DEF CON
COMMUNICATIONS, INC.'S
MOTION TO COMPEL**

NOTED FOR CONSIDERATION:
August 20, 2024

**Perkins Coie LLP**
1201 Third Avenue, Suite 4900
Seattle, Washington 98101-3099
Phone: +1.206.359.8000
Fax: +1.206.359.9000

# TABLE OF CONTENTS

I.    Def Con's Introductory Statement ...................................................... 3

II.   Hadnagy's Statement ...................................................................... 4

III.  Discovery Dispute ......................................................................... 7

    A.    Def Con's Argument ................................................................. 7

        1.    Def Con has conferred at length with Hadnagy to no avail......... 7

        2.    Self-collection and self-review are not acceptable in this case. ............................................................................... 8

    B.    Hadnagy's Response ................................................................ 10

        1.    Plaintiffs' Discovery Efforts Are Diligent and Compliant with Legal Standards ...................................................... 10

        2.    Deficiencies in Def Con's Discovery Methodology ..................... 14

    C.    Def Con's Reply ...................................................................... 15

        1.    Hadnagy's supporting declarations should be disregarded. ....... 15

        2.    Hadnagy's document production is deficient and should be compelled to produce all responsive documents. ........................ 15

        3.    Hadnagy's self-collection and self-review is insufficient............ 17

        4.    Def Con has complied with its discovery obligations. ................ 19

        5.    Def Con's Conclusion .............................................................. 20

DEFENDANT DEF CON COMMUNICATIONS,
INC.'S MOTION TO COMPEL DISCOVERY – 2 (NO.
2:23-CV-01932-BAT)

**Perkins Coie LLP**
1201 Third Avenue, Suite 4900
Seattle, Washington 98101-3099
Phone: +1.206.359.8000
Fax: +1.206.359.9000

# I.    LCR 37(a)(1) MEET AND CONFER CERTIFICATION

Pursuant to LCR 37(a)(1), counsel undersigned certifies that they conferred in good faith with counsel for Hadnagy and Social-Engineer, LLC in an effort to resolve the dispute without court action. On July 16, 2024, and again on July 26, 2024, Matt Mertens and Mark Conrad met via videoconference to discuss (among other things) Hadnagy's self-collection and self-review of his responsive documents. They were unable to resolve this issue, necessitating this joint submission.

# II.    DEF CON'S INTRODUCTORY STATEMENT

Plaintiff Christopher Hadnagy and Social-Engineer, LLC (collectively, "***Hadnagy***") initiated this defamation action against Defendant Def Con Communications, Inc. ("***Def Con***"), claiming that he suffered *at least* $7 million in economic damages and a to-be-determined amount of noneconomic damages. Yet despite alleging that many damages, Hadnagy has failed to fulfill his basic discovery obligations by insisting on self-collection and self-review of documents responsive to Def Con's discovery requests. This is unacceptable, especially for a party demanding that much money. For its part, Def Con has taken a much more serious and reliable approach to discovery: Perkins Coie has performed the document collection, review, and production process for Def Con, at significant cost to Def Con. Hadnagy's attorneys must do the same.

Def Con served discovery requests over *ten weeks ago (2.5 months)* on May 21, 2024. Since then, and despite extensive conferral among counsel, Hadnagy has made just two paltry document productions with severely compromised or entirely missing metadata; he has failed to produce key documents referred to within his meager document production; he has failed to provide Def Con with his process for reviewing and identifying responsive documents, despite Def Con's repeated requests; and he refused to commit to attorney collection, review, and production of his documents

DEFENDANT DEF CON COMMUNICATIONS, INC.'S MOTION TO COMPEL DISCOVERY – 3 (No. 2:23-CV-01932-BAT)

**Perkins Coie LLP**
1201 Third Avenue, Suite 4900
Seattle, Washington 98101-3099
Phone: +1.206.359.8000
Fax: +1.206.359.9000

1  despite Def Con repeatedly warning that Def Con would have no choice but to move

2  to compel if Hadnagy refused.

3      Def Con thus must now move to compel Hadnagy to (1) require Hadnagy's

4  counsel, or a third-party vendor, to collect data from the custodians and data sources

5  Def Con identifies in a forensically defensible manner preserving all native metadata;

6  and (2) require Hadnagy's counsel, or a third-party vendor, to use Def Con's proposed

7  review search terms and produce documents hitting on these review search terms by

8  30 days from the date of the Court's order granting this Motion.

9  **III.    HADNAGY'S STATEMENT**

10     Throughout the discovery process, Plaintiffs have engaged in numerous meet-

11  and-confer sessions with Def Con to address the scope and sufficiency of discovery

12  efforts on both sides. Plaintiffs have responded to all additional discovery requests or

13  clarifications of requests from Def Con. Notably, Def Con's Motion to Compel does not

14  target any specific interrogatory or request for production. If Plaintiffs' discovery

15  responses were indeed deficient, Def Con would have moved to compel specific

16  responses to particular requests for production or interrogatories, as LCR 37 requires.

17  It has not.

18     Plaintiffs' have also produced all records with metadata and load files intact.

19  Again, if this were not the case, Def Con would be pointing to specific instances of

20  documents missing metadata, attachments, or broken family chains of documents. It

21  has not.

22     During meet and confer conferences, Plaintiffs have offered to provide all the

23  information that would be required by an ESI agreement, including details on

24  custodians, data sources, search terms, methodology, and the results of those

25  searches. Declaration of Mark Conrad ("Conrad Decl."). Plaintiffs also agreed to

26  include any additional search terms requested by Def Con. However, Def Con never

DEFENDANT DEF CON COMMUNICATIONS,
INC.'S MOTION TO COMPEL DISCOVERY – 4 (NO.
2:23-CV-01932-BAT)

**Perkins Coie LLP**
1201 Third Avenue, Suite 4900
Seattle, Washington 98101-3099
Phone: +1.206.359.8000
Fax: +1.206.359.9000

1  provided any additional search terms and insisted that Plaintiffs must hire a third

2  party to conduct the review or pay counsel to independently house and search the

3  data—a position that is unsupported by the discovery rules, any legal authority cited

4  by Def Con, or the model ESI agreement. Def Con focuses on the extent of Plaintiffs'

5  damages, but damages should not dictate a parties' obligation to hire outside parties

6  for discovery purposes.

7       Furthermore, while Plaintiffs have continued to cooperate in discovery, Def

8  Con is seeking information that is disproportionate to the limited remaining issues

9  in this case—specifically, the defamation related to Def Con and Moss's statements.

10  The focus of this inquiry should be on the truth of the alleged defamatory statement,

11  which must be assessed "as of the time of the defamatory publication" based on the

12  information Def Con possessed at that time, not on information that Def Con is now

13  attempting to acquire during discovery.[1]

14       Moreover, Def Con insists that Plaintiffs must follow the exact same discovery

15  methodology Def Con utilizes. However, Def Con has yet to reveal what that

16  methodology is to Plaintiffs other than stating that Perkins Coie has a discovery

17  department collects the information. It has never provided details regarding

18  preservation efforts, custodians, data sources, unavailable data, search terms, or the

19  results those searches. More troubling is that Plaintiffs have had to confront

20  significant deficiencies in Def Con's own discovery responses. *See* Conrad Decl., Ex.

21  A. Plaintiffs met with Def Con on multiple occasions to address issues with Def Con's

22  productions, as Def Con initially failed to produce a single document in response to

23  discovery requests and refused to provide basic discovery information. *See* Conrad

24

25  [1] La Mon v. Butler, 44 Wash. App. 654, 659, 722 P.2d 1373, 1377 (1986) ("As a general rule, the truth of an alleged defamatory statement must be measured "as of the time of the

26  defamatory publication.")

---

DEFENDANT DEF CON COMMUNICATIONS,
INC.'S MOTION TO COMPEL DISCOVERY – 5 (No.
2:23-CV-01932-BAT)

1    Decl., Ex. B. Following discovery conferences, Def Con eventually produced
2    documents, representing that all responsive materials had been provided. However,
3    during the recent deposition of Jeff Moss, it was revealed that this representation
4    was inaccurate as critical records were withheld. *See* Conrad Decl., Ex. C. Counsel
5    for Def Con also acknowledged during the deposition that he had no explanation for
6    this failure. *Id.* Def Con's methodology, whatever it is, has not proven reliable, and
7    this Court should not require Plaintiffs to follow it.

8         Def Con's attempt to compel additional discovery efforts from Plaintiffs must
9    also be viewed in the context of the discovery landscape in this case. Def Con has
10   propounded 72 requests for production, 43 requests for admission, and 16
11   interrogatories, to which Plaintiffs have diligently responded, producing over 900
12   pages (958 to be exact) of documents in native format with load files. *See Conrad Decl.*
13   In stark contrast, Plaintiffs have propounded 10 interrogatories and 6 requests for
14   production narrowly tailored to the issues in this case. Def Con has only provided 180
15   pages of documents in response, which took it five supplementals discovery
16   productions to accomplish, and still it managed to withhold records directly
17   responsive to discovery.

18        Def Con's motion is not justified by the facts or the law. Plaintiffs have met
19   their discovery obligations, provided complete responses including documents in
20   native format, and offered reasonable accommodations to address Def Con's concerns.
21   Plaintiffs respectfully request that this Court deny Def Con's Motion to Compel to the
22   extent that it would require "Hadnagy's counsel, or a third-party vendor, to collect
23   data from the custodians and data sources." Defendant Hadnagy does not oppose this
24   Court ordering that the parties exchange the information required under the Court's
25   model ESI agreement and comply with its terms.

26

DEFENDANT DEF CON COMMUNICATIONS,
INC.'S MOTION TO COMPEL DISCOVERY – 6 (NO.
2:23-CV-01932-BAT)

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

## IV.    DISCOVERY DISPUTE

### A.    Def Con's Argument

#### 1.    Def Con has conferred at length with Hadnagy to no avail.

Despite extensive conferral, Hadnagy has refused to provide his self-collection and self-review parameters, he has refused to agree to the *exact same* method of attorney-conducted collection and review that Def Con has engaged in, and his document production has been sorely lacking.

On May 21, 2024, Def Con served its initial requests for production. On June 20, 2024, Hadnagy provided an initial production of documents, which was rife with issues. He did not provide a shred of metadata despite agreeing to do so in the Joint Status Report. *See* ECF 41 at 4(i). And Def Con's initial review of the production revealed glaring gaps in the production. For example, one of this case's key issues is Hadnagy's hostility towards former employees and baselessly threatening them with violations of their employment contracts, nondisclosure agreements, and noncompetition agreements. Yet Hadnagy has produced vanishingly few of these documents and post-employment communications with former employees. He has not produced internal Social-Engineer communications. He has not produced *a single document* from his Innocent Lives Foundation (ILF), despite Mr. Hadnagy launching his harassment campaign against a former employee because she allegedly stole from ILF and interfered with an ILF investigation. He has not produced text messages, communications with contractual counterparties regarding their reasons for terminating business with him, or any documents regarding his alleged emotional distress.[2]

---

[2] Def Con reserves all rights regarding the legal merit of Hadnagy's alleged emotional distress in the context of a defamation claim.

Perkins Coie LLP
1201 Third Avenue, Suite 4900
Seattle, Washington 98101-3099
Phone: +1.206.359.8000
Fax: +1.206.359.9000

Concerned by Hadnagy's unacceptably and inexplicably poor document production, Def Con engaged in written conferral with Hadnagy that culminated in a meet-and-confer on July 16. Declaration of Matt Mertens ("Mertens Decl."), Exs. 1 and 2. Def Con learned during this July 16 meeting that *Hadnagy*, and not counsel, had been conducting the collection and review of responsive materials. Counsel could not identify during this meeting the data sources, custodians, responsiveness parameters, methods of collection, search terms, or date ranges that Hadnagy was using for his collection and review. Def Con immediately advised that Hadnagy's self-collection and self-review was unacceptable under these circumstances and considering his poor document production to date. On July 22, Def Con provided authorities to support its position and told Hadnagy that if Hadnagy did not agree to an attorney-run collection and review process (or one performed by a third-party vendor) by August 2, Def Con would have to move to compel on this issue. Mertens Decl., Ex. 3. On August 2, counsel for Hadnagy advised that he needed to have an additional conversation with his client on this topic. Mertens Decl., Ex. 4. After waiting a week with no further information from Hadnagy, and unwilling to wait any longer for Hadnagy to fulfill his basic discovery responsibilities, Def Con brought this Motion.

### 2. Self-collection and self-review are not acceptable in this case.

The problems with self-collection and self-review are not new. Courts have commented on them for years. *See, e.g., Benanav v. Healthy Paws Pet Ins. LLC*, No. C20-00421-LK, 2022 WL 3587982, at *4 (W.D. Wash. Aug. 22, 2022) ("[P]arties and counsel that embark on self-collection can soon encounter multiple pitfalls that can sidetrack the litigation and lead to motions to compel, spoliated evidence, and even sanctions."); *Waskul v. Washtenaw Cty. Cmty. Mental Health*, 569 F. Supp. 3d 626,

**Perkins Coie LLP**
1201 Third Avenue, Suite 4900
Seattle, Washington 98101-3099
Phone: +1.206.359.8000
Fax: +1.206.359.9000

636 (E.D. Mich. 2021) ("[A]n attorney may not simply rely on custodian self-collection of ESI."); *Zhulinska v. Niyazov L. Grp., P.C.*, No. 21-CV-1348 (CBA), 2021 WL 5281115, at *3 (E.D.N.Y. Nov. 12, 2021) ("[S]elf-collection" by ESI custodians "is strongly disfavored."). Common pitfalls include the client's failure (1) "to identify all sources of responsive information," (2) "to preserve evidence," (3) to "find or provide to counsel all responsive documents and ESI," or (4) to "fully document how they conducted their searches." *Benanav*, 2022 WL 3587982, at *4. As detailed above, Hadnagy's document collection and review to date involves all four of these pitfalls.

*Benanav* is instructive here. In response to the plaintiffs' refusal to produce metadata or a load file with their productions, defendants filed a motion to compel. The plaintiffs in *Benanav* self-searched their ESI, refused to forensically collect their ESI, and had a number of production deficiencies (missing attachments, broken document families, along with the failure to produce metadata and load files). *Id.* at *4. The court rejected the plaintiffs' Rule 26(b) burden and proportionality argument and noted "[p]laintiffs also provide only a vague explanation of how counsel supervised and directed each Plaintiff in searching for and identifying responsive documents." *Id.* The court found that these "defects in Plaintiffs' manual self-search are sufficient to highlight the risks of such self-searches," and granted the defendants' motion to compel. *Id.* The same applies here. Hadnagy's deficient self-collection and self-review warrants granting a motion to compel counsel and/or a third-party vendor to oversee the document collection and production.

Moreover, a party has a duty to collect and produce responsive documents (and ESI) in a diligent and competent manner. *See* Fed. R. Civ. P. 34(b)(2)(E); Fed. R. Civ. P. 37; *see also* Fed. R. Civ. P. 26, Advisory Committee Notes (explaining that "Rule 26(g) imposes an affirmative duty to engage in pretrial discovery in a responsible manner that is consistent with the spirit and purposes of Rules 26 through 37"). This

**Perkins Coie LLP**
1201 Third Avenue, Suite 4900
Seattle, Washington 98101-3099
Phone: +1.206.359.8000
Fax: +1.206.359.9000

duty extends to a party's legal counsel as well, which has an obligation to supervise its client to ensure that it complies with its ESI discovery obligations. As one court has noted:

> For the current "good faith" discovery system to function in the electronic age, attorneys and clients must work together to ensure that both understand how and where electronic documents, records and emails are maintained and to determine how best to locate, review, and produce responsive documents. Attorneys must take responsibility for ensuring that their clients conduct a comprehensive and appropriate document search.

*Qualcomm Inc. v. Broadcom Corp.*, No. 05CV1958-B (BLM), 2008 WL 66932, at *9 (S.D. Cal. Jan. 7, 2008) *vacated in part on other grounds*, 2008 WL 638108 (S.D. Cal. Mar. 5, 2008); *see also Zubulake v. UBS Warburg LLC*, 229 F.R.D. 422, 435 (S.D.N.Y. 2004) (noting duty to preserve and produce documents and faulting counsel for failing to properly supervise client to ensure that it fulfilled its duty to locate, preserve, and produce relevant ESI in a timely manner).

The Court should grant the Motion and require Hadnagy's counsel, or a third-party vendor, to collect data from the custodians and data sources Def Con identifies in a forensically defensible manner preserving all native metadata; and (2) require Hadnagy's counsel, or a third-party vendor, to use Def Con's proposed review search terms and produce documents hitting on these review search terms by 30 days from the date of the Court's order granting this Motion.

**B.    Hadnagy's Response**

**1.    Plaintiffs' Discovery Efforts Are Diligent and Compliant with Legal Standards**

Under Local Civil Rule 37, the moving party is required to set forth each disputed discovery request and the opposing party's objection or response. LCR 37(B). Directly below that, the moving party must describe its position and the legal authority supporting its request. Id.

DEFENDANT DEF CON COMMUNICATIONS, INC.'S MOTION TO COMPEL DISCOVERY – 10 (No. 2:23-CV-01932-BAT)

**Perkins Coie LLP**
1201 Third Avenue, Suite 4900
Seattle, Washington 98101-3099
Phone: +1.206.359.8000
Fax: +1.206.359.9000

Notably, Def Con has not adhered to this rule because it cannot point to any specific discovery request that is deficient. Def Con is not asking the Court to compel the production of metadata or load files, as Plaintiffs have already provided responsive documents, including the additional documents outlined in Def Con's discovery letters, along with all associated load files and metadata. Def Con is also not seeking to compel Plaintiffs to identify their document collection methods, including electronic search terms and databases searched, because Plaintiffs have already offered this information.

During the discovery conference call on July 26, 2024, Hadnagy's counsel proposed that both parties exchange all information required by the Model ESI Agreement and invited Def Con to suggest additional search terms or parameters for specific discovery requests. Def Con, however, rejected this approach and did not provide Plaintiffs with any additional search terms or offer any information required under the Model ESI Agreement regarding its own collection efforts. Instead, Def Con insisted that a third party or counsel independently undertake data collection, housing, and review, and threatened to move to compel such action, leading to the current motion and request before this Court.

There is no requirement in the court rules, the cases cited by Def Con, or the Model ESI Agreement that obligates Plaintiffs to hire a third party or counsel to fulfill Plaintiffs' discovery obligations. Indeed, none of the cases cited by Def Con ever required what Def Con is requesting—a court order mandating a party to hire a third party or counsel to collect, house, and search for responsive documents. Instead, the cases cited by Def Con emphasize the importance of an attorney working with and supervising a client during the process to ensure that all responsive discovery is preserved, diligently searched for, and ultimately produced. *See Zubulake v. UBS Warburg LLC*, 229 F.R.D. 422, 435 (S.D.N.Y. 2004) ("While, of course, it is true that

DEFENDANT DEF CON COMMUNICATIONS,
INC.'S MOTION TO COMPEL DISCOVERY – 11 (NO.
2:23-CV-01932-BAT)

**Perkins Coie LLP**
1201 Third Avenue, Suite 4900
Seattle, Washington 98101-3099
Phone: +1.206.359.8000
Fax: +1.206.359.9000

counsel need not supervise every step of the document production process and may rely on their clients in some respects," counsel is responsible for coordinating her client's discovery efforts."). Counsel must "test the accuracy of the client's response to document requests to ensure that all appropriate sources of data have been searched and that responsive ESI has been collected—and eventually reviewed and produced." *Waskul v. Washtenaw Cty. Cmty. Mental Health*, 569 F. Supp. 3d 626, 636 (E.D. Mich. 2021) ("Generally, '[r]esponding parties are best situated to evaluate the procedures, methodologies, and technologies appropriate for preserving and producing their own electronically stored information.'"); *Qualcomm Inc. v. Broadcom Corp.*, No. 05cv1958-B (BLM), 2008 U.S. Dist. LEXIS 911, at *45 (S.D. Cal. Jan. 7, 2008) (emphasizing the attorney's obligation to supervise and conduct a reasonable inquiry into client's document search and production of documents).

Def Con specifically cites *Benanav* as instructive, yet that case presents a completely different factual background and still never resulted in what Def Con is currently requesting. In *Benanav*, the Plaintiffs outright refused to use the defendant's proposed search terms, failed to produce files with metadata, and did not follow the stipulated ESI agreement/order. *Benanav v. Healthy Paws Pet Ins. LLC*, No. C20-00421-LK, 2022 U.S. Dist. LEXIS 150550, at *4 (W.D. Wash. Aug. 22, 2022). The defendants moved to compel (1) use of defendant's proposed search terms (or broader terms), and (2) compliance with the ESI protocol by producing documents with the required metadata and load files. However, the court did not require the plaintiffs to have a third party or counsel independently collect, house, and search for responsive documents and ESI. Instead, the court ordered the parties to negotiate search terms designed to capture responsive documents, specifically tailoring the order to ensure that the search terms were compatible with the plaintiffs' existing email search capabilities. *Benanav*, at *19. The court even acknowledged that "the

1    only burden Plaintiffs face is the burden of collecting and producing documents in

2    accordance with the ESI Protocol." *Benanav* at *19.

3        Here, unlike the defendant in *Benanav*, Def Con is not seeking to compel

4    Plaintiffs to use its proposed search terms or to comply with the ESI protocol for

5    producing documents with metadata and load files. This is because Plaintiffs have

6    already provided documents with metadata and load files, and Def Con has not

7    provided any search terms for review. Furthermore, Plaintiffs suggested that the

8    parties exchange the information required by the Model ESI Agreement, but Def Con

9    refused, claiming that this procedure would still not suffice despite the Model ESI

10   Agreement being specifically drafted to ensure proper preservation, collection, and

11   production of documents and ESI.

12       Plaintiffs and Plaintiffs' counsel fully understand their discovery obligations

13   and are actively engaged in collecting and searching for all responsive documents.

14   Counsel is not only supervising the process but also reviewing the productions to

15   ensure there are no missing communications, attachments, metadata, or

16   electronically stored information (ESI). They are also inquiring into other potential

17   searches that may reveal additional responsive records. Plaintiffs' approach is

18   carefully tailored to each specific discovery request.

19       Def Con cannot make nondescript claims of deficiency without providing

20   plaintiffs or this court with specific examples of deficient response to requests or

21   specific example of documents missing metadata, attachment, etc. This is because

22   Def Con cannot point to any specific request as deficient as required by LCR 37

23   procedure. Instead, Def Con is seeking to compel Plaintiffs to hire a third party to

24   conduct its discovery efforts, despite the fact that Plaintiffs are fully capable of

25   conducting the searches and providing the requested information.

26

DEFENDANT DEF CON COMMUNICATIONS,
INC.'S MOTION TO COMPEL DISCOVERY – 13 (No.
2:23-CV-01932-BAT)

1    Def Con's request to compel third party collection, housing, and review is not

2    supported by the rules or the facts presented.

3         **2.    Deficiencies in Def Con's Discovery Methodology**

4         Hadnagy has indeed refused to adopt the same collection and review

5    methodology used by Def Con, and for good reason—Def Con's discovery process has

6    proven to be deeply flawed. Initially, when Def Con responded to Plaintiffs' discovery

7    requests, it failed to produce a single responsive document and did not provide any

8    timeline for when such documents would be delivered. *See* Conrad Decl. Ex. A.

9    Additionally, Def Con's answers to Plaintiffs' interrogatories were either evasive or

10   outright refusals to answer basic discovery requests, such as those seeking employee

11   information. *Id.*

12        In response, the parties met multiple times and worked together to ensure that

13   Def Con would eventually provide the necessary responsive materials. Def Con

14   acknowledged the importance of producing documents so that Plaintiffs could

15   adequately prepare for Jeff Moss's deposition on July 31, 2024, and represented that

16   it had done so. *See* Conrad Decl.

17        However, during the deposition, Moss disclosed that he had text messages with

18   Maxi Reynolds that had never been produced in discovery. *See* Conrad Decl. Ex C.

19   These communications are critical and directly responsive to Plaintiffs' requests.

20   Moss's counsel acknowledged the oversight but had no explanation other than it being

21   a mistake by his firm. While mistakes can occur during discovery, and parties should

22   collaborate to address such issues, the circumstances here are particularly troubling.

23   Plaintiffs' discovery requests were narrowly tailored to the issues in this case, and

24   Def Con's production amounted to only 100 pages. Given that Def Con's counsel is a

25   large firm with its own discovery department, this "oversight" raises serious concerns.

26

DEFENDANT DEF CON COMMUNICATIONS,
INC.'S MOTION TO COMPEL DISCOVERY – 14 (No.
2:23-CV-01932-BAT)

Plaintiffs highlight this issue to demonstrate that Def Con's discovery methodology is flawed and should not be followed. Moreover, neither the court rules nor the Model ESI Agreement require Plaintiffs to adopt the methodology that Def Con is advocating in this motion.

### C.     Def Con's Reply
#### 1.     Hadnagy's supporting declarations should be disregarded.

Hadnagy's two lengthy supporting declarations ignore the plain text of LCR 37(a)(2)(F) and should be disregarded. *See* LCR 37(a)(2)(F) (authorizing declarations under LCR 37(a)(2)'s expedited discovery dispute procedure "for the purpose of **attaching documents to be considered** in connection with the submission and to provide sufficient information to permit the court to **assess expenses and sanctions, if appropriate**") (emphasis added).  Hadnagy's declarations go well beyond simply attaching documents to be considered in connection with his opposition, and he is not seeking expenses and sanctions (nor could he). The Court should accordingly disregard them.[3]

#### 2.     Hadnagy's document production is deficient and should be compelled to produce all responsive documents.

Hadnagy contends that he has suffered at least $7 million in damages, and in the same breath, he argues he should be allowed to conduct discovery like this is a routine car crash case. These positions are irreconcilable. Hadnagy needs to incur the same costs Def Con has for **proper** collection and review of Hadnagy's documents in this "$7 million" lawsuit.

**Three months** have gone by since Def Con served its initial Requests for Production, yet Hadnagy's production remains glaring deficient. Huge swaths of responsive documents are nowhere to be found. Hadnagy has not produced

---

[3] Def Con is only filing the two declarations submitted by Hadnagy to comply with LCR 37(a)(2)(H).

**Perkins Coie LLP**
1201 Third Avenue, Suite 4900
Seattle, Washington 98101-3099
Phone: +1.206.359.8000
Fax: +1.206.359.9000

1    documents relating to the employment of certain former employees (who reported

2    Hadnagy's abuse and harassment to Def Con), including their alleged employment

3    contracts, nondisclosure agreements, and noncompetition agreements; any internal

4    communications at Social-Engineer discussing these former employees' alleged

5    wrongdoing; any text messages; virtually no communications with clients or potential

6    clients relating to termination of their agreements or negotiations with Hadnagy; and

7    any documents relating to his alleged emotional distress. Hadnagy argues that Def

8    Con's motion should be denied because it does not list out the "specific discovery

9    request that is deficient." But the issue does not lie with Hadnagy's written responses

10   to the requests for production. He in fact agreed to produce all responsive documents.

11   **The problem is that he has failed to do so. And that his method of discovery,**

12   **as a whole, is insufficient.** While Hadnagy boasts that he has produced over 900

13   pages, the vast majority of these pages are (1) social media posts and articles about

14   Hadnagy and the ban, and (2) Social-Engineer's lengthy contracts and statements of

15   work with former and potential clients.

16          Instead, Hadnagy now claims that these documents are "disproportionate" and

17   not relevant to the case because the "the truth of the alleged defamatory statement .

18   . . must be assessed 'as of the time of the defamatory statement' based on information

19   Def Con possessed at the time, not on information that Def Con is now attempting to

20   acquire during discovery." Hadnagy's argument is flawed for several reasons. First,

21   in Hadnagy's discovery responses, he already agreed to produce these documents.

22   Second, the requested documents relate directly to Hadnagy's ***own*** allegations of

23   emotional distress, contract termination, and that the accusations leveled against

24   him are false. Third, Hadnagy misinterprets the holding of *LaMon v. Butler*, 44

25   Wash. App. 654, 659, 722 P.2d 1373, 1377 (1986). In *LaMon*, a newspaper published

26   an article stating that plaintiff was convicted of assault. *Id.* However, at the time of

DEFENDANT DEF CON COMMUNICATIONS,
INC.'S MOTION TO COMPEL DISCOVERY – 16 (No.
2:23-CV-01932-BAT)

**Perkins Coie LLP**
1201 Third Avenue, Suite 4900
Seattle, Washington 98101-3099
Phone: +1.206.359.8000
Fax: +1.206.359.9000

publication, that conviction had been reversed on appeal and was thus void, rendering the statement "historically" factual but "legally" false. *Id. LaMon*'s holding is not only inapplicable here, but it also does not stand for the proposition Hadnagy asserts—that truth is determined "on information Def Con possessed at the time, not on information that Def Con is now attempting to acquire during discovery." By Hadnagy's own logic, if an individual called someone a "murderer," but did not have all the facts or evidence to support that statement at the time it was made, and then it was later determined the person was in fact a murderer, the individual would still be liable for defamation, despite the truth of the statement. That is nonsensical. Fourth, even assuming *arguendo* that Hadnagy is correct, and that truth is assessed based on information in the party's possession at the time of the statement, Def Con did have this information in its possession when it announced the ban. Def Con received reports from non-parties that Hadnagy had engaged in harassing and abusive behavior that warranted a ban. The fact that Def Con did not have documents in its possession (because they are in Hadnagy's possession) at the time of the statement does not prevent it from seeking production of those documents in this litigation.

Accordingly, these documents are relevant to the legal issues raised in this litigation, are not "disproportionate" to the needs of the case, and Hadnagy must comply with his agreement to produce these documents and in fact produce them.

### 3.    Hadnagy's self-collection and self-review is insufficient.

Hadnagy argues that nothing in the case law or the rules require him to "hire a third party to conduct review or pay counsel to independently house and search the data." That is not true. Counsel does have an obligation to search for and review discovery to ensure that its client is satisfying its discovery obligations and producing all responsive documents.

DEFENDANT DEF CON COMMUNICATIONS,
INC.'S MOTION TO COMPEL DISCOVERY – 17 (No.
2:23-CV-01932-BAT)

Perkins Coie LLP
1201 Third Avenue, Suite 4900
Seattle, Washington 98101-3099
Phone: +1.206.359.8000
Fax: +1.206.359.9000

1    It is clear that the obligation to produce responsive documents in litigation

2  extends not only to Hadnagy, but his counsel.  Hadnagy even admits that "[c]ounsel

3  must test the accuracy of the client's response to document requests to ensure that

4  all appropriate sources of data have been searched and that responsive ESI has been

5  collected—and eventually reviewed and produced." *Waskul v. Washtenaw Cty. Cmty.*

6  *Mental Health*, 569 F. Supp. 3d 626, 636 (E.D. Mich. 2021).  Although Hadnagy's

7  counsel makes vague statements that they are "supervising the process" and

8  "reviewing the productions," that supervision and review process has failed. As stated

9  above, entire swaths of responsive materials—including certain employment

10  contracts, nondisclosure agreements, and noncompetition agreements with which

11  Hadnagy threatened former employees and volunteers; communications with the

12  former employees and volunteers about these documents; any internal

13  communications about these former employees and volunteers' alleged wrongdoing;

14  internal Social-Engineer chats, where multiple third party witnesses told Def Con

15  that Hadnagy bullied, humiliated, and terrorized his employees; communications

16  with the counterparties representing "$7 million" in lost business opportunities; any

17  text messages; any documents and communications whatsoever from Hadnagy's

18  Innocent Lives Foundation—are missing. This simply underscores what should be

19  self-evident: when a party with no e-discovery experience or sophistication suggests

20  that more than $7 million is at stake in his lawsuit, that party cannot reliably self-

21  collect and self-review responsive materials.

22    The case law on self-collection further supports that Hadnagy's counsel (or a

23  third-party vendor) must perform the document collection and review.  In *Benanav*,

24  given the deficiencies in the plaintiffs' document production, the court found the

25  plaintiffs' self-collection insufficient and ordered the parties to meet and confer

26  regarding search terms to capture documents that are responsive to defendant's

DEFENDANT DEF CON COMMUNICATIONS,
INC.'S MOTION TO COMPEL DISCOVERY – 18 (NO.
2:23-CV-01932-BAT)

**Perkins Coie LLP**
1201 Third Avenue, Suite 4900
Seattle, Washington 98101-3099
Phone: +1.206.359.8000
Fax: +1.206.359.9000

document requests. *Benanav,* 2022 WL 3587982, at *5. In *Zhulinska*, the court granted the motion to compel, ordering the defendant to run the proposed search terms and produce documents in the format demanded by the requesting party. *Zhulinska*, 2021 WL 5281115, at *6. In doing so, the court noted that "[a] party that opts not to have an expert conduct the ESI search does so at its peril, as '[s]election of the appropriate search and information retrieval technique requires careful advance planning by persons qualified to design effective search methodology,' and small business are not excused from complying with their ESI discovery obligations." *Id.* at *3 n.2. "Failing to personally oversee searches for relevant discovery leaves an attorney open to sanctions for inadequately supervising such discovery." *Id.*

While the Court should disregard the supporting declarations from Hadnagy as stated above, they undermine the defensibility of Hadnagy's review process even if the Court considers them. Frey Buck's paralegal's declaration makes it clear that *she* is responsible for working with Hadnagy to help him with collection and document review. A paralegal is not an attorney, and there is nothing in the declarations from which the Court can determine that *counsel* is appropriately involved in supervising the collection and review process as the case law requires. *See id.*

Self-collection by an ESI custodian is "strongly disfavored." *Id.* at *3. This case shows why. Hadnagy's document production to date has been completely inadequate, and Def Con demanded information regarding Hadnagy's self-directed review methodology on **July 15**, with no answers from Hadnagy. *See* Mertens Decl., Ex. 1 at 7–8. Hadnagy (and his counsel) simply cannot continue to rely on self-collection and self-review to satisfy their discovery obligations in this litigation.

### 4. Def Con has complied with its discovery obligations.

To deflect from Hadnagy's own deficient discovery, he claims that Def Con's discovery is flawed. This is a transparent and baseless sleight of hand regarding

DEFENDANT DEF CON COMMUNICATIONS,
INC.'S MOTION TO COMPEL DISCOVERY – 19 (No.
2:23-CV-01932-BAT)

**Perkins Coie LLP**
1201 Third Avenue, Suite 4900
Seattle, Washington 98101-3099
Phone: +1.206.359.8000
Fax: +1.206.359.9000

1   Hadnagy's utterly lacking collection and review process. Def Con will not engage
2   with it. This Motion is about one thing: Hadnagy's unjustified, and unjustifiable,
3   refusal to follow discovery best practices. Suffice it to say that Hadnagy has
4   mischaracterized Def Con's discovery performance; Def Con has fulfilled its discovery
5   obligations; and Def Con invites Hadnagy to file his own motion if there is something
6   substantively lacking in Def Con's performance, rather than trying to muddy the
7   water with a false and meritless equivalence with Hadnagy's own failures.

8   ### 5.    Def Con's Conclusion

9   For the foregoing reasons, Def Con requests that the Court grant its motion to
10  compel and require Hadnagy's counsel, or a third-party vendor, to collect data from
11  the custodians and data sources Def Con identifies in a forensically defensible
12  manner preserving all native metadata; and (2) require Hadnagy's counsel, or a third-
13  party vendor, to use Def Con's proposed review search terms and produce documents
14  hitting on these review search terms by 30 days from the date of the Court's order
15  granting this Motion.

16
17
18
19
20
21
22
23
24
25
26

DEFENDANT DEF CON COMMUNICATIONS,
INC.'S MOTION TO COMPEL DISCOVERY – 20 (NO.
2:23-CV-01932-BAT)

**Perkins Coie LLP**
1201 Third Avenue, Suite 4900
Seattle, Washington 98101-3099
Phone: +1.206.359.8000
Fax: +1.206.359.9000

1

## CERTIFICATE

2   I certify that the full response by the responding party has been included in

3 this submission, and that prior to making this submission the parties conferred to

4 attempt to resolve this discovery dispute in accordance with LCR 37(a).

5

6 Dated: August 20, 2024

7        *s/David A. Perez*

8        David A. Perez, WSBA No. 43959

9        **Perkins Coie LLP**
         1201 Third Avenue, Suite 4900

10       Seattle, Washington 98101-3099
         Telephone:  206.359.8000

11       DPerez@perkinscoie.com

12       Matthew J. Mertens (Admitted Pro Hac Vice)
         **Perkins Coie LLP**

13       1120 N.W. Couch Street, Tenth Floor
         Portland, Oregon 97209-4128

14       Telephone: 503.727.2000
         MMertens@perkinscoie.com

15       Lauren A. Trambley (Admitted Pro Hac Vice)

16       **Perkins Coie LLP**
         505 Howard Street, Suite 1000

17       San Francisco, California 94105-3204
         Telephone:  415.344.7000

18       LTrambley@perkinscoie.com

19

20

21

22

23

24

25

26

CERTIFICATE
(No. 2:23-cv-01932-BAT)

**Perkins Coie LLP**
1201 Third Avenue, Suite 4900
Seattle, Washington 98101-3099
Phone: +1.206.359.8000
Fax: +1.206.359.9000