THE HONORABLE BRIAN A. TSUCHIDA

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

CHRISTOPHER J. HADNAGY, an
individual; and SOCIAL-ENGINEER,
LLC, a Pennsylvania limited liability
company,

                Plaintiffs,

     v.

JEFF MOSS, an individual; DEF CON
COMMUNICATIONS, INC., a Washington
corporation; and DOES 1-10; and ROE
ENTITIES 1-10, inclusive,

                Defendants.

No. 2:23-cv-01932-BAT

**DECLARATION OF
MATTHEW J. MERTENS IN
SUPPORT OF LRC 37
SUBMISSION REGARDING
DEF CON'S MOTION TO
COMPEL**

NOTED FOR CONSIDERATION:
August 20, 2024

DECLARATION OF MATTHEW J. MERTENS IN
SUPPORT OF LRC 37 SUBMISSION REGARDING
DEF CON'S MOTION TO COMPEL
(No. 2:23-cv-01932-BAT)

1    I, Matthew J. Mertens, declare and state as follows:

2    1.    I am a partner at Perkins Coie LLP, and I serve as counsel for Defendant

3  Def Con Communications, Inc. ("Def Con") in the above-entitled action.  I submit this

4  declaration in support of Def Con's position as set forth in the LRC 37 Submission

5  Regarding Def Con's Motion to Compel.

6    2.    The information contained in this declaration is true and correct to the

7  best of my knowledge, and I am of majority age and competent to testify about the

8  matters set forth herein.

9    3.    Attached hereto as **Exhibit 1** is a true and correct copy of a letter from

10  my colleague, David Perez, to counsel for Hadnagy dated July 5, 2024.

11    4.    Attached hereto as **Exhibit 2** is a true and correct copy of a letter I sent

12  to counsel for Hadnagy dated July 15, 2024.

13    5.    Attached hereto as **Exhibit 3** is a true and correct copy of a letter I sent

14  to counsel for Hadnagy dated July 22, 2024.

15    6.    Attached hereto as **Exhibit 4** is a true and correct copy of an email I

16  received from counsel for Hadnagy on August 2, 2024.

17    I declare under penalty of perjury under the laws of the State of Washington

18  that the foregoing is true and correct.

19

20  Dated: August 20, 2024

21                                s/*Matthew J. Mertens*

22                                Matthew J. Mertens

23

24

25

26

DECLARATION OF MATTHEW J. MERTENS IN
SUPPORT OF LRC 37 SUBMISSION REGARDING
DEF CON'S MOTION TO COMPEL
(No. 2:23-cv-01932-BAT)

**Perkins Coie LLP**
1201 Third Avenue, Suite 4900
Seattle, Washington 98101-3099
Phone: +1.206.359.8000
Fax: +1.206.359.9000

# EXHIBIT 1

Declaration of Matthew J. Mertens in Support of
LRC 37 Submission Regarding Motion to Compel

August 20, 2024

PERKINSCOIE

1201 Third Avenue
Suite 4900
Seattle, WA 98101-3099

T. +1.206.359.8000
F. +1.206.359.9000
PerkinsCoie.com

July 5, 2024

David A. Perez
DPerez@perkinscoie.com
D.  +1.206.359.6767
F.  +1.206.359.7767

**VIA EMAIL**

Ted Buck
Mark Conrad
Frey Buck, P.S.
1200 Fifth Avenue, Suite 1900
Seattle, WA 98101
tedabuck@gmail.com
mconrad@freybuck.com

Re:     ***Hadnagy et al. v. Def Con Communications, Inc. et al.***
       **Meet and Confer Regarding Hadnagy's Deficient Responses to Written Discovery**

Counsel:

On May 21, 2024, Defendant Def Con Communications, Inc. ("Def Con") served Christopher Hadnagy and Social-Engineer LLC's (collectively, "Hadnagy") with its First Set of Discovery. Hadnagy served objections and responses to Def Con's First Set of Discovery on June 20, 2024. The purpose of this letter is to outline deficiencies with Hadnagy's responses, and to request a meet and confer.

At the outset, Hadnagy preemptively *concedes* his responses are deficient but blames Def Con for his failure to provide complete and non-evasive discovery responses. To be clear, this objection is utterly devoid of any legal merit and merely confirms that Hadnagy's responses must be supplemented immediately. Hadnagy initiated this lawsuit and is required to provide all information and documentation that is in his possession—regardless of information and/or documentation in Def Con's possession.

Additionally, we are very concerned that evidence—including key documents and communications—has been spoliated. Please be prepared to discuss what efforts were taken, if any, to preserve evidence.

We are available to confer with you at the following times:

- Tuesday, July 9, at 10:00 a.m., 11:00 a.m., and 2:00 p.m. PDT
- Wednesday, July 10 between 10:00 a.m. and 2:00 p.m. PDT
- Thursday, July 11 between 2:00 p.m. and 4:00 p.m. PDT

July 5, 2024
Page 2

## Requests for Admission ("RFA")

- **RFA No. 4:** Hadnagy claims that he cannot admit or deny that the Transparency Report posted on February 9, 2022, did not contain statements relating to sexual misconduct because Def Con has not fully responded to Hadnagy's discovery requests. However, RFA No. 4 is limited to the Transparency Report itself. Therefore, no additional discovery is needed for Hadnagy to respond.

  Hadnagy also contends that the phrases "relating to" and "sexual misconduct" are vague and ambiguous, which is a baseless objection. No judge would agree that these otherwise standard and plain-English phrases are ambiguous. Besides, the discovery requests define "relating to" in Paragraph 12 of the "definitions" section. The word "sexual" is used in its ordinary meaning of "relating to or associated with sex." The word "misconduct" is used in its ordinary meaning of "intentional wrongdoing."

  Hadnagy must amend his response to admit or deny that the Transparency Report did not contain statements relating to sexual misconduct. Answer the question in a non-evasive manner or we will move to compel.

- **RFA No. 31:** Hadnagy objected that the term "shouted" was vague and ambiguous, and responded that "Hadnagy may have raised his voice to employees during the Def Con event." The term "shouted" is used in its ordinary meaning to mean "utter loudly," or "yell." With that context, Hadnagy must amend his response.

## Interrogatories ("ROG")

- **ROG Nos. 1–2:** Hadnagy improperly invokes FRCP 33(d) and fails to fully respond to the interrogatories. This is, of course, an improper use of FRCP 33(d)—we encourage you to actually read the rule. Hadnagy may rely on FRCP 33(d) "only if the burden of deriving the answer will be substantially the same for either party." Def Con cannot guess what statements Hadnagy believes to be defamatory from his document production. Moreover, the interrogatories request that Hadnagy identify the defamatory statement, the speaker of the statement, the date the statement was made, and the forum through which it was made. Hadnagy must amend his responses to remove reference to FRCP 33(d) and identify every defamatory statement. Answer these interrogatories in a non-evasive manner or we will move to compel.

- **ROG No. 3:** The request asks for the date of contract formation and date of termination for each of the allegedly cancelled contracts. The response fails to provide this information. Hadnagy must provide the date of contract formation and date of termination for these contracts. To do so, he need only check (1) the date of the initial contract, and (2) the date of the communication allegedly terminating the contract.

July 5, 2024
Page 3

Notably, this request is based on *Hadnagy's own allegations*—either those allegations were made in good faith and with a factual basis, or they were not. Answer the question in a non-evasive manner or we will move to compel.

- **ROG No. 9:** Hadnagy claims that he is "still being told by people that they cannot be associated with Plaintiffs." To the extent that there are other "people," aside from those that allegedly terminated contracts with Hadnagy, those persons must be disclosed. Answer the interrogatory in a non-evasive manner or we will move to compel.

- **ROG No. 13:** Hadnagy provided a generic statement that the RFAs did not "contain true statements and the substance of the request was false." However, ROG No. 13 asks that Hadnagy provide an explanation for each unequivocal admission to support his denial. Hadnagy must amend his responses to explain each RFA where he does not provide an unequivocal admission, which includes RFA Nos. 4–5, 8–15, 19–22, 26–27, 29–30, 32–37, 39, and 40–43.

- **ROG No. 14:** Hadnagy's response to ROG No. 13 is not acceptable. It fails to identify the specific alleged harms to Hadnagy's reputation; the specific amount of damages he is seeking; and the documents he contends support these alleged damages. Hadnagy filed this lawsuit contending he has "suffered material loss of business exceeding the annual sum of one million dollars and incurred extensive damages as a result of Defendants' conduct." If Hadnagy made this allegation without evidence to support it, he should say so. Moreover, these are not complicated contractual damages where expert analysis would be required to understand such damages. Hadnagy must answer the interrogatory as written.

## Requests for Production ("RFP")

- **RFP No. 23:** Hadnagy did not agree to produce documents relating to his allegation that only sexual predators have received lifetime bans at Def Con, claiming Def Con failed to produce this information. However, Hadnagy made this allegation in his complaint, verifying that the allegations were truthful, and either has evidence to support his allegation or he does not. If no documents exist in his possession to substantiate their allegations, Hadnagy should amend his response to make that clear.

- **RFP No. 26:** Hadnagy provided links to the websites that posted articles about the Transparency Report. However, Hadnagy is required to produce these documents in the normal course of discovery, not simply provide hyperlinks. Additionally, Def Con asked for all "documents and communications." Therefore, if there are any text messages, emails, or other communications relating to the articles, Hadnagy should also produce those documents and communications. It is not clear from your production whether e-

July 5, 2024
Page 4

mails and other communications were searched to respond to this request. We ask that
you clarify.

- **RFP No. 36:** Hadnagy claims that <u>no relevant documents or communications exist</u>
  relating to ███████. However, ███████ is the ███████████████ and had
  a long personal and professional history with Hadnagy. It defies credulity that no
  documentation exists ***at all***. Please confirm when all documents and communications
  relating to ███████ were deleted or destroyed and what efforts were taken, if any, to
  preserve this evidence.

Please let us know your availability by **Tuesday, July 9** to discuss the issues raised in this letter,
as well as any other concerns regarding Hadnagy's discovery responses and document
production.

Sincerely,

David A. Perez

# EXHIBIT 2

Declaration of Matthew J. Mertens in Support of
LRC 37 Submission Regarding Motion to Compel

August 20, 2024

# PERKINSCOIE

1120 NW Couch Street
10th Floor
Portland, OR 97209-4128

+1.503.727.2000
+1.503.727.2222
PerkinsCoie.com

July 15, 2024

Matthew J. Mertens
MMertens@perkinscoie.com
D.  +1.503.727.2199
F.  +1.503.346.2199

**VIA EMAIL – mconrad@freybuck.com**

Mark Conrad
Frey Buck P.S.
1200 Fifth Avenue, Ste. 1900
Seattle, WA 98101

Re:     *Hadnagy et al. v. Def Con Communications, Inc. et al.*

Dear Mark:

This letter responds to your discovery-related letters dated July 8, 2024, and July 10, 2024. I will respond to each point your letters raise in turn. But the overarching theme is that of Mr. Hadnagy pointing the finger at Def Con to distract from his own glaringly deficient discovery, especially regarding his document collection, review, and production processes.

**(1)     The Federal Rules of Civil Procedure do not require identification of which documents are responsive to which requests.**

This is the second time that you have incorrectly accused Def Con of failing to comply with Federal Rule of Civil Procedure 34 in its document production. As we have now told you multiple times, and as Rule 34 itself makes clear, Rule 34 does not require concurrent production of documents with discovery responses. Nor does Rule 34 require a party to organize and label electronic documents to correspond to the categories in a request. Def Con is producing documents as they are kept in the usual course of business. *See* Fed. R. Civ. P. 34(b)(2)(E)(i). I again encourage you to read the rules before you accuse Def Con of violating them.

Moreover, and as you well know, Def Con was waiting for entry of a protective order before producing its first tranche of documents. I told you as much when we conferred in June—a fact conspicuously absent from your letters. And Def Con promptly produced its first tranche of documents upon entry of the protective order. Def Con has complied with its document production obligations. As this letter details below, the same cannot be said for Mr. Hadnagy.

Mark Conrad
July 15, 2024
Page 2

**(2)  Def Con appropriately marked documents as confidential under the protective order.**

I direct you to the first two categories of confidential material under the protective order: (1) the names and other personal information of individuals who approached Def Con with reports of bullying and harassment by your client; and (2) Def Con's internal communications discussing whether and under what circumstances to ban individuals from the Def Con conference. The Signal thread about which you complain contains extensive discussion of an individual who approached Def Con about Mr. Hadnagy's bullying behavior. Def Con marked it confidential for that reason. If there are *portions* of the Signal thread unrelated to discussions of this individual that you feel should be de-designated, then please identify those for our review.

Turning to the Basecamp thread, this falls squarely within the second category of confidential documents. Def Con does not publicize its internal communications about whether and under what circumstances it bans individuals from the Def Con conference.

**(3)  Your objection to lacking a privilege log is a wholly manufactured grievance.**

Def Con produced *two documents* with *one line redacted* in each document, and each document consisted of Jeff Moss forwarding dispute-specific materials to his outside general counsel, Jeff McNamara, with very brief comments related to the dispute. It is difficult to imagine two documents more quintessentially subject to attorney-client privilege, as is plain from the face of these communications. Your objection appears manufactured to create a discovery dispute on this issue where none substantively exists. Nonetheless, Def Con will produce a privilege log for these two documents.

**(4)  Def Con has already agreed to supplement certain of its interrogatory responses.**

As you are aware, Def Con agreed to supplement its interrogatory responses after conferral, and it has been working on doing so. Def Con was not dragging its feet. Mr. Moss's summer schedule is very busy with work-related travel and Def Con conference preparations; gathering the employment-related information you requested took time; and compiling the list of ban-related information took time as well. You never asked for any kind of status report or ETA. If you had, Def Con gladly would have provided one. The first communication we received from you about the

Mark Conrad
July 15, 2024
Page 3

timing of the updated responses was this discovery salvo. This does not evidence a good-faith approach to discovery.

Nonetheless, Def Con responds below to each "deficiency" you identify in your July 10 letter.

**Interrogatory No. 1:** Def Con will provide the names of all Def Con employees within the last 5 years, as well as the nature of their jobs.

**Interrogatory No. 4:** Def Con already told you it will provide the requested information.

**Interrogatory No. 5:** Def Con has already revised its response to Interrogatory No. 5 once and will do so again.

**Interrogatory No. 6:** Def Con's responses to the four distinct interrogatories posed in Interrogatory No. 6 are not "evasive." Def Con will nonetheless revise its response to Interrogatory No. 6, which you are objecting to for the first time in your July 10, 2024, letter.

**Interrogatory No. 8:** Def Con stands on its response to Interrogatory No. 8. Perkins Coie communicated with these individuals as part of developing its investigation, strategy, and defense of this lawsuit. The substance of Perkins Coie's communications with these individuals is protected work product under Federal Rule of Civil Procedure 26(b)(3)(A). It is not subject to discovery via interrogatory or otherwise. You can interview these individuals yourself.

**Request for Production No. 4:** Website traffic data and other similar website analytics that evidence traffic on February 9, 2022, and January 13, 2023, are irrelevant to Mr. Hadnagy's claims and damages. It is impossible to extrapolate from top-line traffic data which visitors may have seen the announcement of Mr. Hadnagy's ban, and this data is wholly irrelevant to Mr. Hadnagy's economic and noneconomic damages. Subject to the relevance objection and those raised in Def Con's June 3, 2024, responses, Def Con will investigate whether this information is within Def Con's possession, custody, or control.

**Interrogatory No. 9:** Def Con already told you it will provide the requested information.

Mark Conrad
July 15, 2024
Page 4

**Interrogatory No. 10:** Def Con has zero obligation to identify prospective trial witnesses and the substance of their testimony at this time, and it will not do so. Scheduling orders in federal court govern the substance and timing of witness disclosures.

### (5) Plaintiffs' document collection, review, and production processes are utterly inadequate.

Plaintiffs have failed to comply with basic e-discovery principles related to the collection, review, and production of electronic documents. Most gallingly, there is not a *single piece of metadata* associated with your document production. No custodial information; no file names; no subject lines; no e-mail to, from, or cc information; no information for date and time of creation, modification, or access to files; nothing. This is unacceptable.

Pursuant to Rule 34(b)(1)(C), a party requesting documents "may specify the form or forms in which electronically stored information is to be produced." *Tristate Roofing Inc. v. Achten's Quality Roofing & Constr., Inc.*, No. 3:22-CV-05835-RJB, 2023 WL 3506130, at *2 (W.D. Wash. May 17, 2023). Def Con's May 21, 2024, discovery requests specified the production of *native* electronic documents and advised that production of PDFs or other images in lieu of document natives was not acceptable. You instead provided imaged PDFs with no metadata.

E-mails contain metadata with a significant amount of evidentiary value. *See Sekisui Am. Corp. v. Hart,* 945 F.Supp.2d 494, 506 n. 71 (S.D.N.Y.2013) (citations omitted). You are obligated to either produce these documents in native form or provide a load file with searchable text and metadata for the PDF images. *See, e.g., Aguilar v. Immigration & Customs Enforcement Div. of U.S. Dep't of Homeland Sec.,* 255 F.R.D. 350, 355–60 (S.D.N.Y. 2008) (describing Sedona Conference recommendation that "even if native files are requested, it is sufficient to produce memoranda, emails, and electronic records in PDF or TIFF format accompanied by a load file containing searchable text and selected metadata"); *S2 Automation LLC v. Micron Tech., Inc.,* 11 Civ. 884, 2012 WL 3656454, at *20 (D.N.M. Aug. 9, 2012) (ordering plaintiff to produce e-mail in either native format or in the format defendant has requested); *In re Priceline.com Inc. Sec. Litig.,* 233 F.R.D. 88, 91 (D. Conn. 2005) (ordering production in TIFF format with corresponding searchable metadata databases).

Mark Conrad
July 15, 2024
Page 5

Moreover, the problems with your collection, review, and production processes go well beyond missing metadata. Even a cursory review of your document production reveals gaping holes. A non-exhaustive list follows.

- **Missing NDAs for** ▮▮▮▮▮▮▮▮ **and** ▮▮▮▮▮▮▮▮▮▮▮. Mr. Hadnagy alludes in various communications to NDAs that ▮▮▮▮▮▮▮ and ▮▮ ▮▮▮▮▮ allegedly breached. Please produce them.

- **Missing employment contracts for** ▮▮▮▮▮▮▮▮ **and** ▮▮▮▮▮▮▮▮▮. Mr. Hadnagy claims that ▮▮▮▮▮▮▮ and ▮▮▮▮▮▮▮ breached employment contracts with Social-Engineer. Please produce them.

- <u>**Missing documents and information related to lawsuits against**</u> ▮▮▮ <u>▮▮▮▮▮▮▮▮▮▮▮▮</u>. Mr. Hadnagy told ▮▮▮▮▮▮ that a certain ▮▮▮▮▮ was sued "because he stole items from SECOM," and ▮▮▮▮▮▮ was sued "as she was a thief and a liar."[1] Mr. Hadnagy's discovery responses represent—apparently falsely—that he and Social-Engineer have only sued or threatened to sue Jeff Moss and Def Con within the last ten years. Please produce documents related to Mr. Hadnagy's lawsuits, threatened or otherwise, against ▮▮▮▮ and ▮▮▮▮▮▮.



- **Missing documents related to assertion that** ▮▮▮▮▮▮▮▮ **is "a thief and a liar."** Please produce documents related to Mr. Hadnagy's assertion that ▮▮▮▮▮▮ is a thief and a liar, including Mr. Hadnagy's basis for the statement; internal communications from Social-Engineer about ▮▮▮▮▮▮▮▮; and internal and external communications regarding actions taken against ▮▮▮▮▮▮▮ as a result. Mr. Hadnagy's production of 15 pages of documents in response to Request for Production No. 37 is plainly inadequate.



- **Missing documents on "Project Unicorn."** There are no communications regarding the so-called "Project Unicorn" related to Mr. Hadnagy's alleged underage sex sting. Please produce them.

- **Missing documents regarding Mr. Hadnagy's assertions against** ▮▮▮ ▮▮▮▮▮▮▮ **related to her employment.** Mr. Hadnagy alleges that ▮▮▮▮▮▮ (1) took confidential information with her on her personal laptop

---

[1] Notwithstanding this lawsuit, Mr. Hadnagy apparently has no concerns when *he* defames others.

Mark Conrad
July 15, 2024
Page 6

when she left Social-Engineer, and (2) Social-Engineer purchased the laptop from ▮▮▮▮▮▮▮ as a condition of her employment. You have produced no documents to support either allegation. Either produce responsive documents or admit you do not have them.

- **Missing documents with** ▮▮▮▮▮▮▮▮▮▮. It defies belief that Social-Engineer and Mr. Hadnagy have no communications with their ▮▮▮▮▮▮▮. Please produce documents in response to Request for Production No. 36 or explain why Mr. Hadnagy no longer has these documents.

- **Mr. Hadnagy's defamatory statements to** ▮▮▮▮▮▮▮▮ **regarding** ▮▮▮▮▮▮▮▮. Mr. Hadnagy described ▮▮▮▮▮▮▮ to ▮▮▮▮▮▮▮ as "a train wreck. Stole IP. Took work with her. Quit. Lied. Started a competitive company." These statements are defamatory. Please produce all documents relating to Mr. Hadnagy's contentions that ▮▮▮▮▮▮▮:

  o is a "train wreck";

  o stole IP;

  o took work with her when she left Social-Engineer;

  o lied; and

  o started a competitive company.

  o Please also produce any documents relating to a noncompetition agreement with ▮▮▮▮▮▮▮, or admit one does not exist.

  o Please produce all documents related to Mr. Hadnagy's assertion that he "helped ▮▮▮▮▮▮▮ write a book[.]"

  o Please produce all documents related to Mr. Hadnagy's assertion that ▮▮▮▮▮▮▮ was "threatening to tell the world I abuse women [if] I sue her."

- **Missing documents from any third parties contacting Mr. Hadnagy regarding the Transparency Report.** Mr. Hadnagy has not produced a single communication from a single third party regarding his allegedly terminated contracts. Please produce any documents and communications

Mark Conrad
July 15, 2024
Page 7

from any third parties telling Mr. Hadnagy they were terminating actual or prospective business relationships with him because of the Transparency Report, or admit you do not have them.

- **Missing documents from Mr. Hadnagy's impairment of ███████'s economic opportunities.** Mr. Hadnagy concedes that he contacted a television producer, a podcast host, and a book publisher regarding his grievances against █████████, but he has failed to produce the communications themselves. Please produce them.

Separate from the specific categories of missing documents above, Def Con has grave concerns about systematic deficiencies in how your firm and Mr. Hadnagy are collecting, reviewing, and producing documents.

- **No ILF documents.** There appear to be no Innocent Lives Foundation documents and communications in this document production.

- **No internal Social-Engineer communications.** There are no emails between Social-Engineer employees. There are no internal chat logs, such as through Webex, Slack, Skype, or another chat platform.

- **No texts with ██████████.** There are no texts from Social-Engineer employees to ██████████.

- **No texts generally.** With the possible exception of the conversation with ████████, which appears to be over Signal but may be text messages, there are no text messages in the production.

- **No messages regarding Mr. Hadnagy's alleged emotional distress.** There are no chats, texts, Signal messages, Facebook messages, emails, or any other form of written communications related to Mr. Hadnagy's alleged emotional distress from the Def Con ban.

On our conferral call, please be prepared to discuss the following regarding your collection, review, and production process:

- Sources of data collection;

- Methods of data collection;

Mark Conrad
July 15, 2024
Page 8

- Custodians collected from;

- Whether your firm or Mr. Hadnagy is conducting the review for responsive materials;

- Collection search terms, if any;

- Promotion search terms, if any;

- Review search terms, if any, and if different from the promotion search terms;

- Date range of collected materials.

If a supplemental production is not made in the next two weeks, we will move to compel.

Sincerely,

*Matthew Mertens*

Matthew J. Mertens

MJM:jm

cc:    David Perez, Perkins Coie LLP
       Lauren Trambley, Perkins Coie LLP
       Ted Buck, Frey Buck P.S.
       Amber Holmes, Frey Buck P.S.
       Lauren English, Frey Buck P.S.

# EXHIBIT 3

Declaration of Matthew J. Mertens in Support of
LRC 37 Submission Regarding Motion to Compel

August 20, 2024

**PERKINS**coie

1120 NW Couch Street
10th Floor
Portland, OR 97209-4128

+1.503.727.2000
+1.503.727.2222
PerkinsCoie.com

July 22, 2024

Matthew J. Mertens
MMertens@perkinscoie.com
D.  +1.503.727.2199
F.   +1.503.346.2199

**VIA EMAIL**

Mark Conrad
Frey Buck P.S.
1200 Fifth Avenue, Ste. 1900
Seattle, WA 98101
mconrad@freybuck.com

**Re:**  *Hadnagy et al. v. Def Con Communications, Inc. et al.*

Dear Mark:

Thank you for the productive meet and confer with us on July 16, 2014, regarding the parties' discovery disputes. The purpose of this letter is to memorialize the parties' discussion and to address questions raised during that call.

**(1)   Hadnagy's Discovery**

**a.  Document Production**

First, you asked for authorities regarding party self-collection and self-review during the discovery process. "Parties and counsel that embark on self-collection can soon encounter multiple pitfalls that can sidetrack the litigation and lead to motions to compel, spoliated evidence, and even sanctions." *DR Distributors, LLC v. 21 Century Smoking, Inc.*, 513 F. Supp. 3d 839, 934–35 (N.D. Ill. 2021). The pitfalls may include the client's failure (1) "to identify all sources of responsive information," (2) "to preserve evidence," (3) to "find or provide to counsel all responsive documents and ESI," or (4) to "fully document how they conducted their searches." *Id.* at 935–37. Self-collections by document custodians tend to give rise to "questions regarding the accuracy and completeness of collections" when directions and oversight are lacking. *Tera II, LLC v. Rice Drilling D, LLC*, No. 2:19-CV-2221, 2022 WL 1114943, at *4–5 (S.D. Ohio Apr. 14, 2022).

*Benanav v. Healthy Paws Pet Ins. LLC*, 2022 WL 3587982 (W.D. Wash. 2022) is representative. In response to the plaintiffs' refusal to produce metadata or a load file with their productions, defendants sought and were granted a motion to compel. The

Mark Conrad
July 22, 2024
Page 2

plaintiffs in *Benanav* case self-searched their ESI, refused to forensically collect their ESI, and had a number of production deficiencies (missing attachments, broken document families, along with the failure to produce metadata and load files). The court rejected the plaintiffs' Rule 26(b) burden and proportionality argument. The court also noted "[p]laintiffs also provide only a vague explanation of how counsel supervised and directed each Plaintiff in searching for and identifying responsive documents."

Plaintiffs' self-collection and self-review processes are inadequate for this case. On July 15, 2024, we provided a non-exhaustive list of key documents that appear to be missing from Plaintiffs' production. What's more, Plaintiffs are alleging more than $3 million in lost contracts and an indeterminate amount in reputational and emotional distress damages. *See* June 20, 2024, Plaintiffs' Responses to Def Con's First Set of Discovery Requests, Interrogatory Responses Nos. 3 and 5. This is not a small dispute according to Plaintiffs' own allegations and discovery responses. And *Plaintiffs* brought this multimillion-dollar lawsuit, not Def Con.

Under Rule 26(b), Plaintiffs must approach document collection, review, and production in this case with the same seriousness that Def Con has. This means forensic collection of email accounts and other data sources likely to contain responsive information; conferring with Def Con on search terms, custodians, data sources, and date restrictions; providing search term reports upon request; and otherwise complying with the Court's Model ESI Agreement, as the parties agreed to do in Paragraph 4(i) of the March 1, 2024, Joint Status Report. This includes producing documents with metadata intact. Please be prepared to confer regarding search terms, custodians, and data sources during our Friday, July 26 conferral.

Second, as for Mr. Hadnagy's first production, we've confirmed with our e-discovery attorneys that there is not a single piece of metadata associated with your document production. While you produced natives of emails and attachments, the documents were re-named to bates numbers, with no load files and therefore no extracted metadata. Therefore, despite being native files, there is no custodial information; no file names; no subject lines; no e-mail to, from, or cc information; no information for date and time of creation, modification, or access to files; and no other kind of metadata. You need to provide a load file with metadata for these documents in accordance with Def Con's discovery requests and the Court's Model ESI Agreement, or alternatively re-collect and re-produce the documents with metadata intact.

Mark Conrad
July 22, 2024
Page 3

Please confirm by **Friday, August 2,** that your firm has either collected from the custodians and data sources identified on our Friday, July 26 conferral and begun to run the mutually agreed-to search terms, or you have retained a third-party vendor to do so.[1] We will have to move to compel otherwise.

### b. Amended Responses

The parties discussed Mr. Hadnagy's deficient discovery responses, and came to the following:

- **RFA No. 4:** You said on the call that "relating to" is so broad that it is difficult to admit or deny whether the Transparency Report contains statements relating to "sexual misconduct." However, the Transparency Report either relates to sexual misconduct or it does not. In any event, Def Con defined "relating to" as "in whole or in part, reflecting, regarding, related to, concerning, in connection with, involving, supporting, addressing, analyzing, constituting, containing, commenting on, discussing, describing, identifying, referring to, reporting on, stating, dealing with, or in any way pertaining to." To clarify for Mr. Hadnagy, Def Con is willing to narrow the scope of "relating to" to mean (1) reflecting, (2) referring to, (3) describing, (4) concerning, or (5) pertaining to. With this revised definition, please amend Mr. Hadnagy's response to admit or deny.

- **RFA No. 31:** Mr. Hadnagy admitted that he "*may* have raised his voice to employees during Def Con." Mr. Hadnagy has agreed to amend his response to either admit or deny that he "shouted"—using its ordinary meaning to "utter loudly"—at employees at Def Con.

- **ROG No. 1-2:** Mr. Hadnagy agreed to amend his responses to identify the specific statements that he believes are defamatory.

- **ROG No. 3:** Mr. Hadnagy agreed to amend his response to include the date of contract formation and the date of contract termination. Mr. Hadnagy also

---

[1] Per your request during our conferral call, our e-discovery personnel provided the following recommendations for third-party vendors with whom we've worked previously:

Stroz Friedberg: David Hanika, david_hanika@aon.com
Digital Mountain: John Christiansen, john.christiansen@digitalmountain.com
Consilio: Brian McClure, Brian.McClure@consilio.com

Perkins Coie LLP

Mark Conrad
July 22, 2024
Page 4

agreed to produce natives of the contract and the document communicating termination.

- **ROG No. 9:** Mr. Hadnagy agreed to amend his response to provide specific names of individuals where he is "still being told by people that they cannot be associated with Plaintiffs."

- **ROG No. 13:** Mr. Hadnagy agreed to amend his response to provide context for his denial of certain RFAs.

- **ROG No. 14:** Mr. Hadnagy agreed to amend his response to be more specific regarding his alleged damages.

- **RFP No. 23**: Mr. Hadnagy agreed to amend his response, and produce documents in his possession, custody, or control relating to his allegation that only sexual predators have received lifetime bans at Def Con.

- **RFP No. 26:** Mr. Hadnagy agreed to amend his response, and produce documents relating to articles posted about the Transparency Report.

- **RFP No. 36:** Mr. Hadnagy maintains that no documents or communications exist between Mr. Hadnagy and ███████████.

We understand that you were in trial for most of last week; however, please provide a date certain by which Mr. Hadnagy will amend his responses consistent with the above.

### (2) **Def Con's Discovery**

#### a. **Amended Responses**

Def Con served its Second Amended Responses on July 16, 2024. You agreed to review the amended responses and let us know if any additional amendment is needed.

#### b. **Privilege Log**

Def Con will provide a privilege log for documents withheld or redacted under attorney-client privilege and/or the work-product doctrine.

As discussed, Def Con stands on its response to Interrogatory No. 8. Perkins Coie communicated with third parties as part of developing its investigation, strategy, and

Mark Conrad
July 22, 2024
Page 5

defense of this lawsuit. The substance of Perkins Coie's notes and communications with these individuals is protected work product under Federal Rule of Civil Procedure 26(b)(3)(A). It is not subject to discovery via interrogatory or otherwise. Moreover, these notes were created after Mr. Hadnagy filed the lawsuit, falling outside the relevant time period for Mr. Hadnagy's claims.

### c. Confidentiality Designations

Mr. Hadnagy is free to do as he pleases with messages that are independently in his possession, custody, or control, such as the messages between Mr. Hadnagy and ████ ████.

However, the Basecamp thread is properly designated confidential under the Protective Order. It falls squarely within the second category of the Protective Order: "Def Con's internal communications discussing whether and under what circumstances to ban individuals from the Def Con conference." Additionally, as mentioned on the call, Def Con's process and decision-making for banning individuals is not public knowledge and is the kind of "confidential . . . private information" that warrants protection under LCR 26(c)(2). It is for precisely this reason that Def Con included this category in the parties' stipulated protective order. Def Con did not hide the ball on what it intended to protect. Additionally, the Basecamp thread identifies at least three individuals that reported harassment by Mr. Hadnagy.

For these reasons, Def Con does not agree to remove the confidentiality designation on the Basecamp thread and will file a motion to protect the same.

### d. Website Traffic Data

Subject to our initial discovery objections and those raised in our July 15, 2024, conferral letter, we will consult with Mr. Moss regarding what kind of web traffic data, if any, may be in his custody, possession, or control.

Mark Conrad
July 22, 2024
Page 6


Sincerely,

Matthew J. Mertens


cc:    David Perez, Perkins Coie LLP
       Lauren Trambley, Perkins Coie LLP
       Ted Buck, Frey Buck P.S.
       Amber Holmes, Frey Buck P.S.
       Lauren English, Frey Buck P.S.

# EXHIBIT 4

Declaration of Matthew J. Mertens in Support of
LRC 37 Submission Regarding Motion to Compel

August 20, 2024

**From:**     Mark Conrad
**To:**       Mertens, Matthew (POR)
**Subject:**  SE discovery
**Date:**     Friday, August 2, 2024 6:55:49 PM

Matt,

I hoped to have an answer for you today regarding our discovery collection efforts, but I need to have an additional conversation with my client first. I should have an answer for you by next week.

Thanks,
Mark

Sent from my iPhone. Please excuse any brevity, spelling and punctuation.