The Honorable Brian A. Tsuchida

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| CHRISTOPHER J. HADNAGY, an individual; and SOCIAL-ENGINEER, LLC, a Pennsylvania limited liability company,<br><br>Plaintiffs,<br><br>v.<br><br>JEFF MOSS, an individual; DEF CON COMMUNICATIONS, INC., a Washington corporation; and DOES 1-10; and ROE ENTITIES 1-10, inclusive,<br><br>Defendants. | No. 2:23-cv-01932-BAT<br><br>**PLAINTIFFS' RESPONSE TO DEFENDANTS' MOTION TO EXTEND DEADLINES IN SCHEDULING ORDER AND CONTINUE TRIAL**<br><br>**NOTED FOR CONSIDERATION: NOVEMBER 15, 2024** |

## I. INTRODUCTION AND RELIEF REQUESTED

This Court should deny Defendants' motion to extend deadlines in the scheduling order, and continue trial. As detailed below, Defendants have misrepresented key facts surrounding the scheduling of Mr. Hadnagy's deposition and failed to act on their own requests for deposition dates. Plaintiffs have diligently complied with their discovery obligations, producing substantial and responsive documents, in response to Defendants' broad discovery requests, well in advance of the discovery deadline. Defendants have not shown why discovery cannot be completed within

the time remaining, with the trial still some five months away. Defendants' vague assertion that they "may need to conduct follow-up discovery" does not provide a sufficient basis for their request. Moreover, extending the deadlines would cause significant prejudice to Plaintiffs, who are already facing severe financial hardship as a result of the ongoing litigation. For these reasons, Plaintiffs urge the Court to deny Defendants' motion.

## II.     RELEVANT FACTS

**A. Defendants' Claim of Scheduling Delay of Hadnagy's Deposition Misrepresents the Facts.**

Defendants' assertion that Plaintiffs delayed scheduling Mr. Hadnagy's deposition and only offered dates one week before the discovery cutoff is a gross distortion of the actual sequence of events. On September 30, 2024, when Defendants first contacted Plaintiffs about the scheduling of Hadnagy's deposition, they specifically stated, "**We would like to depose Mr. Hadnagy in late November or early December**; **could you please check with your client for his availability in that time period**?" *Conrad Declaration*, Ex. A (emphasis added). The next day, October 1, 2024, Plaintiffs' counsel responded promptly, stating, "I'll work on scheduling dates for Hadnagy's deposition. Do you prefer Zoom or in-person?" *Id*. ¶ 3.  Defendants' counsel replied on October 3, 2024, indicating their preference for an in-person deposition. *Id*. ¶ 3.  The following day, October 4, 2024, Plaintiffs' counsel notified Defendants that Mr. Hadnagy was available the first week of December, aligning with the timeframe Defendants had explicitly requested. *Id*. ¶ 3.

Since that exchange, Plaintiffs' counsel has followed up on multiple occasions to secure a specific date for the deposition, only to be met with inaction from Defendants, which have yet to confirm any date or issue a deposition notice. *Id*. ¶ 4.  To now claim that Plaintiffs caused delays by providing December dates—**dates that Defendants themselves requested**—is entirely

TO EXTEND DEADLINES IN SCHEDULING ORDER
AND CONTINUE TRIAL - 2

FREY BUCK
1200 FIFTH AVENUE, SUITE 1900
SEATTLE, WA 98101
P: (206) 486-8000 F: (206) 902-9660

disingenuous. This mischaracterization is emblematic of a broader pattern of misleading assertions by Defendants regarding Plaintiffs' discovery conduct.

Plaintiffs have acted diligently and in good faith, accommodating Defendants' scheduling preferences. Plaintiffs also remain committed to cooperating reasonably and in good faith with any scheduling preferences so that the deposition can occur before the Court's discovery deadline, and months before the scheduled trial date.

**B.  Plaintiffs' Good Faith Efforts to Forensically Collect Data and Produce Documents.**

Plaintiffs have undertaken substantial and exhaustive efforts to comply with their discovery obligations, ensuring the timely and comprehensive production of responsive documents more than a month prior to the discovery deadline, and six months prior to the trial date. Following the Court's order on August 21, 2024, see Dkt. 63, which required both parties to forensically collect and process discovery data using designated search terms, Plaintiffs immediately initiated compliance measures. *Id*. ¶ 5.  The next day, on August 22, 2024, Plaintiffs' counsel contacted three different third-party forensic discovery firms to undertake the effort, and Plaintiff Hadnagy began preparing data for transfer to any forensic discovery firm.[1] *Id*. ¶ 5.

By August 26, 2024, within five days of the Court's order, Plaintiffs already produced documents responsive to Defendants' requests, ensuring that ongoing production was not delayed by the forensic collection process. *Id*. ¶ 9. On August 28, 2024, Plaintiffs had already retained Def Sec LLC and provided its technicians with access to some 380 GB of data—an immense volume

---

[1] Plaintiffs' counsel is a smaller trial firm that does not currently have the capacity to forensically collect and house the amount of data (some 380 GB) required for download in this matter. For context, 380 GB equates to about 95 feature length moves in HD, and if printed, would require millions of pages or tens of thousands of volumes of books. One of the forensic discovery firms provided an estimate cost of $12,000 to undertake the efforts, demonstrating the substantial cost and logistical demands of the process.

PLAINTIFFS' RESPONSE TO DEFENDANTS' MOTION
TO EXTEND DEADLINES IN SCHEDULING ORDER
AND CONTINUE TRIAL - 3

FREY BUCK
1200 FIFTH AVENUE, SUITE 1900
SEATTLE, WA 98101
P: (206) 486-8000 F: (206) 902-9660

resulting from Defendants' broad demands. *Id.* ¶ 7. Forensically collecting and processing this volume of data from multiple sources, including multiple emails domains and social media accounts, is an inherently time-consuming and complex task. *Id.* ¶ 8. The process involves not only extracting and handling large datasets but also coordinating with social media platforms for account access, all of which requires technical expertise to ensure data integrity and to conduct search result reports. *Id.* ¶ 8.

On September 3, 2024, Defendants provided an initial search term report, which did not include all results and required numerous other iterations. *Id.* ¶ 12. This occurred less than two weeks after Plaintiffs had provided their proposed search terms to Defendants. *Id.* ¶ 12. Following a September 6, 2024, meet and confer session to discuss collection status and search term narrowing, Plaintiffs then specifically informed Defendants on September 9, 2024, of the collection's progress, noting that a search term report could be reasonably provided by September 16, 2024. *Id.* ¶ 13, Ex. B. Defendants did not object to this timeline, and on September 10, 2024, the parties filed a joint motion certifying their good faith efforts in discovery. Dkt. 65.

On September 13, 2024, Plaintiffs delivered the search term report three days earlier than anticipated, which revealed, as anticipated, that Defendants' search terms were overly broad, yielding well over 200,000 document hits. *Id.* ¶ 14, Ex. A. On September 16, 2024, Defendants acknowledged the need for narrowing and expressed appreciation for the report, stating, "Thanks for the STR. Appreciate it. It's clear that some of these terms need narrowing. I'll work on that tomorrow and send you proposed narrowers." *Id.* ¶ 15. Throughout September and into October, the parties continued collaborative discussions to refine the search terms, each party providing multiple iterations of the search term reports, and to ensure compliance for both parties.

After finalizing the search term report for Defendants, the result yielded over 30,000

1  documents that had to be transferred into Plaintiffs' discovery platform for review of privilege and
2  responsiveness to Defendants' discovery requests. *Id*. ¶ 16. On October 24, 2024, Plaintiffs
3  produced all documents from the forensic collection that were responsive to Defendants' second
4  set of requests, including extensive communications from Social-Engineer, LLC, employees as
5  requested. *Id*. ¶ 17. By comparison, on October 25, 2024, Defendants produced documents from
6  their own forensic collection for the first time. *Id*. ¶17.

7  Throughout September and into October, the parties engaged in collaborative discussions
8  to refine the search terms, with each side providing multiple iterations of the search term reports
9  to ensure compliance for both parties. *Id*. ¶ 16. After finalizing the search term report for
10  Defendants, it still yielded a result of over 30,000 documents which had to then be transferred into
11  Plaintiffs' discovery platform for review for privilege and responsiveness to Defendants' discovery
12  requests. *Id*. ¶ 16. On October 24, 2024, Plaintiffs produced all documents from the forensic
13  collection responsive to Defendants' second set of requests, including extensive communications
14  from Social-Engineer, LLC, employees as requested. *Id*. ¶ 17. For comparison, on October 25,
15  2024, Defendants for the first time produced documents from their own forensic collection. *Id*. ¶
16  17.

17  On November 1, 2024, Plaintiffs then completed the production of documents related to
18  Defendants' first set of requests, and on November 7, 2024, finalized their production with an
19  additional eight pages of relevant message. *Id*. ¶ 17.

20  To date, Plaintiffs have produced over 17,135 bates-stamped pages, in stark contrast to
21  Defendants' production of only 785 pages. *Id*. ¶ 17. This significant disparity underscores the
22  disproportionate burden placed on Plaintiffs and highlights their commitment to thorough and
23  transparent discovery. Contrary to Defendants' unfounded claims of a "document dump,"

Plaintiffs have adhered to the broad scope of discovery defined by Defendants' own demands. For instance, this document production includes *all communications related to* several Social-Engineer, LLC, employees who worked at the company for years, as specifically requested by Defendants in discovery. *Id.* ¶ 18.

All discovery has been produced more than a month before the discovery deadline. Continuing the trial date and extending deadlines would impose substantial hardship on Plaintiffs, who are already in a precarious financial position—something Defendants are fully aware of. While Def Con is a multimillion-dollar enterprise, estimated to generate $14 million in annual revenue just from attendance at Def Con in Las Vegas, and represented by a multinational law firm, Social-Engineer, LLC, is a small company that has operated at a loss since Def Con announced its so-called "transparency" ban against Mr. Hadnagy. Any further delay in the trial date or deadlines will cause Plaintiffs significant financial hardship and hinder their ability to effectively prosecute these claims.

### III.    AUTHORITY & ARGUMENT

**A. The Court should deny the request to extend the deadlines, including the trial date, set by this Court's Scheduling Order.**

Under Federal Rule of Civil Procedure 16(b)(4), a scheduling order, including a request to continue the trial date, "may be modified only for good cause and with the judge's consent." The "good cause" standard under Rule 16(b) primarily examines the diligence of the party seeking the modification. *Johnson v. Mammoth Recreations, Inc.*, 975 F.2d 604, 609 (9th Cir. 1992). Local Civil Rule 16(b)(6) further clarifies that "mere failure to complete discovery within the time allowed does not constitute good cause for an extension or continuance." The Western District of Washington has emphasized that "this rule will be 'strictly enforced' to 'accomplish effective

PLAINTIFFS' RESPONSE TO DEFENDANTS' MOTION
TO EXTEND DEADLINES IN SCHEDULING ORDER
AND CONTINUE TRIAL - 6

FREY BUCK
1200 FIFTH AVENUE, SUITE 1900
SEATTLE, WA 98101
P: (206) 486-8000 F: (206) 902-9660

1     pretrial procedures and avoid wasting the time of the parties, counsel, and the court.'" *Harris v.*
2     *Skanska United States Bldg. Inc.*, No. C22-555RSM, 2023 U.S. Dist. LEXIS 180964, at *2-3
3     (W.D. Wash. Oct. 6, 2023) (citing LCR 16(m)). Courts apply the same standards to both motion
4     to extend a scheduling order and motion to continue trial dates, ensuring consistent enforcement
5     of Rule 16(b)'s requirements. While prejudice to an opposing party may support denying the
6     motion, it is not required under Rule 16(b). *Harris, 2023 U.S. Dist. LEXIS 180964, at *2.*

7         Here, Defendants argue for an extension of the scheduling order and continuance of the trial by misrepresenting that Plaintiffs delayed Mr. Hadnagy's deposition "until the eleventh hour before the close of discovery." This claim is plainly false. As stated above, on September 30, 2024, Defendants themselves requested the deposition take place in "late November or early December." *Conrad Decl.*, Ex. A. Plaintiffs promptly responded on October 1, 2024, confirming their efforts to schedule the deposition and inquiring about Defendants' preference for an in-person or Zoom format. *Id*. Defendants expressed their preference for an in-person deposition on October 3, 2024. *Id*. On October 4, 2024, Plaintiffs informed Defendants that Mr. Hadnagy would be available during the first week of December—dates that precisely aligned with Defendants' request. *Id.* Since then, Defendants have neither confirmed a date nor issued a deposition notice. It is unreasonable for Defendants to claim diligence when they set the timeline and failed to act on it.

18     Furthermore, Plaintiffs made every effort to produce documents responsive to Defendants' discovery requests over a month before the deposition timeline and six months before the trial date. Plaintiffs first began document production in June 2024 and continued in good faith throughout the discovery period, periodically providing responsive materials and engaging in a thorough and costly forensic collection and review process. Plaintiffs have produced thousands of pages in response to expansive requests – what Defendants disingenuously call a "document

PLAINTIFFS' RESPONSE TO DEFENDANTS' MOTION
TO EXTEND DEADLINES IN SCHEDULING ORDER
AND CONTINUE TRIAL - 7

FREY BUCK
1200 FIFTH AVENUE, SUITE 1900
SEATTLE, WA 98101
P: (206) 486-8000 F: (206) 902-9660

1    dump" – that included communications from employees spanning multiple years, demonstrating

2    good faith compliance with broad discovery demands. The fact that Defendants only began

3    producing documents from their forensic collection *after* Plaintiffs further weakens their position.

4    In sum, Defendants have not demonstrated why this Court should move all of the scheduled

5    dates, including the trial date in April 2025, when Defendants themselves requested early

6    December deposition dates but have yet to issue a notice or confirm scheduling, and Plaintiffs

7    provided all responsive discovery over a month before the discovery deadline. There has been and

8    is ample time for Defendants to review Plaintiffs discovery productions and complete the

9    deposition of Mr. Hadnagy which Plaintiffs will cooperate in good faith with scheduling.

10    Defendants claim that they "may need to conduct follow-up discovery" is not a sufficient

11    basis to extend the scheduling order and trial date. Should any distinct outstanding discovery needs

12    arise, the parties should address them at that time, and Plaintiffs remain committed to undertaking

13    any such efforts in good faith. However, Defendants have not identified any specific discovery

14    needs that require modification of the Court's discovery deadline, nor have they shown any effort

15    to resolve this matter that would justify extending the mediation deadline, nor extending the

16    deadlines for dispositive or Daubert motions when plaintiffs already produced all expert materials

17    and their expert for a deposition. Defendants' fishing expedition to find information supporting

18    their statements about Mr. Hadnagy and Social-Engineer, LLC, does not establish good cause to

19    extend the discovery deadlines or for a trial continuance.

20    Lastly, a continuance of the trial date and deadlines will cause significant prejudice to

21    Plaintiffs, as they are already in a dire financial situation. Any further delay would impose

22    additional financial strain on a company that is struggling to keep up with the demands of litigation.

23

PLAINTIFFS' RESPONSE TO DEFENDANTS' MOTION
TO EXTEND DEADLINES IN SCHEDULING ORDER
AND CONTINUE TRIAL - 8

FREY BUCK
1200 FIFTH AVENUE, SUITE 1900
SEATTLE, WA 98101
P: (206) 486-8000 F: (206) 902-9660

## IV. CONCLUSION

For reasons set forth above, Plaintiffs respectfully requests this Court deny the Defendants request for an extension of the scheduling deadlines and continuance of the trial date.

As required by Local Civil Rule 7(e)(6), I certify that Defendant Officers' Joint Motion to Continue Stay contains 2,271 words, excluding the parts that are exempt by Local Civil Rule 7(e)(6).

DATED this 12th day of November, 2024 at Seattle, Washington.

**FREY BUCK**

By: _____
Ted Buck, WSBA #22029
Mark Conrad, WSBA #48135
*Attorneys for Plaintiffs*

## CERTIFICATE OF SERVICE

The undersigned certifies under the penalty of perjury according to the laws of the United States and the State of Washington that on this date I caused to be served in the manner noted below a copy of this document entitled **PLAINTIFFS' RESPONSE TO DEFENDANTS' MOTION TO EXTEND DEADLINES IN SCHEDULING ORDER AND CONTINUE TRIAL** on the following individuals:

David Perez, WSBA #43959
Matthew J. Mertens (Pro Hac Vice)
Lauren A. Trambley (Pro Hac Vice)
Perkins Coie LLP
1201 Third Avenue, Suite 4900
Seattle, Washington 98101
dperez@perkinscoie.com
mmertens@perkinscoie.com
ltrambley@perkinscoie.com

[ ]   Via USPS
[X]   Via Electronic Mail
[X]   Via Electronic Filing (CM/ECF)

DATED this 12th day of November 2024 at Seattle, Washington.

*Amber S Holmes*
Amber Holmes, Legal Assistant