1

2

THE HONORABLE BRIAN A. TSUCHIDA

3

4

5

6

7

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

8

9  CHRISTOPHER J. HADNAGY, an indi-
    vidual; and SOCIAL-ENGINEER, LLC,
10  a Pennsylvania limited liability com-
    pany,
11
                        Plaintiff,
12
            v.
13
14  JEFF MOSS, an individual; DEF CON
    COMMUNICATIONS, INC., a Wash-
15  ington corporation; and DOES 1-10; and
    ROE ENTITIES 1-10, inclusive,
16
17                    Defendants.

No. 2:23-cv-01932-BAT

**DEFENDANTS' MOTION TO EX-
CLUDE PLAINTIFFS' DAMAGES
EXPERT BEN THOMAS**

**Noted for Consideration:** April 4,
2025

18

19

20

21

22

23

24

25

26

DEFENDANTS' MOTION TO EXCLUDE PLAINTIFFS'
DAMAGES EXPERT (NO. 2:23-cv-01932-BAT)

**Perkins Coie LLP**
1201 Third Avenue, Suite 4900
Seattle, WA 98101-3099
Phone: 206.359.8000
Fax: 206.359.9000

# TABLE OF CONTENTS

**Page**

I.    INTRODUCTION ................................................................................. 1

II.   HADNAGY'S EXPERT ........................................................................ 2

III.  LEGAL STANDARD ........................................................................... 3

IV.   ARGUMENT ....................................................................................... 4

    A.    Mr. Thomas's Methodologies Are Unreliable. ............................ 4

        1.    Mr. Thomas's calculations for loss of business value are unreliable. ................................................................... 4

        2.    Mr. Thomas's calculations for lost income are unreliable .................. 9

        3.    Mr. Thomas "double dips" for both lost income and business value. ................................................................... 15

    B.    Mr. Thomas's Opinions Are Not Based on Sufficient Facts. ................... 16

        1.    Mr. Thomas relies on a client-prepared spreadsheet. ........................ 16

        2.    Mr. Thomas's testimony assumes causation and is wholly useless to a jury. ................................................................... 18

        3.    Mr. Thomas does not consider alternative explanations. .................. 20

V.    CONCLUSION .................................................................................... 22

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26

**Perkins Coie LLP**
1201 Third Avenue, Suite 4900
Seattle, Washington 98101-3099
Phone: +1.206.359.8000
Fax: +1.206.359.9000

# TABLE OF AUTHORITIES

**Page(s)**

**CASES**

*Am. Anodco, Inc. v. Reynolds Metals Co.,*
  743 F.2d 417 (6th Cir. 1984) ................................................................. 16

*Architectural Ingenieria Siglo XXI, LLC v. Dominican Republic,*
  2023 WL 8946765 (11th Cir. Dec. 28, 2023) ........................................ 9

*Campagnolo S.r.l. v. Full Speed Ahead, Inc.,*
  2010 WL 11527323 (W.D. Wash. May 5, 2010) ................................... 18

*Chung v. Washington Interscholastic Actives Ass'n, C19-5730-RSM,*
  2021 WL 1978698 (W.D. Wash. May 18, 2021) ................................... 21

*Daubert v. Merrell Dow Pharmaceuticals, Inc.,*
  509 U.S. 579 (1993) ......................................................................... 3, 9

*Daubert v. Merrell Dow Pharms., Inc.,*
  43 F.3d 1311 (9th Cir. 1995) ........................................................ 3, 6, 6

*Diviero v. Uniroyal Goodrich Tire Co.,*
  114 F.3d 851 (9th Cir. 1997) ................................................................. 4

*Gen. Elec. Co. v. Joiner,*
  522 U.S. 136 (1997) ........................................................................ 5, 6

*Geo. M. Martin Co. v. All. Mach. Sys. Int'l, LLC,*
  2008 WL 2008638 (N.D. Cal. May 6, 2008) ........................................ 16

*Grasshopper House, LLC v. Clean and Sober Media LLC,*
  2019 WL 12074086 (C.D. Cal. July 1, 2019 2019) ......................... 19, 19

*Henricksen v. ConocoPhillips Co.,*
  605 F. Supp. 2d 1142 (E.D. Wash. 2009) ........................................ 7, 12

*Herrington v. Sonoma Cnty.,*
  834 F.2d 1488 (9th Cir. 1987) ............................................................. 15

*Johnson v. Oroweat Foods Co.,*
  785 F.2d 503 (4th Cir. 1986) ............................................................... 15

**Perkins Coie LLP**
1201 Third Avenue, Suite 4900
Seattle, Washington 98101-3099
Phone: +1.206.359.8000
Fax: +1.206.359.9000

# TABLE OF AUTHORITIES

**Page(s)**

*Kumho Tire Co. v. Carmichael,*
    526 U.S. 137 (1999)................................................................................2, 3

*Lehrman v. Gulf Oil Corp.,*
    500 F.2d 659 (5th Cir. 1974)..............................................................9

*Lust By & Through Lust v. Merrell Dow Pharms., Inc.,*
    89 F.3d 594 (9th Cir. 1996)................................................................4

*Moe v. Wise,*
    97 Wash. App. 950 (1999)..................................................................14

*Nuveen Quality Income Mun. Fund Inc. v. Prudential Equity Grp., LLC,*
    262 Fed. Appx. 822 (9th Cir. 2008) .................................................20

*Open Text S.A. v. Box, Inc.,*
    2015 WL 349197 (N.D. Cal. Jan. 23, 2015)....................................5, 6

*Pooshs v. Phillip Morris USA, Inc.,*
    287 F.R.D. 543 (N.D. Cal. 2012).......................................................20

*Prod. Liab. Litig.,*
    524 F. Supp. 2d 1166 (N.D. Cal. 2007)............................................21

*In re Silicone Gel Breast Implants Products Liability Litig.,*
    318 F. Supp. 2d 879 (C.D. Cal. 2004)...............................................7

*Therasense, Inc. v. Becton, Dickson and Co.,*
    2008 WL 2323856 (N.D. Cal. May 22, 2008) ...................................16

**FEDERAL RULES**

Fed. R. Evid. 702 .........................................................................1, 3, 21

DEFENDANTS' MOTION TO EXCLUDE PLAINTIFFS'
DAMAGES EXPERT (NO. 2:23-cv-01932-BAT) – iii

**Perkins Coie LLP**
1201 Third Avenue, Suite 4900
Seattle, Washington 98101-3099
Phone: +1.206.359.8000
Fax: +1.206.359.9000

## I.     INTRODUCTION

The facts of this case are simple. Defendants Jeff Moss and Def Con Communications, Inc. (collectively, "Defendants") host an annual information security conference. Plaintiffs Social-Engineer, LLC and Christopher Hadnagy (collectively, "Hadnagy") regularly attended the conference. Defendants banned Hadnagy in February 2022 for extensive violations of Def Con's code of conduct and announced the ban on Def Con's website (the "Transparency Report"). In January 2023, Def Con provided an update on the ban (the "Transparency Update"). Hadnagy filed this lawsuit, alleging the Transparency Report and Transparency Update cost Hadnagy millions of dollars in damages. Defendants now move to exclude Ben Thomas, Hadnagy's damages expert, for several reasons.

***First,*** Mr. Thomas's expert testimony is riddled with unsupported assumptions. For his lost business value analysis, Mr. Thomas assumes with no factual basis that the Transparency Report destroyed Social-Engineer as a going concern and values the business at ***zero***. This is nonsensical on its face, as Social-Engineer's profit and loss statements show that Social-Engineer's revenues ***increased*** in the year following the Transparency Report. Mr. Thomas also opines that Defendants caused Social-Engineer's ostensible financial harm, but his own *ipse dixit* is the only basis for this conclusion; he does not tie Social Engineer's putative financial harm to Defendants through any kind of reliable principle or method.

***Second***, Mr. Thomas's damages calculations are not the product of reliable principles and methods under Rule 702(c), as he fails to meaningfully explain his methodology. Instead, he simply chose the "market approach" to calculate Social-Engineer's ostensible lost business value and arbitrarily selected fourteen "comparator" transactions without any objective criteria for how or why these transactions should be comparators. Worse, Mr. Thomas includes *irrelevant* components in his

**Perkins Coie LLP**
1201 Third Avenue, Suite 4900
Seattle, Washington 98101-3099
Phone: +1.206.359.8000
Fax: +1.206.359.9000

calculations for loss of income, such as the salary of Hadnagy's *wife* and Hadnagy's separate income from a non-party entity. Mr. Thomas fails to adhere to basic economist standards.

**Third**, Mr. Thomas did not review any of the underlying contracts with Hadnagy's customers in calculating Hadnagy's alleged losses. Instead, Mr. Thomas relied upon a self-serving spreadsheet that Hadnagy himself prepared. Mr. Thomas did not conduct his own independent investigation or review of the contracts; did not inquire into why the contracts were not performed (in fact, he ignored Hadnagy's **own comments** that provided alternative reasons for why the contracts were lost, such as ██████████ ); and did not even bother to verify whether the data Hadnagy provided was accurate. Experts cannot simply parrot a party's manufactured evidence into the record without verification or independent analysis.

The Court plays a crucial gatekeeping role under Rule 702; it must "make certain that an expert . . . employs in the courtroom the same level of intellectual rigor that characterizes the practice of an expert in the relevant field." *Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 152 (1999). Mr. Thomas's report and testimony fall far short of the "intellectual rigor" that Rule 702 demands, and the Court should exclude him as a result.

## II.    HADNAGY'S EXPERT

Mr. Thomas is a certified public accountant, and his Report's analysis, which amounts to about five pages, provides only one conclusory opinion:

> Based on the information provided as of the date of this report, it is my opinion that Plaintiffs have incurred, or will incur, economic damages of $2,270,186 due to the actions of the Defendants, such as the release of the Transparency Report on February 9, 2022 and subsequent Update released on January 13, 2023. Economic damages are comprised of $578,186 in past lost income, which is inclusive of extra expenses, and $1,692,000 in lost business value.

DEFENDANTS' MOTION TO EXCLUDE PLAINTIFFS'
DAMAGES EXPERT (NO. 2:23-cv-01932-BAT) – 2

**Perkins Coie LLP**
1201 Third Avenue, Suite 4900
Seattle, Washington 98101-3099
Phone: +1.206.359.8000
Fax: +1.206.359.9000

1   Declaration of Matthew Mertens ("Mertens Decl.") Exhibit A ("Expert Report")[1] ¶ 7.

2   Because that opinion cannot survive scrutiny under Rule 702, it ought to be ex-

3   cluded wholesale.

4   **III.    LEGAL STANDARD**

5       In order to be admissible under Federal Rule of Evidence 702, expert testimony

6   must meet five requirements: (1) be provided by a qualified expert, (2) be helpful to

7   the trier of fact, (3) be "based on sufficient facts or data," (4) be "the product of reliable

8   principles and methods," and (5) be the result of reliably applying "the principles and

9   methods to the facts of the case." Fed. R. Evid. 702.

10      As the Supreme Court explained in *Daubert v. Merrell Dow Pharmaceuticals,*

11  *Inc.*, "[t]he adjective 'scientific' implies a grounding in the methods and procedures of

12  science." 509 U.S. 579, 590 (1993). "Similarly, the word 'knowledge' connotes more

13  than subjective belief or unsupported speculation." *Id.* Expert testimony need not "be

14  'known' to a certainty." *Id.* But, critically, "an inference or assertion must be derived

15  by the scientific method." *Id.* In short, there must be indicia of "evidentiary reliabil-

16  ity—that is, trustworthiness." *Id.* at 590 n.9 (emphasis omitted).

17      The Court must act as a "gatekeeper" by assessing the soundness of the ex-

18  pert's methodology to ensure that jurors are not provided irrelevant or unreliable

19  testimony. *Kumho*, 526 U.S. at 137. This "gatekeeping function requires more than

20  simply 'taking the expert's word for it.'" *Id.* (citing *Daubert v. Merrell Dow Pharms.,*

21  *Inc. [Daubert II]*, 43 F.3d 1311, 1319 (9th Cir. 1995)). A district court cannot allow an

22

23  [1] Defendants are filing a redacted version of this Motion, a redacted version of Exhibit
    A (the Expert Report), and sealing in its entirety Exhibit B (the testimony of Mr.
24  Thomas) and Exhibit C (the spreadsheet created by Hadnagy) solely because
    Hadnagy designated this information as "CONFIDENTIAL" under the parties' Stip-
25  ulated Protective Order. Defendants do not take a position on whether sealing these
    documents satisfies the Ninth Circuit's "compelling reasons" standard for sealing.
26  *Kamakana v. City & Cnty. of Honolulu*, 447 F.3d 1172, 1178 (9th Cir. 2006). This is
    Hadnagy's burden under LCR 5(g)(3)(B).

DEFENDANTS' MOTION TO EXCLUDE PLAINTIFFS'
DAMAGES EXPERT (NO. 2:23-cv-01932-BAT) – 3

**Perkins Coie LLP**
1201 Third Avenue, Suite 4900
Seattle, Washington 98101-3099
Phone: +1.206.359.8000
Fax: +1.206.359.9000

1  expert to offer opinions based on "unsubstantiated speculation and subjective beliefs."

2  *Diviero v. Uniroyal Goodrich Tire Co.*, 114 F.3d 851, 853 (9th Cir. 1997).

3      The proponent of the expert has the burden of proving admissibility. *Lust By*

4  *& Through Lust v. Merrell Dow Pharms., Inc.*, 89 F.3d 594, 598 (9th Cir. 1996).

5  **IV.   ARGUMENT**

6      **A.   Mr. Thomas's Methodologies Are Unreliable.**

7      Mr. Thomas's opinions are unreliable for several reasons, each of which serve

8  as separate, independent grounds for excluding his expert testimony.

9          **1.   Mr. Thomas's calculations for loss of business value are
              unreliable.**

10

11          **a.   Mr. Thomas fails to explain his selection of
              methodologies.**

12      The Report is unreliable because Mr. Thomas fails to adequately explain his

13  methodology for valuing Social-Engineer. Mr. Thomas acknowledges that there are

14  "three approaches available when valuing a closely held business interest: the cost

15  approach, the income approach, and the market approach. While all three have been

16  considered, I selected the market approach, specifically the guideline transaction

17  method." Expert Report ¶ 23. But the Report fails to explain ***how*** Mr. Thomas "con-

18  sidered" these other two approaches, ***what*** the results were of these other two ap-

19  proaches that he did not select, and most importantly, ***why*** Mr. Thomas selected the

20  market approach as opposed to the other two approaches. *See id.* Mr. Thomas fails to

21  explain his methodology in his deposition.

22      Q.   And why is the income approach not appropriate?

23      A.   I wouldn't say it's necessarily not appropriate. It's just I didn't select it.
              I selected the market approach.

24

25      Q.   Did you actually perform an analysis under it, or did you just do some
              numbers and say, "I think the market approach is better"?

26

**Perkins Coie LLP**
1201 Third Avenue, Suite 4900
Seattle, Washington 98101-3099
Phone: +1.206.359.8000
Fax: +1.206.359.9000

A.    No. I didn't necessarily say it's better. I just – it's a – it's a method that I did select versus running a capitalization of earnings method.

Mertens Decl. Exhibit B ("Thomas Dep.") 124:16–125:2.

An expert cannot simply select one methodology over another without explanation or support for that selection. *See Open Text S.A. v. Box, Inc.*, No. 13-CV-04910-JD, 2015 WL 349197, at *3 (N.D. Cal. Jan. 23, 2015) ("This 'I like it—I like it not' petal-plucking exercise is hardly the grist of admissible expert opinion."); *see also Gen. Elec. Co. v. Joiner*, 522 U.S. 136, 137 (1997) ("Nothing in either *Daubert* or the Federal Rules of Evidence requires a district court to admit opinion evidence that is connected to existing data only by the *ipse dixit* of the expert."). Mr. Thomas's failure to explain (1) his "consideration" of the other methodologies, (2) the results of those other methodologies, (3) his rejection of those other methodologies, and (4) his selection of the market approach renders Mr. Thomas's opinion unreliable.

### b.    Mr. Thomas fails to explain his selection of comparable transactions or provide his data.

The same flaws apply to Mr. Thomas's application of the market approach, specifically his selection of "14 guideline transactions over the relevant historical period." Expert Report ¶ 24. To calculate lost business value, Mr. Thomas selected fourteen transactions (i.e., sales of companies) with allegedly similar "financial and operating characteristics" to Social-Engineer and applied a valuation multiple derived from these fourteen transactions. *Id.* These fourteen transactions took place between 2010 and 2023. Thomas Dep. 134:10–20.[2]

Although Mr. Thomas claims that these companies are "sufficiently comparable to Social-Engineer," Mr. Thomas does not provide any support or explanation for

---

[2] Mr. Thomas testified that he selected transactions from as early as 2010—over fourteen years ago—because "in my mind, that's relatively recent. I wouldn't call that a stale transaction." Thomas Dep. 136:7–12.

**Perkins Coie LLP**
1201 Third Avenue, Suite 4900
Seattle, Washington 98101-3099
Phone: +1.206.359.8000
Fax: +1.206.359.9000

1   this bald assertion. *See* Expert Report ¶ 24; *Daubert II*, 43 F.3d at 1316 ("[An] expert's

2   bald assurance of validity is not enough. Rather the party presenting the expert must

3   show that the expert's findings are based on sound science, and this will require some

4   objective, independent validation of the expert's methodology."). The Report does not

5   explain *how* Mr. Thomas selected and evaluated these fourteen transactions, or *what*

6   *criteria* he used to determine that these fourteen transactions (as opposed to other

7   potential transactions) are appropriate comparators for Social-Engineer. *See* Expert

8   Report ¶¶ 24–25. The Report also fails to disclose the source of its data for these

9   fourteen transactions. *See id.*

10        Mr. Thomas also does not explain, let alone even disclose in his Report, that he

11   "deselected" transactions that he deemed to be "irrelevant." Thomas Dep. 135–136.

12   Mr. Thomas's conclusory assertion that these fourteen transactions are comparable—

13   and that other transactions that were ***not*** disclosed were not—is insufficient to sat-

14   isfy the standards of expert testimony. *See Daubert II*, 43 F.3d at 1316. Rather than

15   spelling out the steps that he took from the data to his damages' opinion, Mr.

16   Thomas's methodology is "written in invisible ink." *See Open Text S.A.*, 2015 WL

17   349197, at *6. Mr. Thomas's method is a "'black box into which data is fed at one end

18   and from which an answer emerges at the other,' and the jury cannot see how the

19   pieces fit together or how the data drives the conclusion." *Id.* Without an explanation

20   for his selecting and de-selecting certain transactions, Mr. Thomas's opinion is noth-

21   ing more than *ipse dixit* and should be excluded as unreliable. *See Gen. Elec. Co.*, 522

22   U.S. at 137.

23        Mr. Thomas also relied on these 14 transactions to derive the revenue multi-

24   plier of ███ , and multiplied against Social-Engineer's revenue of ███████ to cal-

25   culate the lost business value of $1,692,000. Expert Report ¶ 27. Yet, the Report does

26   not describe how he selected a revenue multiple of ███ based on the selected fourteen

**Perkins Coie LLP**
1201 Third Avenue, Suite 4900
Seattle, Washington 98101-3099
Phone: +1.206.359.8000
Fax: +1.206.359.9000

transactions, nor does it present the data Mr. Thomas used to calculate the transaction revenue multiples. *See id.* Mr. Thomas also concedes that ███ is not the accurate multiple to reach his calculation of $1,692,000:

> Q.    I am not great at math, but I did the equation in Paragraph 27 of your report, ████████████████ and I did not get 1692. I got 1644, so what am I doing wrong in my equation?
>
> A.    The multiples I provided, if you – you know, if you look at them, the actual multiple is ██████, and that would get you there.
>
> Q.    So why didn't you put ████ – whatever it is you said in your equation in Paragraph 27?
>
> . . .
>
> Q.    So you used ██ just for the sake of presentation when you wrote Paragraph 27?
>
> A.    Correct.

Thomas Dep. 136:17–137:21.

"[A]ny step that renders [the expert's] analysis unreliable . . . renders the expert's testimony inadmissible. This is true whether the step completely changes a reliable methodology or merely misapplies that methodology." *Henricksen v. ConocoPhillips Co.*, 605 F. Supp. 2d 1142, 1154 (E.D. Wash. 2009) (quoting *In re Silicone Gel Breast Implants Products Liability Litig.*, 318 F. Supp. 2d 879, 890 (C.D. Cal. 2004)). Mr. Thomas cannot merely select fourteen transactions, rejecting other undisclosed transactions, without any apparent criteria or explanation. This first misstep renders his whole testimony on lost business value unreliable. However, the unreliability does not stop there. Mr. Thomas then uses these fourteen transactions to derive a multiple of ████, without providing any data to support that number. And, in fact, that multiple is not accurate and would result in a lost business value of $1,644,000, not $1,692,000, as claimed by Mr. Thomas. Thomas Dep. 136:17–137:21.

DEFENDANTS' MOTION TO EXCLUDE PLAINTIFFS'
DAMAGES EXPERT (NO. 2:23-cv-01932-BAT) – 7

**Perkins Coie LLP**
1201 Third Avenue, Suite 4900
Seattle, Washington 98101-3099
Phone: +1.206.359.8000
Fax: +1.206.359.9000

Each step of Mr. Thomas's analysis misapplies the methodology and undermines the reliability of his opinion.

### c. Mr. Thomas has no basis for assuming that Social-Engineer was entirely destroyed.

Mr. Thomas calculates the loss of business value at $1,692,000 by assuming—without any factual or evidentiary support—that Social-Engineer has **zero** value after the Transparency Report. In other words, Mr. Thomas assumes that that the Transparency Report destroyed Social-Engineer:

> Q.    And in assessing your damages, you essentially put the value of the business today at zero to give Mr. Hadnagy all 1.692 million; correct?
>
> A.    Right. This would be under the scenario that the business does go down.
>
> Q.    Okay. What if the business doesn't go down?
>
> A.    Then that number could change.
>
> . . .
>
> Q.    What's the value of the business today?
>
> A.    I haven't done a valuation of the business today. You know, we're assuming under this premise that the value would be zero. It would go away. The business would be lost.

Thomas Dep. 128:14–129:21. Not only is Mr. Thomas's assumption again *ipse dixit*, but it is also contrary to the factual record. Social Engineer's annual revenue **increased** ███████████████ (pre-damages period) in 2021 to ████████ (during the alleged damages period) in 2022. *See* Expert Report at Schedule 2 ████████████ ████████████████. Social-Engineer also reported annual revenues of ████████ in 2023. *Id.* The undisputed factual record of Social-Engineer's revenues in the two years following the Transparency Report **completely undermines** Mr. Thomas's assumption that Social-Engineer lost 100% of its value. His conclusion flagrantly violates Rule 702(b)'s requirement that his analysis be "based on sufficient facts or data."

DEFENDANTS' MOTION TO EXCLUDE PLAINTIFFS'
DAMAGES EXPERT (NO. 2:23-cv-01932-BAT) – 8

**Perkins Coie LLP**
1201 Third Avenue, Suite 4900
Seattle, Washington 98101-3099
Phone: +1.206.359.8000
Fax: +1.206.359.9000

1

2.    **Mr. Thomas's calculations for lost income are unreliable.**

2

    a.    **Mr. Thomas fails to apply accepted economic standards for his loss of income calculation.**

3

      In determining reliability, a court may consider a number of factors including

4

whether the theory or methodology employed is generally accepted in the relevant

5

scientific community. *Daubert*, 509 U.S. at 593–94. There are "four commonly ac-

6

cepted methods financial experts use to gather evidence to support and estimate lost

7

revenues": (1) the before-and-after method, (2) the yardstick method, (3) the sales

8

projection method, and (4) the market model. JAMES S. PAPPAS, WILLIAM SCALLY, AND

9

STEVEN M. VEENEMA, THE COMPREHENSIVE GUIDE TO ECONOMIC DAMAGES 208 (7th

10

ed. 2023); *see also Lehrman v. Gulf Oil Corp.*, 500 F.2d 659, 667 (5th Cir. 1974) (dis-

11

cussing the before-and-after method and the yardstick method); *Architectural Inge-

12

niería Siglo XXI, LLC v. Dominican Republic*, No. 20-14058, 2023 WL 8946765, at

13

*10 (11th Cir. Dec. 28, 2023) (same). Mr. Thomas does not identify, explain, or adopt

14

***any*** of these accepted methods to calculate Hadnagy's alleged loss of income.

    b.    **Mr. Thomas fails to account for increased operating expenses.**

15

16

      Mr. Thomas fails to explain Social-Engineer's increased operating expenses, or

17

how these are supposedly attributable to Defendants' Transparency Report or Trans-

18

parency Update. Damages for loss of income are intended to compensate for the net

19

income that would have been earned *but-for* Defendants' conduct. But including So-

20

cial-Engineer's increased operating expenses—without any support for how ***Defend-***

21

***ants*** caused these increases —distorts the alleged economic damages of the Trans-

22

parency Report and allows Hadnagy to recover for costs incurred in the normal course

23

of business.

24

      Between 2021 and 2022, for example, the expenses listed under the label ███

25

██████ at Social-Engineer increased from ██████████████. Expert Report at

26

**Perkins Coie LLP**
1201 Third Avenue, Suite 4900
Seattle, Washington 98101-3099
Phone: +1.206.359.8000
Fax: +1.206.359.9000

1    Schedule 2. The ████████████ then decreased to ███████ in 2023. *Id.* Mr. Thomas

2    fails to explain what these expenses were for, how they are connected to the Trans-

3    parency Report, and whether these expenses could have been avoided. The same is

4    true for the expenses labeled ████████████ Between 2021 and 2022, these ex-

5    penses increased ████████████ ████████████████. *Id.* The ████████████

6    then decreased to ███ in 2023. *Id.* A similar jump in operating expenses occurs under

7    the label ████████████████ Between 2021 and 2022, these expenses

8    skyrocketed from ████████████. *Id.*

9        For these increased operating expenses—which Mr. Thomas included as a com-

10   ponent of Hadnagy's loss of income—Mr. Thomas fails to explain what these expenses

11   were for, why they increased, and how they supposedly relate to the Transparency

12   Report. When pressed at his deposition, Mr. Thomas testified that he just ***assumes***

13   that the increases in operating expenses flow from the Transparency Report.

14       Q.    And all the increases in operating expenses, those are all tied to Def
         Con?

15

16       A.    So the way that I look at this is that, yeah, the business was performing
         profitably prior to the issuance of the releases of the transparency
17       report and the update. My understanding in talking to Mr. Hadnagy, is that,
         yes, they had to increase certain expenses to try to maintain their busi-
18       ness operations and to continue operating as best they could given the
         loss of contracts, the inability for extensions, as well as some of their
19       more profitable work like speeches and things like that were -- he was
         not able to generate those activities like he had been in the past.
20

21       . . .

         Q.    And what are these consulting fees?
22
         A.    I don't know the specifics behind the consulting fees.
23
         . . .
24
         Q.    And sitting here today, can you tell me how they actually increased be-
             cause of Def Con or Mr. Moss?
25
         A.    Same answer there. I don't know the specifics of the increase.
26
         . . .

**Perkins Coie LLP**
1201 Third Avenue, Suite 4900
Seattle, Washington 98101-3099
Phone: +1.206.359.8000
Fax: +1.206.359.9000

1

2

  Q.  Going to the meal-business, did Social-Engineer, Mr. Hadnagy just get hungrier in 2022 because of Def Con and Mr. Moss or what are those expenses?

3

  . . .

4

  A.  Again, I'm making the assumption that it's tied back to the issuance of the transparency report.

5

6

Thomas Dep. 70:4–75:8. Mr. Thomas assumes with ***no factual basis*** that these in-

7

creased operating expenses were a direct result of Defendants' Transparency Report

8

and includes them as part of Hadnagy's loss of income.

9

   **c.**  **Mr. Thomas's calculations assume round numbers.**

10

   Mr. Thomas's calculations for loss of income are unreliable for yet another rea-

11

son: he does not apply any scientific or mathematical methodology for his estimation

12

of Hadnagy's income for the years prior to the Transparency Report. Specifically, Mr.

13

Thomas simply ***rounds up*** to the nearest round number, rather than taking the av-

14

erage of Hadnagy's historical income.

15

  Q.  So let's stop there, 2020 and 2021. You – you say because he made ▇▇ and ▇▇ in 2020 and 2021, that he makes ▇▇▇▇ a year for your but for analysis; right?

16

17

  A.  Correct.

18

  Q.  But you didn't average those numbers; correct?

  A.  I did not average them, no.

19

  Q.  If you averaged them, it would be about ▇▇▇▇; fair?

20

  A.  Which would round to ▇▇▇▇.

21

  Q.  So you're kind of using, like, the – for lack of a better term, like "thumb to the tongue, this sounds about right, ▇▇," to come up with that but for number; right?

22

23

  A.  I'm not, no. I mean, you're right that the average is ▇▇▇▇▇

24

  . . .

25

  Q.  By why not the average? Why not the historical average? Why just ▇▇ Is it because it was a round number?

26

  A.  Again, I rounded to ▇▇▇

**Perkins Coie LLP**
1201 Third Avenue, Suite 4900
Seattle, Washington 98101-3099
Phone: +1.206.359.8000
Fax: +1.206.359.9000

Thomas Dep. 105:6–106:10. As explained above, any step that renders the expert's analysis unreliable renders the expert's testimony inadmissible. *Henricksen*, 605 F. Supp. 2d at 1154. Mr. Thomas cannot round up for the sake of convenience, inflating Hadnagy's damages. This step misapplies the methodology and undermines the reliability of his testimony. *See id.*

### d. Mr. Thomas's calculations include income from January 2022, before the Transparency Report.

Mr. Thomas calculates Hadnagy's total damages for all of 2022, including January 2022, but Defendants did not issue the Transparency Report until ***February*** 2022. Mr. Thomas provided inconsistent testimony on this deficiency:

Q.    Your damages analysis that you provided in this report does not include damages from January 1st to February 9, 2022; correct?

A.    Correct, yes. That first period, right.

Q.    Because damages during that time frame would be improper; right?

A.    It would've been prior to the issuance of the February 9, 2022, report.

Q.    Got it.

Thomas Dep. 20:15–23. However, later in his deposition, Mr. Thomas walked back that statement, admitting that the calculations for 2022 included Hadnagy's income for the entire year, including January 1, 2022 to February 9, 2022:

Q.    In 2022, going back to your chart in Paragraph 20, you did but for income for the entire year, January 1st to December 31, 2022. It would've been ███ You said he had an actual loss of █████, so that gives you a lost income of ████ correct?

A.    Correct.

Q.    And that is essentially the ███ plus the █████ that's the loss that gives you that ███

A.    It is.

Q.    Okay. So that includes damages from January 1, 2022, to February 10, 2022; correct?

**Perkins Coie LLP**
1201 Third Avenue, Suite 4900
Seattle, Washington 98101-3099
Phone: +1.206.359.8000
Fax: +1.206.359.9000

A.    I don't necessarily see it that way. I mean, it's not abnormal to say, you know, that an individual is impacted at some point in 2022 and we're going to look at the full year of but for earnings less actual to arrive at the damages.

Q.    You didn't do any formula to say, Well, here's what it was for the entire year. Let's go for however many days is in the year to kind of break it down from that February 9th going forward?

A.    I did not do that.

Thomas Dep. 117:23–118:18.

Mr. Thomas's opinion improperly includes January 1, 2022, to February 9, 2022, as part of the damages period and is unreliable as a result.

### e.    Mr. Thomas's calculations include unrecoverable costs, such as attorneys' fees.

Mr. Thomas's opinion is also unreliable because his calculation of Hadnagy's loss of income includes expenses for professional fees, such as attorneys' fees, which are not recoverable as damages in a private lawsuit. The Report provides that "included in the foregoing lost income amount is ███████ in professional fees." Expert Report ¶ 21. Mr. Thomas admits that the "professional fees" are attorneys' fees in and concedes that he does not know if those fees are recoverable as a matter of law.

Q.    What do you mean by professional fees?

A.    Right. The way I look at that or the way that I view that is those are the increased legal fees.

. . .

Q.    Okay. So you are aware of the American rule for recovery of attorneys' fees or legal extensions?

A.    Not the specifics, no.

Q.    Do you know when attorneys' fees are recoverable as a matter of law?

A.    Again, I don't know the specifics.

Q.    So you – sitting here today, you don't know whether legally attorneys' fees are recoverable as damages; correct?

A.    Again, I don't know the specifics.

DEFENDANTS' MOTION TO EXCLUDE PLAINTIFFS'
DAMAGES EXPERT (NO. 2:23-cv-01932-BAT) – 13

**Perkins Coie LLP**
1201 Third Avenue, Suite 4900
Seattle, Washington 98101-3099
Phone: +1.206.359.8000
Fax: +1.206.359.9000

Thomas Dep. 91:13–18, 68:1–15. Under Washington law, attorneys' fees are not recoverable in a private defamation suit. *See Moe v. Wise*, 97 Wash. App. 950, 971 (1999). Accordingly, Mr. Thomas's opinion regarding the amount of lost income is unreliable because it includes expenses, such as attorneys' fees, that are not recoverable as a matter of law.

>    **f.      Mr. Thomas's calculations include unrelated income.**

Mr. Thomas's opinion is also unreliable because he includes income that is unrelated to the litigation to calculate Hadnagy's loss of income. First, Mr. Thomas fails to exclude the income earned by Hadnagy's wife, Areesa Hadnagy, when calculating Hadnagy's loss of income.

>    Q.      So Ms. Hadnagy's income – or the expenses for Ms. Hadnagy in running Social-Engineer also are included in the income that Mr. Hadnagy makes?
>
>    A.      It would be the overall income that's generated on his 1040, yes, from the business.
>
>    Q.      Got it. So Mr. Hadnagy's ███████ in income for Mr. Hadnagy's reputation includes the amounts that his wife makes as a salaried employee for Social-Engineer.
>
>    A.      Historically, ***they've*** been able to generate ███████████, and ███████ on average in the form of wages, business income, and that has been interrupted post-loss event due to the fact that ***they've*** had the issue of the transparency report and the activity level inclusive of that has gone down and had losses in '22 and '23.

Thomas Dep. 103:11–104:1. Yet, Ms. Hadnagy is not a plaintiff, and there is no allegation that the Transparency Report injured her. In fact, Ms. Hadnagy's W-2s show that her salary increased by █████████ in 2021 to ██████ in 2023. Mr. Thomas fails to explain why he included Ms. Hadnagy's income from Social-Engineer—which increased during the damages period—in his calculations for Mr. Hadnagy's alleged loss of income.

DEFENDANTS' MOTION TO EXCLUDE PLAINTIFFS'
DAMAGES EXPERT (NO. 2:23-cv-01932-BAT) – 14

**Perkins Coie LLP**
1201 Third Avenue, Suite 4900
Seattle, Washington 98101-3099
Phone: +1.206.359.8000
Fax: +1.206.359.9000

1    Mr. Thomas also includes income generated by Hadnagy from SEVillage LLC,

2    an unrelated entity, when calculating Hadnagy's loss of income.

3    Q.    So is it fair to say that the income for Social-Engineer in 2020 is com-
           prised of business income from Social-Engineer, LLC and SEVillage
4          LLC?

5    A.    Correct.

6    Thomas Dep. 94:12–15. Again, SEVillage is not a party, and Hadnagy cannot boot-

7    strap income he allegedly lost from an unrelated, nonparty entity to bolster his al-

8    leged losses from Social-Engineer.

9         **3.    Mr. Thomas "double dips" for both lost income and
                  business value.**
10

11   Mr. Thomas impermissibly double-counts the damages for lost business value

12   to Social-Engineer and lost income to Hadnagy. Mr. Thomas's calculations for alleged

13   lost business value include (i) Social-Engineer's future net cash flows to both debt and

14   equity holders in 2022 and 2023, and (ii) Social-Engineer's net income to equity hold-

15   ers in 2022 and 2023. *See* Expert Report ¶¶ 24–27 and Schedule 2. However, Mr.

16   Thomas also includes Social-Engineer's net income as part of Hadnagy's alleged lost

17   income.  Since the alleged lost business value includes the value of Social-Engineer's

18   future net cash flows to both debt and equity holders in 2022 and 2023, and also

19   incorporates the alleged lost income that includes Social-Engineer's net income to

20   equity holders in 2022 and 2023, the calculations double count damages in 2022 and

21   2023. Hadnagy cannot recover both lost business value and lost income, as it would

22   constitute double recovery. *See, e.g.*, *Herrington v. Sonoma Cnty.*, 834 F.2d 1488, 1506

23   (9th Cir. 1987) (holding plaintiffs could not "obtain compensation for both lost value

24   and lost profit" because it would constitute "double recovery"); *Johnson v. Oroweat*

25   *Foods Co.*, 785 F.2d 503, 508 (4th Cir. 1986) ("[T]he two methods of calculation—

26   present value of all future earning or market value of the business—are simply

DEFENDANTS' MOTION TO EXCLUDE PLAINTIFFS'
DAMAGES EXPERT (NO. 2:23-cv-01932-BAT) – 15

**Perkins Coie LLP**
1201 Third Avenue, Suite 4900
Seattle, Washington 98101-3099
Phone: +1.206.359.8000
Fax: +1.206.359.9000

alternative methods of measuring the extent of the same injury. That is why courts allow a plaintiff to recover either the present value of lost future earnings or the present market value of the lost business, but not both."); *Am. Anodco, Inc. v. Reynolds Metals Co.*, 743 F.2d 417, 424 (6th Cir. 1984) ("Where the loss of profits and loss of value are intertwined, as they are here, and the loss of value is based on loss of future profits, to allow both would be to permit a double recovery.").

The Comprehensive Guide to Economic Damages, a leading treatise on economic experts' damages calculations and methods, further confirms that recovery for both lost profits and lost value is barred as double recovery: "A business damages claim may be properly calculated as either the lost profits of the business or the lost value of the business. Courts have stated the general rule permitting the alternate theories of recovery as follows:

> [I]f a business is completely destroyed, [then] the proper total measure of damages is the market value of the business on the date of the loss. If the business is not completely destroyed, then it may recover lost profits. A business may not recover both lost profits and the market value of the business.

PAPPAS ET AL., THE COMPREHENSIVE GUIDE TO ECONOMIC DAMAGES at 265. Mr. Thomas's opinions are unreliable because he seeks to permit recovery for the same damages, which constitutes double recovery, and should therefore be excluded.

**B.    Mr. Thomas's Opinions Are Not Based on Sufficient Facts.**

**1.    Mr. Thomas relies on a client-prepared spreadsheet.**

Courts in this Circuit warn against the danger of providing client-prepared information to an expert. *See, e.g.*, *Therasense, Inc. v. Becton, Dickson and Co.*, 2008 WL 2323856, at *2 (N.D. Cal. May 22, 2008); *Geo. M. Martin Co. v. All. Mach. Sys. Int'l, LLC*, No. C 07-00692 WHA, 2008 WL 2008638, at *1 (N.D. Cal. May 6, 2008). "One of the worst abuses in civil litigation is the attempted spoon-feeding of client-

DEFENDANTS' MOTION TO EXCLUDE PLAINTIFFS'
DAMAGES EXPERT (NO. 2:23-cv-01932-BAT) – 16

**Perkins Coie LLP**
1201 Third Avenue, Suite 4900
Seattle, Washington 98101-3099
Phone: +1.206.359.8000
Fax: +1.206.359.9000

prepared and lawyer-orchestrated 'facts' to a hired expert who then 'relies' on the information to express an opinion." *Therasense*, 2008 WL 232856, at *1.

 Mr. Thomas's opinions are unsound for that very reason. Despite asserting that Hadnagy lost contracts because of the Transparency Report, Mr. Thomas did not review ***any*** of the underlying contracts with Hadnagy's customers or ***any*** of the statements of work sent to Hadnagy's potential customers. Rather, Mr. Thomas relied ***solely*** on a spreadsheet ***created by Hadnagy himself***.

Q. You didn't review any of Mr. Hadnagy's contracts or potential contracts prior to 2022; correct?

A. I have a list of contracts that allegedly have been impacted by the events, and some of them start prior to February 2022.

Q. Well, my question is different. My question wasn't whether you had a list of alleged contracts. My question is whether prior to February 9, 2022, you, yourself, analyzed any contracts or potential contracts Mr. Hadnagy had or Social-Engineering had with respect to his business.

A. Again, I've reviewed that spreadsheet that details out certain contracts and certain contracts that were impacted, and those contracts began prior to February 2022.

. . .

Q. Who prepared this document?

A. My understanding, it was Mr. Hadnagy who prepared this.

. . .

Q. So just to clarify, you have not reviewed any of the contracts listed in this document; correct?

A. Again, I have not reviewed the specific contracts as of –

Q. All that you've reviewed is this document that lists contracts; correct?

A. Correct. These are the contracts that I have been able to get a summary of and under -- - have an understanding of how contracts come and go.

. . .

Q. And going to the column for SOW, you don't know – you haven't reviewed any of the SOWs referenced in this report; correct?

A. I have not.

DEFENDANTS' MOTION TO EXCLUDE PLAINTIFFS'
DAMAGES EXPERT (NO. 2:23-cv-01932-BAT) – 17

**Perkins Coie LLP**
1201 Third Avenue, Suite 4900
Seattle, Washington 98101-3099
Phone: +1.206.359.8000
Fax: +1.206.359.9000

Thomas Dep. 22:7–25:15, 50:8–11. Given that Mr. Thomas did not independently review the contracts for Hadnagy's customers and the statements of work for Hadnagy's potential customers, Mr. Thomas could not confirm the accuracy of Hadnagy's data. For expert testimony to be admissible, the expert "must be able to explain how he applied his particular knowledge or experience, using reliable methods applied to particularized facts, to come to his conclusions." *Campagnolo S.r.l. v. Full Speed Ahead, Inc.*, 2010 WL 11527323, at *3 (W.D. Wash. May 5, 2010). Mr. Thomas fails to demonstrate how he applied his methodology to particularized facts.

> ### 2.    Mr. Thomas's testimony assumes causation and is wholly useless to a jury.

Mr. Thomas's Report asserts that Hadnagy suffered economic damages "*due to the actions of the Defendants*, such as the release of the Transparency Report on February 9, 2022 and subsequent Update released on January 13, 2023." Expert Report ¶ 4 (emphasis added). Yet, Mr. Thomas admits that he (1) does not know why Social-Engineer gained or lost contracts between 2017 and 2024, and (2) ***assumes*** causation for the purposes of his calculations:

Q.    And what do you mean by assuming liability?

A.    My report and the calculations in my report and my schedules are based on the premise that liability would be found against the defendants and that has caused the economic harm.

Q.    Okay. Did you do any independent analysis to determine whether any of the alleged conduct actually did cause harm to Mr. Hadnagy?

A.    Right. So that's where -- as a financial expert, it's not my role to determine the liability in a case, but I can see from -- that there is a link between the time -- the time frame of when the events occurred and the negative financial performance of the business.

. . .

Q.    You don't actually know why contracts were gained or lost from 2017 to 2024; correct?

**Perkins Coie LLP**
1201 Third Avenue, Suite 4900
Seattle, Washington 98101-3099
Phone: +1.206.359.8000
Fax: +1.206.359.9000

1
2
3

    A.      Specifically, gained or lost, correct. I don't know the exact underpinnings of why a contract is – stays or leaves specifically, but I can tell from the financial performance that they had positive growth prior to the loss event.

4
5
6
7

Thomas Dep. 21:6–18, 29:7–14. Mr. Thomas nonetheless asserts that the alleged damages he calculated were "due to the actions of Defendants." Expert Report ¶¶ 4, 7, 28. Mr. Thomas's expert testimony should be excluded as wholly speculative as to causation.

8
9
10
11
12
13
14
15
16
17

For example, in *Grasshopper House, LLC v. Clean and Sober Media LLC*, the damages expert claimed that he "did not seek to opine on the issue of causation" by "assuming the facts of [defendant's] liability for the purposes of his analysis," yet performed a "but-for" analysis to "resolve the question of what damages were 'caused' by" defendant. 2019 WL 12074086, at *11 (C.D. Cal. July 1, 2019). The court held that the expert "transformed what otherwise could have been a mere damages estimate based on assumed facts provided by the client . . . into a fulsome expert opinion as to the actual causes of [plaintiff's] damages." *Id.* at *12. The court also found that "an analysis of damages *without* proving those damages were caused by the defendant's allegedly illegal conduct would be wholly useless to the jury." *Id.*

18
19
20
21
22
23
24
25
26

The same is true here. Although Mr. Thomas claims to assume liability and not to opine on causation, his Report does just that by repeatedly concluding that Hadnagy suffered economic damages "***due to the actions of the Defendants***, such as the release of the Transparency Report on February 9, 2022 and subsequent Update released on January 13, 2023." Expert Report ¶ 28 (emphasis added). Even if Mr. Thomas's expert testimony was limited to simply damages, the expert testimony would still be "wholly useless to the jury" because it fails to establish a causal link between the Transparency Report and Hadnagy's purported economic damages. *See Grasshopper House, LLC*, 2019 WL 12074086, at *12.

DEFENDANTS' MOTION TO EXCLUDE PLAINTIFFS'
DAMAGES EXPERT (NO. 2:23-cv-01932-BAT) – 19

**Perkins Coie LLP**
1201 Third Avenue, Suite 4900
Seattle, Washington 98101-3099
Phone: +1.206.359.8000
Fax: +1.206.359.9000

### 3.    Mr. Thomas does not consider alternative explanations.

The court may exclude expert testimony where "an expert has unjustifiably extrapolated from an accepted premise to an unfounded conclusion" or where an expert fails to "account[] for obvious alternative explanations." *Pooshs v. Phillip Morris USA, Inc.*, 287 F.R.D. 543, 546 (N.D. Cal. 2012); *see also Grasshopper House, LLC*, 2019 WL 12074086, at *12 (excluding expert testimony where expert failed to "consider these other factors of reputational harm to [plaintiff] in his expert report"). "An expert opinion is properly excluded where it relies on an assumption that is unsupported by evidence in the record and is not sufficiently founded on facts." *Nuveen Quality Income Mun. Fund Inc. v. Prudential Equity Grp., LLC*, 262 Fed. Appx. 822, 824 (9th Cir. 2008).

Mr. Thomas relies on a Hadnagy-provided assumption that Defendants caused Hadnagy's financial harm without doing ***anything*** to vet the accuracy of this assumption:

> Q.    And contracts could have been lost by Mr. Hadnagy for a multitude of reasons; right?
>
> A.    Hypothetically.
>
> . . .
>
> Q.    And, again, you didn't perform an independent analysis to determine the cause of Mr. Hadnagy either gaining or losing a contract from 2017 to 2024; correct?
>
> A.    Again, I feel like I've answered this. I don't know the exact underpinnings of why one contract's going to come and go, but I do know that the company had the ability to continue operating and to grow its business and increase its revenue.
>
> . . .
>
> Q.    Or it could just be because they – the other person had a better contract; right?
>
> A.    Hypothetically, right.

**Perkins Coie LLP**
1201 Third Avenue, Suite 4900
Seattle, Washington 98101-3099
Phone: +1.206.359.8000
Fax: +1.206.359.9000

1   Thomas Dep. 29:15–30:23, 59:5–8. Mr. Thomas's opinion does not investigate or con-

2   sider alternative explanations for why Hadnagy failed to obtain certain business con-

3   tracts after the Transparency Report.

4       The Report also ignores facts that did not support the assumptions Hadnagy

5   fed him. *See In re Bextra & Celebrex Mktg. Sales Pracs. & Prod. Liab. Litig.*, 524 F.

6   Supp. 2d 1166, 1176, 1184 (N.D. Cal. 2007) (excluding expert who "cherry-pick[ed]

7   observational studies that support his conclusion and reject[ed] or ignor[ed] the great

8   weight of the evidence that contradicts his conclusions"); *see also* Fed. R. Evid. 702,

9   Advisory Comm. to 2000 Amendments (listing as a factor for determining reliability

10  "[w]hether the expert has adequately accounted for obvious alternative explana-

11  tions").

12      Column E of the spreadsheet prepared by Hadnagy indicates the "Loss Reason"

13  for each contract. *See* Mertens Decl. Exhibit C. The spreadsheet lists ▮ contracts

14  were not entered into because "▬▬▬▬▬▬▬▬," ▮ contracts were not

15  entered into because "▬▬▬▬▬▬," ▮ contracts were "▬▬▬▬▬,"

16  another ▮ contracts were lost due to "▬▬▬▬▬▬," ▮ contracts were

17  not entered into because of "▬▬ and ▮ contracts were not entered into because

18  of "▮." *Id.* When asked what ▮ means, Mr. Thomas could not provide an explana-

19  tion. Thomas Dep. 50:17–19 ("I do not know what the ▮ stands for."). There is not a

20  single entry on the spreadsheet in Column E indicating that the Transparency Report

21  caused the loss.

22      But Mr. Thomas ignores these explanations from his client, instead insisting

23  that the Transparency Report caused each and every lost contract. This is indefensi-

24  ble. *See Chung v. Washington Interscholastic Actives Ass'n*, 2021 WL 1978698, at *3

25  (W.D. Wash. May 18, 2021) (excluding expert "[b]ecause the Report's underlying as-

26  sumptions lack a factual basis in the record").

DEFENDANTS' MOTION TO EXCLUDE PLAINTIFFS'
DAMAGES EXPERT (NO. 2:23-cv-01932-BAT) – 21

**Perkins Coie LLP**
1201 Third Avenue, Suite 4900
Seattle, Washington 98101-3099
Phone: +1.206.359.8000
Fax: +1.206.359.9000

1

## V.    CONCLUSION

2

The Court should exclude Hadnagy's damages expert, Mr. Ben Thomas, for

3

deficiencies under Rule 702. I certify that this memorandum contains 6,294 words, in

4

compliance with the Local Civil Rules.

5

6

DATED this 7th day of March 2025.

7

**PERKINS COIE LLP**

8

9

*David A. Perez*

David A. Perez, WSBA No. 43959

10

**PERKINS COIE LLP**

1201 Third Avenue, Suite 4900

11

Seattle, WA 98101-3099

Telephone: 206.359.8000

12

E-mail: DPerez@perkinscoie.com

13

Matthew J. Mertens

14

**PERKINS COIE LLP**

1120 N.W. Couch Street 10th Floor

15

Portland, OR 97209-4128

Telephone: 503.727.2000

16

Email: MMertens@perkinscoie.com

17

Lauren A. Trambley

18

**PERKINS COIE LLP**

505 Howard Street, Suite 1000

19

San Francisco, CA 94105-3204

Telephone: 415.344.7000

20

Email: LTrambley@perkinscoie.com

21

*Attorneys for Defendants Jeff Moss and*

22

*Def Con Communications, Inc.*

23

24

25

26

DEFENDANTS' MOTION TO EXCLUDE PLAINTIFFS'
DAMAGES EXPERT (NO. 2:23-cv-01932-BAT) – 22