# Exhibit A

| **From:** | Mertens, Matthew (POR) |
| **To:** | Mark Conrad; Trambley, Lauren (SFO); *ESSPM 035151.0013 |
| **Cc:** | Amber Holmes; Rastello, Kenneth R. (SEA); Lauren English; Kristofer@riklislaw.com; Ted Buck; Dean, Jacob (WDC); Perez, David A. (SEA) |
| **Subject:** | RE: Hadnagy, et al. v. Moss, et al - Plaintiffs" Responses to Defendants" Third Set of Interrogatories and Requests for Production |
| **Date:** | Wednesday, January 29, 2025 5:34:20 PM |
| **Attachments:** | CTRL00069205.EML |
| | image001.png |
| | image002.png |

Mark, following up on your message from Monday.

**Zoom invite for September 7, 2021, call:** Please see the attached. @*ESSPM 035151.0013 Can you please slap a Bates number on the attached and send to Mark and Lauren English?

**Moss Twitter DM:** I'm checking with Mr. Moss about this. In any event, we have produced all the Signal messages between Mr. Moss and Ms. Fincher, which is where their substantive communication (such as it was) took place.

**Work product assertion on CP 25, 27, and 28:** I need to talk to David about this, and he's traveling. I will give you our position as soon as I'm able to connect with him.

**MacDougall messages:** In November 2024, you produced Signal messages between Mr. Hadnagy and Alethe Denis (SE_017126) and between Mr. Hadnagy and Ms. Gamble (SE_017140). The conversations with Ms. Denis and Ms. Gamble started in May 2022. How was Mr. Hadnagy able to preserve and produce these messages after getting a new phone but not the messages with Mr. MacDougall?

Thanks,

**Matt Mertens**
**PARTNER**

**Perkins Coie**
1120 N.W. Couch Street Tenth Floor
Portland, OR 97209-4128
+1.503.727.2199
mmertens@perkinscoie.com
perkinscoie.com

**From:** Mertens, Matthew (POR) <MMertens@perkinscoie.com>
**Sent:** Tuesday, January 28, 2025 11:07 AM
**To:** Mark Conrad <mconrad@freybuck.com>; Trambley, Lauren (SFO) <LTrambley@perkinscoie.com>
**Cc:** Amber Holmes <aholmes@freybuck.com>; Rastello, Kenneth R. (SEA)

| | |
|---|---|
| **From:** | Grifter |
| **To:** | Jeff Moss |
| **Subject:** | DEF CON Zoom Meeting |
| **Date:** | Sunday, September 5, 2021 8:30:21 PM |

Defcon Meeting
Time - Sep 7, 2021 9:00 PM Eastern =ime - 6:00 PM Pacific Time

Join Zoom Meeting= https://Dell.zoom.us/j/94232754485?
pwd=RENHaVVTZGZ0ellDampmU=JsYnpxZz09

Neil Wyler is inviting you to a scheduled Zoom meeti=g.

Join from a browser: https://Dell.zoom.us/wc/join/94232754485

Password: 031=37
Join by Phone:
    US +13462487799,=94232754485#
    US +16699006833,,9423275=485#
    US +12532158782,,94232754485# =C2&#65533;   US +16465588656,,94232754485#
 =C2&#65533; US +13017158592,,94232754485#
  =C2&#65533; India +918071279440,,94232754485#
  &#65533;=A0 India +912248798004,,94232754485#
  =ndia +912248798012,,94232754485#
  Indi= +912271279525,,94232754485#
  United K=ngdom +442080806592,,94232754485#
  Uni=ed Kingdom +443300885830,,94232754485#
  &#65533;=A0 United Kingdom +441314601196,,94232754485#
  &#65533;=A0 United Kingdom +442034815237,,94232754485#
 &#65533;=A0 United Kingdom +442034815240,,94232754485#
&#65533;=A0 United Kingdom +442039017895,,94232754485#     United Kingdom
 +442080806591,,942327544=5#
   Canada +14388097799,,94232754485#<=r>     Canada
 +15873281099,,94232754485#
=C2&#65533;    Canada +16473744685,,94232754485#
&#65533;=A0    Canada +16475580588,,94232754485#
 =C2&#65533;   Canada +17789072071,,94232754485#
  &#65533;=A0   Canada +12042727920,,94232754485#

Meeting ID= 942 3275 4485

Password: 031337

# Exhibit B

| | |
|---|---|
| **From:** | Mertens, Matthew (POR) |
| **To:** | "Amber Holmes"; "Mark Conrad"; Perez, David A. (SEA); "Ted Buck"; Trambley, Lauren (SFO) |
| **Cc:** | "Lauren English"; "Kristofer Riklis" |
| **Subject:** | RE: Hadnagy, et al. v. Moss, et al. |
| **Date:** | Tuesday, May 28, 2024 6:00:00 PM |
| **Attachments:** | image001.jpg |

Mark—

We're preparing discovery responses, including the names of the individuals who spoke with Def Con regarding their experiences with Mr. Hadnagy. These individuals are very concerned about the possibility of retaliation from Mr. Hadnagy or harassment by online trolls if their names become public. We will produce these names subject to and upon entry of a protective order so their identities cannot be disclosed or used for non-litigation purposes. Please let me know if you will stipulate to the entry of the standard Western District of Washington protective order, or mutually agreed-to modifications of that order, so we can produce the names accordingly.

Thanks,

**Matt Mertens** | **Perkins Coie LLP**
PARTNER
Pronouns: He/Him/His
1120 N.W. Couch Street Tenth Floor
Portland, OR 97209-4128
D. +1.503.727.2199
F. +1.503.346.2199
E. MMertens@perkinscoie.com
www.perkinscoie.com/mmertens

**From:** Mertens, Matthew (POR)
**Sent:** Tuesday, May 21, 2024 3:28 PM
**To:** Amber Holmes <aholmes@freybuck.com>; Mark Conrad <mconrad@freybuck.com>; Perez, David A. (SEA) <DPerez@perkinscoie.com>; Ted Buck <tbuck@freybuck.com>; Trambley, Lauren (SFO) <LTrambley@perkinscoie.com>
**Cc:** Lauren English <lenglish@freybuck.com>; Kristofer Riklis <kristofer@riklislaw.com>
**Subject:** RE: Hadnagy, et al. v. Moss, et al.

Amber, receipt confirmed, thanks. And please, call me Matt.

**Matt Mertens** | **Perkins Coie LLP**
PARTNER
Pronouns: He/Him/His
1120 N.W. Couch Street Tenth Floor
Portland, OR 97209-4128
D. +1.503.727.2199
F. +1.503.346.2199
E. MMertens@perkinscoie.com
www.perkinscoie.com/mmertens

**From:** Amber Holmes <aholmes@freybuck.com>
**Sent:** Tuesday, May 21, 2024 10:20 AM

# Exhibit C

| | |
|---|---|
| **From:** | Mertens, Matthew (POR) |
| **To:** | Mark Conrad; Amber Holmes; Perez, David A. (SEA); Ted Buck; Trambley, Lauren (SFO) |
| **Cc:** | Lauren English; Kristofer Riklis |
| **Subject:** | RE: Hadnagy, et al. v. Moss, et al. |
| **Date:** | Thursday, June 13, 2024 11:32:58 AM |
| **Attachments:** | image001.jpg |
| | 2024-06-13 - Defendant Def Con"s Amended Responses to Plaintiff"s First Set of Discovery Requests.pdf |

Hey, Mark—

Thanks for your time on the phone this morning. As discussed, please find attached Def Con's first amended interrogatory responses providing the names of the individuals known to Def Con who raised concerns about Mr. Hadnagy's behavior.

Per our discussion, I'll work on getting you updated responses for Rogs 1, 4, 5, 8, and 9 now.

Let me know what you hear from your client about what he may be seeking from a negotiated resolution.

Thanks,

**Matt Mertens | Perkins Coie LLP**
PARTNER
Pronouns: He/Him/His
1120 N.W. Couch Street Tenth Floor
Portland, OR 97209-4128
D. +1.503.727.2199
F. +1.503.346.2199
E. MMertens@perkinscoie.com
www.perkinscoie.com/mmertens

---

**From:** Mark Conrad <mconrad@freybuck.com>
**Sent:** Wednesday, June 12, 2024 8:58 AM
**To:** Mertens, Matthew (POR) <MMertens@perkinscoie.com>; Amber Holmes <aholmes@freybuck.com>; Perez, David A. (SEA) <DPerez@perkinscoie.com>; Ted Buck <tbuck@freybuck.com>; Trambley, Lauren (SFO) <LTrambley@perkinscoie.com>
**Cc:** Lauren English <lenglish@freybuck.com>; Kristofer Riklis <kristofer@riklislaw.com>
**Subject:** RE: Hadnagy, et al. v. Moss, et al.

How about tomorrow at 9am? I can call you, just let me know what number to call.

# Mark R. Conrad | Attorney

**Frey Buck**
1200 Fifth Avenue, Ste. 1900
Seattle, WA 98101
206-486-8000, Ext. 805
206-902-9660 (Fax)
www.freybuck.com

# Exhibit D

Page 1

UNITED STATES DISTRICT COURT

FOR THE WESTERN DISTRICT OF WASHINGTON

------------------------------------------------------
                              )
CHRISTOPHER J. HADNAGY;       )
SOCIAL-ENGINEER,              )
                              )
          Plaintiffs,         )
                              )
     vs.                      )   No. 2:23-cv-01932-BAT
                              )
JEFF MOSS; and DEF CON        )
COMMUNICATIONS, INC.,         )
                              )
          Defendants.         )
                              )
------------------------------------------------------

VIDEOTAPED VIDEOCONFERENCE DEPOSITION UPON ORAL
                   EXAMINATION

                      OF

               MICHELE FINCHER

------------------------------------------------------

                Bothell, Washington

DATE:   October 14, 2024

REPORTED REMOTELY BY:  Douglas Armstrong, RPR
                       Washington CCR No. 3444

Michele Fincher                                     October 14, 2024

Page 2

```
 1                    A P P E A R A N C E S

 2

 3   For the Plaintiffs:

 4         MARK R. CONRAD
           Frey Buck, P.S.
 5         1200 Fifth Avenue, Suite 1900
           Seattle, Washington 98101
 6         (206) 486-8000
           mconrad@freybuck.com
 7         (Via Videoconference)

 8         KRISTOFER Z. RIKLIS
           Riklis Law, LLC
 9         401 Wilshire Boulevard, Floor 12
           Santa Monica, California 90401
10         (310) 895-2497
           kristofer@riklislaw.com
11         (Via Videoconference)

12

     For the Defendants:
13
           JAKE DEAN
14         Perkins Coie
           1888 Century Park East, Suite 1700
15         Los Angeles, California 90067
           (310) 788-3289
16         jacobdean@perkinscoie.com
           (Via Videoconference)
17

18   Also Present:

19         PATRICK NORTON
           Videographer
20         (Via Videoconference)

21         LAUREN ENGLISH
           Frey Buck
22         (Via Videoconference)

23         CHRIS HADNAGY
           (Via Videoconference)
24

25
```

Michele Fincher                                    October 14, 2024

```
                                                      Page 4
 1      Bothell, Washington    Monday, October 14, 2024

 2                     9:04 a.m.

 3      -----------------------------------

 4           THE VIDEOGRAPHER:  We are on the record at

 5   9:04 a.m. on October 14, 2024.  This is the

 6   video-recorded deposition of Michele Fincher in the

 7   matter of Chris J. Hadnagy vs. Jeff Moss, et al.,

 8   Number 2:23-cv-01932-BAT in the United States District

 9   Court for the Western District of Washington.  This

10   deposition is being held virtually and was noticed by

11   defendant.

12           Counsel, please introduce yourselves and

13   state whom you represent.

14           ATTORNEY DEAN:  Good morning.  Jake Dean on

15   behalf of defendants.

16           ATTORNEY CONRAD:  Mark Conrad on behalf of

17   plaintiffs.

18           THE VIDEOGRAPHER:  My name is Patrick Norton,

19   and I am the legal videographer.  The court reporter is

20   Doug Armstrong.  We are with Seattle Deposition

21   Reporters.

22           Would the reporter please swear in the

23   witness.

24   \\\

25   \\\
```

Michele Fincher                                          October 14, 2024

Page 5

 1    MICHELE FINCHER,        witness herein, having been

 2                            duly sworn by the Certified

 3                            Court Reporter, testified as

 4                            follows:

 5

 6                  E X A M I N A T I O N

 7    BY ATTORNEY DEAN:

 8         Q.   Good morning, Ms. Fincher.  How's it going?

 9         A.   Fine.  How are you doing, Jake?

10         Q.   Not bad.

11              So, you know, you're here today for your

12    deposition.  I'm going to try to be as efficient as I

13    can, try and make sure we have a clean record, and get

14    you in and out.  With that said, I want to go through

15    what we call the admonitions or the ground rules to

16    make sure that we have a nice, clean record today and a

17    nice, smooth, and efficient deposition, okay?

18         A.   Yes.  Understood.

19         Q.   Perfect.

20              So the oath that you just took is the same

21    oath that you would take if this case were to go to

22    trial, and it carries with it the same obligation to

23    testify truthfully under the penalty of perjury.

24              Do you understand that?

25         A.   Yes, I do.

Michele Fincher                                    October 14, 2024

Page 58

1    said, "Yes, this is Jeff."  And so I -- that was --
2    that was the extent of Jeff's involvement in that.  He
3    left Grifter do the questioning.
4         Q.   And it was your understanding that Grifter
5    was acting on behalf of Def Con during this call?
6         A.   Yes.
7              ATTORNEY CONRAD:  Object.  Form.
8         Q.   (By Attorney Dean) Was that a "yes"?
9         A.   Yes.
10             ATTORNEY CONRAD:  Object.  Form.
11        Q.   (By Attorney Dean) And I think you said the
12   purpose of this call was essentially to be a
13   fact-finding mission regarding allegations into
14   Mr. Hadnagy, correct?
15        A.   Yes.
16             ATTORNEY CONRAD:  Object.  Form.
17        Q.   (By Attorney Dean) Approximately how many
18   individuals were on this call, to the best of your
19   recollection?
20        A.   Probably at least a dozen.  10 to 12, I would
21   say.
22        Q.   Understood.
23             And did you personally share any stories
24   about your experience with SEVillage, Black Hat, and
25   Social-Engineer during this call?

Michele Fincher                                    October 14, 2024

Page 59

1       A.    Yes.

2       Q.    And did you tell Grifter the stories that you

3  just told us today about the Black Hat conference and

4  how women were asked to ask men about whether their

5  penises were circumcised, and men were asked to ask

6  women about their bra size and feminine products?

7             ATTORNEY CONRAD:  Object.  Form.

8       A.    I'm going to say yes, but I'm not sure,

9  honestly.  A lot of people had a lot of things to say.

10 I know that I did share some stories, and that's

11 probably one of the main stories that I would have

12 shared.  So -- but I -- that was a long time ago, and

13 I'm sorry.  I can't definitively say that's the

14 specific story that I shared.

15      Q.    (By Attorney Dean) Do you -- sitting here

16 today, do you recall what stories you shared on that

17 call?

18      A.    Honestly, no, not really.  I agreed to

19 participate on the call because I was asked to by

20 several people.  I felt it was important to be

21 supportive of the people who had brought the complaint

22 forward, and I felt that it was legitimate.

23            So to ask me specifically what I talked

24 about, I would say I probably talked about the class

25 exercise that I hated.  I probably talked about the

Michele Fincher                                    October 14, 2024

Page 60

1    SEVillage contestant because that was directly
2    associated with Def Con.  I probably talked about
3    treatment of employees.  But can I say that I did?  I
4    cannot.
5         Q.   Got it.
6              So sitting here today, you can't recall 100
7    percent, but to the best of your recollection, what you
8    likely said were the stories about Black Hat and the
9    questions that were asked; the comment about a
10   contestant being "hot," "Asian," and being in; and then
11   the treatment of the staff at Def Con?
12             ATTORNEY CONRAD:  Object.  Form.
13        A.   Yes, sir.  Yes, sir.
14        Q.   (By Attorney Dean) And do you recall whether
15   anyone else on this call kind of corroborated your
16   stories or said, "Uh-Huh, yeah, I've seen that," or,
17   "Yep, that happened"?
18             ATTORNEY CONRAD:  Object.  Form.
19        A.   Yes.  I don't recall anyone saying that they
20   did not disagree with anything that I said I witnessed
21   personally.
22        Q.   (By Attorney Dean) Do you --
23        A.   I feel like I would remember that.
24        Q.   Do you recall other individuals corroborating
25   other stories?  So, for example, if someone said, you

1                    C E R T I F I C A T E

2       UNITED STATES      )
                           )
3       DISTRICT COURT     )

4

5              I, a Reporter and Washington Certified Court
        Reporter, hereby certify that the foregoing videotaped
        videoconference deposition upon oral examination of
6       Michele Fincher was taken stenographically before me on
        October 14, 2024, and transcribed under my direction;

7

8              That the witness was duly sworn by me
        pursuant to RCW 5.28.010 to testify truthfully; that
        the transcript of the deposition is a full, true and
9       correct transcript to the best of my ability; that I am
        neither attorney for nor a relative or employee of any
10      of the parties to the action or any attorney or counsel
        employed by the parties hereto nor financially
11      interested in its outcome.

12             I further certify that in accordance with
        Washington Court Rule 30(e) the witness is given the
13      opportunity to examine, read and sign the deposition
        within thirty days upon its completion and submission
14      unless waiver of signature was indicated in the record.

15             IN WITNESS WHEREOF, I have hereunto set my
        hand this 18th day of October, 2024.

16

17

18      Douglas Armstrong, RPR

19      _____
20      Washington Certified Court Reporter No. 3444
        License expires 11/26/2025

21

22

23

24

25

Exhibit E

Maxie Reynolds                                    September 27, 2024

Page 1

UNITED STATES DISTRICT COURT

FOR THE WESTERN DISTRICT OF WASHINGTON

--------------------------------------------------------
                            )
CHRISTOPHER J. HADNAGY;     )
SOCIAL-ENGINEER,            )
                            )
             Plaintiffs,    )
                            )
    vs.                     )  No. 2:23-cv-01932-BAT
                            )
JEFF MOSS; and DEF CON      )
COMMUNICATIONS, INC.,       )
                            )
             Defendants.    )
                            )
--------------------------------------------------------

VIDEOTAPED VIDEOCONFERENCE DEPOSITION UPON ORAL
                    EXAMINATION

                        OF

                  MAXIE REYNOLDS

--------------------------------------------------------


         Los Angeles, California (Via Zoom)








DATE:    September 27, 2024

REPORTED REMOTELY BY:  Douglas Armstrong, RPR
                       Washington CCR No. 3444

Maxie Reynolds                                    September 27, 2024

Page 2

```
 1                    A P P E A R A N C E S

 2

 3    For the Plaintiffs:

 4          MARK R. CONRAD
            Frey Buck, P.S.
 5          1200 Fifth Avenue, Suite 1900
            Seattle, Washington 98101
 6          (206) 486-8000
            mconrad@freybuck.com
 7          (Via Videoconference)

 8          KRISTOFER Z. RIKLIS
            Riklis Law, LLC
 9          401 Wilshire Boulevard, Floor 12
            Santa Monica, California 90401
10          (310) 895-2497
            kristofer@riklislaw.com
11          (Via Videoconference)

12

      For the Defendants:
13
            MATTHEW J. MERTENS
14          Perkins Coie, LLP
            1120 Northwest Couch, 10th Floor
15          Portland, Oregon 97209
            (503) 727-2199
16          mmertens@perkinscoie.com
            (Via Videoconference)

17

18    Also Present:

19          PATRICK NORTON
            Videographer
20          (Via Videoconference)

21          LAUREN ENGLISH
            Frey Buck
22          (Via Videoconference)

23          CHRIS HADNAGY
            (Via Videoconference)

24

25
```

Maxie Reynolds                                September 27, 2024

Page 7

1    Los Angeles, California    Friday, September 27, 2024

2                        9:00 a.m. PDT

3            -----------------------------------

4            THE VIDEOGRAPHER:  We are on the record at

5    9:00 a.m. on September 27, 2024.  This is the

6    video-recorded deposition of Maxie Reynolds in the

7    matter of Christopher J. Hadnagy vs. Jeff Moss, et al.,

8    Number 2:23-cv-01932-BAT in the United States District

9    Court for the Western District of Washington.  This

10   deposition is being held virtually and was noticed by

11   defendant.

12           Counsel, please introduce yourselves and

13   state whom you represent.

14           ATTORNEY CONRAD:  Mark Conrad for plaintiffs.

15           ATTORNEY MERTENS:  And Matt Mertens for

16   defendants Jeff Moss and Def Con Communications.

17           THE VIDEOGRAPHER:  My name is Patrick Norton,

18   and I am the legal videographer.  The court reporter is

19   Doug Armstrong.  We are with Seattle Deposition

20   Reporters.  Would the reporter please swear in the

21   witness.

22

23   MAXIE REYNOLDS,        witness herein, having been

24                          duly sworn by the Certified

25                          Court Reporter, testified as

Maxie Reynolds                                    September 27, 2024

Page 8

 1                    follows:

 2

 3                  E X A M I N A T I O N

 4   BY ATTORNEY MERTENS:

 5        Q.    Good morning, Ms. Reynolds.

 6        A.    Good morning.  How's it going?

 7        Q.    Good.  Good.  Thank you.

 8              We've met before off the record, but for the

 9   purposes of the record, I'll reintroduce myself.  I'm

10   Matt Martens.  I'm an attorney for Jeff Moss and Def

11   Con Communications in the lawsuit that Mr. Hadnagy and

12   Social-Engineer, LLC, have brought against Mr. Moss and

13   Def Con.

14              Ms. Reynolds, have you ever been deposed

15   before?

16        A.    No.

17        Q.    Okay.  So we'll just cover some basics here.

18              You understand that you are giving today

19   sworn testimony under oath just like you're sitting in

20   a courtroom?

21        A.    Yes.

22        Q.    And you understand that you are sworn to tell

23   the truth to the best of your ability?

24        A.    Yes.

25        Q.    Okay.  So some ground rules for today's

Maxie Reynolds                                    September 27, 2024

Page 92

1   especially if you have a village there or something
2   like that, which he did.  At Def Con, a village is like
3   a well-respected position.
4           So it sort of moved from "Should I go to the
5   police?" to "Well, wait a minute.  He gets all of us
6   from the same place.  Should we go to Def Con and Black
7   Hat and that sort of thing?"  So that was more or less
8   how that came about.
9       Q.  Do you recall approximately when the decision
10  was made to approach Def Con and Black Hat with this
11  group of individuals' concerns about Mr. Hadnagy?
12      A.  I do not.  But I think I was the one who
13  emailed Def Con.  So there is a definite answer.  I
14  just don't know.
15      Q.  Was it your idea to reach out to Def Con and
16  Black Hat regarding Mr. Hadnagy, or, alternatively, was
17  it a collective decision?  How did that concretely get
18  decided?
19      A.  I don't think it was my idea, but I would
20  have gotten to the same idea.  And I was happy to
21  contact them.  I was thrilled that there was a path to
22  sort of minimizing his impact on the rest of us.
23      Q.  I'm going to name the names that you have
24  given me, and the question for each of these
25  individuals is whether they were part of the initial

Maxie Reynolds                                    September 27, 2024

Page 93

```
 1    phone call that happened with Def Con that you've
 2    referenced in your testimony.
 3              Does that make sense?
 4    A.    Yeah.
 5              ATTORNEY CONRAD:  Object.   Form.
 6    Q.    (By Attorney Mertens) Cat Murdock?
 7    A.    Yes.
 8    Q.    Michele Fincher?
 9    A.    Yes.
10    Q.    Jess Levine?
11    A.    Yes.
12    Q.    Yourself?
13    A.    Yes.
14    Q.    ████████████████
15    A.    Yes.
16    Q.    ███, the man whose last name we don't know?
17    A.    Yes.
18    Q.    And is that, if you know, Ms. Reynolds,
19    ████?
20    A.    That is.
21    Q.    █████, whose last name you don't know?
22    A.    Correct.
23    Q.    ██████?
24    A.    Correct.
25    Q.    Sam Gamble?
```

Maxie Reynolds                                    September 27, 2024

Page 97

1          There was a -- so I don't recall the length

2     of time at all, and, yes, there was a follow-up call.

3     And I don't truly remember what was discussed on it.

4     It was just -- I remember talking to -- Jeff Moss was

5     on the call, and he was talking about, I think, Chris'

6     behavior after the ban.  And my memory's a little bit

7     hazy on the rest of the details, but, yeah, there

8     actually -- there was a second meeting, but I don't

9     think it was like a second meeting to go through each

10    of our stories again.  It was just a "Here's what's

11    what happened," I think.

12         Q.    (By Attorney Mertens) So let me -- I'm just

13    going to explore that a little bit, Ms. Reynolds.

14         A.    Okay.

15         Q.    Your testimony is that there was a second

16    meeting with Jeff Moss where he described the situation

17    with Mr. Hadnagy after Def Con announced Mr. Hadnagy's

18    ban from Def Con?

19         A.    Yes.

20               ATTORNEY CONRAD:  I'm going to object.  Form.

21         A.    That is right.

22         Q.    (By Attorney Mertens) Do you recall who was

23    involved in that call?

24         A.    I just remember that Jeff was on it and I was

25    on it and that ████████ was on it because she sort of

Maxie Reynolds                                    September 27, 2024

Page 98

1    said something on that call that I had a reaction to,

2    and so that's why I remember that.

3           And the rest, like, I'm sure there were other

4    people on that call.  I just don't know.  I couldn't

5    name them.

6        Q.    (By Attorney Mertens) What did ███████ say

7    that caused you a reaction?

8        A.    She just -- you know, we're talking about a

9    fairly sensitive topic, and she just made it, like,

10   very personal with Jeff and sort of was sort of like

11   praising Jeff, not for anything to do with this case,

12   but just who Jeff is.  Like, I think it's sort of

13   like -- for ████, I think it's sort of like meeting,

14   you know, your celebrity crush sort of thing.  So I

15   just had a reaction to that.  That was it.

16       Q.    I see.

17             And what, to the best of your recollection,

18   was the substance of that second meeting that we're

19   talking about?

20       A.    It was simply to talk about, like, what Def

21   Con been doing since our last call.  Like, I'm fairly

22   sure it was about that.

23       Q.    Do you know, Ms. Reynolds, approximately how

24   long after the first call took place that this second

25   call took place?

Maxie Reynolds                                    September 27, 2024

Page 99

1        A.    No, I don't.

2        Q.    Do you recall the length, approximately, of

3    this second call?

4        A.    No.

5        Q.    Turning back to the initial call,

6    Ms. Reynolds, what, to the best of your recollection,

7    was shared with the Def Con attendees on that call?

8        A.    Yeah.  So everyone gave their experience with

9    Chris and details of that.  So ████████ gave, like, a

10   very emotional detailing of her time with Chris and

11   what happened to her after she left.  And we all sort

12   of gave our -- like, "Here's he -- here's what he's

13   done to us, and doesn't this look like a pattern to

14   you?"

15       Q.    To the best of your recollection,

16   Ms. Reynolds, can you share what was shared on the call

17   by person?

18       A.    By any person?

19       Q.    For example, you offered ████████████

20   recounting of her experiences with Mr. Hadnagy.

21             Do you recall what others told Def Con in a

22   similar vein to that which you've described --

23       A.    Yeah.

24       Q.    -- about ████████?

25       A.    So ████████ described becoming homeless

Maxie Reynolds                                          September 27, 2024

Page 100

1   because of Chris' actions toward her after she was let

2   go or after she left.  I don't recall which way that

3   was.  Like, did she leave, or was she fired?  I don't

4   know.  But post employment, she ended up homeless

5   because of some actions of Chris'.

6               ███████  won a lawsuit against Chris, I

7   believe, where Chris disobeyed the judge and took a

8   lawyer to a meeting that you weren't supposed to have

9   lawyers in, something like that, and treated her

10  unfairly because of how she looks.  And I think she won

11  that case.

12              Then Michele left.  Michele Fincher left

13  Chris' employment because he was so volatile as a

14  leader to the rest of his staff and didn't treat them

15  fairly, and I think she didn't want to see that.  So

16  she detailed that.

17              Cat was either fired or left and was treated

18  unfairly when she was in there.  She wanted things like

19  fair pay and, I think, was denied that.  And then,

20  also, I had information that I had relayed to Cat

21  afterwards, which was Chris was actively trying to get

22  her fired from a job which was unrelated to him because

23  he felt uncomfortable that she worked for a client,

24  which employs hundreds of thousands of people, and

25  somehow Cat was a threat to him by working there.

Maxie Reynolds                                        September 27, 2024

Page 107

1    Q.    Is ███ a member of the LGBTQ community?

2    A.    I don't know.

3    Q.    When she, to your recollection, expressed a

4    belief that Mr. Hadnagy is homophobic, was that based

5    on behavior towards her or behavior that she witnessed

6    towards others, if you know?

7    A.    It was behavior that she witnessed towards

8    others, and she did describe it.  I cannot remember it.

9    Q.    Michele Fincher, what do you recall about

10   what she shared with Def Con on this call?

11   A.    Michele's position was that she was witness

12   to too many, like, instances of bullying internally

13   within the company, and I think it was actually to do

14   with either ███ or ██, one of them.  Like, I think

15   she witnessed one of them being bullied and, like,

16   unfair treatment of other employees.

17         I wasn't there at the time.  I don't know who

18   he employed at that time.  That's my understanding of

19   it, and she wanted to leave because of that.

20   Q.    Anything else you recall about what

21   Ms. Fincher shared with Def Con on that call?

22   A.    No.

23   Q.    Ms. Murdock, you testified that she was

24   unhappy with her compensation.

25         Was there anything else you recall about what

```
 1                   C E R T I F I C A T E

 2        UNITED STATES      )
                             )
 3        DISTRICT COURT     )

 4

 5             I, a Reporter and Washington Certified Court
          Reporter, hereby certify that the foregoing videotaped
          videoconference deposition upon oral examination of
 6        Maxie Reynolds was taken stenographically before me on
          September 27, 2024, and transcribed under my direction;

 7

 8             That the witness was duly sworn by me
          pursuant to RCW 5.28.010 to testify truthfully; that
          the transcript of the deposition is a full, true and
 9        correct transcript to the best of my ability; that I am
          neither attorney for nor a relative or employee of any
10        of the parties to the action or any attorney or counsel
          employed by the parties hereto nor financially
11        interested in its outcome.

12             I further certify that in accordance with
          Washington Court Rule 30(e) the witness is given the
13        opportunity to examine, read and sign the deposition
          within thirty days upon its completion and submission
14        unless waiver of signature was indicated in the record.

15             IN WITNESS WHEREOF, I have hereunto set my
          hand this 3rd day of October, 2024.

16

17

18        Douglas Armstrong, RPR

19        _____

20        Washington Certified Court Reporter No. 3444
          License expires 11/26/2025

21

22

23

24

25
```

Exhibit E

Page 1

UNITED STATES DISTRICT COURT

FOR THE WESTERN DISTRICT OF WASHINGTON

--------------------------------------------------------

```
                             )
CHRISTOPHER J. HADNAGY;      )
SOCIAL-ENGINEER,             )
                             )
             Plaintiffs,     )
                             )
    vs.                      )   No. 2:23-cv-01932-BAT
                             )
JEFF MOSS; and DEF CON       )
COMMUNICATIONS, INC.,        )
                             )
             Defendants.     )
                             )
```

--------------------------------------------------------

VIDEOTAPED VIDEOCONFERENCE DEPOSITION UPON ORAL
EXAMINATION

OF

MAXIE REYNOLDS

--------------------------------------------------------

Los Angeles, California (Via Zoom)

DATE:   September 27, 2024

REPORTED REMOTELY BY:  Douglas Armstrong, RPR
                       Washington CCR No. 3444

Maxie Reynolds                                        September 27, 2024

Page 2

```
 1                     A P P E A R A N C E S

 2

 3    For the Plaintiffs:

 4          MARK R. CONRAD
            Frey Buck, P.S.
 5          1200 Fifth Avenue, Suite 1900
            Seattle, Washington 98101
 6          (206) 486-8000
            mconrad@freybuck.com
 7          (Via Videoconference)

 8          KRISTOFER Z. RIKLIS
            Riklis Law, LLC
 9          401 Wilshire Boulevard, Floor 12
            Santa Monica, California 90401
10          (310) 895-2497
            kristofer@riklislaw.com
11          (Via Videoconference)

12
      For the Defendants:
13
            MATTHEW J. MERTENS
14          Perkins Coie, LLP
            1120 Northwest Couch, 10th Floor
15          Portland, Oregon 97209
            (503) 727-2199
16          mmertens@perkinscoie.com
            (Via Videoconference)
17
18    Also Present:

19          PATRICK NORTON
            Videographer
20          (Via Videoconference)

21          LAUREN ENGLISH
            Frey Buck
22          (Via Videoconference)

23          CHRIS HADNAGY
            (Via Videoconference)
24

25
```

Maxie Reynolds                                    September 27, 2024

Page 7

1    Los Angeles, California    Friday, September 27, 2024

2                        9:00 a.m. PDT

3        ------------------------------------

4        THE VIDEOGRAPHER:  We are on the record at

5    9:00 a.m. on September 27, 2024.  This is the

6    video-recorded deposition of Maxie Reynolds in the

7    matter of Christopher J. Hadnagy vs. Jeff Moss, et al.,

8    Number 2:23-cv-01932-BAT in the United States District

9    Court for the Western District of Washington.  This

10   deposition is being held virtually and was noticed by

11   defendant.

12       Counsel, please introduce yourselves and

13   state whom you represent.

14       ATTORNEY CONRAD:  Mark Conrad for plaintiffs.

15       ATTORNEY MERTENS:  And Matt Mertens for

16   defendants Jeff Moss and Def Con Communications.

17       THE VIDEOGRAPHER:  My name is Patrick Norton,

18   and I am the legal videographer.  The court reporter is

19   Doug Armstrong.  We are with Seattle Deposition

20   Reporters.  Would the reporter please swear in the

21   witness.

22

23   MAXIE REYNOLDS,        witness herein, having been

24                          duly sworn by the Certified

25                          Court Reporter, testified as

Maxie Reynolds                                                    September 27, 2024

Page 8

```
 1                      follows:

 2

 3                   E X A M I N A T I O N

 4   BY ATTORNEY MERTENS:

 5        Q.   Good morning, Ms. Reynolds.

 6        A.   Good morning.  How's it going?

 7        Q.   Good.  Good.  Thank you.

 8             We've met before off the record, but for the

 9   purposes of the record, I'll reintroduce myself.  I'm

10   Matt Martens.  I'm an attorney for Jeff Moss and Def

11   Con Communications in the lawsuit that Mr. Hadnagy and

12   Social-Engineer, LLC, have brought against Mr. Moss and

13   Def Con.

14             Ms. Reynolds, have you ever been deposed

15   before?

16        A.   No.

17        Q.   Okay.  So we'll just cover some basics here.

18             You understand that you are giving today

19   sworn testimony under oath just like you're sitting in

20   a courtroom?

21        A.   Yes.

22        Q.   And you understand that you are sworn to tell

23   the truth to the best of your ability?

24        A.   Yes.

25        Q.   Okay.  So some ground rules for today's
```

Maxie Reynolds                                    September 27, 2024

Page 92

1  especially if you have a village there or something

2  like that, which he did.  At Def Con, a village is like

3  a well-respected position.

4          So it sort of moved from "Should I go to the

5  police?" to "Well, wait a minute.  He gets all of us

6  from the same place.  Should we go to Def Con and Black

7  Hat and that sort of thing?"  So that was more or less

8  how that came about.

9      Q.   Do you recall approximately when the decision

10  was made to approach Def Con and Black Hat with this

11  group of individuals' concerns about Mr. Hadnagy?

12      A.   I do not.  But I think I was the one who

13  emailed Def Con.  So there is a definite answer.  I

14  just don't know.

15      Q.   Was it your idea to reach out to Def Con and

16  Black Hat regarding Mr. Hadnagy, or, alternatively, was

17  it a collective decision?  How did that concretely get

18  decided?

19      A.   I don't think it was my idea, but I would

20  have gotten to the same idea.  And I was happy to

21  contact them.  I was thrilled that there was a path to

22  sort of minimizing his impact on the rest of us.

23      Q.   I'm going to name the names that you have

24  given me, and the question for each of these

25  individuals is whether they were part of the initial

Maxie Reynolds                                    September 27, 2024

1    phone call that happened with Def Con that you've

2    referenced in your testimony.

3              Does that make sense?

4    A.   Yeah.

5              ATTORNEY CONRAD:  Object.  Form.

6    Q.   (By Attorney Mertens) Cat Murdock?

7    A.   Yes.

8    Q.   Michele Fincher?

9    A.   Yes.

10   Q.   Jess Levine?

11   A.   Yes.

12   Q.   Yourself?

13   A.   Yes.

14   Q.   ████████████████

15   A.   Yes.

16   Q.   ███, the man whose last name we don't know?

17   A.   Yes.

18   Q.   And is that, if you know, Ms. Reynolds,

19   ████?

20   A.   That is.

21   Q.   ██████, whose last name you don't know?

22   A.   Correct.

23   Q.   ██████████?

24   A.   Correct.

25   Q.   Sam Gamble?

Maxie Reynolds                                    September 27, 2024

Page 97

```
 1              There was a -- so I don't recall the length
 2      of time at all, and, yes, there was a follow-up call.
 3      And I don't truly remember what was discussed on it.
 4      It was just -- I remember talking to -- Jeff Moss was
 5      on the call, and he was talking about, I think, Chris'
 6      behavior after the ban.  And my memory's a little bit
 7      hazy on the rest of the details, but, yeah, there
 8      actually -- there was a second meeting, but I don't
 9      think it was like a second meeting to go through each
10      of our stories again.  It was just a "Here's what's
11      what happened," I think.
12          Q.   (By Attorney Mertens) So let me -- I'm just
13      going to explore that a little bit, Ms. Reynolds.
14          A.   Okay.
15          Q.   Your testimony is that there was a second
16      meeting with Jeff Moss where he described the situation
17      with Mr. Hadnagy after Def Con announced Mr. Hadnagy's
18      ban from Def Con?
19          A.   Yes.
20               ATTORNEY CONRAD:  I'm going to object.  Form.
21          A.   That is right.
22          Q.   (By Attorney Mertens) Do you recall who was
23      involved in that call?
24          A.   I just remember that Jeff was on it and I was
25      on it and that ████ was on it because she sort of
```

Maxie Reynolds                                    September 27, 2024

Page 98

1   said something on that call that I had a reaction to,

2   and so that's why I remember that.

3           And the rest, like, I'm sure there were other

4   people on that call.  I just don't know.  I couldn't

5   name them.

6       Q.   (By Attorney Mertens) What did ████    say

7   that caused you a reaction?

8       A.   She just -- you know, we're talking about a

9   fairly sensitive topic, and she just made it, like,

10  very personal with Jeff and sort of was sort of like

11  praising Jeff, not for anything to do with this case,

12  but just who Jeff is.  Like, I think it's sort of

13  like -- for ████ , I think it's sort of like meeting,

14  you know, your celebrity crush sort of thing.  So I

15  just had a reaction to that.  That was it.

16      Q.   I see.

17          And what, to the best of your recollection,

18  was the substance of that second meeting that we're

19  talking about?

20      A.   It was simply to talk about, like, what Def

21  Con been doing since our last call.  Like, I'm fairly

22  sure it was about that.

23      Q.   Do you know, Ms. Reynolds, approximately how

24  long after the first call took place that this second

25  call took place?

Maxie Reynolds                                      September 27, 2024

Page 99

1       A.   No, I don't.

2       Q.   Do you recall the length, approximately, of

3  this second call?

4       A.   No.

5       Q.   Turning back to the initial call,

6  Ms. Reynolds, what, to the best of your recollection,

7  was shared with the Def Con attendees on that call?

8       A.   Yeah.  So everyone gave their experience with

9  Chris and details of that.  So ████████ gave, like, a

10 very emotional detailing of her time with Chris and

11 what happened to her after she left.  And we all sort

12 of gave our -- like, "Here's he -- here's what he's

13 done to us, and doesn't this look like a pattern to

14 you?"

15      Q.   To the best of your recollection,

16 Ms. Reynolds, can you share what was shared on the call

17 by person?

18      A.   By any person?

19      Q.   For example, you offered ████████

20 recounting of her experiences with Mr. Hadnagy.

21           Do you recall what others told Def Con in a

22 similar vein to that which you've described --

23      A.   Yeah.

24      Q.   -- about ████████?

25      A.   So ████████ described becoming homeless

Maxie Reynolds                                      September 27, 2024

Page 100

1    because of Chris' actions toward her after she was let

2    go or after she left.  I don't recall which way that

3    was.  Like, did she leave, or was she fired?  I don't

4    know.  But post employment, she ended up homeless

5    because of some actions of Chris'.

6             ███████     won a lawsuit against Chris, I

7    believe, where Chris disobeyed the judge and took a

8    lawyer to a meeting that you weren't supposed to have

9    lawyers in, something like that, and treated her

10   unfairly because of how she looks.  And I think she won

11   that case.

12             Then Michele left.  Michele Fincher left

13   Chris' employment because he was so volatile as a

14   leader to the rest of his staff and didn't treat them

15   fairly, and I think she didn't want to see that.  So

16   she detailed that.

17             Cat was either fired or left and was treated

18   unfairly when she was in there.  She wanted things like

19   fair pay and, I think, was denied that.  And then,

20   also, I had information that I had relayed to Cat

21   afterwards, which was Chris was actively trying to get

22   her fired from a job which was unrelated to him because

23   he felt uncomfortable that she worked for a client,

24   which employs hundreds of thousands of people, and

25   somehow Cat was a threat to him by working there.

Maxie Reynolds                                    September 27, 2024

Page 107

1       Q.    Is ███ a member of the LGBTQ community?

2       A.    I don't know.

3       Q.    When she, to your recollection, expressed a

4    belief that Mr. Hadnagy is homophobic, was that based

5    on behavior towards her or behavior that she witnessed

6    towards others, if you know?

7       A.    It was behavior that she witnessed towards

8    others, and she did describe it.  I cannot remember it.

9       Q.    Michele Fincher, what do you recall about

10   what she shared with Def Con on this call?

11      A.    Michele's position was that she was witness

12   to too many, like, instances of bullying internally

13   within the company, and I think it was actually to do

14   with either ███ or ██, one of them.  Like, I think

15   she witnessed one of them being bullied and, like,

16   unfair treatment of other employees.

17            I wasn't there at the time.  I don't know who

18   he employed at that time.  That's my understanding of

19   it, and she wanted to leave because of that.

20      Q.    Anything else you recall about what

21   Ms. Fincher shared with Def Con on that call?

22      A.    No.

23      Q.    Ms. Murdock, you testified that she was

24   unhappy with her compensation.

25            Was there anything else you recall about what

```
 1                  C E R T I F I C A T E

 2       UNITED STATES      )
                            )
 3       DISTRICT COURT     )

 4
                 I, a Reporter and Washington Certified Court
 5       Reporter, hereby certify that the foregoing videotaped
         videoconference deposition upon oral examination of
 6       Maxie Reynolds was taken stenographically before me on
         September 27, 2024, and transcribed under my direction;
 7
                 That the witness was duly sworn by me
 8       pursuant to RCW 5.28.010 to testify truthfully; that
         the transcript of the deposition is a full, true and
 9       correct transcript to the best of my ability; that I am
         neither attorney for nor a relative or employee of any
10       of the parties to the action or any attorney or counsel
         employed by the parties hereto nor financially
11       interested in its outcome.

12               I further certify that in accordance with
         Washington Court Rule 30(e) the witness is given the
13       opportunity to examine, read and sign the deposition
         within thirty days upon its completion and submission
14       unless waiver of signature was indicated in the record.

15               IN WITNESS WHEREOF, I have hereunto set my
         hand this 3rd day of October, 2024.

16

17

18       Douglas Armstrong, RPR

19       _____

20       Washington Certified Court Reporter No. 3444
         License expires 11/26/2025
21

22

23

24

25
```

Exhibit F

Cat Murdock                                          October 24, 2024

Page 1

UNITED STATES DISTRICT COURT

FOR THE WESTERN DISTRICT OF WASHINGTON

--------------------------------------------------------
                              )
CHRISTOPHER J. HADNAGY;       )
SOCIAL-ENGINEER,              )
                              )
              Plaintiffs,     )
                              )
    vs.                       )  No. 2:23-cv-01932-BAT
                              )
JEFF MOSS; and DEF CON        )
COMMUNICATIONS, INC.,         )
                              )
              Defendants.     )
                              )
--------------------------------------------------------

VIDEOTAPED VIDEOCONFERENCE DEPOSITION UPON ORAL
                    EXAMINATION

                        OF

                   CAT MURDOCK

--------------------------------------------------------

                     Via Zoom

DATE:   October 24, 2024

REPORTED REMOTELY BY:  Douglas Armstrong, RPR
                       Washington CCR No. 3444

Cat Murdock                                        October 24, 2024

Page 2

```
 1                 A P P E A R A N C E S

 2

 3   For the Plaintiffs:

 4          MARK R. CONRAD
            Frey Buck, P.S.
 5          1200 Fifth Avenue, Suite 1900
            Seattle, Washington 98101
 6          (206) 486-8000
            mconrad@freybuck.com
 7          (Via Videoconference)

 8          KRISTOFER Z. RIKLIS
            Riklis Law, LLC
 9          401 Wilshire Boulevard, Floor 12
            Santa Monica, California 90401
10          (310) 895-2497
            kristofer@riklislaw.com
11          (Via Videoconference)

12

     For the Defendants:
13
            LAUREN TRAMBLEY
14          Perkins Coie
            505 Howard Street, Suite 1000
15          San Francisco, California 94105
            (415) 344-7062
16          ltrambley@perkinscoie.com
            (Via Videoconference)
17
            MATTHEW J. MERTENS
18          Perkins Coie, LLP
            1120 Northwest Couch, 10th Floor
19          Portland, Oregon 97209
            (503) 727-2199
20          mmertens@perkinscoie.com
            (Via Videoconference)
21

22

23

24

25
```

Cat Murdock                                          October 24, 2024

Page 3

```
 1              A P P E A R A N C E S (Continued)

 2

 3     Also Present:

 4          PATRICK NORTON
            Videographer
 5          (Via Videoconference)

 6          LAUREN ENGLISH
            Frey Buck
 7          (Via Videoconference)

 8          CHRIS HADNAGY
            (Via Videoconference)
 9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25
```

Cat Murdock                                                October 24, 2024

Page 6

```
 1          Via Zoom      Thursday, October 24, 2024
 2                        9:02 a.m. PDT
 3          ------------------------------------
 4          THE VIDEOGRAPHER:  We are on the record at
 5  9:02 a.m. on October 24, 2024.  This is the
 6  video-recorded deposition of Cat Murdock in the matter
 7  of Christopher J. Hadnagy vs. Jeff Moss, et al.,
 8  Number 2:23-cv-01932-BAT in the United States District
 9  Court for the Western District of Washington.  This
10  deposition is being held virtually and was noticed by
11  defendant.
12          Counsel, please introduce yourselves and
13  state whom you represent.
14          ATTORNEY TRAMBLEY:  Good morning.
15  Lauren Trambley on behalf of defendants.
16          ATTORNEY CONRAD:  Mark Conrad on behalf of
17  plaintiffs.
18          THE VIDEOGRAPHER:  My name is Patrick Norton,
19  and I am the legal videographer.  The court reporter is
20  Doug Armstrong.  We are with Seattle Deposition
21  Reporters.
22          Would the reporter please swear in the
23  witness.
24  \\\
25  \\\
```

Cat Murdock                                           October 24, 2024

Page 7

1    CAT MURDOCK,              witness herein, having been

2                             duly sworn by the Certified

3                             Court Reporter, testified as

4                             follows:

5

6                 E X A M I N A T I O N

7    BY ATTORNEY TRAMBLEY:

8         Q.   Good morning, Ms. Murdock.  How are you?

9         A.   I'm okay.  How are you?

10        Q.   I know we have met before, but for the

11   record, I'll reintroduce myself.  My name is

12   Lauren Trambley, and I'm an attorney at Perkins Coie.

13   We represent defendants Def Con Communications, Inc.,

14   and Jeff Moss.

15             To begin, can you please state your full name

16   for the record?

17        A.   Constance Caitlin Crumpler Murdock.

18        Q.   Have you ever been deposed before?

19        A.   No.

20        Q.   Okay.  I'll go over some basic ground rules

21   before we get started.

22             So you understand that you are giving sworn

23   testimony under oath today as if you were sitting in a

24   courtroom?

25        A.   I do.

Cat Murdock                                            October 24, 2024

Page 128

1    says, like "These can ruin my life if used wrong."  So

2    he's owning that it's terrible, that he shouldn't have

3    said it or done it.  And then the description matches

4    perfectly with the public statement.  So, yeah, I think

5    it's confirmation that that article is about me.

6        Q.    (By Attorney Trambley) Okay.  And do you find

7    it ironic that Mr. Hadnagy is suing for defamation in

8    this lawsuit when he sent this email to a journalist

9    about you?

10            ATTORNEY CONRAD:  Object.  Form.

11       A.    It is gloriously ironic.  Yes, I agree.

12       Q.    (By Attorney Trambley) And do you feel afraid

13   because Mr. Hadnagy has made disparaging comments about

14   you to third parties in the information security

15   industry?

16            ATTORNEY CONRAD:  Object.  Form.

17       A.    I feel afraid for my career.  I feel afraid

18   for my reputation.  I feel sad.  I feel less afraid the

19   more he quadruples down on his behavior, but I know

20   that some people always believe him.  So, yeah, I will

21   always be afraid.

22       Q.    (By Attorney Trambley) Going --

23       A.    It might be a win for him.  So there you go,

24   buddy.  You can have that win.

25       Q.    Ms. Murdock, shifting gears, let's discuss

Cat Murdock                                    October 24, 2024

Page 129

1    how you came to report your experiences with

2    Mr. Hadnagy to Def Con.  It is my understanding that

3    Def Con had a call with people who had inappropriate

4    interactions with Mr. Hadnagy.

5              Were you on that call?

6              ATTORNEY CONRAD:  I'm going to object.  Form.

7         A.   I was on a call that is what you described.

8         Q.   (By Attorney Trambley) When did that call

9    take place?

10        A.   I honestly don't recall.  It's -- what?

11   He's -- years ago at this point.  I don't remember.  I

12   know I was in a hotel room at the time, but that

13   doesn't really narrow it down.  I don't know.

14             He sued Def Con for what?  This is the third

15   year.  So 2021, maybe late spring of 2021.

16        Q.   Okay.

17        A.   That's the best guess I've got.

18        Q.   Do you recall how long that call was?

19        A.   It was very long.  I want to say over 90

20   minutes.

21        Q.   And do you recall how many participants in

22   total were on the call?

23        A.   Somewhere around 20, give or take.

24        Q.   And do you recall who was on the call?

25        A.   I recall many people.  I -- yeah.

Cat Murdock                                    October 24, 2024

Page 130

 1      Q.    Was Neil Wyler on the call?

 2      A.    Oh, I don't recall if he was.

 3      Q.    Was Grifter on the call?

 4      A.    Yes.  Oh, sorry.  Yeah.  My bad.  Sorry,

 5    Grifter.

 6            ATTORNEY CONRAD:  I'm going to object.  Form.

 7      Q.    (By Attorney Trambley) Was Jeff Moss on the

 8    call?

 9      A.    Yes.

10      Q.    Was Maxie Reynolds on the call?

11      A.    Yes.

12      Q.    Was Michele Fincher on the call?

13      A.    Yes.

14      Q.    Is there anyone else that you recall being on

15    the call?

16      A.    Yeah.  There were a bunch of people.  I'm not

17    going to name names.  I know some of them were there

18    anonymously and did not want to be named, and I don't

19    want to accidentally say someone who wasn't comfortable

20    being part of the public.

21            I know, like, ███████████ was there, like,

22    some supportive allies.  Like, he's -- he was just

23    there as, like, a sounding board of, like, "Yes, I

24    experienced this secondhand."

25            ██████ was there.  She wouldn't mind me

1                    C E R T I F I C A T E

2       UNITED STATES        )
                             )
3       DISTRICT COURT        )

4

5              I, a Reporter and Washington Certified Court
        Reporter, hereby certify that the foregoing videotaped
        videoconference deposition upon oral examination of
6       Cat Murdock was taken stenographically before me on
        October 24, 2024, and transcribed under my direction;

7

8              That the witness was duly sworn by me
        pursuant to RCW 5.28.010 to testify truthfully; that
        the transcript of the deposition is a full, true and
9       correct transcript to the best of my ability; that I am
        neither attorney for nor a relative or employee of any
10      of the parties to the action or any attorney or counsel
        employed by the parties hereto nor financially
11      interested in its outcome.

12             I further certify that in accordance with
        Washington Court Rule 30(e) the witness is given the
13      opportunity to examine, read and sign the deposition
        within thirty days upon its completion and submission
14      unless waiver of signature was indicated in the record.

15             IN WITNESS WHEREOF, I have hereunto set my
        hand this 28th day of October, 2024.

16

17

18      Douglas Armstrong, RPR

19      _____

20      Washington Certified Court Reporter No. 3444
        License expires 11/26/2025

21

22

23

24

25

Exhibit G

Hadnagy, et al. v. Moss, et al.                              Neil Wyler

Page 1

UNITED STATES DISTRICT COURT

WESTERN DISTRICT OF WASHINGTON

AT SEATTLE

_____

CHRISTOPHER J. HADNAGY, an      )
individual; and                 )
SOCIAL-ENGINEER, LLC, a         )
Pennsylvania limited            )
liability company,              )
                                )
            Plaintiffs,          )
                                )
    vs.                          ) No. 2:23-cv-01932-BAT
                                )
JEFF MOSS, an individual;       )
DEF CON COMMUNICATIONS,          )
INC., a Washington              )
corporation; and DOES 1-10,     )
and ROE ENTITIES 1-10,          )
inclusive,                      )
                                )
            Defendants.          )
_____

VIDEO-RECORDED VIDEOCONFERENCE DEPOSITION OF

NEIL WYLER

_____

9:03 a.m. (Pacific Time)

KAYSVILLE, UTAH

(All participants appeared via videoconference.)


DATE TAKEN:  NOVEMBER 14, 2024

REPORTED BY:  LORRIE R. CHINN, RPR,
Washington Certified Court Reporter No. 1902
Oregon Certified Court Reporter No. 97-0337

BUELL REALTIME REPORTING, LLC
206.287.9066  |  800.846.6989

Hadnagy, et al. v. Moss, et al.                                    Neil Wyler

Page 2

1          R E M O T E   A P P E A R A N C E S

2

3    FOR THE PLAINTIFFS (via videoconference):

4          MARK CONRAD
           Frey Buck
5          1200 Fifth Avenue, Suite 1900
           Seattle, Washington 98101
6          206.486.8000
           mconrad@freybuck.com

7

8    FOR THE DEFENDANTS (via videoconference):

9          JAKE DEAN (Pro Hac Vice)
           Perkins Coie LLP
10         700 13th Street, NW, Suite 800
           Washington, D.C. 20005-3960
11         202.654.6200
           jacobdean@perkinscoie.com

12

13   ALSO PRESENT (via videoconference):

14         CATHY ZAK, VIDEOGRAPHER
           LAUREN ENGLISH

15

16

17

18

19

20

21

22

23

24

25

Hadnagy, et al. v. Moss, et al.                                    Neil Wyler

Page 5

1                KAYSVILLE, UTAH; NOVEMBER 14, 2024

2                        9:03 a.m.

3                        --oOo--

4

5        (Deposition Exhibits 1 - 16 were premarked for

6    identification.)

7

8

9                THE VIDEOGRAPHER:  Good morning.  This

10   is the deposition of Neil Wyler in the matter of

11   Hadnagy, et al., v. Moss, et al., Civil Action No.

12   2:23-cv-01932-BAT, in the United States District Court,

13   for the Western District of Washington, and was noticed

14   by Perkins Coie, LLP.

15           The time now is approximately 9:03 a.m. on

16   this 14th day of November, 2024, and we are convening

17   via Buell virtual depositions.  My name is Cathy Zak

18   from Buell Realtime Reporting, LLC, located at 1325

19   Fourth Avenue, Suite 1840, in Seattle, Washington

20   98101.

21           Will counsel please identify themselves for

22   the record.

23                MR. DEAN:  Jake Dean for Defendants.

24                MR. CONRAD:  Mark Conrad for Plaintiffs.

25                THE VIDEOGRAPHER:  Thank you.  The court

3d977942-8f9e-446a-b1dc-cfb2ff91445f

Hadnagy, et al. v. Moss, et al.                          Neil Wyler

Page 6

1    reporter may now swear in the witness.

2

3     NEIL WYLER,      witness herein, having been first

4                      duly sworn under oath, was examined

5                      and testified as follows:

6

7                 E X A M I N A T I O N

8     BY MR. DEAN:

9        Q.  Good morning, Neil.  How is it going?

10       A.  It's going, man.  Yeah, it's not bad.  A

11   little chilly out here in Utah, but pretty good.

12       Q.  I hear you.  It's cold and rainy here in

13   Virginia, so no complaints.  It's actually pretty nice

14   and better than LA.

15           You also go by the name Grifter, right?

16       A.  Yeah.  Probably honestly more people in the

17   world know me as Grifter than know me as Neil.

18       Q.  And for the record, that's spelled

19   G-R-I-F-T-E-R?

20       A.  That's correct.

21       Q.  Perfect.  I will probably call you -- I'm not

22   sure today -- between Neil, Mr. Wyler, or Grifter.  If

23   you prefer one over the other, let me know.  But

24   otherwise I'll probably use it differently depending on

25   what documents we're looking at.

3d977942-8f9e-446a-b1dc-cfb2ff91445f

Hadnagy, et al. v. Moss, et al.                                    Neil Wyler

Page 111

1    blah, blah.  And I'm like, "Dude, you can't do that."

2    You know, like you just -- like that's not -- in no

3    scenario is anybody going to think that that's

4    appropriate.

5           And he's like, "No.  It's just like, well,

6    what are you going to look like when you get on stage?

7    Like they can't go up there looking unprofessional."

8           And so, again, in this head he has a

9    justification for why.  "Well, they represent my

10   company, right?  So what does their makeup look like?

11   What does their outfit look like?"

12          But obviously to a woman standing in her hotel

13   room before she goes down to a conference and gets on a

14   stage somewhere being told by her boss to turn on the

15   camera or find another job, that's not -- you know, no

16   one is going to think that that's okay to do, right?

17   But in Chris' mind he thought it was okay because they

18   were representing SECOM and so they should.

19          Q.  Understood.  Michele Fincher testify that

20   during this call she shared a story about how Chris had

21   women asking inappropriate questions as, I think, part

22   of homework for one of his SE villages at DEF CON.  Do

23   you recall Ms. Fincher making that statement?

24          A.  I do.

25                  MR. CONRAD:  Objection.  Form.

BUELL REALTIME REPORTING, LLC
206.287.9066  |  800.846.6989

3d977942-8f9e-446a-b1dc-cfb2ff91445f

Hadnagy, et al. v. Moss, et al.                                    Neil Wyler

Page 112

1      Q.  What do you recall Ms. Fincher saying to the
2   extent you can?
3      A.  Yeah.  So it wasn't just --
4          MR. CONRAD:  Object to form.
5      A.  -- at DEF CON.  It was also at Black Hat as
6   well.  So it was like part of the training.  There were
7   questions that weren't what I would call appropriate
8   like where it was -- and I remember having a discussion
9   with Chris about this like years prior to this.
10  Because part of the homework at -- for the class is to
11  go out and social engineer information out of people
12  that they normally wouldn't disclose, right?  And so I
13  know if you were -- if you were approaching a male
14  target, you were supposed to ask them like things like
15  what the brand of condom that they used was or
16  something.
17         And then if you were approaching female
18  targets or whatever, then it was what their bra size
19  was or what feminine products they used.  Like I know
20  there was, you know, some claims of asking about like
21  sexual preference, things like that, things that were
22  just kind of, you know, crossed the line.
23         And I had had a discussion about this with
24  Chris as a member of the Black Hat training review
25  board, just like -- you know, because somebody had

3d977942-8f9e-446a-b1dc-cfb2ff91445f

Hadnagy, et al. v. Moss, et al.                                      Neil Wyler

Page 113

1    complained about it.  And he said, well, this -- and,
2    again, this isn't during this timeframe.  This was
3    probably two years prior or something.
4          And he was like, "Well, what I'm trying to do
5    is put them in a situation that makes them
6    uncomfortable as well.  Like and it should make the
7    target uncomfortable because I'm trying to get them to
8    get information out of them that they wouldn't normally
9    disclose."
10         And I'm like, "Yeah, but why does it have to
11   be this?  It couldn't be like where they bank or like
12   whatever?"  And he's like, "Oh, well, nobody's
13   complained to me about it," right?
14         And it's like, "Okay.  Well, I just heard a
15   complaint about it, you know."  And he's like, "Well,
16   nobody has said anything to me."
17         And so, yeah, it was -- again, it's just like
18   a pattern of like justification.  It's like people come
19   and they say they have a problem with something.  And
20   Chris tells you why, even though they have a problem
21   with it, it's still fine to do because he believes he
22   can justify it.  And it's like just because you can
23   justify something to yourself doesn't mean that it's
24   okay for other people.  And if it makes them
25   uncomfortable or makes them feel like they -- you know,

BUELL REALTIME REPORTING, LLC
206.287.9066  |  800.846.6989

3d977942-8f9e-446a-b1dc-cfb2ff91445f

Hadnagy, et al. v. Moss, et al.                          Neil Wyler

Page 114

1   I don't know -- are put into like an uncomfortable
2   situation they can't get out of because now they've got
3   this instructor and they've paid for a class or they're
4   in this village and they're trying to win some contest,
5   it's like, well, you're going to do it anyway even if
6   it makes you uncomfortable.
7       Q.  Got it.  So complaints were made about these
8   questions a couple of years prior to this call, but
9   they were made to Black Hat?
10      A.  Correct.
11      Q.  And then during this September 2021 call with
12  DEF CON, Michele Fincher also raised this complaint?
13      A.  Correct.
14      Q.  Did others corroborate these type of questions
15  during the call?
16      A.  Yes.
17      Q.  And did anyone mention on that call whether
18  those questions made them feel uncomfortable,
19  unwelcome, afraid or unsafe?
20      A.  Yes.
21      Q.  One person or more than one person?
22      A.  More than one person.
23      Q.  And Chris had admitted to you previously to
24  having those questions but had a justification for why
25  he asked them?

3d977942-8f9e-446a-b1dc-cfb2ff91445f

Hadnagy, et al. v. Moss, et al.                                    Neil Wyler

Page 316

REPORTER'S CERTIFICATE

1

2

3    I, LORRIE R. CHINN, the undersigned Certified Court

4  Reporter, pursuant to RCW 5.28.010 authorized to administer

5  oaths and affirmations in and for the State of Washington, do

6  hereby certify:

7    That the sworn testimony and/or remote proceedings, a

8  transcript of which is attached, was given before me at the

9  time and place stated therein; that any and/or all witness(es)

10  were duly sworn remotely to testify to the truth; that the

11  sworn testimony and/or remote proceedings were by me

12  stenographically recorded and transcribed under my

13  supervision, to the best of my ability; that the foregoing

14  transcript contains a full, true, and accurate record of all

15  the sworn testimony and/or remote proceedings given and

16  occurring at the time and place stated in the transcript; that

17  a review of which was not requested; that I am in no way

18  related to any party to the matter, nor to any counsel, nor do

19  I have any financial interest in the event of the cause.

20    WITNESS MY HAND AND DIGITAL SIGNATURE this 25th day

21  of November, 2024.

22

23  _Lorrie R. Chinn_
    LORRIE R. CHINN, RPR, CCR

24  Washington State Certified Court Reporter No. 1902
    Oregon State Certified Court Reporter No. 97-0337

25  lorrie@buellrealtime.com

BUELL REALTIME REPORTING, LLC
206.287.9066  |  800.846.6989

# Exhibit H

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON AT SEATTLE

_____

CHRISTOPHER J. HADNAGY, an        )
individual; and SOCIAL-ENGINEER,  )
LLC, a Pennsylvania limited       )
liability company,                )
                                  ) No. 2:23-cv-01932-BAT
                Plaintiffs,       )
                                  )
        vs.                       )
                                  )
JEFF MOSS, an individual; DEF CON )
COMMUNICATIONS, INC., a Washington)
corporation; and DOES 1-10; and   )
ROE ENTITIES 1-10,                )
                                  )
                Defendants.       )
_____

VIDEO-RECORDED DEPOSITION OF JEFF MOSS

July 31, 2024

Seattle, Washington

Reporter:  John M. S. Botelho, CCR, RPR

Jeff Moss
July 31, 2024

```
1                    APPEARANCES

2
     For the Plaintiffs:
3
                     MARK R. CONRAD
4                    Frey Buck
                     1200 Fifth Avenue
5                    Suite 1900
                     Seattle, Washington 98101-3135
6                    206.486.8000
                     206.902.9660 Fax
7                    mconrad@freybuck.com

8                    KRISTOFER RIKLIS
                     Riklis Law
9                    401 Wilshire Boulevard
                     Floor 12
10                   Santa Monica, California 90401-1456
                     310.994.5959
11                   kristofer@riklislaw.com

12
     For Defendant DEF CON communications, Inc.:
13
                     MATTHEW J. MERTENS
14                   Perkins Coie
                     1120 Northwest Couch Street
15                   10th Floor
                     Portland, Oregon 97209-4128
16                   503.727.2000
                     503.727.2222 Fax
17                   mmertens@perkinscoie.com

18
     Also Present: Steve Crandall, videographer
19
                     Christopher Hadnagy
20

21

22

23

24

25
```

Jeff Moss
July 31, 2024

1               BE IT REMEMBERED that on Wednesday,

2   July 31, 2024, at 1201 Third Avenue, Suite 4900,

3   Seattle, Washington, at 9:04 a.m., before JOHN M.S.

4   BOTELHO, Certified Court Reporter, appeared JEFF

5   MOSS, the witness herein;

6               WHEREUPON, the following

7   proceedings were had, to wit:

8

9               <<<<<< >>>>>>

10

11              THE VIDEOGRAPHER:  We are going on

12  the record at 9:04 a.m. on July 31st, 2024.

13      This is Volume 1, Media Unit 1, of the video-

14  recorded deposition of Jeff Moss in the matter of

15  Hadnagy vs. Moss filed in the United States District

16  Court, Western District of Washington, at Seattle.

17  Case No. 2:23-cv-01932-BAT.

18      This deposition is being held at 1201 Third

19  Avenue, Suite 4900, Seattle, Washington 98101.  The

20  videographer is Steve Crandall from U.S. Legal

21  Support.  The court reporter is John Botelho from

22  U.S. Legal Support.

23      Will counsel and all present please note their

24  appearances and affiliations for the record.

25              MR. CONRAD:  Sure.  I can start.

Jeff Moss
July 31, 2024

1   My name's Mark Conrad.  I work with the firm Frey Buck,

2   on behalf of plaintiffs.

3                        MR. RIKLIS:  My name's Kris Riklis,

4   on behalf of plaintiffs, with Riklis Law.

5                        MR. MERTENS:  Matt Mertens with

6   Perkins Coie, LLP, with defendant DEF CON.

7                        THE WITNESS:  Jeff Moss with

8   defendant DEF CON.

9                        THE VIDEOGRAPHER:  Thank you.

10      Will the court reporter please swear the witness.

11

12  JEFF MOSS,                      having been first duly sworn

13                                  by the Certified Court

14                                  Reporter, deposed and

15                                  testified as follows:

16

17                       EXAMINATION

18  BY MR. CONRAD:

19  Q  All righty.  So, Jeff, you and I met just briefly off

20     the record, but we're on the record now.  Just

21     introduce myself again.  Mark Conrad.

22         And you said it's okay if I refer to you as "Jeff"

23     throughout the deposition?

24  A  Yeah.

25  Q  Okay.  Kind of based on some of our conversation

Jeff Moss
July 31, 2024

```
 1     telling us and everybody.

 2   Q So you provided Signal messages between you and Maxie

 3     Reynolds with Apple receipts to your counsel for

 4     production?

 5   A Correct.

 6   Q Any other messages with Maxie Reynolds that you've

 7     provided in discovery?

 8   A Well, I've provided the Signal message thread, my

 9     conversations with her from the very beginning to the

10     end.

11   Q I haven't seen the Signal message thread.

12   A Okay.

13   Q You said that she also wrote a letter to Black Hat; is

14     that right?

15   A That's my understanding.  I didn't see it, but it's my

16     understanding that she also filed some -- or "filed" --

17     she e-mailed them something with a complaint.

18   Q And you indicated that there were other allegations

19     that were made.

20   A Correct.

21   Q Can you tell me about those?

22   A Yeah, I'm trying to think of -- I mean, it was -- it

23     was a while ago, right?  So I'm not going to -- I don't

24     remember specifically who said what.  Maybe you can

25     tease some of that out of me.  But this is what -- what
```

Jeff Moss
July 31, 2024

1    STATE OF WASHINGTON )        I, John M. S. Botelho, CCR, RPR,
                          ) ss  a certified court reporter
2    County of Pierce     )       in the State of Washington, do
                                  hereby certify:

3

4

          That the foregoing deposition of JEFF MOSS was taken
5    before me and completed on July 31, 2024, and thereafter was
     transcribed under my direction; that the deposition is a
6    full, true and complete transcript of the testimony of said
     witness, including all questions, answers, objections,
7    motions and exceptions;

8         That the witness, before examination, was by me duly
     sworn to testify the truth, the whole truth, and nothing but
9    the truth, and that the witness reserved the right of
     signature;

10

          That I am not a relative, employee, attorney or counsel
11   of any party to this action or relative or employee of any
     such attorney or counsel and that I am not financially
12   interested in the said action or the outcome thereof;

13        IN WITNESS WHEREOF, I have hereunto set my hand
     this 12th day of August, 2024.

14

15

16

17

18                              John M. S. Botelho, CCR, RPR
                                Certified Court Reporter No. 2976
19                              (Certification expires 5/26/2025.)

20

21

22

23

24

25

# Exhibit I

| **From:** | Trambley, Lauren (SFO) |
| **To:** | Mark Conrad; Ted Buck; Lauren English; Amber Holmes; Karina Martin; Kristofer Riklis |
| **Cc:** | Perez, David A. (SEA); Mertens, Matthew (POR); Dean, Jacob (WDC); Harbaugh, Katrina (BOI) |
| **Subject:** | Hadnagy et al. v. Def Con et al. | M. Fincher Subpoena Response |
| **Date:** | Thursday, November 14, 2024 11:18:45 AM |
| **Attachments:** | 2024-11-14 M. Fincher"s Objections and Responses to Subpoena.pdf |

Counsel,

Please see attached for service Ms. Fincher's response to the subpoena served on October 29, 2024. You will be receiving an email shortly from Kiteworks with a secure link to download the documents produced by Ms. Fincher pursuant to the subpoena.

Thanks,

**Lauren Trambley** | ASSOCIATE | **Perkins Coie**

505 Howard Street Suite 1000
San Francisco, CA 94105-3204
+1.415.344.7140
ltrambley@perkinscoie.com

NOTICE: This communication from Perkins Coie LLP may contain privileged or other confidential information. If you have received it in error, please advise the sender by reply email and immediately delete the message and any attachments without copying or disclosing the contents. Thank you.

**Perkins Coie**

Perkins Coie LLP
1201 Third Avenue
Suite 4900
Seattle, WA 98101-3099

T. +1.206.359.8000
F. +1.206.359.9000
perkinscoie.com

November 14, 2024

David A. Perez
DPerez@perkinscoie.com
D.  +1.206.359.6767
F.  +1.206.359.7767

**VIA EMAIL**

Ted Buck
Mark Conrad
FREY BUCK
1200 5th Avenue, Suite 1900
Seattle, Washington 98101
tbuck@freybuck.com
mconrad@freybuck.com

Re:     ***Hadnagy et al. v. Def Con Communications Inc. et al.***, case no. 2:23-cv-01932-BAT |
        Michele Fincher's Objections and Responses to Subpoena from Plaintiffs
        Christopher Hadnagy and Social-Engineer, LLC

Counsel:

      We represent Michele Fincher in connection with the documents subpoena (the
"***Subpoena***") in the above-captioned litigation ("***Litigation***") that Plaintiffs Christopher Hadnagy
and Social-Engineer, LLC (collectively, "***Plaintiffs***") served on October 29, 2024. This letter sets
forth Ms. Fincher's objections and responses to the Subpoena.

### Objections

      Ms. Fincher objects that the Subpoena is overbroad, unduly burdensome, vague and
ambiguous, and seeks information that is not relevant to any claim or defense in the Litigation,
nor proportional to the needs of the Litigation, and not within Ms. Fincher's possession, custody,
or control. Ms. Fincher does not and will not agree to undertake an unduly burdensome search
for documents. Ms. Fincher will produce responsive, non-privileged documents that are within
her possession, custody, or control that is commensurate with Ms. Fincher's non-party status and
that is proportional to the needs of the Litigation. Ms. Fincher's general and specific objections
to the Subpoena are described below.

      ***Overbroad and Unduly Burdensome***. Ms. Fincher objects to the Subpoena as overbroad
and imposing an undue burden on a non-party. *See* Fed. R. Civ. P. 45(d)(1) ("A party or an
attorney responsible for issuing and serving a subpoena must take reasonable steps to avoid
imposing undue burden or expense on a person subject to the subpoena"). For example, each
request of the Subpoena lacks a temporal scope. Given Ms. Fincher's long history with Mr.
Hadnagy, her employment at Social-Engineer, and her involvement at conferences in the
industry, the lack of a temporal scope renders each request impermissibly overbroad and unduly
burdensome.  Asking non-party Ms. Fincher to search for and produce materials spanning over a
decade is unreasonably overbroad and imposes an undue and heavy burden on a non-party.

November 14, 2024
Page 2

Ms. Fincher further objects to the scope of requested information in the Subpoena is unduly burdensome. The Subpoena contains 18 separate requests for documents. Additionally, most of the requests are individually overbroad and unduly burdensome.

***Improperly Seeks Information Available from a Party to the Litigation***. Ms. Fincher objects to the Subpoena as unduly burdensome to the extent that it seeks documents, information, or communications readily available from parties to the Litigation or public sources. For example, Request No. 2 seeks "[a]ny documents or communications, including but not limited to emails (with attachments), text messages, voicemails, social media posts or messages, notes, drafts, or any other record otherwise memorialized with Jeff Moss, (aka "The Dark Tangent"), related to Chris Hadnagy or Social-Engineer, LLC." These documents can be (and have been) obtained through the parties to the Litigation without posing any burden on non-party Ms. Fincher.

***Duplicative***. Ms. Fincher objects to each request in the Subpoena to the extent that they are duplicative of other requests served on Ms. Fincher in this Litigation by other parties. Specifically, Request Nos. 1–18 are duplicative of Request Nos. 1, 2, 4, 5, 6, 7, 10, and 11 contained in a subpoena served on Ms. Fincher by Defendant Def Con Communications, Inc., for which she has already responded.

***Relevance***. Ms. Fincher further objects to each request in the Subpoena to the extent that it is not relevant to the Litigation. The requests seek all documents relating to Mr. Hadnagy or Social-Engineer, with no temporal scope, or limitation to the claims or defenses at issue in the Litigation.

***Not in Ms. Fincher's Possession, Custody, or Control***. Ms. Fincher objects to each request in the Subpoena to the extent it seeks information that is not in her possession, custody, or control; that is not known or reasonably available to Ms. Fincher; that is not ascertainable by means of a reasonably diligent search; or that is no longer maintained or accessible by Ms. Fincher.

***Privilege or Work Product***. Ms. Fincher objects to each request in the Subpoena to the extent it seeks information protected from disclosure by the attorney-client privilege, the work product doctrine, or other applicable privileges or immunities. Specifically, Ms. Fincher objects to Request No. 18 to the extent that it seeks communications with Perkins Coie that occurred *after* Perkins Coie was retained in response to this Subpoena.

***Inaccessible ESI***. Ms. Fincher objects to the Subpoena to the extent it seeks electronically stored information and/or documents concerning electronically stored information that are not reasonably accessible due to undue burden and/or cost in violation of Fed. R. Civ. P. 45(e)(1)(D). To the extent Ms. Fincher agrees to search for documents and subject to Fed. R. Civ. P. 26(b)'s proportionality factors, Ms. Fincher will search document sources (including ESI sources) that she reasonably believes hosts responsive documents.

**CONFIDENTIAL PURSUANT TO PROTECTIVE ORDER**

CONFIDENTIAL PURSUANT TO PROTECTIVE ORDER

November 14, 2024
Page 3

***Third-Party Information***. Ms. Fincher objects to the extent the Subpoena requests third-party confidential information without the consent of the third party.

**Responses**

Subject to and without waiving the foregoing objections, Ms. Fincher responds as follows: Ms. Fincher will produce responsive, non-privileged documents that are identified after a reasonable search and diligent inquiry for Request Nos. 2, 7, 9, 10, 13, 15, and 18. After a reasonable search and diligent inquiry, Ms. Fincher does not have any responsive documents in her possession, custody, or control for Request Nos. 1, 3, 4, 5, 6, 8, 11, 12, 14, 16, and 17, because the documents either do not exist or are no longer in her possession, custody, or control.

\*          \*          \*

Ms. Fincher reserves all rights to amend or supplement its objections to the Subpoena. This letter and Ms. Fincher's responses to the Subpoena are designated at "CONFIDENTIAL" per the Protective Order in this Litigation. Please restrict accordingly.

Sincerely,

David A. Perez

cc:   Michele Fincher
      Jeff Moss
      Matt Mertens
      Jacob Dean
      Lauren Trambley

Exhibit J

| **From:** | Rastello, Kenneth R. (SEA) |
|---|---|
| **To:** | lenglish@freybuck.com; tbuck@freybuck.com; mconrad@freybuck.com; aholmes@freybuck.com; kristofer@riklislaw.com |
| **Cc:** | Rastello, Kenneth R. (SEA); Harbaugh, Katrina (BOI); Trambley, Lauren (SFO); Perez, David A. (SEA); Terpstra, Sam (SEA); Mertens, Matthew (POR) |
| **Subject:** | Hadnagy v. Def Con - 3rd Party Production: FINCHER001 |
| **Date:** | Thursday, November 14, 2024 11:28:14 AM |



krastello@perkinscoie.com sent you a secure message

**Access message**

This message requires that you sign in to access the message and any file attachments.

Exhibit K

Jessica Levine                                    September 19, 2024

Page 1

UNITED STATES DISTRICT COURT

FOR THE WESTERN DISTRICT OF WASHINGTON

---------------------------------------------------------
                              )
CHRISTOPHER J. HADNAGY;       )
SOCIAL-ENGINEER,              )
                              )
              Plaintiffs,     )
                              )
    vs.                       )   No. 2:23-cv-01932-BAT
                              )
JEFF MOSS; and DEF CON        )
COMMUNICATIONS, INC.,         )
                              )
              Defendants.     )
                              )
---------------------------------------------------------

VIDEOTAPED VIDEOCONFERENCE DEPOSITION UPON ORAL
                     EXAMINATION

                         OF

                   JESSICA LEVINE

    ***CONFIDENTIAL PURSUANT TO PROTECTIVE ORDER***

---------------------------------------------------------

             Round Rock, Texas (Via Zoom)




DATE:   September 19, 2024

REPORTED REMOTELY BY:  Douglas Armstrong, RPR
                       Washington CCR No. 3444

Jessica Levine                                    September 19, 2024

```
  1                 A P P E A R A N C E S

  2

  3    For the Plaintiffs:

  4           MARK R. CONRAD
              Frey Buck, P.S.
  5           1200 Fifth Avenue, Suite 1900
              Seattle, Washington 98101
  6           (206) 486-8000
              mconrad@freybuck.com
  7           (Via Videoconference)

  8           KRISTOFER Z. RIKLIS
              Riklis Law, LLC
  9           401 Wilshire Boulevard, Floor 12
              Santa Monica, California 90401
 10           (310) 895-2497
              kristofer@riklislaw.com
 11           (Via Videoconference)

 12    For the Defendants:

 13
              MATTHEW J. MERTENS
 14           Perkins Coie, LLP
              1120 Northwest Couch, 10th Floor
 15           Portland, Oregon 97209
              (503) 727-2199
 16           mmertens@perkinscoie.com
              (Via Videoconference)

 17

 18    Also Present:

 19
              LINDSAY HITCHCOCK
 20           Videographer
              (Via Videoconference)

 21
              LAUREN ENGLISH
 22           Frey Buck
              (Via Videoconference)

 23
              CHRISTOPHER HADNAGY
 24           (Via Videoconference)

 25
```

Jessica Levine                                    September 19, 2024

Page 5

1    Round Rock, Texas        Thursday, September 19, 2024

2                    9:00 a.m. PDT

3         ------------------------------------

4              THE VIDEOGRAPHER:  We are on the record.

5    Today's date is September 19, 2024, and the time is

6    9:00 a.m.  This is the video-recorded deposition of

7    Jessica Levine in the matter of Hadnagy, et al., vs.

8    Moss, et al., Case Number 2:23-cv-01932-BAT in the

9    United States District Court for the Western District

10   of Washington.

11             This deposition is being held via

12   videoconference.  The reporter's name is

13   Doug Armstrong.  My name is Lindsay Hitchcock.  I'm the

14   legal videographer.  We are with Seattle Deposition

15   Reporters.

16             At this time, Counsel, would you please

17   identify yourselves for the record, after which the

18   witness may be sworn in.

19             ATTORNEY CONRAD:  Mark Conrad for plaintiff.

20             ATTORNEY MERTENS:  And Matt Mertens for

21   defendants Def Con Communications and Jeff Moss.

22

23   JESSICA LEVINE,        witness herein, having been

24                          duly sworn by the Certified

25                          Court Reporter, testified as

Jessica Levine                                    September 19, 2024

                                                            Page 6

 1                    follows:

 2

 3                  E X A M I N A T I O N

 4  BY ATTORNEY MERTENS:

 5      Q.   Good morning, Ms. Levine.  We've met off the

 6  record, but I'm Matt Mertens, and I'm an attorney for

 7  Jeff Moss and Def Con Communications in the lawsuit

 8  that Chris Hadnagy and Social-Engineer have filed

 9  against Mr. Moss and Def Con Communications.

10           Have you ever been deposed before?

11      A.   No.  This is the first time.

12      Q.   Okay.  So you understand that the oath that

13  Mr. Armstrong has just administered to you is the same

14  oath that would be administered to you if you were

15  sitting in a courtroom?

16      A.   Yes, I understand.

17      Q.   And you are sworn to tell the truth today to

18  the best of your ability.

19           Do you understand that?

20      A.   I understand.

21      Q.   So let me just give you a few ground rules

22  for this deposition because you've never been deposed

23  before.

24           Mr. Armstrong is a very talented court

25  reporter, but he can only write down the words of one

Jessica Levine                                        September 19, 2024

Page 76

1    apologize.

2            There was a call later on.  I don't remember

3    the timeline exactly, but there was a call in between

4    this and the initial one where I was on the airplane.

5    There was a call where I remember Grifter was on the

6    call, Jeff was on the call, and there were other people

7    that were on the call.  And they asked us to explain

8    our complaints, and so I was able to give my complaint

9    directly to Jeff and Grifter and Def Con, the other

10   individuals associated with Def Con.

11           But I don't recall exactly the date of that,

12   but it was in between -- this was years ago.  I'm

13   sorry.  My -- I'm trying to remember exactly when that

14   occurred.  I wish that I had more records, but with

15   Signal, it's hard to keep records.

16       Q.   So I want to ask about this call, and then I

17   just want to jump back to kind of more -- it sounds

18   like more recent communications with Jeff Moss.

19           So you were part of a call in which Grifter,

20   Jeff Moss was there, as well as who else?

21       A.   I don't know any of the others that were on

22   the call because I said my piece, and then I left the

23   call.  Nobody else said that they were -- I went first.

24       Q.   And did you announce who you were?

25       A.   Uh-huh.  Yep.

CONFIDENTIAL PURSUANT TO PROTECTIVE ORDER

202

1                    C E R T I F I C A T E

2        UNITED STATES      )
                            )
3        DISTRICT COURT     )

4

5                I, a Reporter and Washington Certified Court
         Reporter, hereby certify that the foregoing videotaped
         videoconference deposition upon oral examination of
6        Jessica Levine was taken stenographically before me on
         September 19, 2024, and transcribed under my direction;

7

8                That the witness was duly sworn by me
         pursuant to RCW 5.28.010 to testify truthfully; that
         the transcript of the deposition is a full, true and
9        correct transcript to the best of my ability; that I am
         neither attorney for nor a relative or employee of any
10       of the parties to the action or any attorney or counsel
         employed by the parties hereto nor financially
11       interested in its outcome.

12               I further certify that in accordance with
         Washington Court Rule 30(e) the witness is given the
13       opportunity to examine, read and sign the deposition
         within thirty days upon its completion and submission
14       unless waiver of signature was indicated in the record.

15               IN WITNESS WHEREOF, I have hereunto set my
         hand this 27th day of September, 2024.

16

17

18       Douglas Armstrong, RPR

19       _____

20       Washington Certified Court Reporter No. 3444
         License expires 11/26/2024

21

22

23

24

25