THE HONORABLE BRIAN A. TSUCHIDA

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| CHRISTOPHER J. HADNAGY, an individual; and SOCIAL-ENGINEER, LLC, a Pennsylvania limited liability company,<br><br>Plaintiffs,<br><br>v.<br><br>JEFF MOSS, an individual; DEF CON COMMUNICATIONS, INC., a Washington corporation; and DOES 1-10; and ROE ENTITIES 1-10, inclusive,<br><br>Defendants. | No. 2:23-cv-01932-BAT<br><br>**DEFENDANTS' REPLY IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT**<br><br>**Noted For Consideration: March 21, 2025**<br><br>**ORAL ARGUMENT REQUESTED** |

DEFENDANTS' REPLY IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT – 1 (No. 2:23-cv-01932-BAT)

**Perkins Coie LLP**
1201 Third Avenue, Suite 4900
Seattle, WA 98101-3099
Phone: 206.359.8000
Fax: 206.359.9000

180490796.4

# TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES ................................................................................................ 3

INTRODUCTION ............................................................................................................... 5

RESPONSE TO PLAINTIFF'S STATEMENT OF FACTS............................................... 6

    A.    Hadnagy's undisputed misconduct is jaw-dropping. ................................. 6

    B.    Hadnagy's manufactured factual "disputes." ............................................. 9

ARGUMENT ..................................................................................................................... 13

I.    Def Con cannot be held liable for newly raised legal theories about the conduct of a volunteer. ................................................................................................................ 13

II.    Hadnagy has not made a prima facie case for the falsity of any statement....... 14

    A.    The Transparency Report is true and thus not defamatory........................ 15

    B.    The Transparency Update is true and thus not defamatory...................... 17

III.    Hadnagy has not made a prima facie case of fault............................................ 17

CONCLUSION .................................................................................................................. 18

DEFENDANTS' REPLY IN SUPPORT OF MOTION
FOR SUMMARY JUDGMENT – 2 (No. 2:23-cv-01932-
BAT)

180490796.4

**Perkins Coie LLP**
1201 Third Avenue, Suite 4900
Seattle, WA 98101-3099
Phone: 206.359.8000
Fax: 206.359.9000

# TABLE OF AUTHORITIES

**Page(s)**

**CASES**

*Glenn v. Wilkie,*
 No. 2:18-CV-01162-BJR, 2020 WL 3839633 (W.D. Wash. July 8, 2020) ............... 9

*Haueter v. Cowles Pub. Co.,*
 61 Wash. App. 572, 811 P.2d 231 (1991) ............................................................... 17

*LaMon v. Butler,*
 112 Wash. 2d 193, 770 P.2d 1027 (1989) ................................................................ 13

*LaMon v. Butler,*
 44 Wash. App. 654, 722 P.2d 1373 (1986) .............................................................. 14

*Mohr v. Grant,*
 153 Wash. 2d 812, 108 P.3d 768 (2005) ............................................................ 15, 16

*Nocita v. Leal,*
 No. 3:22-CV-5741-TLF, 2024 WL 3226722 (W.D. Wash. June 28, 2024) ............................................................................................................... 14

*Point Ruston, LLC v. Pac. Nw. Reg'l Council of the United Bhd. of Carpenters & Joiners of Am.,*
 No. C09-5232BHS, 2010 WL 3732984 (W.D. Wash. Sept. 13, 2010) ................... 15

*Sisley v. Seattle Sch. Dist. No. 1,*
 171 Wash. App. 227, 286 P.3d 974 (2012) .............................................................. 15

*Walker v. State Farm Fire & Cas. Co.,*
 No. 2:24-CV-00048-MKD, 2025 WL 35966 (E.D. Wash. Jan. 6, 2025) ................ 14

*Wasco Prods., Inc. v. Southwall Techs., Inc.,*
 435 F.3d 989 (9th Cir. 2006) ................................................................................... 14

*Wilson v. JPMorgan Chase Bank NA,*
 No. 2:23-AP-1073, 2024 WL 4336453 (W.D. Wash. Sept. 26, 2024) .................... 14

**RULES**

Fed. R. Civ. P. 45(c) ........................................................................................................ 9

Rule 56(a) ........................................................................................................................ 9

DEFENDANTS' REPLY IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT – 3 (No. 2:23-cv-01932-BAT)

Perkins Coie LLP
1201 Third Avenue, Suite 4900
Seattle, WA 98101-3099
Phone: 206.359.8000
Fax: 206.359.9000

180490796.4

**OTHER AUTHORITIES**

Restatement (Second) of Torts § 581A, cmt. g (1977)................................................. 14

DEFENDANTS' REPLY IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT – 4 (No. 2:23-cv-01932-BAT)

**Perkins Coie LLP**
1201 Third Avenue, Suite 4900
Seattle, WA 98101-3099
Phone: 206.359.8000
Fax: 206.359.9000

180490796.4

# INTRODUCTION

Defendants Def Con Communications, Inc. and Jeff Moss (collectively, "Def Con") banned Plaintiffs Christopher Hadnagy and Social-Engineer LLC ("S-E," and collectively "Hadnagy") from the Def Con conference because of Hadnagy's pervasive harassment of many people over many years. The undisputed evidence shows Hadnagy's fixation on the bodies of his female employees, volunteers, and conference participants; his violent temper; his pattern of berating and insulting employees; his relentless attacks on women he perceives as having crossed him professionally; his open sexual fetishization of Asian women; his inappropriate and sexualized trainings; and his brandishing a switchblade at work and at the Def Con conference. Hadnagy disputes none of this because he cannot. The testimony of the brave women who described Hadnagy's mistreatment of them is uncontroverted, and Hadnagy's own documents (indeed, his own words) establish much of the above. Def Con appropriately banned Hadnagy for violating its Code of Conduct and thereafter announced his ban publicly.

Faced with an astonishingly long record of undisputed misconduct over a period of many years, Hadnagy has no choice but to dissemble, obfuscate, and mislead. He repeatedly mischaracterizes the factual record. He gets the law wrong on key elements of defamation. He attempts to manufacture an entirely new defamation claim against Def Con, one he had never previously pleaded (or even attempted to plead), in a desperate Hail Mary to save his lawsuit. And he ignores major portions of the Motion for Summary Judgment (the "Motion") both legally and factually because he has no good-faith response—including, as especially relevant here, the fact that the Court ***has already explicitly rejected*** his argument that the Transparency Report and the Transparency Update imply sexual misconduct.

DEFENDANTS' REPLY IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT – 5 (No. 2:23-cv-01932-BAT)

Perkins Coie LLP
1201 Third Avenue, Suite 4900
Seattle, WA 98101-3099
Phone: 206.359.8000
Fax: 206.359.9000

180490796.4

1  No reasonable juror could find that Def Con defamed Hadnagy in the Transparency Report and Transparency Update. The Court should grant summary judgment.

### RESPONSE TO PLAINTIFF'S STATEMENT OF FACTS

Def Con sets forth below the undisputed facts demonstrating Hadnagy's violations of the Code of Conduct and establishing that summary judgment is appropriate. Def Con also identifies Hadnagy's mischaracterizations of the record, none of which—even if meritorious, which they manifestly are not—create a genuine issue of *material* fact about the truthfulness of Def Con's statements.

**A.  Hadnagy's undisputed misconduct is jaw-dropping.**

There's simply no doubt that Hadnagy violated the Code of Conduct, and he doesn't even try to contend otherwise. The Code of Conduct prohibits "harassment," which includes "deliberate intimidation and targeting individuals in a manner that makes them feel uncomfortable, unwelcome, or afraid." ECF 84 at 11. The undisputed evidence overwhelmingly shows that Hadnagy engaged in "harassment" of many people over many years.

**Maxie Reynolds:** Hadnagy does not dispute his long-running, malicious, and vindictive conduct towards his former employee Maxie Reynolds. He concedes his fixation on her appearance (ECF 83 at 8:17–23); his multi-pronged retaliation against her when she quit S-E, including inducing prominent podcasting host Jack Rhysider to cancel her episode (*id.* at 9:1–19); his investigation of her professional credentials under false pretenses (*id.* at 18:12–18); his personal attacks on her as "poison," a "psychopath," and an "awful psycho bitch" (*id.* at 18:24–19:12); and his repeated statements to third parties that Reynolds "took work" from S-E and "started a competing company," which Hadnagy has since admitted under oath were false (*id.* at 9:15–19, 19:5–14).

DEFENDANTS' REPLY IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT – 6 (No. 2:23-cv-01932-BAT)

Perkins Coie LLP
1201 Third Avenue, Suite 4900
Seattle, WA 98101-3099
Phone: 206.359.8000
Fax: 206.359.9000

180490796.4

**Michele Fincher:** Hadnagy does not dispute Fincher's testimony that he repeatedly referred to her as a "hot Asian" and talked about how she should wear high heels (ECF 83 at 12:3–5); that he regularly bullied, berated, and screamed at S-E employees (*id.* at 12:12–21); and that Hadnagy's students regularly approached Fincher to express discomfort with Hadnagy's sexualized trainings (*id.* at 12:22–13:4).

**Cat Murdock:** Hadnagy does not dispute Murdock's testimony regarding his explosive and hair-trigger temper in the workplace (ECF 83 at 13:17–19); that he was so angry from Murdock correcting his pronunciation of a Middle Eastern man's name that she physically feared for her safety (*id.* at 13:20–22); that he threw a phone at her (*id.* at 13:24–25); that he regularly "joked" by pulling out a switchblade and threatening to stab people with it and by threatening to throat-punch people (*id.* at 13:25–14:4); and that he commonly belittled his employees, calling them "stupid," "dumb," and "morons" (*id.* at 14:5–8).[1]

**Jess Levine:** Hadnagy does not dispute Levine's testimony that she witnessed Hadnagy drunkenly brandishing his switchblade and "joking" about stabbing people with it at Def Con (ECF 83 at 15:3–8); that Hadnagy angrily stabbed his knife into his desk during a video call with Levine (*id.* at 15:8–9); that Hadnagy berated her to the points of tears, including calling her work or performance "worthless" (*id.* at 15:11–14); and that the North Carolina Department of Labor cited Hadnagy for unlawfully withholding Levine's final paycheck (*id.* at 15:20–16:2).

**Sam Gamble:** Hadnagy does not dispute Gamble's testimony that he regularly commented on her physical appearance in a way that made her feel uncomfortable (ECF 83 at 20:13–18); that he made explicit sexual comments to Gamble on an

---

[1] Nor does Hadnagy dispute his own extensive documentation where he repeatedly admits mistreating Murdock as an S-E employee. *See* ECF 83 at 14:21 n.2.

DEFENDANTS' REPLY IN SUPPORT OF MOTION
FOR SUMMARY JUDGMENT – 7 (No. 2:23-cv-01932-BAT)

Perkins Coie LLP
1201 Third Avenue, Suite 4900
Seattle, WA 98101-3099
Phone: 206.359.8000
Fax: 206.359.9000

180490796.4

October 2021 business trip (*id.* at 20:18–21); that he gave Gamble an unwanted kiss on the forehead outside her hotel room (*id.* at 20:21–23); and that he solicited information from Gamble about her bra size, underwear size, pubic hair, and age at which she started shaving her pubic hair as part of a putative "sting" operation that Hadnagy's Innocent Lives Foundation was not actually permitted to perform (*id.* at 20:24–21:8).

**Geoffrey Vaughan:** Hadnagy does not dispute the veracity or accuracy of Vaughan's September 30, 2016, emails regarding Hadnagy's inappropriate behavior during a training seminar, including repeated discussion of fetish pornography (ECF 82 at 4); repeatedly referencing 1970s pornography and playing porn music in class (*id.* at 5); brandishing a switchblade and threatening to "ball-slap" attendees with it (*id.* at 4–5); and the comment "boobs have super powers" regarding women in social engineering (*id.* at 5).

**Undisputed documents:** Hadnagy does not dispute the veracity or accuracy of *any* of Def Con's summary judgment materials, including that Hadnagy regularly commented on the sexual attractiveness of Asians and drew a rebuke from his own Asian-American COO (ECF 83 at 21:4–14); that he regularly commented on the physical appearance of his former employees, volunteers, and conference attendees (*id.* at 21:16–22:3); that he received complaints about his sexualized training sessions going back to 2015 (*id.* at 22:5–16); and that Hadnagy's own third-party DEI report warned that Hadnagy's workplace behavior "could lead to allegations of hostile work environment and harassment" (*id.* at 22:18–23:4).

**Hadnagy's own testimony:** Last, but certainly not least, *Hadnagy himself* repeatedly testified that his behavior was inappropriate or could be perceived as such by a reasonable person. ECF 83 at 35:11–36:4.

DEFENDANTS' REPLY IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT – 8 (No. 2:23-cv-01932-BAT)

**Perkins Coie LLP**
1201 Third Avenue, Suite 4900
Seattle, WA 98101-3099
Phone: 206.359.8000
Fax: 206.359.9000

180490796.4

### B. Hadnagy's manufactured factual "disputes."

Considering the above, Hadnagy's various sleights of hand regarding the record aren't surprising. He has no choice but to throw things at the wall and hope something sticks. But none of his factual "disputes" have merit, and even if they did, none of them are *material* disputes as Rule 56(a) requires.

### 1. Kevin Sugihara.

Hadnagy's Response asserts for the *very first time*, despite nearly three years of litigation, that Def Con is liable for the putative social media posts of a Def Con volunteer named Kevin Sugihara. ECF 98 at 3:3–22. The legal impropriety is patent (*see* Argument Section I *infra)*, and the factual basis is nonexistent.

First, Hadnagy relies on unauthenticated hearsay—screenshots of Sugihara's ostensible social media posts. *See* ECF 99 at 8. This is not admissible evidence on summary judgment under these circumstances, and Def Con objects to it.

Second, there is no evidence Moss was even aware of (much less ratified) Sugihara's putative comments. Hadnagy's statement that Moss "gave a 'thumbs up' in response to Sugihara's "Weinstein comment" is flagrantly untrue. *See* ECF 98 at 3:11–13. According to Hadnagy, Sugihara called Hadnagy "this industry's Weinstein" in the r/Defcon forum on September 8, 2022. ECF 99 at 52. There is no evidence that Moss "gave a 'thumbs up'" to that comment; there is no evidence he saw it or was even aware of it. On March 29, 2024, almost two years after Sugihara's "Weinstein comment" on r/Defcon, Moss, Sugihara, and *at least* two other individuals privately texted about the Court's ruling on Def Con's motion to dismiss, and Sugihara texted a quote *from the ruling* to Moss and others, which someone—not necessarily Moss— acknowledged with a "thumbs up" emoji. ECF 101 at 16–17. Nothing in this exchange indicates Moss's awareness of or agreement with Sugihara's putative comments on September 8, 2022.

DEFENDANTS' REPLY IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT – 9 (No. 2:23-cv-01932-BAT)

Perkins Coie LLP
1201 Third Avenue, Suite 4900
Seattle, WA 98101-3099
Phone: 206.359.8000
Fax: 206.359.9000

180490796.4

And finally, none of this is relevant to Hadnagy's *actually pleaded* defamation claim, which he predicates on the Transparency Report and Transparency Update, and which never once alleges Sugihara is Def Con's agent or that *Sugihara's* statements damaged Hadnagy. *See generally* Compl. It's a complete smokescreen and appropriately disregarded.

### 2. Neil Wyler as Def Con's mediator.

Hadnagy argues at length that Neil Wyler was not acting on Def Con's behalf when Wyler and Hadnagy spoke in August and September 2021. *See* ECF 98 at 9:18–20, 19:11–20:8. From this he contends that Def Con defamed him by saying that someone from the organization spoke with him about the allegations. *Id.* at 29:12–19. This is baseless.

It is undisputed that Moss deputized Wyler to talk to Hadnagy on Def Con's behalf about Reynolds's allegations; that Wyler is part of a core "inner circle" at Def Con; and that Wyler reported back to Moss regarding Wyler's conversations with Hadnagy. *See* ECF 84 at 202–03, 217–20, and 270–71. It is likewise undisputed that Hadnagy himself perceived Wyler as acting on Def Con's behalf. *See, e.g.,* ECF 84 at 234 (Hadnagy asking Wyler, "What I will need to know is what [Black Hat] and [Def Con] plan with this info?" in response to Wyler's initial reach-out). Hadnagy testified that Wyler told him on their initial August 26, 2021, call that he was not acting on Def Con's behalf (*see* ECF 101 at 111–12); but even accepting this as true, Hadnagy indisputably subsequently understood that Wyler was acting on Def Con's behalf. *See* ECF 84 at 248 (Hadnagy stating on February 24, 2022, "Yep you were defcon's mediator[.]")

Plus, Hadnagy indisputably exchanged emails and direct messages *with Moss* about the allegations and Hadnagy's ban. *See, e.g.,* ECF 84 at 578–81; *see also* ECF 83 at 16:20–17:2. Hadnagy's position requires the Court to disregard Wyler's multiple

DEFENDANTS' REPLY IN SUPPORT OF MOTION
FOR SUMMARY JUDGMENT – 10 (No. 2:23-cv-01932-BAT)

Perkins Coie LLP
1201 Third Avenue, Suite 4900
Seattle, WA 98101-3099
Phone: 206.359.8000
Fax: 206.359.9000

180490796.4

conversations with Hadnagy on Def Con's behalf *and* Moss's direct electronic communications with Hadnagy to conclude Def Con did not "speak" with Hadnagy about the allegations. That's not a reasonable interpretation of the undisputed facts.

### 3. Details about the September 7, 2021, Zoom call.

It is undisputed that on September 7, 2021, approximately 15-20 people participated in a call with Def Con, where they shared experiences regarding Hadnagy that Moss contemporaneously described as "[b]rutal stories" of "vengeful" and "abusive" behavior. ECF 83 at 11:15–22. Because Hadnagy cannot dispute the substance of this case-dispositive call, he instead attempts to cloud the record with irrelevancies and misrepresentations.

*First*, Hadnagy argues that it's unclear whether the call was a phone call or a Zoom call. ECF 98 at 10:8–11:11. But the undisputed evidence is that the *call happened*, and the platform is completely irrelevant.

*Second*, Hadnagy represents that "the only dial-in number produced by Def Con is dated . . . nearly a month after the ban announcement." ECF 98 at 11:1–11. This is utterly false. On January 29, 2025, counsel for Def Con sent counsel for Hadnagy the September 7, 2021, Zoom invitation at counsel for Hadnagy's request. *See* Supplemental Declaration of Matt Mertens ("Supp. Mertens Decl.") ¶ 2, Ex. A.

*Third*, Hadnagy argues that Def Con must not have known who the reporting parties were (and thus, apparently, that the September 7, 2021, call never took place) because Def Con did not disclose the reporting parties on their November 21, 2023, initial disclosures. ECF 98 at 12:2–5. This is an untenable position. On May 28, 2024, counsel for Def Con told counsel for Hadnagy that Def Con was not disclosing the reporting parties' names until the Court entered a protective order because the reporting parties feared Hadnagy's retaliation. Supp. Mertens Decl. ¶ 3, Ex. B. On June 10, 2024, the Court entered the stipulated protective order; and *just three days*

DEFENDANTS' REPLY IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT – 11 (No. 2:23-cv-01932-BAT)

Perkins Coie LLP
1201 Third Avenue, Suite 4900
Seattle, WA 98101-3099
Phone: 206.359.8000
Fax: 206.359.9000

180490796.4

*later*, Def Con provided amended discovery responses containing the names of the reporting parties. *Id.* ¶ 4, Ex. C.

*Fourth*, Hadnagy argues that Fincher did not report Hadnagy on the call, but he is wrong. ECF 98 at 12:6–14. Fincher, Reynolds, Murdock, and Wyler all testified that Fincher shared her experiences with Hadnagy on the call. *Id.* ¶¶ 5-8, Ex. D at 58:17-60:13; Ex. E at 92:23-93:9, 99:15-100:16, and 107:9-22; Ex. F at 130:12-13; and Ex. G at 111:19-114:13. While Moss testified that Fincher did not report any Code of Conduct violations on the call, he also testified that these incidents were "a while ago" and he doesn't "remember specifically who said what." *Id.* ¶ 9, Ex. H at 136:18-24. Moss's testimony is insufficient to create a *genuine* issue of material fact on Fincher's participation in the call.[2]

*Fifth*, Hadnagy argues that Murdock must not have participated on the call because of baseless inferences he draws from other documents and testimony. *See* ECF 98 at 12:18–13:13. But Murdock testified that she participated in the call, and her testimony is undisputed. Supp. Mertens Decl. ¶ 7, Ex. F at 128:25-129:7.

*Sixth*, Hadnagy argues that Levine contradicts herself regarding her participation in the September 7, 2021, call. ECF 98 at 13:14–23. She does not, as there were two calls. For the first call on September 7, 2021, Levine was unable to attend, and Murdock read Levine's statement on her behalf. ECF 83 at 15:1–2. There was a second call on or about March 5, 2022, to check in after Hadnagy's February 2022 ban, and Levine participated in this call. Supp. Mertens Decl. ¶ 6, Ex. E at 97:12-98:22; ¶ 11, Ex. K at 76:2-10; *see also* ECF 101 at 71.

---

[2] Hadnagy also argues that counsel for Def Con "refused to produce responsive documents" on Fincher's behalf. ECF 98 at 12:14–17. Yet *again*, this is false. *See* Supp. Mertens Decl. ¶ 10, Exs. I and J (November 14, 2024, email to counsel for Hadnagy providing a link to "the documents produced by Ms. Fincher pursuant to the subpoena.")

DEFENDANTS' REPLY IN SUPPORT OF MOTION
FOR SUMMARY JUDGMENT – 12 (No. 2:23-cv-
01932-BAT)

Perkins Coie LLP
1201 Third Avenue, Suite 4900
Seattle, WA 98101-3099
Phone: 206.359.8000
Fax: 206.359.9000

180490796.4

*Seventh*, Hadnagy argues that the witnesses have provided conflicting accounts regarding what was shared on the September 7, 2021, call. ECF 98 at 13:23–14:7. But contrary to Hadnagy's assertions, Wyler did not testify that nobody mentioned a knife on the call, but rather than he *did not recall* anyone mentioning a knife. *See* ECF 101 at 94–95. This does not contradict Levine and Murdock's testimony that they *did* share about Hadnagy's intimidating display of his switchblade. The same is true for Hadnagy's sexual fetishization of Asians. Wyler stating that he doesn't "recall anything specific in that regard" does not contradict Fincher's testimony that she shared Hadnagy's fetishization of her as a "hot Asian" on the call. And of course, the vast majority of what the participants shared with Def Con is *completely undisputed* and far more than enough to find that Hadnagy violated the Code of Conduct. *See* 6:17–7:21 above; *see also* ECF 83 at 16:7–19 (setting forth Moss and Wyler's reactions to the September 7, 2021, call and reasons for believing the participants).

## ARGUMENT

Hadnagy has failed to meet his burden of establishing a prima facie defamation case, consisting of *specific, material facts*, that would allow a jury to find that defamation exists. *See LaMon v. Butler*, 112 Wash. 2d 193, 197, 770 P.2d 1027, 1029 (1989). Hadnagy has not introduced sufficient evidence to prove that the Transparency Report and Transparency Update were false or that Def Con was at fault in issuing them.

### I. Def Con cannot be held liable for newly raised legal theories about the conduct of a volunteer.

Hadnagy had every opportunity to raise the Sugihara-based defamation theory in his four (attempted) complaints, as he knew of the putative statements by not later than September 14, 2022. *See* ECF 99 at 8. Having failed to timely raise this theory,

DEFENDANTS' REPLY IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT – 13 (No. 2:23-cv-01932-BAT)

Perkins Coie LLP
1201 Third Avenue, Suite 4900
Seattle, WA 98101-3099
Phone: 206.359.8000
Fax: 206.359.9000

180490796.4

he cannot do so at summary judgment. *See, e.g.*, *Wasco Prods., Inc. v. Southwall Techs., Inc.*, 435 F.3d 989, 992 (9th Cir. 2006) ("Simply put, summary judgment is not a procedural second chance to flesh out inadequate pleadings."); *Walker v. State Farm Fire & Cas. Co.*, No. 2:24-CV-00048-MKD, 2025 WL 35966, at *14 n.4 (E.D. Wash. Jan. 6, 2025) (holding that plaintiff cannot raise new theory of liability in response to motion for summary judgment that was not raised in complaint); *Wilson v. JPMorgan Chase Bank NA*, No. 2:23-AP-1073, 2024 WL 4336453, at *8 (W.D. Wash. Sept. 26, 2024) (similar); *Nocita v. Leal*, No. 3:22-CV-5741-TLF, 2024 WL 3226722, at *5 (W.D. Wash. June 28, 2024) (similar).

## II. Hadnagy has not made a prima facie case for the falsity of any statement.

As a threshold legal issue, Hadnagy fails to grasp that truth is a *complete defense* to defamation. *See* ECF 98 at 30:19–32:13; *see also LaMon v. Butler*, 44 Wash. App. 654, 659, 722 P.2d 1373, 1377 (1986), *aff'd*, 110 Wash. 2d 216, 751 P.2d 842 (1988). "[T]he truth of an alleged defamatory statement must be measured 'as of the time of the defamatory publication.'" *LaMon*, 44 Wash. App. at 659 (quoting Restatement (Second) of Torts § 581A, cmt. g (1977)). *If the defamatory matter is true, it is immaterial that the person who publishes it believes it to be false; it is enough that it turns out to be true.* Restatement (Second) of Torts § 581A, cmt. h (emphasis added). In other words, whether a statement is true may involve the consideration of evidence *not within the speaker's knowledge at the time of the statement*. The Restatement confirms that Def Con may rely on information revealed in discovery to show that the Transparency Report and Transparency Update were truthful.

Hadnagy misleadingly cites the *Point Ruston* decision to argue Def Con cannot rely on information obtained after the fact to prove the statements were truthful. ECF 98 at 31:1–6. But the quoted language from *Point Ruston* discusses the application of

DEFENDANTS' REPLY IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT – 14 (No. 2:23-cv-01932-BAT)

Perkins Coie LLP
1201 Third Avenue, Suite 4900
Seattle, WA 98101-3099
Phone: 206.359.8000
Fax: 206.359.9000

180490796.4

an actual malice standard, where the defendants' *belief* in the truth of the statements when made was relevant to determining actual malice. *See Point Ruston, LLC v. Pac. Nw. Reg'l Council of the United Bhd. of Carpenters & Joiners of Am.*, No. C09-5232BHS, 2010 WL 3732984, at *6 (W.D. Wash. Sept. 13, 2010). That case has nothing to do with truth as a complete defense to defamation.

Hadnagy also misapprehends the "falsity" element of defamation. In analyzing a statement for falsity, "the question is not whether the statement is literally true but, rather, whether the statement is substantially true," or whether "the gist of the story, the portion that carries the 'sting,' is true." *Sisley v. Seattle Sch. Dist. No. 1*, 171 Wash. App. 227, 234, 286 P.3d 974, 978 (2012) (cleaned up). Where a statement's "gist or substance . . . when considered as a whole" is true, then summary judgment is appropriate. *See Mohr v. Grant*, 153 Wash. 2d 812, 825, 108 P.3d 768, 775 (2005).

### A. The Transparency Report is true and thus not defamatory.

Applying the two legal standards above, Hadnagy fails to refute the truthfulness of the Transparency Report, which provides:

> We received multiple [Code of Conduct] violation reports about a DEF CON village leader, Chris Hadnagy of the SE Village. After conversations with the reporting parties and Chris, we are confident that the severity of the transgressions merits a ban from Def Con.

ECF 84 at 4.

*First,* it is irrefutable that Defendants "received multiple CoC violation reports" about Hadnagy. *See* ECF 83 at 26:20–27:11 (explaining at least a dozen individuals reported similar experiences with Hadnagy to Def Con in September 2021). *Second*, there is no doubt that Defendants were "confident the severity of the transgressions merit[ed] a ban from Def Con." *See id.* at 28:15–29:7 (detailing conduct relayed to Def Con on September 2021 call). *Third*, despite Hadnagy's attempts to contend otherwise, it is indisputable that Def Con spoke "with the reporting parties

DEFENDANTS' REPLY IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT – 15 (No. 2:23-cv-01932-BAT)

Perkins Coie LLP
1201 Third Avenue, Suite 4900
Seattle, WA 98101-3099
Phone: 206.359.8000
Fax: 206.359.9000

180490796.4

and Hadnagy." *See* 10:6-11:3 above. And Hadnagy's dispute on this last point is irrelevant anyway. "[W]here a report contains a mixture of true and false statements, a false statement (or statements) affects the 'sting' of a report only when 'significantly greater opprobrium' results from the report containing the falsehood than would result from the report without the falsehood." *Mohr*, 153 Wash. 2d at 826. The Transparency Report's "sting" is that Hadnagy committed multiple Code of Conduct violations, not whether Def Con talked to him. To the extent Hadnagy contends the Transparency Report caused "significantly greater opprobrium" because of the "false" assertion that Def Con talked to him, he was obligated to furnish proof of this and failed to do so. *See id.*

Hadnagy does not deny that his behavior, as set forth in the Motion, violated the Code of Conduct. Instead, he claims that the Transparency Report is false because it was capable of being understood as implying *sexual* misconduct. ECF 98 at 25:1–27:16. This argument is baffling because the Court has already ***explicitly rejected it***. *See* ECF 53 at 10–11; ECF 83 at 24:1–13. Plus, Def Con provided extensive evidence that Hadnagy *did* engage in sexual misconduct (*see* ECF 83 at 33:12–24), and Hadnagy doesn't even attempt to dispute this evidence. Instead, he purports to rely on Def Con's pre-2022 internal discussions about the nature of Hadnagy's misconduct and whether it was sexual. *See* ECF 98 at 18:2–19:10.[3] Def Con had an incomplete picture of Hadnagy's full misconduct in these pre-2022 internal discussions. Given the evidentiary record now, a reasonable juror could only conclude that Hadnagy engaged in sexual misconduct—so, even if the Transparency Report implies as much, it's true and thus not defamatory.

---

[3] Def Con objects to ECF 98 at 18:7–13 as inadmissible testimony calling for speculation and a legal conclusion. Def Con properly preserved its objection to form. *See* ECF 101 at 252.

DEFENDANTS' REPLY IN SUPPORT OF MOTION
FOR SUMMARY JUDGMENT – 16 (No. 2:23-cv-01932-BAT)

Perkins Coie LLP
1201 Third Avenue, Suite 4900
Seattle, WA 98101-3099
Phone: 206.359.8000
Fax: 206.359.9000

180490796.4

**B.    The Transparency Update is true and thus not defamatory.**

Hadnagy also fails to refute the truthfulness of the Transparency Update, which provides:

> During our investigation we spoke directly with Mr. Hadnagy about claims of his violations of our Code of Conduct. He confirmed his behavior, and agreed to stop. Unfortunately, the behavior did not stop.

ECF 84 at 586.

Hadnagy again argues that Def Con did not actually speak with him, but this argument fails factually and legally for the reasons Section II.A. discusses above. *See* ECF 98 at 29:12–19. Hadnagy additionally argues that he did not engage "in any wrongful conduct," but there is no dispute he did the things Reynolds said and that he did not stop his actions after agreeing to. *See* ECF 83 at 31:1–33:2. Hadnagy just thinks he was justified, but there isn't a dispute over what he did.

Hadnagy admitted to harassing Reynolds, in violation of Def Con's Code of Conduct, and agreed to stop. He did not. The Transparency Update is true.

**III.    Hadnagy has not made a prima facie case of fault.**

Additionally, Hadnagy must prove that Def Con was negligent in publishing the Transparency Report—i.e., that "the defendant knew or, in the exercise of reasonable care, should have known that the statement was false." *Haueter v. Cowles Pub. Co.*, 61 Wash. App. 572, 580, 811 P.2d 231, 236 (1991). No reasonable juror could find that Def Con acted negligently based on the information that was available to it, including the September 7, 2021, call and Hadnagy's acknowledgment of his conduct to Wyler. *See* ECF 83 at 34:11–35:7. And discovery has confirmed that Def Con was absolutely right about Hadnagy. *See id.* at 35:8–36:9.

For all the reasons listed in Def Con's Motion, no reasonable juror could find that Def Con "knew or should have known" that any of the statements in the Transparency Report or Transparency Update were false. *See* ECF 83 at 34:5–36:4.

DEFENDANTS' REPLY IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT – 17 (No. 2:23-cv-01932-BAT)

180490796.4

Perkins Coie LLP
1201 Third Avenue, Suite 4900
Seattle, WA 98101-3099
Phone: 206.359.8000
Fax: 206.359.9000

The evidence available at the time showed that Hadnagy had committed multiple, severe acts of harassment; discovery has further confirmed that Hadnagy did in fact commit those acts, with Hadnagy admitting to his behavior; and Hadnagy has offered no evidence to the contrary even with the benefit of extensive discovery, and despite his affirmative obligation to make a prima facie case on summary judgment.

## CONCLUSION

For the foregoing reasons, Defendants respectfully request that the Court grant summary judgment and dismiss this suit with prejudice.

DATED this 21st day of March 2025.

**PERKINS COIE LLP**

I certify that this memorandum contains 4,188 words, in compliance with the Local Civil Rules.

*s/David A. Perez*
David A. Perez
**Perkins Coie LLP**
1201 Third Avenue, Suite 4900
Seattle, WA 98101-3099
Telephone: 206.359.8000
Email: DPerez@perkinscoie.com

Matthew J. Mertens
**Perkins Coie LLP**
1120 N.W. Couch Street 10th Floor
Portland, OR 97209-4128
Telephone: 503.727.2000
Email: MMertens@perkinscoie.com

Lauren A. Trambley
**Perkins Coie LLP**
505 Howard Street, Suite 1000
San Francisco, CA 94105-3204
Telephone: 415.344.7000
Email: LTrambley@perkinscoie.com

*Attorneys for Defendants Jeff Moss and DEF CON Communications, Inc.*

DEFENDANTS' REPLY IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT – 18 (No. 2:23-cv-01932-BAT)

Perkins Coie LLP
1201 Third Avenue, Suite 4900
Seattle, WA 98101-3099
Phone: 206.359.8000
Fax: 206.359.9000

180490796.4