1

2

3

4

5

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

6

7

8

9

10

11

12

CHRISTOPHER J. HADNAGY, an
individual; and SOCIAL-ENGINEER, LLC,
a Pennsylvania limited liability company,

               Plaintiffs,

     v.

JEFF MOSS, an individual; DEF CON
COMMUNICATIONS, INC., a Washington
corporation; and DOES 1-10; and ROE
ENTITIES 1-10, inclusive,

               Defendants.

CASE NO. 2:23-cv-01932-BAT

**ORDER DENYING PLAINTIFFS'
MOTION FOR SANCTIONS**

13

14

15

16

17

18

19

      Before the Court is Plaintiff Christopher J. Hadnagy's ("Hadnagy") Motion for Sanctions
and Civil Contempt. Dkt. 85. Hadnagy maintains Defendants Jeff Moss and Def Con
(collectively "Def Con") intentionally violated the Court's Protective Order (Dkt. 47) and seeks
compensatory damages in the amount of $100,000.00; sanctions in the amount of $50,000.00;
attorney's fees and costs, and an order for immediate removal of any online postings. *Id.* Having
reviewed the motion, opposition, balance of the record, and relevant legal authority, the Court
**DENIES** the motion.

20

                        NATURE OF THE DISCLOSURE

21

22

23

      At issue are exhibits filed by Def Con in support of a pending motion for summary
judgment. Dkt. 79; Dkt. 81, Declaration of Matt Mertens; Dkt. 81-1. Contained in this filing was
confidential information subject to the parties Protective Order (Dkt. 47); Dkt. 87, Hadnagy

Decl.  Hadnagy contends Def Con "never sought to confer regarding the confidential nature of the information contained in the filings and after filing the motion, posted the motion and exhibits across multiple platforms, including X (formerly Twitter), Reddit, LinkedIn, and DefCon.org. Dkt. 85 at 3; Dkt. 86, Conrad Decl. Hadnagy also contends Def Con encouraged mass review and distribution of the documents by sending an email with the link to the summary judgment motion at: "storage.courtlistener.com/recap/gov.usc…" Dkt. 85 at 5.

The record reflects that on February 18, 2025, counsel for Def Con worked with their internal e-discovery personnel to cross-check the as-produced confidentiality designations for their 59 summary judgment exhibits. Dkt. 97, Mertens Decl., ¶ 2. Through this process, Def Con identified two documents (Exhibits 35 and 54), which Hadnagy had designated confidential. *Id.* Mertens Decl., ¶ 3. Although Def Con disagreed with the confidentiality designations on Exhibits 35 and 54, it applied the necessary redactions. *Id.*, Mertens Decl., ¶ 4, Ex. 1. Def Con also applied privacy redactions to protect the personally identifiable information of uninvolved third parties. *See*, *e.g.*, Dkt. 84 at 275, 564-66, 583, 615-616, 618, 660-661, 668, 722 (redacting personal email addresses and phone numbers); 595-598, 708-712 (redacting customer information to comply with the Stipulated Protective Order); 21, 51, 437-38, 441 (redacting sensitive and irrelevant personal information).

Defendants acknowledge that one document slipped through – Hadnagy's interrogatory responses to Def Con's discovery requests. In those responses, the significant majority of which are not confidential, Hadnagy describes the statements he believes defamed him; identifies the people he talked to about the Transparency Report; identifies his social media handles; identifies people who have complained about him at trainings and seminars; and, as particularly relevant

here, identifies the categories of losses he intends to rely on at trial (*i.e.* lost contracts and emotional distress).

According to Defendants' counsel, Perkins Coie's e-discovery platform "codes" confidentiality designations in an automated fashion but did not do so as to the interrogatory responses because they weren't "produced" and therefore were not "loaded" into that platform. When Defendants' counsel cross-checked the summary judgment exhibits for confidentiality, he inadvertently overlooked the confidentiality designations on portions of Hadnagy's discovery responses. Dkt. 37, Mertens Decl., ¶ 6. Mr. Mertens declares under penalty of perjury that the oversight was his, it we completely accidental, in good faith, and not for any litigation purpose. *Id*. ¶ 8.

On February 26, 2025, at 1:16 p.m., Plaintiffs' counsel advised Defendants that Exhibit 21 to the summary judgment motion contained unredacted confidential information. Dkt. 37, Mertens Decl., ¶ 9, Ex. 2. Within three hours, Defendants' counsel investigated, confirmed the inadvertent filing, contacted the Court, sealed the original exhibit, and filed a corrected, redacted exhibit. *Id*. ¶ 10. Defendants' counsel immediately explained to Plaintiffs' counsel what had occurred and apologized directly to Plaintiff.

The next day, Thursday, February 27, in response to the e-mail above, Plaintiffs' counsel told Defendants' counsel to "[p]lease be prepared to discuss this issue during our meet and confer tomorrow" as part of the parties' discussions about confidentiality issues more broadly. Dkt. 37, Mertens Decl., ¶ 11, Ex. 3. The next day, Friday, February 28, at 10:53 a.m.— seven minutes before the parties were scheduled to confer—Plaintiffs' counsel added over 150 documents to a list of documents previously designated by Def Con as confidential, which Hadnagy wanted to not be designated as confidential. *Id*. ¶ 12, Ex. 4. Defendants' counsel

1   responded two minutes later and proposed the parties reschedule their conferral for the week of

2   March 3rd to allow both sides to take informed positions on the down-designation request, and

3   Plaintiffs' counsel agreed. *Id*. At no point did Plaintiffs' counsel suggest the parties confer on his

4   forthcoming sanctions motion or on how to further remedy any disclosure of Hadnagy's

5   information. *Id*. ¶ 13. The following Monday, March 3, Plaintiffs filed the instant motion for

6   sanctions without conferring with Defendants' counsel. *Id.*

7        Plaintiff complains that Def Con's "social media posts linking to the information have

8   not been removed." Dkt. 85 at 5:23. However, Def Con has not linked nor is linking to the

9   information in question. The "courtlistener.com" link in Def Con's social media posts links to

10  the entire docket for this matter, not the 776- pages of summary judgment exhibits or the specific

11  unredacted information. Dkt. 37, Mertens Decl., ¶ 14, Ex. 5. Someone would have had to click

12  the Courtlistener link; scroll through the entire docket to find the docket entry for the unsealed

13  exhibits; click through on that link; and then scroll through hundreds of pages of exhibits to find

14  the unredacted four pages. Neither Def Con nor its counsel told anyone to do this, in social

15  media postings or otherwise, as neither Def Con nor its counsel knew the exhibits had

16  inadvertently not been redacted.

17       Less than twenty-four hours after Defendants received the instant motion for sanctions

18  and learned that Plaintiffs wanted the unredacted exhibits removed from Courtlistener, counsel

19  for Def Con contacted the executive director of Courtlistener and had the exhibits sealed: Dkt.

20  37, Mertens Decl., ¶ 15, Ex. 6. Def Con contacted Courtlistener on March 4 at 1:44 p.m.; the link

21  to the unredacted documents was sealed 30 minutes later by 2:14 p.m. *Id*. ¶ 16, Ex. 7.

22

23

On March 1, 2025, Hadnagy received an email from an untraceable sender (nulln0de@tutamail.com), referencing Hadnagy's depression, "meds", salary of "9k a year," along with comments on allegations asserted in the case. Dkt. 87 at 6.

<u>DISCUSSION</u>

Federal Rule of Civil Procedure 37(b) permits a court to issue sanctions for violations of a discovery order. Fed.R.Civ.P. 37(b)(2)(a). A protective order is a discovery order within the meaning of Rule 37(b). *United States v. Nat'l Med. Enterprises, Inc.*, 792 F.2d 906, 911 (9th Cir.1986). "The scope of sanctions for failure to comply with a discovery order is committed to the sound discretion of the district court." *Payne v. Exxon Corp.*, 121 F.3d 503, 510 (9th Cir. 1997). Rule 37's twin aims are "to penalize those whose conduct may be deemed to warrant such a sanction, [and] to deter those who might be tempted to such conduct in the absence of such a deterrent." *E.E.O.C. v. Fry's Elecs., Inc.*, 287 F.R.D. 655, 658 (W.D. Wash. 2012).

Plaintiff relies primarily on *Harmon v. City of Santa Clara*, 323 F.R.D. 617 (N.D. Cal. 2018) in support of his request for damages, sanctions, and attorney fees. However, in *Harmon*, the issue was that plaintiffs "publicly and purposefully" posted the key piece of evidence in the case, a "disturbing and graphic" police body cam video showing the plaintiff being restrained and injured as policy forcibly entered her home. After a five-minute inspection of the video, a junior associate concluded the video had not been designated as confidential. *Id*. at 619; 626. After learning they had violated the protective order, the video was taken down but the associate was allowed to keep the link on her publicly available Facebook page. *Id*. at 621. The court found sanctions were not warranted but awarded attorney's fees and costs against counsel for plaintiffs. *Id*. at 627.

ORDER DENYING PLAINTIFFS' MOTION
FOR SANCTIONS - 5

1    Here, Defendants' counsel did not "publicly and purposefully release the key piece of

2    [confidential] evidence in this case. Rather, they *inadvertently* overlooked four confidential

3    designations embedded within Hadnagy's otherwise non-confidential discovery responses. The

4    record also reflects Defendants' counsel otherwise complied with the Stipulated Protective Order

5    in filing the summary judgment motion. Hadnagy did not identify the discovery responses

6    themselves as confidential, either in the document's caption or in any headers or footers. *See*

7    Dkt. 84 at 331-364. In addition, Def Con's counsel did not intentionally conclude after an

8    inadequate and haphazard investigation that Plaintiff's discovery responses could be filed

9    publicly. Theirs was an inadvertent mistake, cured quickly, and neither Def Con nor its counsel

10   are linking to the inadvertently disclosed confidential materials. As soon as Plaintiff made Def

11   Con aware of the Courtlistener issue, Def Con cured it in less than twenty-four hours.

12   Plaintiff does not cite a single case where a court sanctioned a party for unintentional,

13   limited, and promptly cured disclosure of confidential information. Plaintiff attempts to

14   distinguish cases relied on by Defendants, but the cases reflect that this district routinely denies

15   motions for sanctions based on inadvertent disclosures. *See B.E.S. v. Seattle Sch. Dist. No. 1*, No.

16   C05-2092RSM, 2007 WL 710095, at *2 (W.D. Wash. Mar. 6, 2007) (denying plaintiff's motion

17   for sanctions based on defendant's inadvertent filing of unredacted documents in support of

18   motion for summary judgment); *Point Ruston, LLC v. Pac. Nw. Reg'l Council of the United Bhd.*

19   *of Carpenters*, No. C09-5232BHS, 2010 WL 11485531, at *1 (W.D. Wash. Mar. 2, 2010)

20   (denying plaintiff's motion for sanctions based on defendant's mistake in filing unredacted

21   confidential information that was "publicly filed for a short time" because "it is not uncommon"

22   for attorneys of all experience levels to make mistakes); *Cen Com Inc. v. Numerex Corp.*, No.

23   C17-0560RSM, 2018 WL 4184335, at *8 (W.D. Wash. Aug. 31, 2018) (declining to enter

1    sanctions notwithstanding party's multiple violations of the stipulated protective order and

2    failure to follow local rules regarding confidentiality and sealing). *Gaekwar v. Amica Mut. Ins.*

3    *Co.*, No. 2:22-CV-1551-BJR, 2023 WL 8449233 (W.D. Wash. Dec. 6, 2023) (denying motion

4    for sanctions because this was a first-time offense with no prejudice to the defendant, plaintiff

5    corrected the error within hours, and counsel for plaintiff admitted to his error).

6          Hadnagy also argues that none of these cases "involve conduct as sustained or egregious

7    as Defendants'—who not only filed confidential materials in violation of a Protective Order but

8    also launched a campaign to publicly disseminate them to a hacker-focused audience." Dkt. 110

9    at 7. The record reflects no such "campaign" or "sustained or egregious conduct." In fact, the

10   record also reflects there is no demonstrable prejudice to Hadnagy, as this is the same

11   information that he would be required to use to support his damages at trial. The designated

12   information falls into three categories: (1) contracts with former clients; (2) Hadnagy's allegedly

13   lost salary; and (3) Hadnagy's assertions of anxiety and depression. *See* Dkt. 84 at 343-344 and

14   346-347). Hadgnagy claims the disclosure revealed "a detailed list of [his] company's clients,"

15   but the interrogatory responses identify three former clients and the annual value of the contracts,

16   without revealing anything about the nature of the services performed. Dkt. 84 at 343. These are

17   also the precise contracts Plaintiff identified as forming part of his damages. *See id.* at 342-43

18   (interrogatory identifying each person who allegedly terminated a contract with Plaintiff

19   Hadnagy because of Def Con's public statements). As to Hadnagy's salary information, he

20   attributes this loss to Def Con's actions in allegedly sabotaging his company. *See id.* at 347. And,

21   as to his medical treatment, Plaintiff attributes his stress, depression, and anxiety, including his

22   treatment with anti-depressants and anti-anxiety medication, to Def Con's alleged defamation.

23

*See* Compl. ¶ 118 (Hadnagy alleges he suffered "emotional harm, exposure to contempt, ridicule, and shame" as a result of Defendants' defamation.

As noted by Defendants, Plaintiff has failed to designate significantly more sensitive information as "confidential" under the Protective Order. For example, Hadnagy describes the sexual dysfunction he experienced because of the combination of Prozac and Wellbutrin (Dkt. 84 at 509); he also describes his severe depression, alcohol abuse, and his wife's breast cancer (*id.* at 508); and severe substance abuse and self-harm in connection with his abusive familial upbringing (*id.* at 456).

There is also no evidence that anyone other than Hadnagy (and one anonymous and untraceable emailer received on the Saturday prior to the filing of the instant motion), is talking about Hadnagy's salary, or his alleged business contracts, or his alleged anxiety and depression. Instead, the public focus has been exclusively on Def Con's motion for summary judgment and the undisputed facts of Plaintiff's extensive misconduct set forth therein. *See* Dkt. 97, Mertens Decl., ¶ 19, Ex. 8 (extended public discussion on Reddit of the assertions in the summary judgment motion).

Hadnagy also argues there was "no legitimate need to file this information" because it had no bearing on Def Con's summary judgment motion. ECF 85 at 7:22- 23. Defendants' counsel explained why they intentionally filed complete documents in support of the summary judgment motion, *i.e.*, they did not want to be accused in the online discourse about this dispute, of cherry-picking information for summary judgment. Dkt. 37, Mertens Decl., ¶ 18.[1] Apparently,

---

[1] Defendants filed the entirety of Plaintiff's discovery responses, including his various denials of Def Con's discovery requests (Dkt. 84 at 331-364); the entirety of Plaintiff's draft book, which sets forth Plaintiff's version of events (*id.* at 453-562); *see also*, Dkt. 97, Mertens Decl., ¶ 18 (identifying, *inter alia*, Exhibits 1, 6, 8, 11, 14, 26, 39, 50, and 53 as full versions of documents rather than relevant excerpts).

ORDER DENYING PLAINTIFFS' MOTION
FOR SANCTIONS - 8

1    this did, in fact, occur. *See*, *e.g.*, Dkt. 97, Mertens Decl., ¶ 19, Ex. 8 at pp. 16- 17 (online

2    discussion of "missing testimony" from summary judgment exhibits containing targeted excerpts

3    from depositions).

4                                        <u>CONCLUSION</u>

5           "The scope of sanctions for failure to comply with a discovery order is committed to the

6    sound discretion of the district court." *Payne v. Exxon Corp.*, 121 F.3d 503, 510 (9th Cir. 1997).

7    Under the circumstances presented here, namely that this is an inadvertent first-time violation

8    that was promptly corrected; Hadnagy has not established prejudice; and, Defendants' counsel

9    admitted to his error, the Court concludes the requested sanctions are not warranted.

10          Accordingly, the Court **ORDERS** that Plaintiffs' Motion for Sanctions (Dkt. 85) is

11   **DENIED**.

12          DATED this 14th day of April, 2025.

13

14          _____

15          BRIAN A. TSUCHIDA
            United States Magistrate Judge

16

17

18

19

20

21

22

23

ORDER DENYING PLAINTIFFS' MOTION
FOR SANCTIONS - 9